IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMIA BANKS, et al., | **Civil Action No.** |
| Plaintiffs, | ___4:20-cv-01227_____ |
| v. | |
| COTTER CORPORATION, COMMONWEALTH EDISON COMPANY, DJR HOLDINGS, INC. f/k/a FUTURA COATINGS, INC., AND ST. LOUIS AIRPORT AUTHORITY, A DEPARTMENT OF THE CITY OF ST. LOUIS | |
| Defendants. | |
| COTTER CORPORATION (N.S.L), | |
| Third-Party Plaintiff | |
| v. | |
| MALLINCKRODT LLC, EVERZINC USA INC., BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, LLC, ALLIED SERVICES, LLC, WESTLAKE LANDFILL, INC., and ROCK ROAD INDUSTRIES, INC., | |
| Third-Party Defendants | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446 and 42 U.S.C. § 2210 et seq., and any

other applicable laws, Third-Party Defendant Mallinckrodt LLC ("Mallinckrodt'), hereby gives

notice of removal of this action from the Circuit Court of St. Louis County, Missouri to the United

1

States District Court for the Eastern District of Missouri, Eastern Division. All Defendants consent

to this Removal. Copies of their respective Consents are attached as Exhibit A.[1]

## MALLINCKRODT'S REMOVAL IS DIFFERENT FROM COTTER'S PRIOR REMOVAL

1.        Mallinckrodt is removing this case under a different statute than Cotter and its

position is unique among the defending parties in this case—Mallinckrodt was a United States

government contractor who performed all of its operations at the sites at issue under direct contract

with, and direct supervision by, the United States government. Through its position as federal

contractor, Mallinckrodt is entitled to certain rights and remedies the other defending parties may

not be, including: (1) the right to remove this case pursuant to the federal contractor defense under

1442, and (2) the application of the Price Anderson Act. As a result, Mallinckrodt's removal is

distinguishable from Cotter Corporation (N.S.L's) prior removal of this matter, which resulted in

remand.

## SUMMARY OF BASIS FOR REMOVAL

2.        Plaintiffs' petition seeks personal and property damage due to the alleged

contamination of Coldwater Creek from World War II uranium processing operations.

Mallinckrodt served as general contractor to the United States government for the purpose of

processing uranium. The government maintained ownership of the material processed, leased or

owned the buildings in which it was processed, and the equipment utilized for doing so.

---

[1] Consent to removal is not necessary under 28 U.S.C. § 1442 however all defendants do consent to this removal and Mallinckrodt has included those consents to the extent the Court deems them necessary. *See*, *Akin v. Ashland Chemical Co.,* 156 F.3d 1030, 1034-35 (10th Cir. 1998).

Mallinckrodt performed its work for the government in accordance with the terms of its contracts and under government direction and supervision.

3.      Federal contractors such as Mallinckrodt have the right to remove suits against them for actions taken 'under color' of federal office—the exact circumstance here. Mallinckrodt also removes this case under the Price-Anderson Act because Mallinckrodt's contract with the government included an indemnification clause in favor of Mallinckrodt for Mallinckrodt's operations at the sites at issue. As a result, and pursuant to the rulings in this Court's prior remand order, this case is properly removable under the PAA.

### PROCEDURAL BACKGROUND OF THE *BANKS* CASE

4.      On or about February 18, 2018, Plaintiff Tamia Banks ("Plaintiffs") filed a class action petition in the Circuit Court of St. Louis County, Missouri, Twenty First Judicial Circuit, thereby commencing the action styled, *Tamia Banks et al. v. Cotter Corporation, Commonwealth Edison Company, Exelon Corporation, Exelon Generation Company, LLC, DJR Holdings, Inc. f/k/a Futura Coatings, Inc., and St. Louis Airport Authority* ("Defendants"), Case No. 18SL-CC00617 (the "State Court Action").  A copy of the Petition together with all materials filed in connection with this matter is attached hereto as Exhibit B.

5.      Plaintiff has subsequently filed both a first and second amended class action petition. *See* Second Amended Petition attached hereto as Exhibit C.

6.      Plaintiffs' Second Amended Class Action Petition seeks injunctive and monetary relief for damages suffered as a result of trespass, permanent nuisance, temporary nuisance, negligence, negligence *per se*, strict liability injuries, civil conspiracy, inverse condemnation, violations of Article I Section 10 of the Missouri Constitution, and violations of Article I Section 26 of the Missouri Constitution and asserts a claim for medical monitoring.

3

7.      On April 18, 2018, Cotter Corporation (N.S.L) ("Cotter") removed the State Court Action to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. § 1331, arguing that Plaintiffs' causes of action arose under the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et. seq.*, which provides for the exclusive remedy for alleged personal injuries and property damage arising from a nuclear incident. Mallinckrodt was not a party to the case at that time.

8.      On May 29, 2018, Plaintiffs filed a motion to remand, and on March 29, 2019, the Court granted Plaintiffs' motion and remanded the case to the Circuit Court of St. Louis County. The Court found that the PAA did not apply to the claims against Cotter because Cotter did not have an applicable source materials license or indemnification agreement with the United States Government.

9.      On June 30, 2020, Cotter filed a third-party petition against Mallinckrodt, EverZinc USA Inc., Bridgeton Landfill LLC, Republic Services, Inc., Allied Services, LLC, Westlake Landfill, Inc., and Rock Road Industries, Inc. *See* Third-Party Petition, attached hereto as Exhibit D.

10.     The Third-Party Petition seeks contribution from the Third-Party Defendants, including Mallinckrodt. *See* Third-Party Petition at ¶ 72.

## PARTIES

11.     On information and belief, Defendant, Cotter is a New Mexico Corporation with its principal place of business in Colorado.

