# Exhibit E

The document consists of 22 pages,
including 3-A and 14-A.

Copy No. ___5___ of 7, Series A.

APPROPRIATION: 212/30905          Contract No. W-7405 eng-29
Engineer Service, Army,
1942-1943                         Dated: November 23, 1942

                                  Negotiated Contract: /s/ K.D. N.


LUMP SUM

OPERATION AND SUPPLY

CONTRACT

WAR DEPARTMENT
United States Engineer Office
Manhattan District
New York, New York


CONTRACTOR & ADDRESS:     Mallinckrodt Chemical Works
                          St. Louis, Missouri.

CONTRACT FOR:             Products Nos. 4239 and 4243

AMOUNT:

LOCATION:                 St. Louis, Missouri

PAYMENT: To be made by The Engineer Finance Office, U. S. Engineer Office,
         Manhattan District, New York, New York.


        The supplies and services to be obtained by this instrument are
authorized by, are for the purposes set forth in, and are chargeable to the
following procurement authorities, the available balances of which are suf-
ficient to cover the cost of the same:

              EXO 31110 P420-03 A-0905-23.

              ____/s/ K. D. Nichols____
                 K. D. NICHOLS
                 Colonel, Corps of Engineers,
                 Contracting Officer.
This contract is authorized by the following laws:

        Statutory Authority **** Title II of the First War
Powers Act, 1941, Act of December 18, 1941, (Public Law
354 - 77th Cong.), and Executive Order No. 9001, dated
December 27, 1941.

CONFIDENTIAL                                                    MLCT_0000152155

MALLINCKRODT CHEMICAL WORKS
CONTRACT NO. W-7405-eng-29

ARTICLE I-     STATEMENT OF WORK     Page 2

ARTICLE II-     CHANGES     Page 3

ARTICLE III-     EXTRAS     Page 3

ARTICLE IV-     INSPECTION     Page 3

ARTICLE V-     DELAYS-DAMAGES     Page 3A

ARTICLE VI-     RESPONSIBILITY FOR SUPPLIES TENDERED     Page 4

ARTICLE VII-     INCREASE OR DECREASE     Page 4

ARTICLE VIII-     PAYMENTS     Page 4

ARTICLE IX-     OFFICIALS NOT TO BENEFIT     Page 5

ARTICLE X-     COVENANT AGAINST CONTINGENT FEES     Page 5

ARTICLE XI-     DISPUTES     Page 5

ARTICLE XII-     TERMINATION FOR CONVENIENCE OF THE GOVERN-
MENT     Page 6

ARTICLE XIII-     RENEGOTIATION PURSUANT TO SECTION 403 OF
THE SIXTH SUPPLEMENTAL NATIONAL DEFENSE
APPROPRIATION ACT 1942     Page 8

ARTICLE XIV-     WALSH-HEALEY ACT     Page 11

ARTICLE XV-     NOTICE TO THE GOVERNMENT OF LABOR DISPUTES     Page 13

ARTICLE XVI-     CONVICT LABOR     Page 13

ARTICLE XVII-     ANTI-DISCRIMINATION     Page 13

ARTICLE XVIII-     ASSIGNMENT     Page 13

ARTICLE XIX-     GOVERNMENT-OWNED FACILITIES     Page 13

ARTICLE XX-     LIABILITY FOR GOVERNMENT-OWNED PROPERTY     Page 14a

ARTICLE XXI-     RECORDS OF GOVERNMENT-OWNED PROPERTY     Page 14a

ARTICLE XXII-     DRAWINGS AND SPECIFICATIONS     Page 15

ARTICLE XXIII-     NOTICE OF SHIPMENTS     Page 15

ARTICLE XXIV-     PATENTS     Page 15

ARTICLE XXV-     RESEARCH, EXPERIMENTAL AND DEVELOPMENT WORK     Page 16

ARTICLE XXVI-     FEDERAL, STATE AND LOCAL TAXES     Page 16

ARTICLE XXVII-     DISCLOSURE OF INFORMATION     Page 17

CONFIDENTIAL

Case: 4:20-cv-01227-JAR   Doc. #: 64-8   Filed: 05/10/23   Page: 4 of 25 PageID #: 1777

ARTICLE XXVIII-    EMPLOYMENT OF ALIENS                    Page 17

ARTICLE XXIX-     PLANT PROTECTION                        Page 17

ARTICLE XXX-      CONTRACTOR'S ORGANIZATION AND
                  METHODS                                 Page 17

ARTICLE XXXI-     DISMISSALS                              Page 17

ARTICLE XXXII-    DEFINITIONS                             Page 17

ARTICLE XXXIII-   MATERIALS TO BE FURNISHED BY THE
                  GOVERNMENT                              Page 18

ARTICLE XXXIV-    ALTERATIONS                             Page 18

CONFIDENTIAL

MLCT_0000152157

THIS CONTRACT, entered into this 25th day of June, 1943, effective as of the 23rd day of November, 1942, by the UNITED STATES OF AMERICA (hereinafter called the "Government"), represented by the Contracting Officer executing this contract, and MALLINCKRODT CHEMICAL WORKS, a corporation organized and existing under the laws of the State of Missouri, of the City of St. Louis, in the State of Missouri, (hereinafter called the "Contractor"),

WITNESSETH THAT, the parties hereto do mutually agree as follows:

ARTICLE 1.  Statement of Work.  1.  The Contractor shall, with the utmost secrecy and dispatch, and in accordance with specifications and directions furnished by the Contracting Officer, or his duly authorized representative, operate two (2) Government-owned plants, located at 3414 North Broadway, St. Louis, Missouri, and immediate vicinity, and do all things necessary for the operation, management, servicing, and maintenance thereof, including but not limited to, the purchase of supplies, except supplies to be furnished by the Government, the hiring and training of personnel, and the hiring and training of the necessary guard and fire-fighting forces, and perform all other functions necessary for such analyses as may be required or approved by the Contracting Officer, the production of and delivery to the Government f.o.b. St. Louis, Missouri of:

(a)  One hundred fifty (150) short tons (2000 lbs.) of Product 4239. The Contractor agrees to be prepared to produce and, at the request of the Contracting Officer, to so produce at a rate equivalent to the conversion to Product 4239 of forty-seven (47) short tons (2000 lbs.) of Product 4217 per month, but in no event less than forty-seven (47) short tons (2000 lbs.) of Product 4239 per month.  As consideration for services under this section, the Contractor shall receive ninety-seven cents (97¢) per pound of Product 4239, based on the actual net weight of the products delivered to the Government and conforming to the specifications in secret letter referred to hereinafter.

