Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

**TWENTY-FIRST JUDICIAL CIRCUIT OF THE STATE OF MISSOURI**
**ST. LOUIS COUNTY**

| | | |
|---|---|---|
| **TAMIA BANKS, REV. RONNIE HOOKS,** | ) | |
| **BARBARA HOOKS, JOEL HOGAN,** | ) | |
| **KENNETH NIEBLING, KENDALL LACY,** | ) | |
| **TANJA LACY, WILLIE CLAY,** | ) | |
| **BOBBIE JEAN CLAY, ANGELA STATUM,** | ) | |
| **and MISSOURI RENTALS** | ) | |
| **COMPANY, LLC, on behalf of themselves** | ) | |
| **and all others similarly situated,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Cause No. 18SL-CC00617** |
| | ) | |
| **vs.** | ) | **Division No.  2** |
| | ) | |
| **COTTER CORPORATION,** | ) | |
| **COMMONWEALTH EDISON COMPANY,** | ) | **JURY TRIAL DEMANDED** |
| **DJR HOLDINGS, INC. f/k/a FUTURA** | ) | |
| **COATINGS, INC., and ST. LOUIS** | ) | |
| **AIRPORT AUTHORITY, A** | ) | |
| **DEPARTMENT OF THE CITY OF** | ) | |
| **ST. LOUIS** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED CLASS ACTION PETITION

COME NOW Plaintiffs Tamia Banks, Rev. Ronnie Hooks, Barbara Hooks, Joel Hogan,

Kenneth Niebling, Kendall Lacy, Tanja Lacy, Willie Clay, Bobbie Jean Clay, Angela Statum, and

Missouri Rentals Company, LLC, on behalf of themselves and all others similarly situated, by and

through counsel, and for their Second Amended Class Action Petition and causes of action against

Defendants Cotter Corporation, Commonwealth Edison Company, DJR Holdings, Inc. f/k/a Futura

Coatings, Inc., and the St. Louis Airport Authority, a department of the City of St. Louis, states

and alleges as follows:

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

1.       Since World War II, big companies have made significant profits processing, handling, and storing radioactive materials in the St. Louis area. This activity began six decades ago, when Mallinckrodt received in downtown St. Louis City highly concentrated uranium with abnormal levels of radium from Africa. This particular ore was extremely toxic—more so than the ores available from anywhere else in the world. Despite the fact that these materials were some of the most harmful on Earth, Defendants negligently moved them around St. Louis, treating the radioactive materials with less care than a reasonable person might give in moving common household garbage. Vast amounts of radioactive wastes were moved from downtown St. Louis City to the St. Louis Airport, then to Hazelwood.

2.       Radioactive materials have been and will likely continue to be stored in bulk, on the ground, open to the elements, and unattended at sites on and adjacent to Coldwater Creek, which runs throughout North St. Louis County and is a tributary for the Missouri River. These sites included the St. Louis Airport Site ("SLAPS"), a storage facility on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site") part of which later became the Hazelwood Interim Storage Site ("HISS"). The Latty Avenue site and the HISS site are contained in the properties located at 9170 Latty Avenue and 9200 Latty Avenue in Hazelwood, Missouri.

3.       Since then, that radioactive material, negligently dumped in an area surrounded by peaceful neighborhoods and playgrounds, has tormented the lives of everyday people—moms and dads who thought they were raising their kids in a clean home in a safe, quiet neighborhood; kids who want nothing more than to play in the backyard; and small business owners who had invested everything to build the American dream for their families.  These everyday St. Louisans now find their lives disrupted, their kids sick, their homes contaminated, their businesses upended, and their properties worthless.  They find their once-quaint neighborhoods filled with technicians testing

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

and prodding their backyards and sampling the dust of their vacuum cleaners to identify the quantity and toxicity of the radioactive material Defendants have dumped into their lives.

4.      Tests conducted by representatives of the United States of America and others now confirm that the areas around Coldwater Creek are contaminated with the same radioactive wastes generated in the processing of uranium ores in the St. Louis area.  The off-site radioactive waste found today in the real property, which consists of businesses and homes, surrounding the Coldwater Creek carries the distinct fingerprint (or profile) of the ore which had been processed in St. Louis and possessed by Defendants and/or their predecessors in interest.

5.      These radioactive wastes are known human carcinogens that can cause chronic damage to the skin, reproductive system, blood forming system, digestive system, central nervous system, and immune system in addition to numerous cancers. Illnesses such as cancers or birth defects may take a number of years after exposure to the radioactive material to appear.

6.      Defendants have failed to take responsibility for their negligent behavior, failed to clean up the area, failed to move the residents and businesses out, and failed to make amends for the widespread damage they have caused.  Instead, Defendants have hidden behind misstatements and omissions, misleading the local public about the widespread contamination Defendants have caused and minimizing the immense risks to public health and safety that resulted from Defendants' actions.

7.      It is time that Defendants finally be held accountable for their reckless and tortious conduct.  This particular lawsuit seeks to correct the harm Defendants inflicted on a limited class of victims.

8.      Plaintiffs, as well as all members of the proposed class, have sustained significant damages as a result of Defendants' conduct.  Defendants should compensate Plaintiffs for their

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

damages, and provide further relief as set forth below in this Petition.

9.      Pursuant to Missouri common law applicable at the time of Defendants' tortious conduct, which occurred prior to the 2005 enactment of R.S.Mo. § 537.067, Defendants are jointly and severally liable for any and all damages Plaintiffs and the Class have sustained as a result of Defendants' negligent handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental, consequential, nuisance, and trespass damages.

10.     Upon information and belief, by acquiring and continuing to operate ongoing operations throughout time, Defendants are liable for acts and omissions and the consequential damages caused by their predecessors in interest. To the extent that Defendants provided indemnity or committed fraud, they are liable to those to whom they sold or lease the ongoing operations.

11.     Upon information and belief, the properties of all Plaintiffs and the putative class are impacted by uranium mill tailings. The source of the radioactivity is small, microscopic particles yet containable when properly handled. These particles contain hazardous carcinogenic, harmful toxics, and other radioactive substances known as uranium and thorium and their daughter products. Such radioactive waste is legally and commonly referred to as "uranium mill tailings," which result from the processing of uranium ore.

## JURISDICTION AND VENUE

12.     This court has jurisdiction over the subject matter and the parties in this case because the causes of action stated in this Petition arose out of business activities conducted solely in Missouri and out of torts committed solely in Missouri by resident and non-resident defendants.

13.     Venue is proper in this court pursuant to Mo. Rev. Stat. §508.010, because Defendants' conduct giving rise to this action took place in the locality of St. Louis County,

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

Missouri.

14.     Plaintiffs do not allege any causes of action arising under any laws of the United States.

15.     Plaintiffs' claims do not fall within the scope of the Price-Anderson Act, because:

    A.     Coldwater Creek is not and has never been a licensed nuclear facility.

    B.     Defendants have never received a license to possess, transport, or dispose of any radioactive wastes on or in Coldwater Creek.

    C.     Defendants did not have a license to dispose of radioactive wastes in Coldwater Creek.

    D.     Defendants did not have a license to handle the particular materials they handled as alleged herein, including enriched thorium.

    E.     Defendants have never entered into an indemnification agreement with the United States government under 42 U.S.C. § 2210 with respect to the complained activities.

16.     Plaintiffs expressly contend that no occurrences that form the basis for this suit rise to the level of a nuclear incident. Plaintiffs' claims are freestanding state law claims offending traditional state regulations and do not implicate the Price-Anderson Act and its textually manifest objectives related to liability limitation and indemnification.