12.     Mallinckrodt is a Delaware limited liability company with its principal place of business in Missouri.

4

13.     On information and belief, EverZinc USA Inc. is a New York corporation with its principal place of business in North Carolina.

14.     On information and belief, Allied Services, LLC ("Allied") is a Delaware limited liability company.  Its two members are Allied Waste Landfill Holdings, Inc. and Allied Waste North America, LLC. *See OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) ("An LLC's membership…is the citizenship of each of its members.").

15.     On information and belief, Allied Waste Landfill Holdings, Inc. is a Delaware corporation with its principal place of business in Arizona.

16.     On information and belief, Allied Waste North America, LLC is a Delaware limited liability company.  Its sole member is Allied Waste Industries, LLC, a Delaware limited liability company.  Allied Waste Industries, LLC's sole member is Republic Services, Inc. a Delaware corporation with its principal place of business in Arizona.

17.     On information and belief, Bridgeton Landfill LLC ("Bridgeton") is the merger successor of West Lake Landfill, Inc. and the merger successor of Rock Road Industries, Inc.

18.     On information and belief, Bridgeton is a Delaware limited liability company.  Its sole member is Allied Waste North America, LLC. Allied Waste North America, LLC is a Delaware limited liability company.  Its sole member is Allied Waste Industries, LLC, a Delaware limited liability company.  Allied Waste Industries, LLC's sole member is Republic Services, Inc. a Delaware corporation with its principal place of business in Arizona.

19.     On information and belief, Republic Services, Inc. is a Delaware corporation with its principal place of business in Arizona.

## RELEVANT FACTS

**I.     An overview of Mallinckrodt's engagement and operations**

5

20.     Mallinckrodt's involvement with the Plaintiffs' allegations began in 1942—six months after Japan attacked Pearl Harbor and after the government learned Germany was attempting to develop atomic weapons. The country was in a state of emergency, a state of war, and the outcome of World War II was very much in doubt. Mallinckrodt was specifically contacted to serve its country as part of a top-secret military program—The Manhattan Project. The United States Government Department of War and then the Manhattan Engineer District ("MED")[2], requested that Mallinckrodt provide assistance to the government by refining uranium. Mallinckrodt's operations started at a government owned plant on Mallinckrodt land at what is today known as the St. Louis Downtown Site ("SLDS") where Mallinckrodt processed uranium. From there, the government expanded operations to what is today known as the St. Louis Airport Site ("SLAPS") where raw materials, by-products, residues and sludges related to SLDS operations were stored. Mallinckrodt's operations at SLAPS ended in approximately 1966. In 1966 Continental Mining & Milling Co. ("CMM") took possession and responsibility for the materials at SLAPS through the issuance of Source Material License SMA-862. The material was subsequently moved to and stored at the Hazelwood Interim Storage Site ("HISS") at Latty Avenue in Missouri until 1973 when some of it was finally disposed of in West Lake Landfill.

## II.    Mallinckrodt's contracts and operations for the United States

21.     In 1942, Mallinckrodt entered into a memorandum of understanding with the United States to assist with the purification of uranium for use during World War II. In 1943,

---

[2] The Atomic Energy Commission ("AEC") was created in 1946 by the passage the Atomic Energy Act. As part of its creation, it took over all operations of the MED, including Mallinckrodt's Contract.

Mallinckrodt and the United States entered into Contract No. W-7405-eng-29 for "processing and delivery of Products. . ."[3] A few years later on May 12, 1945, Mallinckrodt and the United States entered into another contract, Contract No. W-14-108-eng-8, for "consultant services and operations" related to refining uranium.[4] In the twenty-five years that ensued, these parties amended these two contracts over 100 times, and eventually combined them into one through Amd. No. 45 in 1950.[5]

22.     The initial government Contract obligated Mallinckrodt to design, engineer and operate a plant capable of refining uranium at a certain rate per month.[6] Even though the plant was constructed on Mallinckrodt's land, the government owned it.[7] Mallinckrodt also agreed to "perform such research and development work and operate said plant to the best of [its] ability in compliance with specifications and directions furnished by the Contracting Officer."[8] The United States, however, initially committed itself to manage safety at the site:

> The United States of America will make all tests and do all things necessary to measure the intensity of radiation throughout the plant at various stages of the process, and determine and measure all resulting hazards in order to reduce to a minimum possible risks in connection with the operation of said plant. Upon such

---

[3] Exh. E, Contract No. W-7405-eng-29.

[4] Exh. F, Contract No. W-14-108-eng-8. The War Department issued Mallinckrodt's original contract. The Manhattan Engineer District ("MED") subsequently managed it. The management of these contracts was eventually transferred to the Atomic Energy Commission ("AEC") under the authority of the Atomic Energy Act of 1946 and Executive Order No. 9816.

[5] The parties combined Contract No. W-7405-eng-29 into W-14-108-eng-8. Because the parties used various terms over the course of the Contract to describe its numerous changes (e.g., "modification," "amendment," and "supplemental agreement"), we have used the term Amendment or Amd. herein to cover all such changes.

[6] Exh. F, Contract No. W-14-108-eng-8.

[7] *Id.*

[8] *Id.*

4844-9543-1113 v1

determination of hazards, the Government will recommend such preventive measures as the Medical Section of the Manhattan District shall deem necessary, and the Contractor shall thereupon do all things necessary to put into effect and enforce such measures.[9]

23.    In 1946, the parties entered Amd. No. 4 which restated Mallinckrodt's obligation to operate the uranium processing plant "in accordance with specifications furnished by the Contracting Officer, or his duly authorized representative."[10]

24.    In Amd. No. 21, Mallinckrodt and the government agreed that all "materials heretofore or hereafter furnished to the Contractor by the government under this contract, and all work in process, products, by-products, scrap, wastage, and derivatives, resulting from the Contractor's production hereunder, are and shall at all times remain the property of the Government."[11]  Multiple contemporaneous historical records corroborate the government's involvement with and oversight of Mallinckrodt during its Contract performance as stated in these provisions, and others.