(b)  Ninety (90) short tons (2000 lbs.) of Product 4243.  The Contractor agrees to be prepared to produce and, at the request of the Contracting Officer, to so produce at a rate equivalent to the conversion to Product 4243 of  (1) forty-seven (47) short tons (2000 lbs.) per month of Product 4239 or (2) Product 4239 made from forty-seven (47) short tons (2000 lbs.) of Product 4217, whichever is larger, but in no event less than twenty-one (21) short tons (2000 lbs.) of Product 4243 per month.  As consideration for services under this section, the Contractor shall receive four dollars and seventeen cents ($4.17) per pound of Product 4243, based on the actual net weight of the products delivered to the Government and conforming to the specifications in the secret letter referred to hereinafter.

(c)  The consideration set forth per pound of Product 4239 is based on the assumption that the Government will furnish all necessary Product 4217 for the processing of Product 4239.  The consideration set forth per pound of Product 4243 is based on the assumption that the Government will furnish all necessary Product 4239 for the processing of Product 4243.  In the event that the Government furnishes products other than those above-mentioned, the necessary credits by the Contractor will be made in reduction of the cost of the work hereunder.

2.  The Contractor shall furnish a complete and final report of its activities, findings, and conclusions hereunder upon conclusion of the work

called for under this contract.  Such report is to become the property of the Government and the Government shall have the full right to use all or any part of the material contained in such report in any manner when and where the Government may designate without any claim on the part of the Contractor for additional compensation.

3.  In carrying out the work under this contract, the Contractor is authorized and shall do all things necessary or convenient in the providing of all materials and supplies, except such as the Government is to furnish or supply, the storage of materials and supplies and of the finished products, the preparation of the products for shipment and the loading of the same on cars or other carriers in accordance with the Government's shipping instructions.

4.  The meaning of code symbols Product 4239 and Product 4243 are set forth in Secret Letter dated November 23, 1942, from the Contracting Officer to the Contractor, and accepted by the Contractor, a copy of which is on file in the office of the Contracting Officer.  The contents of said letter are hereby made a part of this contract in the same manner as through full set forth herein.

ARTICLE 2. Changes – The Contracting Officer may at any time, by a written order, make changes in the work covered by this contract and within the general scope thereof.  Changes as to shipment and packing of all supplies may also be made as above provided.  If such changes cause an increase or decrease in the amount due under this contract, or in the time required for its performance, an equitable adjustment shall be made and the contract shall be modified in writing accordingly.  Any claim for adjustment under this article must be asserted within 10 days from the date the change is ordered, provided, however, that the Contracting Officer, if he determines that the facts justify such action, may receive and consider, and with the approval of the Secretary of War or his duly authorized representative, adjust any such claim asserted at any time prior to the date of final settlement of the contract.  If the parties fail to agree upon the adjustment to be made the dispute shall be determined as provided in Article 11 hereof.  But nothing provided in this article shall excuse the Contractor from proceeding with the contract as changed.

ARTICLE 3.  Extras – Except as otherwise herein provided, no charge for extras will be allowed unless the same have been ordered in writing by the Contracting Officer and the price stated in such order.

ARTICLE 4.  Inspection – All material produced hereunder shall be subject to inspection and test at all times and places and when practicable during manufacturing period.  The Contractor shall process the materials so as to meet the specifications contained in the secret letter referred to in Article 1 Paragraph 4, or as shall be furnished by the Contracting Officer or his duly authorized representative supplementary thereto.  It is understood and agreed that all finished products so processed shall be paid for at the contract unit price. In the event that the finished product or any part thereof is found not to meet the specifications set forth in the secret letter, the material will be disposed of as directed by the Contracting Officer.  The Contractor will not be entitled to payment, for product so delivered, but it shall not be liable for the value of the material.  In the event the finished product or any part thereof is found to be unfit for its intended use by final test or inspection, it will be disposed of as directed by the Contracting Officer.  If such disposal involves processing by the Contractor, it shall be accomplished in accordance with instructions of the Contracting Officer or his authorized representative and upon such terms and conditions, including price, as shall be mutually acceptable.

ARTICLE 5.   Delays-Damages – (a)  If the Contractor refuses or fails to make deliveries of the supplies at the rate specified in Article 1, provided the necessary quantities of raw material were furnished by the Government, or any extension thereof, the Government, subject to the provisions of paragraph (b) below, may, by a notice in writing from the Contracting Officer to the Contractor of its intention to terminate under this Article, terminate the right of the Contractor to proceed with delivery of the supplies or such parts thereof as to which there has been delay.  In such event, the Government may (1) require the Contractor to deliver to the Government such completed supplies, partially completed supplies and materials, parts, plans, drawings, information, and contract rights of the Contractor, (hereinafter called manufacturing material), as the Contractor has produced or acquired for the performance of such portion of this contract as to which the right to proceed with delivery is terminated, and accomplish or secure the completion or manufacture of supplies therewith; and, in addition thereto or in lieu thereof (2) purchase in the open market or secure by contract or otherwise, the manufacture and delivery of supplies similar to those called for by this contract in an amount which together with the supplies, if any, completed under (1) above shall not exceed the amount of supplies the right to proceed with delivery of which is terminated.  If delivery is made pursuant to clause (1) of the preceding sentence the Government shall pay to the Contractor, less any previous payments, the following:  (a) For each unit of the completed supplies accepted by the Government the unit contract price, and (b) for all partially completed supplies and manufacturing material delivered, the unit contract price for each unit of supplies completed or manufactured therewith, less the cost to the Government of completion or manufacture, but if that cost exceeds the unit contract price, the Contractor and his sureties shall be liable for such excess.  If the cost to the Government of supplies procured in accordance with clause (2) above exceeds the corresponding unit price or prices under this contract, the Contractor and his sureties shall be liable for such excess.