17.     The Price-Anderson Act does not apply to the indisputably hazardous, toxic and carcinogenic mill tailings at issue in this Petition.

## THE PARTIES

### Plaintiffs

Electronically Filed - St. Louis County - October 29, 2019 - 04:59 PM

18.     Plaintiff Tamia Banks is a Missouri citizen who owns real property located at 4501 Ashby Rd., St. Ann, Missouri (the "Banks Property"). The property is approximately 0.23 acres in St. Louis County adjacent to Coldwater Creek. Her home and property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. Tamia Banks first learned that her property was in the zone of contamination in 2018.

19.     Plaintiffs Rev. Ronnie Hooks and Barbara Hooks, a married couple, are Missouri citizens who own real property located at 13712 Old Halls Ferry Rd., Florissant, Missouri (the "Hooks Property"). The property is approximately 1.32 acres in St. Louis County adjacent to Coldwater Creek. Their home and property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. The Hooks first learned their property was in the zone of contamination in 2018.

20.     Plaintiff Joel Hogan is a Missouri citizen who owns real property located at 435 Moule Drive, Florissant, Missouri (the "Hogan Property"). The property is approximately 0.1 acres in St. Louis County adjacent to Coldwater Creek.  His home and property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. Mr. Hogan first learned his property was in the zone of contamination in 2018.

21.     Plaintiff Kenneth Niebling is a Missouri citizen who owns real property located at 210 Versailles Drive, Florissant, Missouri (the "Niebling Property"). The property is approximately 0.1 acres in St. Louis County adjacent to Coldwater Creek. His home and property, along with the property of other members of the Class, is located within the one hundred year flood

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. Mr. Niebling first learned his property was in the zone of contamination in 2018.

22.     Plaintiffs Kendall Lacy and Tonja Lacy, a married couple, are Missouri citizens who own real property located at 2843 Chapel View Drive, Florissant, Missouri (the "Lacy Property"). Their home and property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. The property is approximately .21 acres in St. Louis County adjacent to Coldwater Creek. The Lacys first learned their property was in the zone of contamination in 2018.

23.     Plaintiffs Willie Clay and Bobbie Jean Clay, a married couple, are Missouri citizens who own real property located at 9 Cricket Court, Florissant, Missouri (the "Clay Property"). The property is approximately .25 acres in St. Louis County adjacent to Coldwater Creek. Their home and property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. The Clays first learned their property was in the zone of contamination in 2018.

24.     Plaintiff Angela Statum is a Missouri citizen who owns real property located at 7565 Hazelcrest Drive, Hazelwood, Missouri (the "Statum Property"). The property is in St. Louis County adjacent to Coldwater Creek. Her property, along with the property of other members of the Class, is located within the one hundred year flood plain of Coldwater Creek, and is contaminated with radioactive waste materials from Coldwater Creek. Ms. Statum first learned her property was in the zone of contamination in 2018.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

25.     Plaintiff Missouri Rentals Company, LLC is a Missouri LLC which owns real property located at the following addresses (the "MRC Properties"):

> 7411 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
> 7411 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
> 7431 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
> 7446 SIELOFF DRIVE, APT E, Hazelwood, Missouri;
> 7446 SIELOFF DRIVE, APT F, Hazelwood, Missouri;
> 8721 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
> 8729 SIELOFF DRIVE, APT H, Hazelwood, Missouri; and
> 8733 SIELOFF DRIVE, APT G, Hazelwood, Missouri.

The properties are in St. Louis County adjacent to Coldwater Creek. Their properties, along with the property of other members of the Class, are located within the one hundred year flood plain of Coldwater Creek, and are contaminated with radioactive waste materials from Coldwater Creek. MRC first learned its properties were in the zone of contamination in 2018.

26.     As a result of Defendants' acts and omissions, Plaintiffs have sustained significant damages, including damages to their Property and the loss of use and enjoyment, thereof.

**Defendants**

27.     There are two defendants that relate in some way to Cotter Corporation, the owner and disposer of the hazardous, toxic, carcinogenic, radioactive mill tailings: Cotter Corporation ("Cotter") and Commonwealth Edison Company ("ComEd").

28.     Cotter Corporation ("Cotter") is a Colorado corporation with its principal place of business in Englewood, Colorado, which currently operates as a subsidiary of General Atomics, Inc., a California corporation. Cotter was purchased by and became a wholly owned subsidiary of Commonwealth Edison in 1974, immediately after announcing that there was no radioactive contamination on the properties upon which it operated. It was then sold to General Atomics in 2000.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

A.  Cotter continuously and systematically carried on business activities in the State of Missouri in its own name and through its parent company ComEd.

B.  This lawsuit arises out of damages that resulted from the Cotter Defendants' conduct, including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the Cotter Defendants, which gave rise to the violations of state law and damages to property alleged in the Petition.

29.     Commonwealth Edison Company ("ComEd") is an Illinois corporation, whose former subsidiary corporation, Cotter, conducted business operations in Missouri. Upon the sale of Cotter, ComEd agreed to indemnify Cotter for certain liabilities associated with these activities. The responsibility to indemnify Cotter was transferred to Exelon Generation Company, LLC when ComEd's parent company, Exelon Corporation, restructured in 2001.

A.  ComEd continuously and systematically carried on local business activities in the State of Missouri, both on its own and through its subsidiary Cotter. In addition, ComEd owned Cotter at times relevant to this Petition, and agreed to indemnify Cotter for liabilities associated with the creation, storage, transportation, and processing of hazardous, toxic, carcinogenic, radioactive wastes as alleged herein. ComEd regularly and routinely avails itself of the protection of Missouri laws in St. Louis County courts, and regularly appears to defend itself in lawsuits tried in that locality.

B.  When ComEd purchased Cotter, it assumed Cotter's liabilities by its own corporate policies and by law and was obligated to require its subsidiary to comply with the rules and regulations in Missouri and the relevant laws cited in this Petition. ComEd furthermore assumed the environmental safety and health

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

functions of its subsidiary, Cotter. Cotter and ComEd knew or should have known substantial waste was in Coldwater Creek as a result of Cotter's operations and on the properties upon which Cotter had operated and which it knowingly and intentionally abandoned immediately prior to its announced sale to ComEd. ComEd, through its pre-purchase due diligence, knew about the remaining contamination, yet did nothing to mitigate the threat to public health, such that ComEd is liable as a corporate successor to Cotter. After the sale of Cotter to ComEd, they jointly conspired to perpetuate the fraud that there was no radioactive contamination remaining with respect to Cotter's abandoned operations. On information and belief, ComEd controlled the policy and business of Cotter to perpetuate the negligent and unlawful contamination in contravention of Plaintiffs' and the Class Members' rights, and ComEd's control over Cotter was the proximate cause of the contamination to Plaintiffs' and the Class Members' properties.

C. This lawsuit arises out of damages that resulted from the ComEd Defendants' conduct, including acts and omissions within the State of Missouri, as well as the acts and omissions of the predecessors of the ComEd Defendants, which gave rise to the violations of state law and damage to property alleged in the Petition.

30.    DJR Holdings, Inc., formerly known as Futura Coatings, Inc. ("Futura Coatings") is a Missouri corporation with its principal place of business in Missouri, and whose alter ego is Jarboe Realty & Investments Co., Inc. Defendant DJR Holdings, Inc. is a Missouri citizen from

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

whom significant relief is sought and whose conduct forms a significant basis of the claims asserted by Plaintiffs, as explained in detail in this Petition.