## III.    The government expanded Mallinckrodt's operations to include transport of material between SLDS and SLAPS

25.    On September 27, 1950, Mallinckrodt and the United States executed Amd. No. 45 regarding SLAPS. The Contract stated:

> b. Transport from the above-mentioned Plants to the Government storage area, known as the Airport Site . . . the raffinate cake, barium cake, slag and other residues which are or may be by-products of the operations under this Contract.

---

[9] *Id.*

[10] Exh. G, Amd. No. 4.

[11] Exh. H, Amd. No. 21.

The Contractor shall dispose of these by-products in the facilities supplied at the Airport Site, as directed by the Commission.

c. Transport from the Airport Site to the above-mentioned Plants or from said Plants or other railroad sidings in the vicinity of the Airport to the Airport Site any pitchblende and/or other uranium containing raw materials required for operations under this contract in excess of such pitchblende and/or other uranium containing raw materials furnished to the Contractor by the Government at the Plant.[12]

26.     In 1952, Amd. No. 81 was signed, which amended the material being moved from SLDS to SLAPS to "all residues which are or may be by-products of the operations under the contract."[13]

## IV.   The government directed Mallinckrodt to operate SLAPS pursuant to the government's direction

27.     On July 20, 1953, Mallinckrodt and the United States entered into Amd. No. 93, regarding SLAPS.[14] Amd. No. 93 stated that Mallinckrodt:

Shall, as and to the extent requested by the Commission, take custody of and utilize the Airport Site referred to in paragraph 7 and (i) shall deposit there and remove therefrom (as provided in said paragraph 7) the materials referred to in said paragraph 7 and (ii) shall also deposit there and remove therefrom such other materials as the Commission specifies; the Contractor shall also perform such maintenance work at said Site as the Commission requests and for which the Commissions provides the Contractor with the necessary maintenance equipment.[15]

28.     Pursuant to the Contract, Mallinckrodt operated SLAPS at the government's direction until 1966 when the AEC issued AEC Source Material License No. SMA-862 to Continental Mining & Milling Co. ("CMM").[16] Through the issuance of that license, CMM took

---

[12] Exh. I, Amd. No. 45, Art. I-A, 7.b-c.

[13] Exh. J, Amd. No. 81, Art. I-A, 7.b.

[14] Exh. K, Amd. No. 93.

[15] *Id*.

[16] Exh. L, Source Material License No. SMA-862, issued to Continental Mining & Milling Co., Chicago, Illinois, U.S. Atomic Energy Commission, February 14, 1966.

responsibility for and possession of the radioactive material stored there. The radioactive material existing at that time was subsequently moved from SLAPS to HISS by non-Mallinckrodt entities.

## V.  Mallinckrodt's operations at the sites complained of are subject to indemnification by the United States Government

29.     As noted previously, in 1950, the United States and Mallinckrodt combined their contracts into one through Amd. No. 45.[17]  This amendment contained an indemnification clause in Article III-E, whereby the government agreed to indemnify Mallinckrodt:

> It is agreed that the Contractor shall not be liable for and the Government shall indemnify and hold the Contractor harmless against any loss . . . arising out of, based on or caused by the toxicity and/or radioactivity of uranium-bearing raw materials and/or products or by products derived therefrom that maybe or may at any time have been involved in the performance of the work under this contract or contract No. W-7405 end-29, merged with and into this contract. . .[18]

30.     The indemnity provision is prospective and retroactive, covering all of Mallinckrodt's operations for the United States: "the aforesaid obligations of the Government shall be operative and applicable in respect of any such loss, expense or damage, arising on or after October 1, 1949 regardless of the time of occurrence of the events or exposure . . ."[19]

31.     Amd. No.  93 also defined the material the indemnity agreement applied to:

> "[a]ll uranium bearing-raw materials, products, by-products, residues, and sludges, and all other radioactive materials (whether or not uranium-bearing) of which the Contractor takes custody pursuant to (ii) of the third sentence of this paragraph shall

---

[17] Exh. I, Amd. No. 45.

[18] Exh. I, Amd. No. 45, Art. III-E.

[19] *Id*.

10

be deemed to be 'uranium-bearing raw materials and/or products or by-products derived therefrom" within the meaning of the Contract's indemnity provision.[20]

Thus, all of Mallinckrodt's operations at SLAPS and the material transported to and from SLAPS were subject to the government's indemnity.

32.    The government further ratified its contractual indemnity obligations to Mallinckrodt in 1962 after the PAA was passed and the parties executed Amd. No. 124.  This amendment added Article XXXVI "Indemnification Clause" to the Contract which provides, in part, coverage for suits for "public liability" in language that tracks the PAA.[21]

## VI.    Plaintiff's allegations as they related to Mallinckrodt

33.    The Plaintiffs allege in the Second Amended Petition that uranium ore was processed at SLDS from 1942 to 1957.[22] Plaintiffs' allege that Mallinckrodt managed and operated the SLAPS property beginning in 1953.[23] Further allegations include the movement of some of this radioactive material from SLAPS to Latty Avenue, which then became HISS.[24] Plaintiffs allege that radioactive waste has migrated from SLAPS, HISS and the Latty Avenue Site(s) into Coldwater Creek.[25] Plaintiffs allege this migration of radioactive waste contaminated their real property and may have caused personal injuries.[26]

―――――――――――

[20] Exh. K, Amd. No. 93.