SECRET

–3–A–

# SECRET

(b)   The Government shall not have a right of termination under this Article if (i) the delay of the Contractor in making deliveries is an excusable delay, as hereinafter defined, and (ii) the Contractor notifies the Contracting Officer in writing of such delay and the cause thereof, within ten days from the beginning thereof or within such further period as the Contracting Officer shall, with the approval of the Secretary of War or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice.   Upon receipt of such notification from the Contractor, the Contracting Officer shall ascertain the cause of the delay, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject to appeal within thirty days by the Contractor to the Secretary of War or his duly authorized representative, whose decision on such appeal as to the cause of delay shall be final and conclusive on the parties hereto.   The term "excuseable delay" as used in this paragraph means any delay in making deliveries which results without fault or negligence on the part of the Contractor and which is due to unforeseeable causes beyond his control, including, without being limited to, acts of God or of the public enemy, any preference, priority or allocation order issued by the Government or any other act of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather; and, unless the Contracting Officer shall determine that the materials or supplies to be furnished under a subcontract are procurable in the open market, any delay of a subcontractor which results without fault or negligence on the part of the Contractor, and which is due to unforeseeable causes beyond the control of the Contractor, including without being limited to the types of causes above enumerated.

ARTICLE 6.   Responsibility for Supplies Tendered.- The Contractor shall be responsible for the articles or materials covered by this contract until they are delivered at the designated point.   Where final inspection is at point of origin but delivery by Contractor is at some other point, the Contractor's responsibility shall continue until delivery is accomplished.

ARTICLE 7.   Increase or Decrease - Unless otherwise provided herein, no increase or decrease in the total amounts of material contracted for under Article 1 hereof, will be accepted, without the prior written approval of the Contracting Officer.

ARTICLE 8.   Payments - The Contractor shall be paid, upon the submission of properly certified invoices or vouchers, the prices stipulated herein for materials delivered and accepted or services rendered, less deductions, if any, as herein provided.   Unless otherwise specified, payments will

# SECRET

-4-

SECRET

be made on partial deliveries accepted by the Government when the amount
due on such deliveries so warrants; or, when requested by the Contractor,
payments for accepted partial deliveries shall be made whenever such payments
would equal or exceed either $1,000 or 50 percent of the total amount of the
contract.

ARTICLE 9.  Officials Not to Benefit.—No member of or delegate
to Congress or resident commissioner shall be admitted to any share or part
of this contract or to any benefit that may arise therefrom, but this pro-
vision shall not be construed to extend to this contract if made with a
corporation for its general benefit.

ARTICLE 10.  Covenant Against Contingent Fees.—The Contractor
warrants that he has not employed any person to solicit or secure his contract
upon any agreement for a commission, percentage, brokerage, or contingent fee.
Breach of this warranty shall give the Government the right to annul the con-
tract, or, in its discretion, to deduct from the contract price or considera-
tion the amount of such commission, percentage, brokerage, or contingent fees.
This warranty shall not apply to commissions, payable by contractors upon con-
tracts or sales secured or made through bona fide established commercial or
selling agencies maintained by the Contractor for the purpose of securing
business.

ARTICLE 11.  Disputes.—Except as otherwise specifically provided
in this contract, all disputes concerning questions of fact which may arise
under this contract, and which are not disposed of by mutual agreement, shall
be decided by the Contracting Officer, who shall reduce his decision to writing
and mail a copy thereof to the Contractor at his address shown herein.  Within
30 days from said mailing the Contractor may appeal in writing to the Secretary
of War, whose written decision or that of his designated representative or repre-
sentatives thereon shall be final and conclusive upon the parties hereto.  The
Secretary of War may, in his discretion, designate an individual, or individuals,
other than the Contracting Officer, or a board as his authorized representative
to determine appeals under this Article.  The Contractor shall be afforded an
opportunity to be heard and offer evidence in support of his appeal.  The presi-
dent of the board, from time to time, may divide the board into divisions of
one or more members and assign members thereto.  A majority of the members of
the board or of a division thereof shall constitute a quorum for the transac-
tion of the business of the board or of a division, respectively, and the deci-
sion of a majority of the members of the board or of a division shall be deemed
to be the decision of the board or of a division, as the case may be.  If a
majority of the members of a division are unable to agree on a decision or if
within 30 days after a decision by a division, the board or the president there-
of directs that the decision of the division be reviewed by the board, the
decision will be so reviewed, otherwise the decision of a majority of the mem-
bers of a division shall become the decision of the board.  If a majority of
the members of the board is unable to agree upon a decision, the president will
promptly submit the appeal to the Under Secretary of War for his decision upon
the record.  A vacancy in the board or in any division thereof shall not impair
the powers, nor affect the duties of the board or division nor of the remaining
members of the board or division, respectively.  Any member of the board, or any
examiner designated by the president of the board for that purpose, may hold
hearings, examine witnesses, receive evidence and report the evidence to the
board or to the appropriate division, if the case is pending before a division.

SECRET      - 5 -

MLCT_0000152162

SECRET

...ing the decision of a dispute hereunder the Contractor shall diligently
...ed with the performance of this contract. Any sum or sums allowed to
... Contractor under the provisions of this Article shall be paid by the
...ted States as part of the cost of the articles or work herein contracted
... and shall be deemed to be within the contemplation of this contract.

ARTICLE 12.  Termination for Convenience of the Government — a)
... Government may, at any time, terminate this contract in whole or in part
... notice in writing from the Contracting Officer to the Contractor that
... contract is terminated under this Article.  Such termination shall be
... effective in the manner and upon the date specified in said notice and shall
... without prejudice to any claims which the Government may have against the
... sector, or any claims which the Contractor may have against the Govern-
... .  Upon receipt of such notice the Contractor shall, except as the Con-
... Officer directs otherwise; (1) discontinue all work and the placing
of all orders for materials and facilities in connection with performance of
... contract, cancel all existing orders chargeable to this contract, and
... all subcontracts chargeable to this contract; (2) transfer to the
... , by delivery f.o.b. St. Louis, Missouri, or by such other means
... the Contracting Officer may direct, title to all completed supplies (in-
...ding spare parts, drawings, information and other things) called for herein,
... previously delivered, and partially completed supplies, work in process,
materials, fabricated parts, plans, drawings, and information accepted or pro-
...ed by the Contractor for the performance of this contract; and ... take
... action as may be necessary to secure to the Government the benefits of any
rights remaining in the Contractor under orders or subcontracts ... or par-
tially chargeable to this contract to the extent that such orders or subcon-
tracts are so chargeable.  If and as the Contracting Officer so directs or
authorizes, the Contractor shall sell at a price approved by the Contracting
Officer, or retain at a price mutually agreeable, any such supplies ... partially
completed supplies, work in process, materials, fabricated parts or other
things.  The proceeds of such sale or the agreed price shall be paid or credited
to the Government in such manner as the Contracting Officer may direct so as
to reduce the amount payable by the Government under this Article.