31.     The St. Louis Airport Authority, which is a department of the City of St. Louis, is now and was at all times herein mentioned a public entity organized and existing pursuant to Article 6, Section 31 of the Missouri Constitution. The St. Louis Airport Authority is a Missouri citizen from whom significant relief is sought and whose conduct forms a significant basis of the claims asserted by Plaintiffs, as explained in detail in this Petition.

## CLASS ACTION ALLEGATIONS

32.     Plaintiffs file this class action petition pursuant to Missouri Supreme Court Rule 52.08 on behalf of all Missouri citizens who own or reside on real property with any portion within the FEMA one hundred year flood plain of Coldwater Creek[1] in St. Louis County, Missouri as detailed below.

33.     Plaintiffs bring this action on behalf of themselves and the Class against Defendants to recover damages to their property and to obtain injunctive relief in the form of a total and complete cleanup of the contamination and to prevent and eliminate further contamination.

34.     This action is maintainable as a class action and should be certified under Missouri Supreme Court Rule 52.08.

35.     The proposed class for property damage claims is defined as follows ("Property Damage Subclass"):

> **All Missouri citizens who currently own any portion of real property located within the FEMA one hundred year flood plain of Coldwater Creek in St. Louis County, Missouri, bounded by St. Charles Rock Road to the southwest**

---

[1]FEMA.GOV,
https://msc.fema.gov/portal/search?AddressQuery=st.%20louis%20county%2C%20mo#searchresultsanchor (last visited September 24, 2019).

11

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

**and Old Halls Ferry Road to the northeast, as shown in blue in the map in Figure 1 below.**

**Figure 1. Class Area**



"Own," in the context of the class definition, includes those who hold any fee simple estate or life estate.

36.     The proposed class for medical monitoring is defined as follows ("Medical Monitoring Subclass"):

> **All Missouri citizens who currently reside, or have resided since 1973, on any portion of real property within the FEMA one hundred year flood plain of Coldwater Creek in St. Louis County, Missouri, bounded by St. Charles Rock Road to the southwest and Old Halls Ferry Road to the northeast, as shown in the map in Figure 1 above.**

37.     Excluded from the Property Damage Subclass and the Medical Monitoring Subclass (collectively, the "Class") are Defendants and their officers, directors, and employees, as

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

well as employees of any of Defendants' subsidiaries, affiliates, successors, or assignees. Also excluded are the immediate family members of the above persons. Also excluded are owners of property that has or has had any radioactive material license associated with it; this includes, but is not limited to, the SLAPS, Latty Avenue, and HISS sites. Also excluded is any trial judge who may preside over this case. The requirements for maintaining this action as a class action are satisfied, as set forth immediately below.

38.     The proposed Class is so numerous that the individual joinder of all absent class members is impracticable. While the exact number of absent Class Members is unknown to Plaintiffs currently, it is ascertainable by appropriate discovery and Plaintiffs, upon information and belief, alleges that the proposed Class may include more than twenty-five local members. The requirement of numerosity is therefore satisfied.

39.     Common questions of law or fact exist as to all proposed Class Members and predominate over any questions which affect only individual members of the proposed Classes, the answers to which will drive a class-wide resolution of the claims of the proposed Class. These common questions of law or fact include:

       a.  Whether Defendants engaged in the abnormally dangerous activity of processing, storing or transporting radioactive waste;

       b.  Whether Defendants unreasonably and unlawfully processed, stored, disposed and/or abandoned, or transported radioactive materials at the St. Louis Airport Site ("SLAPS"), the Latty Avenue Site and/or the Hazelwood Interim Storage Site ("HISS");

       c.  Whether Defendants created and continue to create a high degree of risk of harm to Plaintiffs and Class Members' property;

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

d.   Whether Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of Radon gas and radioactive particles onto and around Plaintiffs and Class Members' property;

e.   Whether Defendants' conduct or omissions affecting land surrounding the St. Louis Airport Site ("SLAPS"), the Latty Avenue Site and/or the Hazelwood Interim Storage Site ("HISS") resulted in Plaintiffs and Class Members' loss of use and enjoyment of their property;

f.   Whether the loss in property value suffered by Plaintiffs and Class is a result of Defendants' actions;

g.   Whether Plaintiffs and Class are entitled to damages; and

h.   Whether Defendants' conduct rises to the level of willfulness so as to justify punitive damages.

40.    The claims of the Plaintiffs are typical of the claims of the Class. Plaintiffs and all Class Members own or reside on land within the FEMA one hundred year flood plain of Coldwater Creek in St. Louis County, Missouri near the locations where Defendants recklessly stored, transported and dumped radioactive waste.

41.    Plaintiffs will fairly and adequately represent the interests of the members of the Class. Plaintiffs have no interest adverse to the interests of the members of the Class. Plaintiffs have retained competent attorneys who have experience in class action litigation.

42.    Defendants have acted or refused to act on grounds that apply generally to the Class as discussed herein, such that final injunctive relief is appropriate for the Class as a whole.

43.    Unless a class-wide injunction is issued, Defendants will continue to allow contamination of the properties of Plaintiffs and Class and will continue to violate Missouri law

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

resulting in harm to thousands of Missouri citizens.

44.     A class action is a superior method for the fair and efficient adjudication of this controversy. The adjudication of a separate action by individual members of the classes would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class; or (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Upon information and believe each of the Class Members suffered the same sort of damages and injuries as those suffered by the Plaintiffs, due to the contamination of their property by radioactive waste from the St. Louis Airport Site ("SLAPS"), the Latty Avenue Site and/or the Hazelwood Interim Storage Site ("HISS"). In addition, this class action will allow for the resolution of identical claims in an efficient manner that avoids fragmented litigation in which inconsistent results could occur.

45.     Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members. There is no special interest in the members of the classes individually controlling the prosecution of separate actions. The expense and burden of individual litigation make it impossible for the Class Members individually to address the wrongs done to them.

46.     There will be no difficulty in managing this lawsuit as a class action. Evidence relating to Defendants' alleged violations will be applicable to all members of the class; there are accepted means for notifying class members who have suffered injuries and damages described herein.

47.     All of the class members are citizens of Missouri.

48.     The principal injuries resulting from the conduct of the Defendants were incurred

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

in Missouri.

49.    The conduct alleged in this Petition took place in Missouri.

    A.  The radioactive waste at issue in this case was generated as a result of chemical processes that took place in local facilities in St. Louis

    B.  All transportation of radioactive waste alleged herein took place in Missouri

    C.  All processing of radioactive wastes alleged herein took place in Missouri.

    D.  All storage of radioactive waste alleged herein took place in Missouri.

50.    Defendants engaged in creation, storage, processing and transportation of radioactive wastes in the state of Missouri, benefiting from the protection and operation of Missouri law.

51.    No class action asserting similar factual allegations has been filed against any of the Defendants in the preceding three years.

52.    For these reasons, this case is maintainable as a class action pursuant to Missouri Rule of Civil Procedure 52.08.

## FACTS

### Radioactive Wastes

53.    Ounce for ounce, radioactive isotopes are the most toxic materials known to man.

54.    Radiation is a type of energy transmitted over a distance. Some materials spontaneously emit radiation through a process known as radioactive decay.  As these materials decay they release radiation energy and transform into other radioactive materials which will then also decay by releasing radiation energy and transforming into other materials.

55.    Some radiation energies, including the radiation from the decay of radioactive materials used in nuclear and atomic processes, such as uranium, have the ability to penetrate other

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

material.  When radiation energy interacts with other material, it causes a process called ionization[2] which can damage chemical structures.  When the "other material" that ionizing radiation passes through is human cells, it can cause damage within those cells resulting in mutation in genetic material which can lead to cancer and other harms.