[21] Exh. M, Amd. No. 124.

[22] Exh. C, Second Amended Petition ¶ 62.

[23] Id. at ¶ 77.

[24] Id. at ¶ 67.

[25] Id. at ¶ 88

[26] Id. at 96-98.

4844-9543-1113 v1

34.     These allegations, as relate to Mallinckrodt, all concern Mallinckrodt's operations pursuant to the government Contract discussed in the preceding sections.[27]

**VII.    Cotter's Third-Party Petition seeks contribution for the claims made by Plaintiffs**

35.     Cotter also alleges that Mallinckrodt manufactured, produced, used, handled and stored radioactive wastes and other materials at the SLDS.[28] Cotter also alleges that Mallinckrodt had radioactive material moved from SLDS to SLAPS for a period of time and then eventually operated SLAPS from 1953 until at least 1966.[29] Cotter alleges that Mallinckrodt failed to use reasonable care that resulted in releases from SLDS, SLAPS, Latty Avenue, West Lake Landfill, and the transit routes into the surrounding environment.[30] Cotter alleges that in the unlikely event Cotter is found liable to the Plaintiffs for their damages, Mallinckrodt is a joint tortfeasor who is liable to Cotter for its alleged releases from SLDS and SLAPS and the transport of material in between the two.[31]

36.     Cotter's allegations regarding SLDS and SLAPS concern Mallinckrodt's operations for the United States pursuant to the government contract.

**VIII.    Cotters allegations regarding Mallinckrodt's commercial operations**

---

[27] Mallinckrodt obviously disputes these allegations to the extent they suggest wrongdoing by Mallinckrodt or suggest Mallinckrodt's liability for the damages sought.

[28] Exh. D, Cotter's Third-Party Petition, ¶ 19.

[29] *Id.* at 20 – 23. In addition to Cotter's allegations that are consistent with Plaintiffs, Cotter alleges that Mallinckrodt participated in other radioactive processing activities however these activities appear unrelated and not relevant to Plaintiffs' claims for which Cotter seeks contribution, as such, they are not discussed. To the extent they would be relevant to jurisdiction, this Court has supplemental jurisdiction over those claims.

[30] Exh. D, Cotter's Third-Party Petition, ¶ 71.

[31] Exh. D, Cotter's Third-Party Petition, ¶ 72.

37.     Cotter's Third-Party Petition includes allegations that Mallinckrodt maintained operations beyond those directed by the federal government at SLDS and SLAPS. Mallinckrodt denies Cotter's allegations to the extent they suggest any wrongdoing by Mallinckrodt, but more importantly, those allegations have nothing to do with Coldwater Creek, Plaintiffs' allegations or the removal of this matter to this Court.

### THE FACTS PLAINTIFFS AND COTTER PLEADED AGAINST MALLINCKRODT GIVE RISE TO FEDERAL JURISDICTION UNDER 28 U.S.C. § 1442 et seq.

38.     Mallinckrodt removes this case under 28 U.S.C. § 1442 et seq., which provides that a party may remove a civil action commenced in state court that is directed at "any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office . . . ."

39.     "Section 1442 'itself grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction.'" *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984) (quoting *IMFC Professional Services, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir.1982)); *also see Special Prosecutor of State of N. Y. v. U.S. Attorney for S. Dist. of New York*, 375 F. Supp. 797, 801 (S.D.N.Y. 1974) ("Unlike § 1441, § 1442(a)(1) is not keyed to the 'original' jurisdiction of the federal courts. Rather, Section 1442 is predicated upon an independent right given to federal officers whenever a suit is instituted against them in a state court for any act 'under color' of federal office.").

40.     The scope of Section 1442 includes not only federal officers, but also persons acting under their direction. *Williams v. Todd Shipyards Corp.*, 154 F.3d 416 (5th Cir. 1998). It includes defense contractors and governmental contractors, like Mallinckrodt, and procurement and performance contracts, provided the party asserting the defense satisfies three elements. *Guillory*

13

*v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994); *also see Bennett v. MIS Corp.,* 607 F.3d 1076, 1090 (6th Cir. 2010) ("[T]he [Boyle] court concluded that the rationale of the defense is the extension of sovereign immunity, and that in circumstances where the government would not be liable, private actors acting pursuant to government directives should not be liable either."). Mallinckrodt satisfies those elements.

41.     Section 1442 covers all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law. *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969); *also see Town of Davis v. W. Virginia Power & Transmission Co.*, 647 F. Supp. 2d 622, 627 (N.D.W. Va. 2007) ("Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal question element is met if the defense depends on federal law"). "One of the primary purposes of the removal statute—as its history clearly demonstrates—was to have such defenses litigated in the federal courts." *Willingham*, 395 U.S. at 406–07 (1969) (internal citations omitted).

## IX.   Cotter's claim against Mallinckrodt satisfies the three requisites for removal under 28 U.S.C. § 1442

42.     There are three requisites for removal of a claim against a non-federal officer under Section 1442: "First, since defendants are not federal officers, they must be "persons" within the meaning of the statute. Second, they must assert a colorable claim to a federal defense. And third, they must show that they are being sued for acts taken "under color of" or at the direction of the federal officer." *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994). As detailed herein, all three of these elements are met.