(b)  The Government shall, upon such termination of this contract, pay to
... Contractor the contract price of all supplies (including spare parts, draw-
... , information, and other things), called for herein which have been com-
...ted in accordance with the provisions of this contract and to which title
... been received by the Government under the provisions of Paragraph (a)(2)
... Article and for which payment has not previously been made.

... In addition to, and without duplication of, the payments provided for
... paragraph (b), or of payments made prior to the termination of ... con-
... Government shall pay to the Contractor such sum as the Contracting
... and the Contractor may agree by Supplemental Agreement is reasonably
... to compensate the Contractor for his costs, expenditures, ... liabilities,
... , and work in respect to the uncompleted portion of the contract so
... by the notice referred to in paragraph (a).  The ... Contracting
... include in such sum such allowance for anticipated ... with
... uncompleted portion of the contract as is reasonable ... all
... ..es.

... the Contracting Officer and the Contractor within 90 days ... from

SECRET   - 6 -

CONFIDENTIAL

SECRET

the effective date of the notice of termination referred to in paragraph (a) or within such extended period as may be agreed upon between them, cannot agree upon the sum payable under the provisions of paragraph (c), the Government, without duplication of any payment made pursuant to paragraph (b) or prior to the termination of this contract, shall in the above events compensate the Contractor for the uncompleted portion of the contract as follows:

(1) By reimbursing the Contractor for all actual expenditures certified by the Contracting Officer as having been made with respect to the uncompleted portion of the contract;

(2) By reimbursing, or providing for the payment or reimbursement of, the Contractor for all expenditures made with the prior written approval of the Contracting Officer in settling or discharging that portion of the outstanding obligations or commitments of the Contractor which had been incurred or entered into with respect to the uncompleted portion of the contract; and

(3) By paying the Contractor, as a profit on the uncompleted portion of the contract insofar as a profit is realized hereunder, a sum to be computed by the Contracting Officer in the following manner:

(A) The Contracting Officer shall estimate the profit which would have been realized on the uncompleted portion of the contract if the contract had been completed and labor and material costs prevailing at the date of termination had remained in effect.

(B) Estimate, from a consideration of all relevant factors, the percentage of completion of the uncompleted portion of the contract.

(C) Multiply the anticipated profit determined under (A) by the percentage determined under (B).  The result is the amount to be paid to the Contractor as a proportionate share of profit, if any, as above provided.

Notwithstanding the above provisions, no compensation shall be paid under this Paragraph (d) by way of reimbursement for expenditures, including expenditures made in settling or discharging obligations or commitments, or by way of profit on account of supplies and other things which are undeliverable because of destruction or damage, whether or not because of the fault of the Contractor.

(e) The Government shall pay to the Contractor such sum as the Contracting Officer and the Contractor may agree upon for expenditures made and costs incurred with the approval of the Contracting Officer (a) after the date of termination for the protection of Government property, and (b) for such other expenditures and costs as may be necessary in connection with the settlement of this contract, and in the absence of such agreement as to the amount of such expenditures and costs shall reimburse the Contractor for the same.

(f) The obligation of the Government to make any of the payments required by this Article shall be subject to any unsettled claim for labor or material and to any claim which the Government may have against the Contractor under or in connection with this contract, and payments under this Article shall be subject to reasonable deductions by the Contracting Officer on account of defects in the material or workmanship of completed or partially completed supplies delivered hereunder.   SECRET

- 7 -

CONFIDENTIAL

(g)  The sum of all amounts payable under this Article, plus the sum of all amounts previously paid under this contract, shall not exceed the total contract price, adjusted in the event that this contract contains an article providing for price adjustment, on the basis of the estimate of the Contracting Officer to the extent which would have been required by such article if this contract had been completed and labor and materials costs prevailing at the date of termination had remained in effect.

(h)  Should the above provisions of this Article not result in payment to the Contractor of at least $100, then that amount shall be paid to the Contractor in lieu of any and all payments hereinbefore provided for in this Article.

(i)  The Government shall promptly make partial payments to the Contractor.

(1)  on account of the amounts due under paragraphs (b), (c) and (d) of this Article to the extent that, in the judgment of the Contracting Officer, such payments are clearly within the amounts due under such paragraphs, and

(2)  of such amounts as the Contracting Officer may direct on account of proposed settlements of outstanding obligations or commitments, to be made by the Contractor pursuant to paragraph (d) (2) of this Article, if such settlements shall have been approved by the Contracting Officer and subject to such provisions for escrow or direct payment to the persons entitled to receive such settlement payments as the Contracting Officer may require.

(j)  Any disputes arising out of termination under this Article shall be decided in accordance with the procedure prescribed in Article 11 of this contract.

(k)  Upon the making of the payments called for by this Article, all obligations of the Government to make further payments or to carry out other undertakings hereunder shall cease forthwith and forever, except that all rights and obligations of the respective parties under the Articles, if any, of this contract applicable to patent infringements and reproduction rights shall remain in full force and effect.

(1)  The Government shall terminate this contract only in accordance with this Article, except as otherwise provided by law or by Article 5.  Notwithstanding Article 5 and any defaults of the Contractor, the Government shall terminate this contract only in accordance with this Article if such termination is simultaneous with or part of or in connection with a general termination of war contracts at, about the time of, or following the cessation of the present hostilities or the end of the present war, unless the Contracting Officer finds that the defaults of the Contractor (1) have been gross or willful and (2) have caused substantial damage to the Government.

ARTICLE 13.  Renegotiation Pursuant to Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942.—(a)  Upon the written demand of the Secretary, at such period or periods when, in the judgment of the Secretary, the profits accruing to the Contractor under this contract can be determined with reasonable certainty, the contract price will be renegotiated to eliminate therefrom any amount found as a result of such renegotiation to

CONFIDENTIAL

SECRET

represent excessive profits. The demand of the Secretary shall fix a place for renegotiation and a time for commencement thereof not later than one year after the date of completion or termination of the contract as found by the Secretary.