56.     People are exposed to radiation in two ways: external exposure from radioactive material in the environment and internal exposure by radioactive material that has entered the body.  Radioactive material can be taken into the body by consuming foodstuffs and liquids with radioactivity in them, by inhaling radioactive gases or aerosol particles, or by absorption through wounds in the skin.  The material taken in will internally expose the organs and tissues for as long as it remains inside the body.

57.     One characteristic of the impact of exposure to ionizing radiation on the human body through both internal and external exposure is that even if the energy absorbed is low, the biological effects can still be gravely serious.  The second characteristic is that there are latent biological effects of radiation.

58.     The injuries resulting from exposure to ionizing radiation can also be separated into two categories: somatic injuries and genetic injuries.  Somatic injuries are damages to the individual exposed.  This can include damages to the skin, reproductive system, blood forming

---

[2] Ionizing radiation is described as follows in the literature: "Ionizing Radiation is a form of radiation that includes alpha particles, beta particles, gamma rays, x-rays, neutrons, high-speed electrons, high-speed protons, and other particles capable of producing ions.  Ionizing radiation has enough energy to cause changes in atoms through a process called ionization.  Ionization can affect the atoms in living things and depending on the dose and exposure, can pose a serious health risk to humans.  Ionizing radiation has sufficient energy to cause chemical changes in cells, causing damage to tissue and DNA in genes."  *See* Radiation Health Effects, EPA.GOV, https://www.epa.gov/radiation/radiation-health-effects (last visited September 24, 2019).

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

system, digestive system, central nervous system, and immune system, as well as cancers. Illnesses such as cancers may take a number of years to appear.

59.     Genetic injury is damage to the reproductive cells of the exposed individual in the form of mutation of their genetic cells.  As a result, the probability of detrimental effects to the descendants of the exposed persons may greatly increase.  These genetic mutations can be passed down to a person's offspring even generations later.  These injuries include birth abnormalities and cancer.

60.     One of the most dangerous aspects of radioactive materials is the length of time that radioactive isotopes will persist and accumulate in the environment.  As detailed above, radioactive materials decay over time and each radioactive material gives off radiation energy as it decays and transforms into a different material.  The rate at which a radioactive isotope decays is measured in half-life. The term "half-life" is defined as the time it takes for one-half of the atoms of a radioactive material to disintegrate.  For example, after one half life, there will be one half of the original material, after two half-lives, there will be one fourth the original material, after three half-lives one eight the original sample, and so forth.

61.     Governmental authorities have identified significant increases of cancer and risks of cancer within the Class.[34]

**Radioactive Waste in the St. Louis Area**

---

[3] *See* S. Yun et al., Analysis of Cancer Incidence Data in Coldwater Creek Area, Missouri, 1996-2004, MO DEPT. OF HEALTH & SEN. SERVS., available at https://health.mo.gov/living/healthcondiseases/chronic/cancer/pdf/ccanalysis.pdf.
[4] *See* Evaluation of Community Exposures Related to Coldwater Creek, ATSDR (Apr. 30, 2019), available at https://www.atsdr.cdc.gov/sites/coldwater_creek/docs/St_Louis_Airport_Site_Hazelwood_InterimSto_PHA-508.pdf.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

62.     From 1942 to 1957, uranium ore was processed in downtown St. Louis City in association with the Manhattan Project.[5]  The Manhattan Project was the U.S. research project designed to develop the first nuclear weapons.

63.     This downtown St. Louis facility was known as the St. Louis Downtown Site (the "SLDS") and was used to process uranium.

64.     The wastes created by processing at the SLDS are known in the scientific and regulatory communities as Uranium Mill Tailings and were created as a result of the milling of Uranium Ore to produce uranium metal by Mallinckrodt.

65.     In the late 1940s, the Manhattan Project acquired a 21.7-acre tract of land near Lambert Airport to store the hazardous, toxic, carcinogenic radioactive mill tailings from the uranium processing operations at the SLDS.   The storage site(s) on and near the airport are now referred to as the St. Louis Airport Site or SLAPS ("SLAPS").

66.     Radioactive mill tailings accumulated locally at SLAPS. These hazardous, toxic, carcinogenic, radioactive waste materials included pitchblende raffinate residues, radium-bearing residues, barium sulfate cake, and Colorado raffinate residues. They were stored locally at SLAPS along with contaminated scrap.  Some of these radioactive wastes were stored in bulk on the open ground in piles.

67.     In the 1960's, some of the hazardous, toxic, carcinogenic radioactive mill tailings that had been stored at SLAPS were moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site") (part of this site later became the Hazelwood Interim Storage Site ("HISS").

---

[5]  *See* n.10 (citing Alvarez (2013) and DeGarmo (2006)).

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

68.     These mill tailings, which contained valuable metals, were sold and shipped to various other local destinations, contaminating the Latty Avenue Site with hazardous, toxic and radioactive substances as a result.

69.     In the late 1960's, Cotter and/or its predecessors in interest, and its successors, purchased the hazardous, toxic, carcinogenic radioactive mill tailings associated with both SLAPS and the Latty Avenue Site.

70.     Upon information and belief, as part of the contract between Cotter and/or its predecessors in interest and the federal government for sale of the radioactive waste, Cotter assumed all liability, including ultimate disposition of the waste.

71.     Cotter and/or its predecessors in interest did not receive indemnity from the government in connection with this transaction.

72.     Between 1969 and 1973, Cotter stored, processed, and transported hazardous, toxic, and radioactive wastes, including enriched thorium, associated with both the SLAPS and Latty Avenue sites.

73.     Upon information and belief, Cotter did not have a license to handle or dispose of enriched thorium.

74.     Transport and migration of hazardous, toxic and radioactive mill tailings to/from the SLAPS, the Latty Avenue Site and the HISS also spread hazardous, toxic and radioactive substances along haul routes to nearby properties.

**Saint Louis Airport Site ("SLAPS")**

75.     Upon information and belief, the U.S. Government acquired the Saint Louis Airport Site ("SLAPS") site by condemnation proceedings in 1947.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

76.     Hundreds of thousands of tons of hazardous, toxic, and radioactive mill tailings were transported from the SLDS to the SLAPS for storage, including radium-bearing residues, refined cake, barium sulfate cake, and C-liner slag.

77.     From 1953, the property was managed and operated by Mallinckrodt.

78.     By 1960, there were approximately 50,000 empty drums and approximately 3,500 tons of miscellaneous contaminated steel and alloy scrap stored onsite at SLAPS.

79.     In 1973, SLAPS was sold to the St. Louis Airport Authority, a department of the City of St. Louis, by quitclaim deed.

80.     Despite knowing that significant activities involving radioactive material were conducted on the site, the St. Louis Airport Authority, a department of the City of St. Louis, thereafter did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes into Coldwater Creek.

**Latty Avenue Site**

81.     Throughout the 1960s, hazardous, toxic, and radioactive wastes residues were removed from the SLAPS in various stages. Some of the wastes were transported to property at 9200 Latty Avenue (now known as the HISS and the Futura Coatings Company properties) for storage.

82.     Upon information and belief, DJR Holdings, Inc., f/k/a Futura Coatings and/or its alter egos purchased and/or leased the Latty Avenue property, which is currently owned by Jarboe Realty & Investments Co., Inc. Both DJR Holdings, Inc. and Jarboe Realty & Investments Co., Inc. are owned, operated, and controlled by the same individuals such that they are mere instruments of those individuals, and that DJR Holdings, Inc. and Jarboe Realty & Investments are indistinct from each other and from their owners.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

83.     Despite knowing that significant activities involving radioactive material were conducted on the site, DJR Holdings, Inc., f/k/a Futura Coatings and/or its alter egos did nothing to prevent continued dispersal and runoff of hazardous, toxic, carcinogenic, radioactive wastes into Coldwater Creek.