**A.  Mallinckrodt is a person under 28 U.S.C. § 1442.**

43.     "Persons" under Section 1442 includes limited liability companies. *Dupre v. Todd Shipyards Corp.,* No. CIV.A. 11-2097, 2011 WL 4551439, at *5 (E.D. La. Sept. 29, 2011). Mallinckrodt is a limited liability company and therefore satisfies the person requirement of Section 1442. *Id.*

**B.  Mallinckrodt has a colorable government contractor defense.**

44.     A defendant "does not need to show for the purposes of the removal that the defense is meritorious, but only whether there is a colorable claim to such a defense." *Pack v. AC & S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993)."[32]

45.     In *Boyle v. United Technologies Corp.,* the United States Supreme Court recognized that military contractors were immune from liability under state law when the contractor followed government specifications. 487 U.S. 500, 512 (June 27, 1988). Courts have extended this defense from military contractors to all government contractors. *Gadsden Indus. Park, LLC v. United States*, 111 F. Supp. 3d 1217, 1227 (N.D. Ala. 2015) (collecting cases); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1090 (6th Cir. 2010). Here, Mallinckrodt performed its work at the government's direction and in accordance with the government's specifications and it is entitled to, and does assert, the defenses that come with doing so.

**C.  Mallinckrodt acted at the direction of federal officials and Cotter seeks damages as a result of those directions**

46.     "[T]o demonstrate the propriety of § 1442(a)(1) removal, defendants must also show that there is a nexus between acts they performed at the direction of a federal officer or

---

[32] In this case, Mallinckrodt asserts its defense is not only colorable, but also meritorious.

15

agency and the plaintiff's claim for relief." *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994).

47.     To establish the requisite control requirement, a defendant need only demonstrate that the plaintiff's state court action is derived from activities performed pursuant to federal direction." *Winters v. Diamond Shamrock Chem. Co.*, 901 F. Supp. 1195, 1199 (E.D. Tex. 1995).

48.     In *Stark v. Honeywell Int'l, Inc.* jurisdiction was proper because the government exercised the necessary control as the Court stated:

> Honeywell is not simply a government contractor. It is not a mere vendor of parts to the government. Honeywell mans and operates a facility owned by the government, for the government. The DOE is intimately involved in the day to day affairs of the manufacturing processes at the plant. The DOE's oversight and regulation, along with Honeywell's actions pursuant to the government's oversight and regulation, create jurisdiction under 28 U.S.C. § 1442(a)(1).

No. 05-1057-CV-W-RED, 2007 WL 9717911, at *2 (W.D. Mo. Dec. 21, 2007). Jurisdiction is proper here, as it was there. The United States directed all of Mallinckrodt's operations and made changes to them frequently. Mallinckrodt refined government owned uranium at a government owned uranium processing plant that it operated at the government's direction.[33] The government owned the buildings, material and equipment.[34] When the government entered Amd. No. 93 regarding SLAPS, the government obligated Mallinckrodt to perform that work as directed by the government.[35] It also included an indemnification agreement in the Contract covering the work Mallinckrodt was performing for it.[36]

---

[33] Exh. F, Contract No. W-14-108-eng-8.

[34] Exh. H, Amd. No. 21.

[35] Exh. K, Amd. No. 93.

[36] Exhs. I  and M, Amd. No. 45 and 124, respectively.

16

49.     Cotter's contribution claim seeks to hold Mallinckrodt liable for the Plaintiffs' damages allegedly arising from Mallinckrodt's government operations—satisfying the requisite nexus between the actions directed by federal officials and the claim for relief.

**D.  Mallinckrodt's third-party defendant status is irrelevant to removal.**

50.     "Removal under section 1442(a) is not restricted by the same limitations as removal under § 1441." *Fleet Bank-NH v. Engeleiter*, 753 F. Supp. 417, 419–20 (D.N.H. 1991).

51.     Federal courts have repeatedly confirmed that federal officials or those acting under the direction of federal officials may remove a case regardless of whether they are a third-party defendant. *See Johnson*, 747 F.2d at 1229 ("The fact that the Director is a third-party defendant does not defeat removal under section 1442(a)(1)."); *also see IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir. 1982) ("First, that HHS, the removing party, is a third-party defendant does not defeat removal under 28 U.S.C. s 1442(a)(1)"); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 341 F. Supp. 2d 351, 358–59 (S.D.N.Y. 2004) ("The statute unambiguously confers removal rights on any defendant claiming it acted at the direction of the federal government.").

52.     This is consistent with the policy rationales for § 1442. *See Fleet Bank*, 753 F. Supp. at 419–20 ("Congress enacted § 1441(c) to limit the right to removal, while § 1442(a)(1) was enacted to provide the protection of a federal forum for federal officers. Because of the strong policy considerations in favor of removal when the requirements of § 1442(a)(1) are otherwise met, courts have held that the fact that the federal officer is a third-party defendant will not defeat removal under that statute." (internal citations omitted)).

17

**E.  This Court has jurisdiction over the entire controversy.**

53.      "Section 1442(a)(1) authorizes removal of the entire case even though only one of its controversies might involve a federal officer or agency." *Ewell v. Petro Processors of Louisiana, Inc.*, 655 F. Supp. 933, 936 (M.D. La. 1987). "Thus § 1442(a)(1) creates a species of ancillary jurisdiction over the nonfederal elements of the case." *Id.* Accordingly, removal of this entire proceeding is proper.

## THE FACTS PLAINTIFFS AND COTTER PLEADED AGAINST MALLINCKRODT ALSO GIVE RISE TO FEDERAL JURISDICTION UNDER THE PRICE-ANDERSON ACT

54.      Pursuant to 28 U.S.C. § 1331, this Court also has subject-matter jurisdiction over this action because it "arises under" federal law, and in particular, the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*, as it relates to Mallinckrodt. The PAA completely preempts Cotter's state-law contribution claim against Mallinckrodt as well as Plaintiffs' underlying claims.