(b) The Contractor will furnish to the Secretary such statements of actual costs of production and such other financial statements, at such times and in such form and detail, as the Secretary may prescribe, and will permit such audits and inspections of its books and records as the Secretary may request.

(c) The Government shall retain or the Contractor shall repay to the Government, as the Secretary may direct, any amount of the contract price found as a result of such renegotiation to represent excessive profits.

(d) The Contractor will include in each fixed-price or lump-sum sub-contract made under this contract for an amount in excess of $100,000, the following provisions:

"ARTICLE _____. Renegotiation Pursuant to Section 403 of the Sixth Supplemental National Defense Appropriation Act, 1942.

(1) Upon the written demand of the Secretary, at such period or periods when, in the judgment of the Secretary, the profits accruing to _____ under this contract can be deter-
(subcontractor)
mined with reasonable certainty, the Secretary and _____
(subcontractor)
will renegotiate the contract price to eliminate therefrom any amount found as a result of such renegotiation to represent excessive profits. The demand of the Secretary shall fix a place for renegotiation and a time for the commencement thereof not later than one year after the date of completion or termination of this contract as found by the Secretary.

(2) _____ will furnish to the Secre-
(subcontractor)
tary such statements of actual costs of production and such other finan-cial statements, at such times and in such form and detail, as the Secre-tary may prescribe, and will permit such audits and inspections of its books and records as the Secretary may request.

(3) Any amount of the contract price found as a result of such renegotiation to represent excessive profits shall, as directed by the Secretary,—

(A) Be deducted by _____ from pay-
(contractor)
ments otherwise due to _____ under this
(subcontractor)
contract; or
(B) Be paid by _____ directly to the
(subcontractor)
Government.

SECRET       - 9 -

(4) _____ agrees that _____
        (subcontractor)
_____ shall not be liable to _____
    (contractor)
_____ for or on account of any amount paid to
    (subcontractor)
the Government by _____ or deducted by
                        (subcontractor)
_____ from payments otherwise due under
    (contractor)
this contract, pursuant to directions from the Secretary in accord-
ance with the provisions of this Article. Under its contract with
the Government, _____ is obligated to pay
                    (contractor)
or credit to the Government all amounts withheld by it from _____
                            hereunder.
_____
    (subcontractor)

(5)  As used in this Article—

(A) The term 'Secretary' means the Secretary of War or
any duly authorized representative of the Secretary, including
the Contracting Officer.

(B) The terms 'renegotiate' and 'renegotiation' have the
same meaning as in Section 403(b) of the Sixth Supplemental
National Defense Appropriation Act, 1942.

(C) The term 'this contract' means this contract as modified
from time to time."

(e)  In any such subcontract by which the subcontractor undertakes to
supply to the Contractor the same article or articles which the Contractor
is required to deliver to the Government under this contract, the Contractor
will also include, in addition to sections (1) to (5) required by section (d),
the following provision:

"(6) _____ agrees (a) to include in
                (subcontractor)
each fixed-price or lump-sum subcontract hereunder for an amount in
excess of $100,000 the foregoing sections (1) to (5) inclusive, and
(b) to make no subdivisions of any contract or subcontract for the
purpose of evading the provisions of this section, and (c) to repay
to the Government the amount of any reduction in the contract price
of any such contract which results from renegotiation thereof by the
Secretary and which the Secretary directs _____
                                        (subcontractor)
to withhold from payments otherwise due under such contract and actually
unpaid at the time _____ receives such direction."
                        (subcontractor)

(f)  (1) The Contractor agrees to make no subdivisions of any contract
or subcontract for the purpose of evading the provisions of this Article.

CONFIDENTIAL

MLCT_0000152167

(2)  If any renegotiation between the Secretary and any subcontractor pursuant to the provisions required by section (d) hereof results in a reduction of the contract price of the subcontract, the Government shall retain from payments otherwise due to the Contractor under this contract, or the Contractor shall repay to the Government, as the Secretary may direct, the amount of such reduction which the Secretary directs the Contractor to withhold from payments otherwise due to the subcontractor under the subcontract and actually unpaid at the time the Contractor receives such direction.

(g)  As used in this Article—

(1)  The term "Secretary" means the Secretary of War or any duly authorized representative of the Secretary, including the Contracting Officer.

(2)  The term "subcontract" includes any purchase order form, or any agreement with, the Contractor (i) to perform all or any part of the work to be done under this contract, or to make or furnish all or any part of any articles or structures covered by this contract, (ii) to supply any services required directly for the production of any articles or structures covered by this contract, or any component part thereof, not including services for the general operation of the Contractor's plant or business, (iii) to make or furnish any articles destined to become a component part of any article covered by this contract, or (iv) to make or furnish any articles acquired by the Contractor primarily for the performance of this contract, or this contract and any other contract with the United States.  The term "articles" includes any supplies, materials, machinery, equipment or other personal property.

(3)  The terms "renegotiate" and "renegotiation" have the same meaning as in Section 403(b) of the Sixth Supplemental National Defense Appropriation Act, 1942.

(4)  The term "this contract" means this contract as modified from time to time.

ARTICLE 14.  Walsh-Healey Act.—Representations and stipulations pursuant to the Walsh-Healey Act:

(a)  The Contractor is the manufacturer of or a regular dealer in the materials, supplies, articles, or equipment to be manufactured or used in the performance of the contract.

(b)  All persons employed by the Contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract will be paid, without subsequent deduction or rebate on any account, not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under the contract:  Provided, however, That this stipulation with respect to minimum wages shall apply only to purchases or contracts relating to such industries as have been the subject matter of a determination by the Secretary of Labor.

CONFIDENTIAL

SECRET

(c) No person employed by the Contractor in the manufacture or furnishing of the materials, supplies, articles, or equipment used in the performance of the contract shall be permitted to work in excess of 8 hours in any 1 day or in excess of 40 hours in any 1 week unless such person is paid such applicable overtime rate as has been set by the Secretary of Labor; Provided, however, that the provisions of this stipulation shall not apply to any employer who shall have entered into an agreement with his employees pursuant to the provisions of paragraphs 1 or 2 of subsection (b) of section 7 of an act entitled "The Fair Labor Standards Act of 1938"; provided further that in the case of such an employer, during the life of the agreement referred to, the applicable overtime rate set by the Secretary of Labor shall be paid for hours in excess of 12 in any 1 day or in excess of 56 in any 1 week and if such overtime is not paid, the employer shall be required to compensate his employees during that week at the applicable overtime rate set by the Secretary of Labor for hours in excess of 8 in any 1 day or in excess of 40 in any 1 week.