### Coldwater Creek

84.     Coldwater Creek flows for 500 feet along the western border of the SLAPS. The creek originates 3.6 miles to the south of the SLAPS and continues for 15 miles in a northeasterly direction through the City of Hazelwood, the City of Florissant, unincorporated areas of St. Louis County, and along the northern edge of the community of Black Jack, until it discharges into the Missouri River. Coldwater Creek is generally accessible to the public, except for approximately 1.2 miles, which flows under the Lambert-St. Louis International Airport. Coldwater Creek is contaminated with hazardous, toxic, and radioactive materials.

85.     Beginning in 1946, the hazardous, toxic, and radioactive waste residues left over from the production process at the SLDS were being transported to the SLAPS for storage. Scrap metal, chemical drums, and other contaminated debris were placed in low areas at the SLAPS adjacent to Coldwater Creek on the western end of the property and covered with dirt to make a level storage area.

86.     By 1960, there were approximately 50,000 chemical drums and approximately 3,500 tons of miscellaneous contaminated steel and alloy scrap stored onsite at SLAPS directly adjacent to Coldwater Creek. Coldwater Creek is the major drainage mechanism for the SLAPS and the Latty Avenue Site. Through time, various meanders in Coldwater Creek were backfilled to support construction, resulting in commingling of the site soils and sediments with hazardous, toxic, and radioactive wastes brought to the SLAPS.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

87.     During the 1960s, some of the waste residues were transported to the Latty Avenue Site. In 1969, the hazardous, toxic, and radioactive wastes residues at Latty Avenue were sold to the Cotter Corporation.

88.     Since 1946, radioactive wastes have migrated from the SLAPS, HISS and the Latty Avenue Site(s) into Coldwater Creek and were released or otherwise deposited along the entire FEMA one hundred year flood plain of Coldwater Creek.

89.     Coldwater Creek flows adjacent to the SLAPS, then meanders near the HISS, and continues to flow through northern St. Louis County until it discharges into the Missouri River.

90.     Coldwater Creek floods areas of the North St. Louis County including portions of the SLAPS and the HISS. The runoff from precipitation that enters Coldwater Creek in a given unit of time greatly exceeds the predevelopment quantities. This runoff overloads Coldwater Creek and increases the likelihood of local and area-wide flooding.

91.     As a result of this flooding, the entire one hundred year floodplain of Coldwater Creek is believed to be contaminated with radioactive particles, including radium, thorium and uranium.

**Defendants' Radioactive Particles Contaminated the Plaintiffs' Property**

92.     Plaintiffs' properties are contaminated by radioactive material.

93.     Samples taken on and around Plaintiffs' properties confirm an elevated presence of radioactive particles, significantly above the normal background level of radiation.

94.     Plaintiffs' properties neighbor Coldwater Creek and are within its flood plain.  This proximity puts the Plaintiffs' properties in the direct path of radioactive particles and contamination spread in and by Coldwater Creek.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

95.     The radioactive contamination that has polluted the Plaintiffs' properties and continues to threaten to further pollute the Plaintiffs' properties match the waste fingerprint (or profile) of the radioactive wastes generated in the processing of uranium ores in the St. Louis area.

96.     This radioactive contamination was caused by the Defendants' improper handling, storage, and disposal of radioactive materials.

97.     Radioactive contamination of the Plaintiffs' properties renders the Plaintiffs' properties unfit for normal use and enjoyment, creates a stigma attached to the properties, and destroys their fair market value.

98.     As a direct and proximate result of Defendants' conduct, Plaintiffs and the Class are currently being subjected to radioactive waste contamination and will suffer irreparable harm if an injunction is not granted requiring Defendants conduct a total and complete cleanup of the contamination and to prevent and eliminate further contamination.

### COUNT I – TRESPASS
**(brought individually by Plaintiffs and on behalf of the Property Damage Subclass against all Defendants)**

99.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

100.     Plaintiff Tamia Banks owns and controls the Banks Property located at 4501 Ashby Rd., St. Ann, Missouri, more particularly described above.

101.     Plaintiffs Ronnie Hooks and Barbara Hooks own and control the Hooks Property located at 13712 Old Halls Ferry Rd., Florissant, Missouri, more particularly described above.

102.     Plaintiff Joel Hogan owns and controls the Hogan Property located at 435 Moule Drive, Florissant, Missouri, more particularly described above.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

103.    Plaintiff Kenneth Niebling owns and controls the Niebling Property located at 210 Versailles Drive, Florissant, Missouri, more particularly described above.

104.    Plaintiffs Kendall Lacy and Tonja Lacy own and control the Lacy Property located at 2843 Chapel View Drive, Florissant, Missouri, more particularly described above.

105.    Plaintiffs Willie Clay and Bobbie Jean Clay own and control the Clay Property located at 9 Cricket Court, Florissant, Missouri, more particularly described above.

106.    Plaintiff Angela Statum owns and controls the Statum Property located at 7565 Hazelcrest Drive, Florissant, Missouri, more particularly described above.

107.    Plaintiff Missouri Rentals Company, LLC owns and controls the Missouri Rentals Properties, as more particularly described above and listed as follows:

> 7411 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
> 7411 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
> 7431 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
> 7446 SIELOFF DRIVE, APT E, Hazelwood, Missouri;
> 7446 SIELOFF DRIVE, APT F, Hazelwood, Missouri;
> 8721 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
> 8729 SIELOFF DRIVE, APT H, Hazelwood, Missouri; and
> 8733 SIELOFF DRIVE, APT G, Hazelwood, Missouri.

108.    Defendants generated massive quantities of extremely dangerous radioactive wastes and failed to ensure their proper disposal.

109.    Defendants purchased massive quantities of highly toxic radioactive wastes and failed to properly dispose of these wastes.

110.    Defendants intentionally, maliciously, and wantonly disposed of radioactive wastes at a location unfit to handle such wastes.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

111.    Defendants have used these radioactive materials in a manner that is unreasonable, unlawful, malicious, and wanton, resulting in an invasion of the property of Plaintiffs and the Property Damage Subclass ("Plaintiffs' property").

112.    Defendants have caused these radioactive materials to migrate from Defendants' property and other storage locations and contaminate Plaintiffs' property.

113.    Defendants willfully, wantonly, and maliciously caused the emission of radioactive particles onto and around Plaintiffs' property through their improper disposal of radioactive wastes

114.    It was reasonably foreseeable that Defendants' actions would and will continue to contaminate Plaintiffs' property with radioactive particles and other hazardous wastes.

115.    Defendants store and/or transport radioactive materials and other toxic and hazardous wastes, as alleged herein.

116.    Defendants have used these radioactive materials in a manner that is unreasonable, unlawful, malicious, and wanton, resulting in an invasion of Plaintiffs' property.

117.    Defendants have caused these radioactive materials to migrate and contaminate Plaintiffs' property.

118.    Defendants willfully, wantonly, and maliciously caused the emission of Radon gas, and radioactive particles onto and around the property of Plaintiffs' property through their use, transport and disposal of radioactive wastes.

119.    It was reasonably foreseeable that Defendants' actions would and will continue to contaminate the property of Plaintiffs' property with radioactive particles and other hazardous wastes.