55.      Mallinckrodt's situation is in stark contrast to Cotter's prior removal as a *licensee* in this and the *Strong* case and Bridgeton's removal attempts in various other cases.[37] All cases filed against Mallinckrodt as a result of work performed for the federal government at these St. Louis sites are in federal court. This case also belongs in federal court. Mallinckrodt was a federal government contractor at SLDS and SLAPS. The Contract specifically included an indemnity clause that predated the PAA and a subsequent provision incorporating PAA indemnity.[38] The

---

[37] Case No. 4:18-CV-2043 JCH, *Don Strong, et al. v. Republic Services, Inc., et al*, In the United States District Court for the Eastern District of Missouri; Case No. 4:18-cv-00357-JAR, *Marc Czapla and Jill Czapla v. Republic Services, Inc.*, In the United States District Court for the Eastern District of Missouri; Case No. 4:17-cv-01645-JCH, *Don Strong, et al. v. Republic Services, Inc. et al.*, In the United States District Court for the Eastern District of Missouri; Case No. 4:17-cv-00024, *Michael Dailey and Robbin Dailey v. Bridgeton Landfill, et al.*, In the United States District Court for the Eastern District of Missouri.

[38] Exh. M, Amd. No. 124.

18

Plaintiffs' allege, and Cotter seeks contribution for, releases of radioactive material from SLAPS and the transport to and from it—locations that are covered by the terms of the Contract.

I. **Cotter's State Law Claim Concerning Mallinckrodt's Government Contracting Work is Completely Preempted by the PAA Because the PAA is the Exclusive Remedy for Injuries Arising Out of a Nuclear Incident**

56. Cotter's contribution claim, alleging that Mallinckrodt's failure to use reasonable care resulted in releases from Mallinckrodt's government work and thus harmed Plaintiffs' properties, and potentially Plaintiffs, arises from a nuclear incident. Because the PAA preempts all state-law causes of action for nuclear incidents, liability for such claims with regard to Mallinckrodt is governed by the PAA. This issue has previously been ruled on in the Eastern District.[39] The state law claims pleaded are completely preempted by the PAA and, therefore, Mallinckrodt may remove this action to federal court. Further, to the extent that Plaintiffs' state law claims are applicable directly or indirectly to Mallinckrodt via Cotter's state law contribution claim, those claims are similarly preempted, making the entire case removable.

A. **Federal Preemption Under the PAA**

57. In 1988, Congress amended the PAA to create a federal "public liability" cause of action for injuries to persons and property arising out of or resulting from any "nuclear incident." *See* 42 U.S.C. §§ 2014(hh), 2014(w); Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084,

58. Thus under the 1988 amendments, a public liability action under the PAA is the exclusive, retroactive federal cause of action governing liability for injuries arising out of nuclear

---

[39] Judge Audrey Fleissig previously held that claims against Mallinckrodt are preempted by the PAA when she dismissed all of the state law claims asserted against Mallinckrodt in Case No. 4:12-cv-00361-AGJ, *Scott D. McClurg, et al., v. MI Holdings, Inc., et al.* (Doc. 141).

incidents.  Pub. L. No. 100-408 § 20 (b)(1), 102 Stat. 1084 ("The amendments governing judicial review of claims arising out of a [nuclear incident] shall apply to incidents occurring before, on, or after the date of the enactment of this Act."); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994) (holding that under the PAA, as amended, "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action.").

59.     In 2018, the Eighth Circuit ruled Congress "spoke clearly" when stating that a PAA cause of action arises under federal law and creates a federal cause of action. *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 (8th Cir. 2018). Indeed, every circuit court to address the issue has concluded that "the Price-Anderson Act completely preempts state law causes of action for public liability arising out of or resulting from a nuclear incident."  *Adkins v. Chevron Corp.*, 960 F. Supp. 2d 761, 767-68 (E.D. Tenn. 2012) (canvassing federal case law and observing that the Third, Seventh, Ninth, Tenth and Eleventh Circuits are in agreement with the Sixth Circuit's conclusion that the PAA completely preempts state law causes of action); *see also In re Berg Litig.,* 293 F.3d 1127, 1132 (9th Cir. 2002) (observing that a PAA public liability action is plaintiff's "exclusive means" for pursuing claims arising from a nuclear incident); *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1306 (11th Cir. 1998) ("Congress passed the Price–Anderson Amendments Act of 1988 . . . creating an exclusive federal cause of action for radiation injury."); *Kerr–McGee Corp. v. Farley,* 115 F.3d 1498, 1504 (10th Cir. 1997) (observing that the PAA's provisions "appear broad enough to create a federal forum for any tort claim even remotely involving atomic energy production. The P[rice]–A[nderson] A[ct] on its face provides the sole remedy for the torts alleged . . ."); *O'Conner,* 13 F.3d at 1100, 1105 (stating that "a new federal cause of action supplants the prior state cause of action . . . . [S]tate regulation of nuclear safety,

20

through either legislation or negligence actions, is preempted by federal law."); *In re TMI Litig. Cases Consol. II,* 940 F.2d 832, 854 (3d Cir. 1991) ("After the Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all.*").

60.     Congress intended for these changes to ensure all public liability claims arising from nuclear accidents would be channeled to federal courts.  *O'Conner*, 13 F.3d at 1101; *see also* 42 U.S.C. § 2210(n)(2) ("With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place . . . shall have original jurisdiction without regard to the citizenship of any party of the amount in controversy.").  Specifically, "[w]ith the federal jurisdiction and removal provisions set forth in the Amendments Act, Congress ensured that all claims resulting from a given nuclear incident would be governed by the same law, provided for the coordination of all phases of litigation and the orderly distribution of funds, and assured the preservation of sufficient funds for victims whose injuries may not become manifest until long after the incident . . . . Thus, Congress clearly intended to supplant all possible state causes of action when the factual prerequisite [sic] of the statute are met . . . ."*O'Conner*, 13 F.3d at 1101.