(d) No male person under 16 years of age and no female person under 18 years of age and no convict labor will be employed by the contractor in the manufacture or production or furnishing of any of the materials, supplies, articles, or equipment included in the contract.

(e) No part of the contract will be performed nor will any of the materials, supplies, articles, or equipment to be manufactured or furnished under said contract be manufactured or fabricated in any plants, factories, buildings, or surroundings or under working conditions which are unsanitary or hazardous or dangerous to the health and safety of employees engaged in the performance of the contract. Compliance with the safety, sanitary, and factory inspection laws of the State in which the work or part thereof is to be performed shall be prima-facie evidence of compliance with this subsection.

(f) Any breach or violation of any of the foregoing representations and stipulations shall render the party responsible therefor liable to the United States of America for liquidated damages, in addition to damages for any other breach of the contract, in the sum of $10 per day for each male person under 16 years of age or each female person under 18 years of age, or each convict laborer knowingly employed in the performance of the contract, and a sum equal to the amount of any deductions, rebates, refunds or underpayment of wages due to any employee engaged in the performance of the contract; and, in addition, the agency of the United States entering into the contract shall have the right to cancel same and to make open-market purchases or enter into other contracts for the completion of the original contract, charging any additional cost to the original contractor. Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of the contract as set forth herein may be withheld from any amounts due on the contract or may be recovered in a suit brought in the name of the United States of America by the Attorney General thereof. All sums withheld or recovered as deductions, rebates, refunds, or underpayments of wages shall be held in a special deposit account and shall be paid, on order of the Secretary of Labor, directly to the employees who have been paid less than minimum rates of pay as set forth in such contracts and on whose account such sums were withheld or recovered: Provided, That no claims by employees for such payments shall be entertained unless made within 1 year from the date of actual notice to the Contractor of the withholding or recovery of such sums by the United States of America.

SECRET       - 12 -

(g)  The Contractor shall post a copy of the stipulations in a prominent and readily accessible place at the site of the contract work and shall keep such employment records as are required in the Regulations under the act availabe for inspection by authorized representatives of the Secretary of Labor.

(h)  The foregoing stipulations shall be deemed inoperative if this contract is for a definite amount not in excess of $10,000.

(i)  The foregoing representations and stipulations shall be subject to all applicable regulations, determinations and exemptions of the Secretary of Labor now or hereafter in effect.

ARTICLE 15.  Notice to the Government of Labor Disputes.— Whenever an actual or potential labor dispute is delaying or threatens to delay the timely performance of this contract, the Contractor will immediately give notice thereof to the District Engineer, Manhattan District.  Such notice shall include all relevant information with respect to such dispute.

ARTICLE 16.  Convict Labor.—The Contractor shall not employ any person undergoing sentence of imprisonment at hard labor.  This provision shall not be construed to prevent the Contractor or any subcontractor here-under from obtaining any of the supplies, or any component parts or ingredients thereof, to be furnished under this contract or any of the materials or supplies to be used in connection with the performance of this contract, directly or indirectly, from any Federal, State or territorial prison or prison industry, Provided, That such articles, materials or supplies are not produced pursuant to any contract or such arrangement under which prison labor is hired by or employed or used by any private person, firm or corporation.

ARTICLE 17.  Anti-discrimination.—(a)  The Contractor, in per-forming the work required by this contract, shall not discriminate against any worker because of race, creed, color or national origin.

(b)  The Contractor agrees that the provisions of paragraph (a) above will also be inserted in all of its subcontracts.  For the purpose of this article, a subcontract is defined as any contract entered into by the Contractor with any individual, partnership, association, corporation, es-tate, or trust, or other business enterprise or other legal entity, for a specific part of the work to be performed in connection with the supplies or services furnished under this contract; provided, however, that a contract for the furnishing of standard or commercial articles or raw material shall not be considered as a subcontract.

ARTICLE 18.  Assignment.—Neither this contract nor any interest therein or claim thereunder shall be assigned or transferred by the Contractor to any other party or parties.

ARTICLE 19.  Government-owned facilities.—(a)  The Government hereby grants to the Contractor the right to use, in connection with the work herein contracted for, the Government-leased building located at 3434 North Broadway, St. Louis, Missouri, and immediate vicinity, including the Government-owned facilities therein contained.  Each item of such facilities shall be suitably marked with an identifying mark or symbol, indicating that such item is the property of the Government.

SECRET

-13-

CONFIDENTIAL

(b)  The Contractor agrees, at its own expense, to keep the facilities in good operating condition and repair and to make all necessary repairs and replacements thereof required in the normal course of operation while the said facilities are retained and used by the Contractor in connection with work performed therewith for the Government.  Subject to the prior written approval of the Contracting Officer, the Contractor further agrees to make all unusual or extraordinary repairs and replacements other than those required in the normal course of manufacturing operation as well as all major and extensive alterations that may be required. The Contractor shall be separately reimbursed hereunder for such unusual repairs or alterations for the costs of direct material, direct labor, supervisory labor directly attributable to such repair or alterations, subcontracts for repair and such other items of expense as should in the opinion of the Contracting Officer be included in the cost of such repairs and/or alterations.  The Contractor shall not be liable for loss or destruction of or damage to the facilities, unless such loss, damage or destruction results from failure to perform the duty imposed by the first sentence of this paragraph or from wilful misconduct or failure to exercise good faith on the part of the Contractor's Corporate officers or other representative having supervision or direction of the operation of the whole of the Contractor's business or of the whole of any plant operated by the Contractor in the performance of this contract.

(c)  The Government shall not be responsible for damages to property of the Contractor or for personal injuries to the Contractor's officers, agents, servants or employees, or other persons on the premises as invitees or licensees of the Contractor, arising from or incident to the use of the facilities and the Contractor shall save the Government harmless from any and all such claims; Provided, That nothing in this paragraph shall be deemed to affect any liability of the Government to its own employees.

(d)  The Contracting Officer or his duly authorized representative shall, at all times, have access to the aforesaid building.