120.    The migration of Radon gas and radioactive particles onto the property of Plaintiffs and of the Property Damage Subclass caused by Defendants has resulted and continues to result in

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

direct physical interference with the property of Plaintiffs and of the Property Damage Subclass. Such contamination is incompatible with the normal use and enjoyment of the property of Plaintiffs and of the Property Damage Subclass.

121.    Plaintiffs did not give Defendants permission or consent to interfere with her property in this manner.  Through Defendants' actions and inactions, they are illegally and improperly using Plaintiffs' property to store radioactive wastes.

122.    The contamination of Plaintiffs' property with Radon gas and radioactive particles, and other hazardous wastes, has resulted in significant damage to the property.

123.    As a direct and proximate cause of this continuing and recurring physical interference, Plaintiffs and the Property Damage Subclass have suffered and continue to suffer injury, including decreased property value.

**COUNT II – PERMANENT NUISANCE**
**(brought individually by Plaintiffs and on behalf of the Property Damage Subclass against all Defendants)**

124.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

125.    Plaintiff Tamia Banks owns and controls property at 4501 Ashby Road, St. Ann, Missouri, more particularly described above.

126.    Plaintiffs Ronnie Hooks and Barbara Hooks own and control property at 13712 Old Halls Ferry Road, Florissant, Missouri, more particularly described above.

127.    Plaintiff Joel Hogan owns and controls property at 435 Moule Drive, Florissant, Missouri, more particularly described above.

128.    Plaintiff Kenneth Niebling owns and controls property at 210 Versailles Drive, Florissant, Missouri, more particularly described above.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

129.    Plaintiffs Kendall Lacy and Tonja Lacy own and control property at 2843 Chapel View Drive, Florissant, Missouri, more particularly described above.

130.    Plaintiffs Willie Clay and Bobbie Jean Clay own and control property at 9 Cricket Court, Florissant, Missouri, more particularly described above.

131.    Plaintiff Angela Statum owns and controls property at 7565 Hazelcrest Drive, Hazelwood, Missouri, more particularly described above.

132.    Plaintiff Missouri Rentals Company, LLC owns and controls property at the following addresses, more particularly described above:

       7411 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
       7411 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
       7431 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
       7446 SIELOFF DRIVE, APT E, Hazelwood, Missouri;
       7446 SIELOFF DRIVE, APT F, Hazelwood, Missouri;
       8721 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
       8729 SIELOFF DRIVE, APT H, Hazelwood, Missouri; and
       8733 SIELOFF DRIVE, APT G, Hazelwood, Missouri.

133.    Defendants unreasonably and unlawfully stored and used radioactive materials at SLAPS, the Latty Avenue Site, the HISS site, and Coldwater Creek, which adjoins Plaintiffs' property.

134.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' property.

135.    The radioactive contamination created a permanent stigma which has and will remain attached to the Plaintiffs' properties and the properties of the Class Members.

136.    Defendants have intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed the emission of Radon gas and radioactive particles onto and around Plaintiffs' property, resulting in unreasonable interference with Plaintiffs' use and

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

enjoyment of their property.  Such contamination is incompatible with the normal use and enjoyment of the Plaintiffs' properties.

137.    Defendants' interference with Plaintiffs' use and enjoyment of their property is substantial.

138.    As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered permanent injury, including decreased property value.

### COUNT III – TEMPORARY NUISANCE
### (brought individually and on behalf of the Property Damage Subclass)

139.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

140.    Plaintiff Tamia Banks owns and controls property at 4501 Ashby Road, St. Ann, Missouri, more particularly described above.

141.    Plaintiffs Ronnie Hooks and Barbara Hooks own and control property at 13712 Old Halls Ferry Road, Florissant, Missouri, more particularly described above.

142.    Plaintiff Joel Hogan owns and controls property at 435 Moule Drive, Florissant, Missouri, more particularly described above.

143.    Plaintiff Kenneth Niebling owns and controls property at 210 Versailles Drive, Florissant, Missouri, more particularly described above.

144.    Plaintiffs Kendall Lacy and Tonja Lacy own and control property at 2843 Chapel View Drive, Florissant, Missouri, more particularly described above.

145.    Plaintiffs Willie Clay and Bobbie Jean Clay own and control property at 9 Cricket Court, Florissant, Missouri, more particularly described above.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

146.    Plaintiff Angela Statum owns and controls property at 7565 Hazelcrest Drive, Hazelwood, Missouri, more particularly described above.

147.    Plaintiff Missouri Rentals Company, LLC owns and controls property at the following addresses, more particularly described above:

>       7411 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
>       7411 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
>       7431 SIELOFF DRIVE, APT D, Hazelwood, Missouri;
>       7446 SIELOFF DRIVE, APT E, Hazelwood, Missouri;
>       7446 SIELOFF DRIVE, APT F, Hazelwood, Missouri;
>       8721 SIELOFF DRIVE, APT H, Hazelwood, Missouri;
>       8729 SIELOFF DRIVE, APT H, Hazelwood, Missouri; and
>       8733 SIELOFF DRIVE, APT G, Hazelwood, Missouri.

148.    Defendants unreasonably and unlawfully stored and used radioactive materials at the SLAPS Site, the Latty Avenue Site, the HISS site, and Coldwater Creek, which adjoins Plaintiffs' properties.

149.    The Defendants caused and contributed to the radioactive contamination of Plaintiffs' properties.

150.    The Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allow the emission of Radon gas and radioactive particles onto and around Plaintiffs' properties, resulting in unreasonable interference with Plaintiffs' use and enjoyment of their properties.  Such contamination is incompatible with the normal use and enjoyment of the Plaintiffs' properties.

151.    Defendants' interference with Plaintiffs' use and enjoyment of their property is substantial.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

152.    Defendants intentionally, unreasonably, negligently, recklessly, willfully, wantonly and maliciously allowed various hazardous substances into Coldwater Creek resulting in unreasonable interference with Plaintiffs' use and enjoyment of the property.

153.    Defendants' use of the St. Louis Airport Site ("SLAPS"), the Latty Avenue Site and/or the Hazelwood Interim Storage Site ("HISS"), and Coldwater Creek prevents Plaintiffs from using the property.

154.    As a direct and proximate result of Defendants' interference with Plaintiffs' use and enjoyment of the property, Plaintiffs have suffered and continue to suffer injury, including decreased property value.

## COUNT IV – NEGLIGENCE
**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

155.    Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

156.    Radioactive isotopes are known human carcinogens and are among the most toxic materials known to man.  When property becomes contaminated with these wastes, the dangers can persist in the environment for thousands of years.  Radioactive wastes should be handled, stored, and disposed of with the utmost safety in mind.  Exposures to radioactive wastes should be as low as is reasonably achievable.

157.    Knowing of the grave dangers posed by these wastes, the Defendants owed a duty of care to the Plaintiffs and the public to ensure the safe and legal handling, storage, and disposal of the radioactive wastes in order to prevent significant injury to property and persons.

158.    Defendants also had a specific duty to warn or notify Plaintiffs of the potential hazards of exposure to radioactive, toxic and hazardous substances, and to warn or notify Plaintiffs

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

of the fact that discharges or releases of these substances had occurred and were likely to occur in the future.

159.    Further, Defendants had a duty to comply with applicable state, federal, and local governmental laws, regulations, and guidelines applicable to persons processing, handling, storing, and/or disposing of hazardous, toxic, and radioactive waste materials.