61.     Thus, as one court has noted "the field of nuclear safety has been occupied by federal regulation; there is no room for state law." *Id.* at 1105.

**B.     Under to this Court's prior Order, the PAA applies to activities covered by applicable licenses or indemnity agreements**

62.     This Court has previously held that a prerequisite for federal subject matter jurisdiction is a license or indemnity agreement covering a nuclear incident.[40]

63.     The PAA defines "nuclear incident" as "any occurrence, including an extraordinary occurrence, … bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of resulting from the radioactive, toxic, explosive or other hazardous properties of source, special nuclear, or byproduct material." 42 U.S.C. § 2014(q).

64.     In order to define "occurrence", which is undefined in the PAA, the Court looked to the definition of "extraordinary nuclear occurrence" which is broadly defined as "any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite. . . [A]s used in this subsection, "offsite" means away from "the location" or "the contract location" as defined in the applicable . . . indemnity agreement." *Id*. at 2014(j).

65.     Under this Court's previous analysis then, Plaintiffs' allegations as they relate to Mallinckrodt, and Cotter's contribution claim against Mallinckrodt qualify as a nuclear incident covered by Mallinckrodt's indemnification clause.

---

[40] Case No. 4:18-cv-00624-JAR; *Tamia Banks, et al. v. Cotter Corporation, et al.*, In the United States Eastern District of Missouri (Doc. 75).

### C.     Mallinckrodt's Contract contains an indemnity agreement covering SLDS and SLAPS

66.     Mallinckrodt's operations for the government began in 1942 at SLDS.[41] In 1950, the government and Mallinckrodt entered into Amd. No 45 in which the government agreed to indemnify and hold Mallinckrodt harmless for all of its operations, retroactively and prospectively.

67.     In 1953, the parties executed Amd. No. 93 which incorporated operations at SLAPS.[42] This amendment restated the government's indemnity obligation and its obligation to cover all of Mallinckrodt's operations. Then, in 1962, Mallinckrodt and the government executed Amd. No. 124 which incorporated the PAA's indemnity provisions into the Contract.[43]

68.     The Contract's indemnity provision tracks the language of the PAA. It defines 'contract' location to mean "any Commission facility, installation, or site at which contractual activity under this contract is being carried on, and any Contractor-owned or controlled facility, installation or site at which the Contractor is engaged in the performance of contractual activity under this Contract."  Id. It goes on to provide indemnity for public liability arising out of or in connection with the contractual activity, and arising or resulting from four specific provisions:

> (1) a nuclear incident which takes place at a contract location; or
>
> (2) a nuclear incident which takes place at any other location and arises out of or in the course of the performance of contractual activity under this contract by the Contractor's employees, individual consultants, borrowed

---

[41] Exh. F, May 12, 1945 Letter Agreement for W-14-108-eng-08

[42] Exh. K, Amd. No. 93. This Agreement also incorporated the first indemnity provision into Mallinckrodt's Contract, long before the PAA existed.

[43] Exh. M, Amd. No. 124.

personnel or other persons for the consequences of whose acts or omissions the Contractor is liable . . .

(3) a nuclear incident which arises out of in the course of transportation of source, special nuclear, or by-product materials to or from a contract location . . .

(4) a nuclear incident which involves items (such as equipment, material, facilities, or design or other data) produced or delivered under this contract. . .[44]

69.     By its terms, the indemnity provision provides for coverage for Mallinckrodt for the nuclear incident Plaintiffs' allege and Cotter seeks contribution for—alleged releases and migrations of radioactive material from the uranium-bearing raw materials and/or products, and by-products, the government directed Mallinckrodt to take custody of, store, and transport back and forth from SLAPS to SLDS. As a result, Cotter's state-law contribution claim against Mallinckrodt is preempted by the PAA and belongs in federal court.

**MALLINCKRODT HAS COMPLIED WITH ALL
OTHER PROCEDURAL ASPECTS OF REMOVAL**

**II.     Notice of Removal Is Timely**

70.     Plaintiffs filed their Petition on February 21, 2018.

71.     Third-Party Defendant Mallinckrodt LLC was served on August 11, 2020.

72.     This Notice of Removal is timely because it is filed within thirty (30) days of service of the Summons and Petition.

**III.    Removal to this Judicial District Is Proper, and Defendants Have Complied With All Procedural Requirements for Removal**

---

[44] *Id.*

24

73.     Pursuant to 28 U.S.C. §§ 1441(a), 1442(a)(1) and 1446(a), the Eastern Division of the United States District Court for the Eastern District of Missouri is the proper venue to which to remove this matter because the Circuit Court for St. Louis County, Missouri is located within the Eastern Division of this judicial district.  *See* Local Rule 3-2.07(A)(1) ("The Eastern Division comprises the counties of . . . Saint Louis, and the City of Saint Louis").

74.     Venue is also proper pursuant to Local Rule 3-2.07(B)(3) because the Lawsuit is a civil action brought against multiple defendants, some of which are non-residents, and the claims for relief arose in St. Louis County, Missouri.

75.     As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached hereto. Defendants are unaware of the existence of any additional process, pleadings, or orders other than those included in the exhibits attached hereto.  One motion is pending before the Circuit Court of St. Louis County, Missouri in this matter (a motion for *pro hac vice* admission by counsel for Cotter), but there are no any hearings or conferences presently scheduled to Mallinckrodt's knowledge.

76.     Pursuant to Local Rules 3-2.03 and 3-2.09, attached hereto is Defendants' Disclosure of Organizational Interests Certificate, the Civil Cover Sheet, and the Original Filing Form.