(e)  Within one (1) year after the completion or termination of this contract or any other contract entered into between the Government and the Contractor for the performance of which such facilities will be used, the Government may serve on the Contractor a written notice of its intention to remove such facilities from the Government's plant.  Within ninety (90) days after receipt of such notice, the Contractor shall, at the Government's expense, dismantle and prepare the facilities for shipment, and thereupon the Government shall remove the facilities from the Government's plant.

(f)  After the completion or termination of this contract or any contract entered into between the Government and the Contractor for the performance of which such facilities will be used, the Contractor shall, when directed by the Contracting Officer, place and maintain all such facilities in stand-by condition at the Government's expense for a period of one (1) year.  Upon the presentation of duly certified invoices or vouchers therefor, and the approval of such invoices or vouchers by the Contracting Officer, the Government shall pay to the Contractor all expenses incurred by it as a result of placing and maintaining such facilities in such stand-by condition.

-17-

CONFIDENTIAL

MLCT_0000152171

(g)  Beginning at the end of the stand-by period referred to
in paragraph (e) next above, or one month after completion or termination
of this contract or any contract entered into between the Government and
the Contractor for the performance of which such facilities will be used,
in the event that the Contracting Officer does not in that time direct
that the facilities be placed and maintained in stand-by condition, which-
ever is first, and during which no notice of the Government's intention to
remove the facilities has been served upon the Contractor, the Contractor
shall, for a period of 30 days, have the option to purchase all the right,
title and interest in and to the Government's plant and facilities for an
amount equivalent to the cost of such plant and facilities installed, less
an allowance for depreciation of twenty per cent (20%) per annum for the
period such facilities have been in use under this contract, or for an
amount equivalent to the highest bona fide bid to the Government by any
third party for the sale and removal of the Government's plant and facilities,
whichever amount is the highest, or at a price otherwise mutually agreed
upon.  In the event that the Contractor elects to exercise the option as
herein provided, written notice thereof shall be served upon the Govern-
ment by the Contractor within 30 days after said option becomes operative.

ARTICLE 20.  Liability for Government-owned property - Except as
to property the liability for which is fixed by any other instrument or agree-
ment or by some other provision of this contract, the Contractor shall not
be liable for loss or destruction of or damage to property of the Government
in the possession or control of the Contractor in connection with this con-
tract unless such loss, damage or destruction results from wilful misconduct
or failure to exercise good faith on the part of the Contractor's corporate
officers or other representatives having supervision or direction of the
operation of the whole of the Contractor's business or of the whole of any
plant operated by the Contractor in the performance of this contract.

ARTICLE 21.  Records of Government-owned property - The Property
Officer, Manhattan District Office, is designated as the officer to maintain
the necessary property records in connection with this contract, as contem-
plated by AR 35-6520.

-14-

CONFIDENTIAL

**SECRET**

ARTICLE 22.  Drawings and Specifications.—(a)  All drawings, designs, specifications, data and memoranda of every description and relating to the work or any part thereof are to become the property of the Government on completion thereof, subject to the right of the Contractor to retain duplicates thereof for use as records only, and the Government shall have the full right to use said drawings, designs, specifications, data and memoranda in any manner when and where the Government may designate without any claim on the part of the Contractor for additional compensation.

(b)  All drawings, designs, specifications, data and memoranda of every description concerning the project shall be delivered to the Government whenever requested by the Contracting Officer; and, furthermore, access to such drawings, designs, specifications, data and memoranda as may contain classified information shall be restricted to trusted and duly authorized representatives of the Government and the Contractor, except as otherwise specifically authorized by the Government.

ARTICLE 23.  Notice of Shipments.—In connection with any shipment hereunder of one carload or equivalent or more consigned to any unit or officer of the War Department, the shipper, at the time the equipment or supplies are ordered for loading for rail, motor or water transport, will send consignee notice thereof by prepaid telegraph or teletype, including date, route, size of shipment, and brief general description of the equipment or supplies comprising the shipment.  When authorized by the purchasing and contracting officer, such notice may be sent by air mail, in lieu of telegraph or teletype, where secrecy is essential and where the use of air mail is practicable.  This provision is not to be substituted for any other requirement, such as mailing bills of lading.

ARTICLE 24.  Patents.—(a)  It is understood and agreed that whenever any patentable discovery or invention is made by the Contractor or its employees in the course of the work called for in this contract, the Contracting Officer shall have the sole power to determine whether or not and where a patent application shall be filed, and to determine the disposition of the title to and the rights under any application or patent that may result.  It is further understood and agreed that the judgment of the Contracting Officer on such matters shall be accepted as final, and the Contractor, for itself and for its employees, agrees that the inventor or inventors will execute all documents and do all things necessary or proper to carry out the judgment of the Contracting Officer.  The Contractor agrees that it will include the provisions of this paragraph in all contracts of employment with persons who do any part of the work called for in this contract.

(b)  In view of the fact that the Contractor has not made an investigation as to the possibility of patent infringement, and both parties desire to avoid the delay incident to a patent investigation; and further in view of the fact that the Contractor has not included in its price any provision for the settlement of possible patent claims, it is agreed that the Government shall hold and save the Contractor harmless from liability of any nature or kind, including costs and expenses for infringement of patent rights arising in the performance of this contract.

**SECRET**

-15-

CONFIDENTIAL

SECRET

(c) The Contractor shall promptly notify the Contracting Officer, in writing, of any and all claims of infringement that may from time to time be brought to the attention of the Contractor, and in the event of litigation on account thereof, the Contractor shall assist the Government at the Government's expense, save for the services of employees of the Contractor, in furnishing such evidence as to the use of the patents and other matters of fact as may be required by the Government in such litigation.

(d) The Patent Advisor attached to the Office of Scientific Research and Development, Washington, D. C., will act as the representative of the Contracting Officer for the purpose of administering the provisions of this article.

ARTICLE 25.  Research, Experimental and Development Work.—The Contractor shall, during the period of operation under this contract, perform such research, experimental and development work in connection with the production of the products herein contracted for as shall be required and authorized in writing by the Contracting Officer. The Contractor shall be separately reimbursed for the said services on the basis of the actual cost thereof plus a general overhead allowance of one-hundred percent (100%) of the payroll cost for such services.