160.    Defendants breached these duties by their reckless, negligent and grossly negligent processing, handling, storage, and/or disposal of hazardous, toxic, and radioactive waste materials as alleged herein. Such conduct was in utter non-compliance with applicable federal, state and local laws, regulations, and guidelines. Defendants' reckless, negligent, grossly negligent, and illegal conduct resulted in the dangerous release of hazardous, toxic, and radioactive substances

into the communities around Coldwater Creek. These actual and continued releases have subjected Plaintiffs to an unreasonable risk of harm, and to actual injuries to their persons.

161.    Defendants also failed to warn Plaintiffs of the actual and threatened releases of such hazardous, toxic, and radioactive substances and of the reasonably foreseeable effects of such releases, an omission that was reckless, negligent and grossly negligent.

162.     Defendants failed to act to prevent their releases from harming Plaintiffs.

163.    Defendants knew or should have known that their generation, management, storage, use, disposal, releases, or discharges of radioactive, toxic and hazardous substances in as alleged herein would result in actual and increased risks of damage to Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances.

164.    Upon information and belief, Defendants' negligent training of personnel handling radioactive, toxic, and hazardous materials on site was a direct and proximate cause of damage to Plaintiffs' property.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

165.    Defendants' negligence throughout the history of the mishandling and improper dumping of hazardous, toxic, carcinogenic, radioactive wastes has resulted in repeated releases of Radon gas, radioactive particles and other hazardous materials onto Plaintiffs' property, in disregard of applicable regulations and property rights.

166.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances.  Defendant's negligence diminished Plaintiffs' property value.

167.    The injuries sustained by Plaintiffs are of the kind that do not occur without negligence.

168.    Plaintiffs' injuries were the result of wastes generated, disposed of, and controlled by Defendants.

169.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

### COUNT V – NEGLIGENCE PER SE
**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

170.    Plaintiffs reallege and incorporate by reference every allegation of this Complaint as if each were set forth fully herein.

171.    Defendants violated Missouri regulations for Protection against Ionizing Radiation, 19 C.S.R. 20-10.070, 20-10.090, Missouri Solid Waste Management Law and Regulations, 10 C.S.R. 80-2.020(1)(F), 80-3.010(3)(A)(2), 80-3.010(3)(B)(1), 80-3.010(8)(A), 80-3.010(9)(C)(2), 80-3.010(13)(C), 80-3.010(14)(C), 80-3.010(19)(A), 10 CSR 80-3.010(19)(C)(7); Mo. Rev. Stat. §§ 260.210.1(4), 260.380(1); Missouri Clean Water Act, Mo. Rev. State. § 644.051.1, and Missouri Air Conservation regulations, 10 C.S.R. 10-6.165, all of which require

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

the safe storage and disposal of radioactive material so as to protect the health and safety of the public.

172.    Plaintiffs are members of the class of persons that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were intended to protect

173.    The contamination of Plaintiffs' land is the kind of injury that the Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, Missouri Hazardous Waste Management Law, and Missouri Air Conservation regulations were designed to prevent.

174.    Defendants' violations of Missouri regulations for Protection against Ionizing Radiation, Missouri Solid Waste Management Law and Regulations, and Missouri Air Conservation regulations were the proximate cause of Plaintiffs' injuries.

175.    Defendants' negligence throughout the history of their mishandling and improper dumping of radioactive wastes in the St. Louis area has resulted in repeated releases of Radon gas and radioactive particles and other hazardous materials onto Plaintiffs' property in violation of applicable regulations and disregard for property rights.

176.    Defendants' negligence has damaged Plaintiffs' property by contaminating it with radioactive particles, toxic and other hazardous substances. Defendant's negligence diminished Plaintiffs' property value.

177.    Plaintiffs did not consent to the injuries, nor did they contribute to the injuries in any way.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

**COUNT VI – STRICT LIABILITY/ABSOLUTE LIABILITY**
**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

178.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

179.    Defendants engaged in the abnormally dangerous activity of handling, storing, and/or disposing of radioactive waste.

180.    By handling, storing, and/or disposing of radioactive waste, Defendants have created and continue to create a high degree of risk of harm to Plaintiffs' property.

181.    Defendants have intentionally failed to eliminate the risk of harm caused by their handling, storing, and/or disposing of radioactive waste.

182.    As a direct result of Defendants' abnormally dangerous activities, Plaintiffs' property was contaminated with radioactive materials and they suffered and continue to suffer injury, including diminished property value.  Such contamination is incompatible with the normal use and enjoyment of Plaintiff's Property.

183.    Plaintiffs' injuries are of the kinds that result from the dangerous nature of handling, storing, and/or disposing of radioactive waste.

184.    The injuries that Defendants' handling, storing, and/or disposing of radioactive waste have caused Plaintiffs to suffer, drastically outweigh the value of the said activities.

185.    Accordingly, Defendants are jointly and severally liable for any and all damages Plaintiffs have sustained as a result of their strict liability for handling, storing and/or disposing of radioactive materials, including, without limitation, any incidental or consequential damages.

**COUNT VII – INJUNCTIVE RELIEF**

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

186.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

187.    Defendants have tortiously contaminated the property of Plaintiffs and the proposed Class with hazardous, toxic, carcinogenic, radioactive wastes.

188.    The Defendants' tortious acts threaten the safety and normal use and enjoyment of the property of Plaintiffs and the proposed Class.

189.    The radioactive contamination of the property of Plaintiffs and the proposed Class has caused a significant increased risk to Plaintiffs and Class members, and therefore Plaintiffs and Class are in need of a thorough scientific evaluation of the radioactive contaminant levels throughout the Property.

190.    The need for such an evaluation is a direct consequence of the Defendants' tortious conduct, and does not arise from the innocent conduct of the homeowners.

191.    Therefore, Plaintiffs seek injunctive and equitable relief to require the Defendants to conduct the necessary scientific evaluation of the property of Plaintiffs and the proposed Class, consistent with contemporary scientific principles.  Plaintiffs seek injunctive and equitable relief to require the Defendants to respond to the consequences of this tortious contamination by providing the necessary medical monitoring in the form of environmental testing, clean-up, and medical tests as indicated by the results of the scientific evaluation.

192.    Plaintiffs seek this injunctive and equitable relief either in the form of an injunction requiring the Defendants to conduct the necessary monitoring themselves, or in the form of a court-ordered and court-supervised fund (with a court-appointed trustee if the court deems that appropriate) to provide for the necessary monitoring.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

193.    Such injunctive and equitable relief will decrease the radioactive contamination risks of Coldwater Creek to the property of Plaintiffs and the proposed Class, decrease the interference with the use and enjoyment of the Banks Property, and further mitigate Plaintiffs' damages.

### COUNT VIII – PUNITIVE DAMAGES
**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

194.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

195.    Defendants committed one or more of the willful, wanton and malicious acts more fully set forth above which individually or cumulatively justify the award of punitive damages in this matter.

196.    Defendants knew or had information from which, in the exercise of ordinary care, should have known that such conduct, as detailed above, created a high degree of probability of injury to Plaintiffs and others similarly situated.

197.    The willful, wanton and malicious acts of Defendants, as detailed above, evidence Defendants' complete indifference to and/or conscious disregard for the safety of Plaintiffs, and others similarly situated.

### COUNT IX – CIVIL CONSPIRACY
**(brought individually by Plaintiffs and on behalf of the Class against all Defendants)**

198.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

199.    Defendants wrongfully and fraudulently agreed and conspired together to injure Plaintiffs and members of the Class, by wrongfully releasing radioactive wastes, as more fully alleged herein.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

200.    Defendants wrongfully and fraudulently agreed and conspired together to take the actions alleged herein giving rise to causes of action for nuisance, trespass, negligence, negligence per se, strict/absolute liability, injunctive relief, and punitive damages as alleged herein.