77.     Written notice of the filing of this Notice of Removal will be promptly served on Cotter's counsel, and a copy has been filed with the Clerk of the Circuit Court of St. Louis County.

78.     Defendants' Notice to Clerk of Filing Notice of Removal will also be promptly filed with the Clerk of the Circuit Court of St. Louis County.

79.     This matter is related to a number of similar lawsuits under lead docket *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) (filed February 28, 2012).   In those lawsuits, the plaintiffs seek damages under the PAA for injuries sustained as a result of alleged exposure to radioactive materials handled by Mallinckrodt LLC's predecessors in interest, and Cotter in St. Louis, County.   The alleged exposures and contamination in all of the cases consolidated in *McClurg* concern radioactive exposure in St. Louis County at the same sites at issue here, and the transport of material between them. They are premised on public liability claims under the PAA. The *McClurg* matter is presently assigned to Honorable Audrey G. Fleissig, U.S.D.J.

80.     Out of an abundance of caution, Mallinckrodt states that this matter could also be considered related to various other cases regarding West Lake Landfill in which certain individuals allege damages from radioactive materials that were disposed of in West Lake Landfill. Mallinckrodt believes these cases were remanded. The releases causing the alleged damages and the transport pathways in those cases are different from this case. In this case, the exposures and contamination are alleged to have come from migrations of additional and different radioactive material from SLDS, SLAPS, HISS, Latty Avenue and the transport between those locations to Coldwater Creek—not West Lake Landfill.

81.     Mallinckrodt hereby reserve their rights to assert any and all defenses to Cotter's Third-Party Petition.

82.     Mallinckrodt reserve the right to amend or supplement this Notice of Removal.

83.     Mallinckrodt has not answered the third-party petition in state court.

## CONCLUSION

**WHEREFORE**, in light of the foregoing, Third-Party Defendant Mallinckrodt LLC, respectfully removes this action now pending in the Circuit Court of St. Louis County, State of Missouri, to this Court.

Date: September 10, 2020

By: */s/ David R. Erickson*

SHOOK, HARDY & BACON LLP
David R.  Erickson, # 31532(MO)
Steven D. Soden, # 41917(MO)
2555 Grand Boulevard
Kansas City, MO  64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547
derickson@shb.com
ssoden@shb.com

**ATTORNEYS FOR THIRD-PARTY
DEFENDANT MALLINCKRODT LLC**

27

4844-9543-1113 v1

### CERTIFICATE OF SERVICE

I certify that on September 10, 2020, these papers were served on all counsel of record via electronic mail as set forth below.

### Counsel for Plaintiffs

Alexander L. Braitberg
Ryan A. Keene
Nathaniel Carroll
KEANE LAW LLC
7777 Bonhomme Ave., Suite 1600
St. Louis, MO 63105
314-391-4700
314-244-3778 (fax)
ryan@keanelawllc.com
nathaniel@keanelawllc.com

Stuart Smith
Barry J. Cooper, Jr.
Celeste Brustowicz
Victor Cobb
COOPER LAW FIRM, LLC
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
ssmith@sch-llc.com
bcooper@sch-llc.com
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

Anthony D. Gray
JOHNSON GRAY, LLC
319 North 4thStreet, Suite 212
St. Louis, MO 63102
(314) 385-9500
agray@johnsongraylaw.com

Kevin W. Thompson
David R. Barney, Jr.
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Email: kwthompson@gmail.com

Ron A. Austin
Catherine Hilton
Lillian Williams
RON AUSTIN & ASSOCIATES, LLC
920 4th Street
Gretna, Louisiana 70053
Telephone: (504) 227-8100
Facsimile: (504) 227-8122
raustin@ronaustinandassociates.com
chilton@ronaustinandassociates.com

4844-9543-1113 v1

**Counsel for Cotter Corporation and Commonwealth Edison Company**

Edward Casmere
Brian O. Watson
Jennifer Steeve
Lauren Jaffe
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
ecasmere@rshc-law.com
bwatson@rshc-law.com
jsteeve@rshc-law.com
ljaffe@rshc-law.com

Marcie J. Vantine
SWANSON MARTIN & BELL LLP
One Bank of America Plaza
800 Market Street, Suite 2100
St. Louis, MO 63101
314.242.0903 (telephone)
mvantine@smbtrials.com

**Counsel for DJR Holdings, Inc. f/k/a Futura Coatings, Inc.**

S. Martin Jansky
MARTIN JANSKY LAW FIRM, PC
2001 S. Big Bend Blvd.
St. Louis, Missouri 63117
(314)881-6144; f:(314)644-4303
martin@janskylaw.com

**Counsel for the St. Louis Airport Authority, A Department of the City of St. Louis**

John F. Cowling
Katherine M. Ricks
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
314.621.5070
314.621.5065 (facsimile)
jcowling@atllp.com
kricks@atllp.com

**Counsel for Allied Services, LLC, Bridgeton Landfill, LLC, Republic Services, Inc, Rock Road Industries, Inc. and West Lake Landfill**

William G. Beck
Peter F. Daniel
Allyson E. Cunningham
Eric A. Swan
LATHROP GPM LLP

4844-9543-1113 v1

2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Telecopier: (816) 292-2001
william.beck@lathropgpm.com
peter.daniel@lathropgpm.com
allyson.cunningham@lathropgpm.com
eric.swan@lathropgpm.com

**Counsel for EverZinc USA, Inc.**

Richard E. Greenberg
Gregory C. Mollett
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090
(314) 345-4792 – Fax
reg@greensfelder.com
gem@greensfelder.com

4844-9543-1113 v1