ARTICLE 26.  Federal, State, and Local Taxes.—Unless otherwise indicated, the prices herein include any Federal, state and local tax or charge heretofore imposed which is applicable to the supplies or work covered hereby.  If after the date of the award, the Federal Government or any state or local government shall impose, remove, or change any duty, sales, use or excise tax or any other tax or charge directly applicable to the supplies or work covered hereby or the materials used in the manufacture thereof or directly upon the importation, production, processing, manufacture, construction or sale of such supplies work, or materials, which tax or charge must be borne by the Contractor because of a specific contractual obligation or by operation of law, or, in case of a decrease or elimination of a tax, where the contractor is relieved to that extent, and if in case of an increase in an existing tax or the imposition of a new tax the Contractor has paid such tax or charge to the Federal Government or a state or local government, or any other person, then the prices named herein will be increased or decreased accordingly and any amount due to the Contractor as a result of such change will be charged to the Government and entered on vouchers (or invoices) as a separate item: Provided, however, That the Government reserves the right to issue to the Contractor in lieu of such payment a tax exemption certificate or certificates acceptable to the Federal Government or state or local government, as the case may be, and the Contractor agrees, in the case of any such state or local tax or charge to take such steps as may be requested by the Government to cause such tax or charge to be paid under protest, to preserve and to cause to be assigned to the Government any and all rights to the refund of such tax or charge, and to furnish to the Government all reasonable assistance and co-operation requested by the Government in any litigation or proceeding for the recovery of such tax or charge; and Provided further, That nothing contained herein shall be construed as requiring the Government to reimburse the Contractor for any Federal, state or local income taxes, income surtaxes or excess profits taxes.

SECRET
-16-

MLCT_0000152174

# SECRET

ARTICLE 27.  Disclosure of Information.—(a)  It is understood that disclosure of information relating to the work contracted for hereunder to any person not entitled to receive it or failure to safeguard all secret, confidential, and restricted matter that may come to the Contractor or any person under his control in connection with the work under this contract, may subject the Contractor, his agents, employees, and subcontractors to criminal liability under the laws of the United States.  (See Title 1 of an Act approved June 15, 1917, 40 Stat. 217; 50 U.S.C. 30-42), as amended by an Act approved March 23, 1940, (54 Stat., Chap. 72); and the provisions of an Act approved January 12, 1938, (52 Stat. 3;50 U.S.C., Supp. V 45-45d), as supplemented by Executive Order No. 8381, dated March 22, 1940, 5 F.R. 1147, D.I.

(b)  The Contractor shall cause a like provision to be inserted in all subcontracts under this contract.

ARTICLE 28.  Employment of Aliens.—The Contractor will not permit any alien employed or to be employed by it or by any sub-bidder or subcontractor to have access to the drawings, specifications and accompanying enclosures relating to the performance of this contract, or to the models or material referred to therein, or to engineering principles, composition, subassemblies, or assemblies which are vital to the functioning or use of the article or articles forming the subject matter of this contract, without the written consent beforehand of the Secretary of War.

ARTICLE 29.  Plant Protection.—The Contractor shall maintain in and about the Plants such plant protective devices as are installed in said Plants, and shall employ such watchmen, guards, and other personnel, as the Contracting Officer or his duly authorized representative, may deem necessary to prevent espionage, sabotage, and other malicious destruction or damage.

ARTICLE 30.  Contractor's Organization and Methods.—Upon the execution of this contract, the Contractor shall submit to the Contracting Officer a chart showing in general the executive and administrative organization, duties and personnel to be employed in connection with the work under the contract; the data so furnished shall be supplemented as additional information becomes available.

ARTICLE 31.  Dismissals.—The Contracting Officer may require the Contractor to dismiss from work such employee or employees as the Contracting Officer deems incompetent, careless, or insubordinate, or whose continued employment is deemed inimical by the Contracting Officer to the public interest.  The Contractor shall make every reasonable effort in the selection of his employees and in the prosecution of the work under this contract, to safeguard all data furnished him, and to prevent the theft or unauthorized use of the same.

ARTICLE 32.  Definitions.—(a)  The term "Secretary of War" as used herein shall include the Under Secretary of War, and the term "his duly authorized representative" shall mean any person or board authorized by the Secretary of War to act for him other than the Contracting Officer.

# SECRET

- 17 -

MLCT_0000152175



**SECRET**

(b)  Except for the original signing of this contract, and except as otherwise stated herein, the term "Contracting Officer" as used herein shall include his duly appointed successor or his authorized representative.

ARTICLE 33.  Materials to be Furnished by the Government - (a) The Government shall deliver to the Contractor at St. Louis, Mo., for use in the manufacture of the supplies to be furnished under the terms of this contract, such amounts of Product 4217 and 4239 as shall be necessary for the performance of this contract, without cost to the Contractor.

(b)  Upon the completion or termination of this contract, the Contractor shall deliver to the Government f.o.b. St. Louis, Mo., any of said material not used in connection with the contract.

ARTICLE 34.  Alterations - The following changes were made in this contract before it was signed by the parties hereto:



**SECRET**

CONFIDENTIAL

SECRET

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

THE UNITED STATES OF AMERICA

By  /s/ K. D. Nichols
———————————————
K. D. NICHOLS
Colonel, Corps of Engineers,
Contracting Officer.
———————————————
(Official Title)

Two Witnesses:

/s/ J. Fistere Jr.
———————————————

3600 N. 2nd St., St. Louis, Mo.
———————————————
(Address)

MALLINCKRODT CHEMICAL WORKS
———————————————
(Contractor)

By  /s/ A. C. Boylston    President
———————————————

3600 N. 2nd St., St. Louis, Mo.
———————————————
(Business Address)

/s/ Harold E. Thayer
———————————————

St. Louis, Mo.
———————————————
(Address)

———————————————————————————————————————

I, F. W. Russe_____, certify that I am the Secretary of the corporation named as Contractor herein; that __A. C. Boylston__ who signed this contract on behalf of the Contractor was then __President__ of said corporation; that said contract was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this __25th__ day of __June_____, 19_43_.

(Corporate
Seal)

/s/    F. W. Russe
———————————————
(Secretary)

SECRET   - 19 -

CONFIDENTIAL

MLCT_0000152177

SECRET

I hereby certify that, to the best of my knowledge and belief, based upon observation and inquiry, _____ who signed this contract for the _____ had authority to execute the same, and is the individual who signs similar contracts on behalf of this corporation with the public generally.

_____
Contracting Officer

SECRET

- 20 -