201.    As a result of the conspiracy of the Defendants, Plaintiffs and members of the Class have suffered damages, as more fully alleged herein.

## COUNT X – INVERSE CONDEMNATION

**(brought individually by all Plaintiffs and on behalf of the Property Damage Subclass against the St. Louis Airport Authority, a department of the City of St. Louis)**

202.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.    The St. Louis Airport Authority, a department of the City of St. Louis, owns and operates St. Louis Lambert International Airport, located partially on the SLAPS.

204.    The St. Louis Airport Authority, a department of the City of St. Louis, damaged and effectively took the property of Plaintiffs and the Property Damage Subclass for public use without just compensation.

205.    The St. Louis Airport Authority, a department of the City of St. Louis,  after taking possession of SLAPS, knowing it was contaminated with radioactive waste, failed to remediate, warn, or otherwise prevent the leaching of wastes and contamination of neighboring properties and Coldwater Creek.

206.    The St. Louis Airport Authority, a department of the City of St. Louis, took affirmative steps after taking possession of SLAPS, to conceal the nature of the contamination.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

207.     The St. Louis Airport Authority, a department of the City of St. Louis, took affirmative steps after taking possession of SLAPS that ensured that radioactive wastes would be leached from the site into Coldwater Creek.

208.     The actions of St. Louis Airport Authority, a department of the City of St. Louis, in damaging and effectively taking Plaintiffs' property, was for public use, specifically, in the operation and maintenance of St. Louis Lambert International Airport.

209.     The conduct of the St. Louis Airport Authority, a department of the City of St. Louis, as alleged herein constituted and invasion and appropriation of the property rights of Plaintiffs and the Property Damage Subclass.

210.     The actions of the St. Louis Airport Authority, a department of the City of St. Louis, as alleged herein, directly and specially affects the property rights of Plaintiffs, in that the hazardous, toxic, carcinogenic, radioactive contamination originating from the St. Louis Airport, which has contaminated the one hundred year floodplain of Coldwater Creek, renders their property valueless.

### COUNT XI – VIOLATION OF ARTICLE I § 10 OF THE MISSOURI CONSTITUTION
**(brought individually by all Plaintiffs and on behalf of the Property Damage Subclass against the St. Louis Airport Authority, a department of the City of St. Louis)**

211.     Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

212.     Article I § 10 of the Missouri Constitution states "that no person shall be deprived of life, liberty or property without due process of law."

213.     Plaintiffs and Class had, and have, an established constitutional right not to be deprived of their personal property without due process of law.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

214.    The conduct of the St. Louis Airport Authority, a department of the City of St. Louis, in contaminating the Coldwater Creek one hundred year flood plain with hazardous, toxic, carcinogenic, radioactive wastes, as alleged herein, and thereby depriving Plaintiffs of the use and enjoyment of their land, without due process of law, violated Plaintiffs' and Class' due process and property rights under Article I § 10 of the Missouri Constitution.

215.    As a result of Defendants' conduct, Plaintiffs and Class had, or will have, their constitutional rights violated and will thus suffer irreparable harm if this Court does not enter an injunction or other equitable relief.

### COUNT XII – VIOLATION OF ARTICLE I § 26 OF THE MISSOURI CONSTITUTION
### (brought individually and on behalf of the Property Damage Subclass against the St. Louis Airport Authority, a department of the City of St. Louis)

216.    Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

217.    Article I § 26 of the Missouri Constitution states that "private property shall not be taken or damaged for public use without just compensation."

218.    The St. Louis Airport Authority, a department of the City of St. Louis, after taking possession of SLAPS, knowing it was contaminated with radioactive waste, failed to remediate, warn, or otherwise prevent the leaching of wastes and contamination of neighboring properties and Coldwater Creek.

219.    The conduct of the St. Louis Airport Authority, a department of the City of St. Louis, in contaminating the Coldwater Creek one hundred year flood plain with hazardous, toxic, carcinogenic, radioactive wastes, as alleged herein, damaged and effectively took private property of Plaintiffs and the Property Damage Subclass.

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

220.    Neither the St. Louis Airport Authority, the City of St. Louis, nor anyone else, has provided compensation for these takings to Plaintiffs or the Property Damage Subclass.

## PRAYER FOR RELIEF

**WHEREFORE**, as to each Count, and all Counts, Plaintiffs Tamia Banks, Ronnie Hooks, Barbara Hooks, Joel Hogan, Kenneth Niebling, Kendall Lacy, Tanja Lacy, Willie Clay, Bobbie Jean Clay, Angela Statum, and Missouri Rentals Company, LLC, pray for judgment in favor of Plaintiffs and against Defendants Cotter Corporation, Commonwealth Edison Company, DJR Holdings, Inc. f/k/a Futura Coatings, Inc., and the St. Louis Airport Authority, a department of the City of St. Louis, as well as awarding the following to Plaintiffs and against Defendants:

a.   an award of actual, general, special, incidental, statutory, compensatory and consequential damages in an amount to be proven at trial, including compensatory damages for the loss and use of enjoyment of Plaintiffs' property; annoyance and discomfort; damage to Plaintiffs' personal property; the diminution in the market value of Plaintiffs' property; as well as the costs and expenses incurred as a result of Plaintiffs' exposure to radioactive emissions, including costs of remediation and relocation;

b.   an award of double damages for malicious trespass as provided for under RSMo. § 537.330;

c.   an award of punitive and exemplary damages as fair and reasonable in an amount sufficient to punish Defendants and to deter similar conduct in the future;

d.   costs and attorney fees;

e.   interest on the above amounts as allowed by law;

f.   for appropriate injunctive and equitable relief, as permitted by law or equity

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

including a preliminary and/or permanent injunction enjoining Defendants from continuing the unlawful conduct as set forth herein and directing Defendants to identify, with Court supervision, members of the Class in order to compensate them and to clean up all contamination, and including medical monitoring; and

g.  for any further relief this Court deems just and proper.

Dated:  October 29, 2019                         Respectfully submitted,

KEANE LAW LLC

/s/ *Nathaniel R. Carroll*
Ryan A. Keane, # 62112
Nathaniel R. Carroll, #67988
7777 Bonhomme Ave., Ste. 1600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
nathaniel@keanelawllc.com

JOHNSON GRAY, LLC
Anthony D. Gray, # 51534
319 North 4th Street, Suite 212
St. Louis, MO 63102
Phone: (314) 385-9500
agray@johnsongraylaw.com

COOPER LAW FIRM, L.L.C.
Stuart Smith LA Bar # 17805 *pro hac vice*
Barry J. Cooper, Jr., TX Bar # 24057527 *pro hac vice*
Celeste Brustowicz, LA Bar # 16835 *pro hac vice*
Victor Cobb LA Bar # 36830 *pro hac vice*
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
ssmith@sch-llc.com
bcooper@sch-llc.com
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

and

Electronically Filed - St Louis County - October 29, 2019 - 04:59 PM

Kevin W. Thompson (WV Bar #5062) *pro hac vice*
David R. Barney, Jr. (WV Bar #7958) *pro hac vice*
2030 Kanawha Boulevard, East
Charleston, WV  25311
Telephone:  304-343-4401
Facsimile:   304-343-4405
Email:  kwthompson@gmail.com

*Attorneys for Plaintiffs and proposed Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 29, 2019, a true and accurate copy of the foregoing was served by filing it in the court's electronic filing system, which will provide electronic notice to all parties and attorneys of record.

/s/ *Nathaniel R. Carroll*