IN THE TWENTY-FIRST JUDICIAL CIRCUIT COURT
ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| TAMIA BANKS, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>COTTER CORPORATION (N.S.L.), et al.,<br><br>　　　　Defendants.<br><br>COTTER CORPORATION (N.S.L.),<br><br>　　　　Third-Party Plaintiff,<br><br>v.<br><br>MALLINCKRODT LLC, EVERZINC USA INC., BRIDGETON LANDFILL, LLC, REPUBLIC SERVICES, INC., ALLIED SERVICES, LLC, WESTLAKE LANDFILL, INC., and ROCK ROAD INDUSTRIES, INC.,<br><br>　　　　Third-Party Defendants. | Case No. 18SL-CC00617-01<br>Division No. 17 |

**THIRD-PARTY PETITION**

Defendant Cotter Corporation (N.S.L.) ("Cotter") brings this Third-Party Petition against Mallinckrodt LLC ("Mallinckrodt"), EverZinc USA Inc. ("EverZinc"), Bridgeton Landfill LLC ("Bridgeton"), Republic Services, Inc. ("Republic"), Allied Services, LLC ("Allied"), Westlake Landfill, Inc. ("Westlake"), and Rock Road Industries, Inc. ("Rock Road") under Missouri Supreme Court Rule 52.11.

## PARTIES

1. Cotter is a New Mexico corporation with its principal place of business in Colorado.

2. Mallinckrodt is a Delaware limited liability company with its principal place of business in Missouri. Mallinckrodt is the successor to Mallinckrodt Chemical Works and other predecessor entities.

3. EverZinc is a New York corporation with its principal place of business in North Carolina. EverZinc is the successor to African Metals Corporation and other predecessor entities. Upon information and belief, African Metals Corporation was incorporated under the laws of the State of New York; African Metals Corporation changed its name to Afrimet-Indussa Inc.; Afrimet-Indussa Inc. changed its name to Sogem-Afrimet Inc.; Sogem-Afrimet Inc. changed its name to Sogem USA Inc.; Sogem USA Inc. changed its name to Umicore Marketing Services USA Inc.; and Umicore Marketing Services USA Inc. changed its name to EverZinc USA Inc.

4. Republic is a Delaware corporation with its principal place of business in Arizona.

5. Bridgeton is a Delaware limited liability company with its principal place of business is in Missouri.

6. Westlake is a Missouri corporation with its principal place of business in Missouri.

7. Allied is a Delaware limited liability company with its principal place of business in Arizona.

8. Rock Road is a Missouri corporation with its principal place of business in Missouri.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this cause of action because the alleged acts took place in St. Louis County, Missouri.

10. This Court has jurisdiction over the third-party defendants because, under R.S. Mo. § 506.500.1, either they have their principal place of business in Missouri or they otherwise transacted business and committed the alleged acts that form the basis of this cause of action within Missouri, so that they have purposely availed themselves of Missouri law and could reasonably anticipate defending a lawsuit in Missouri.

11. Venue is proper because, under R.S. Mo. § 508.010.4, Plaintiffs claim they were allegedly first injured in St. Louis County, Missouri.

## FACTS COMMON TO ALL COUNTS

### Direct Allegations Against Defendants

12. Plaintiffs filed a Second Amended Class-Action Petition against Defendants, a copy of which is attached as Exhibit 1 under Missouri Supreme Court Rules 55.10 and 55.12.

13. Plaintiffs allege that Defendants are responsible for causing or contributing to radioactive contamination throughout various areas in St. Louis County, Missouri, including Coldwater Creek, the St. Louis Airport Site, the Latty Avenue Site, transit routes, and the alleged Class Area.

14. Plaintiffs allege property damage and personal injury as a result of alleged contamination.

## **Third-Party Allegations Against Mallinckrodt**

## **Mallinckrodt's Uranium Operations**

15.  Beginning in World War II, and continuing thereafter, Mallinckrodt contracted with the United States Government in developing the atomic bomb and operated at the St. Louis Downtown Site and the St. Louis Airport Site.

16.  The St. Louis Downtown Site consisted of 210 acres of land on the eastern border of St. Louis, including 44.5 acres occupied by Mallinckrodt and 165 acres of vicinity properties. The Mallinckrodt portion was also known as the Destrehan Street facility.

17.  Under its contract with the United States Government, Mallinckrodt developed a uranium refining process to furnish pure uranium compounds.

18.  From 1942 through 1957, Mallinckrodt refined uranium ores and concentrates at the Destrehan Street facility, leading to radionuclide-containing residues that included K-65, C-701, interim residue plant tailings, scrap metal, Belgian Congo raffinates, Colorado raffinates, C-slag, leached and unleached barium sulfate, and other materials.

19.  From 1942 through 1957, Mallinckrodt manufactured, produced, used, handled, and stored radioactive wastes and other materials at the St. Louis Downtown Site.

20.  In 1946, the United States Government contracted with the State of Missouri to store radioactive wastes and other materials produced by Mallinckrodt at the St. Louis Airport Site.

21.  From 1946 through 1957, Mallinckrodt had radioactive wastes and other materials handled and transported from the St. Louis Downtown Site to the St. Louis Airport Site.

22.  From 1953 until at least 1966, Mallinckrodt operated the St. Louis Airport Site.

23. From 1946 through 1966, Mallinckrodt had radioactive wastes and other materials used, handled, and stored at the St. Louis Airport Site.

### Mallinckrodt's Columbium-Tantalum Operations

24. Between 1956 and 1985, Mallinckrodt conducted columbium-tantalum operations at the Mallinckrodt St. Louis Plant, which generated unreacted ore containing uranium and thorium and other byproducts.

25. After the shutdown and decommissioning of its uranium ore processing unit, Mallinckrodt extracted columbium-tantalum pentoxide and byproduct uranium oxide from euxenite ore.

26. Mallinckrodt's columbium-tantalum operations involved the following: crushing and milling the ore; leaching with hydrofluoric and sulfuric acids; purification by extraction and precipitation; separation of metal fluorides by fractional crystallization; and washing, drying, and calcining the metals to several columbium-tantalum products.

27. Mallinckrodt had rare earth and thorium residues delivered to the United States General Services Administration and had the residuals and other materials stored, handled, processed, transported, and disposed offsite from the columbium-tantalum operations.

28. In mid-1961, Mallinckrodt applied a modified process for separation and recovery of columbium-tantalum products, through which approximately half of the natural thorium in the feedstock was retained in the insoluble residue (designated as unreacted ore #1) and the remainder was concentrated in the raffinate after columbium-tantalum extraction.

29. Mallinckrodt had the raffinate and unreacted ore #1 stored, handled, processed, transported, and disposed of from the columbium-tantalum operations.

30. Upon completion of its contract with the United States Government, Mallinckrodt converted its columbium-tantalum unit into a commercial processing unit utilizing similar processes, except natural uranium in the columbite ore remained in the acid insoluble residue, designated as unreacted ore #10.

31. Mallinckrodt caused the radioactive wastes and other materials from the columbium-tantalum operations to be used, stored, handled, transported, and disposed of at landfills in the St. Louis area, including West Lake Landfill.

32. Soil samples and other material analyzed during the remedial investigation process for West Lake Landfill have marks of Mallinckrodt's unreacted ore.

### Mallinckrodt's Other Commercial Operations

33. Mallinckrodt disposed of thorium-containing waste and other effluents from its commercial operations at the Mallinckrodt St. Louis Plant into local water bodies and sewers in the St. Louis area, and some of these wastes and effluents were transported to West Lake Landfill.

34. Before the establishment of the St. Louis Metropolitan Sewer District's Bissel Point Treatment Plant, Mallinckrodt had its process, storm, and sanitary effluents collected in a combined sewer system and discharged directly into the Mississippi River, according to the Formerly Utilized Sites Remedial Action Program of the United States Army Corps of Engineers.

35. After 1970, Mallinckrodt had thorium-containing waste and other effluents disposed into sewers that went to the St. Louis Metropolitan Sewer District's Bissel Point Treatment Plant, according to the Formerly Utilized Sites Remedial Action Program of the United States Army Corps of Engineers.

36.     Mallinckrodt had the unreacted ore containing thorium and uranium disposed into the plant sewer, which in turn was discharged to the Metropolitan St. Louis Sewer System, according to Mallinckrodt's July 1977 Application for Source Material License.

37.     Mallinckrodt recovered columbium-tantalum (C-T) operations values from shipping bags, containers, filter press cakes, filter clothes, etc. by first burning, then dissolving the incinerator ash with the incoming ore, and then disposing the residues via the plant sewer, which in turn is discharged to the Metropolitan St. Louis Sewer System.

38.     Mallinckrodt had soluble radionuclides and fine, dispersible solids containing radionuclides discharged to the plant sewer routinely, which in turn is discharged to the Metropolitan St. Louis Sewer System, according to Mallinckrodt's March 1981 Application for Source Material License.

39.     Mallinckrodt had loose material (*i.e.*, material not qualifying as regulated source material but containing low concentrations of uranium and/or thorium) collected, transported, and disposed of at landfills in the St. Louis area, which, upon information and belief, included West Lake Landfill.

### Third-Party Allegations Against EverZinc

40.     In the 1940s, the United States Government purchased ores containing uranium from African Metals n/k/a EverZinc.

41.     African Metals n/k/a EverZinc owned, sold, and distributed pitchblende ores containing uranium that Mallinckrodt processed at the St. Louis Downtown Site.

42.     African Metals n/k/a EverZinc retained ownership of the radioactive wastes and other materials generated by Mallinckrodt except for the uranium content.

43. African Metals n/k/a EverZinc had the radioactive wastes and other materials stored at the St. Louis Airport Site under lease agreements with the United States Government.

44. From approximately 1946 through 1957, the radioactive wastes and other materials were transported from the St. Louis Downtown Site to the St. Louis Airport Site.

45. Upon information and belief, in June 1959, African Metals n/k/a EverZinc abandoned ownership and disposed of the radioactive wastes and other materials.

46. Between approximately May 1966 and December 1966, the radioactive wastes and other materials abandoned by African Metals n/k/a EverZinc—including leached barium sulfate residue—were transported by truck from the St. Louis Airport Site to the Latty Avenue Site.

47. Between approximately July 1973 to October 1973, leached barium sulfate residue abandoned by African Metals n/k/a EverZinc was transported by truck from the Latty Avenue Site to the West Lake Landfill.

### Third-Party Allegations Against the Landfill Defendants

48. From 1962 to 1988, West Lake Landfill was owned and operated by Westlake.

49. During this period, Westlake accepted a variety of demolition material, manufacturing wastes and byproducts, and sanitary waste at West Lake Landfill.

50. Westlake accepted hazardous substances referenced above, as residues from the production of insecticides and herbicides, waste ink, esters, halogenated intermediates, heavy metals, oils, wastewater sludges, and asbestos.

51. Some of this material also contained the radioactive waste referenced above, including the 8,700 pounds of leached barium sulfate.

52. On July 29, 1988, Laidlaw acquired the stock of Westlake.

53. Westlake changed its name to Laidlaw Waste Systems (Bridgeton) Inc. and continued to operate West Lake Landfill until 1998.

54. Rock Road purchased a portion of West Lake Landfill containing radioactive waste, and has owned, operated, and managed the portion of West Lake Landfill, and accepted and disposed of hazardous waste at West Lake Landfill.

55. In 1998, Laidlaw Waste Systems (Bridgeton), Inc. (i.e., Westlake) merged into Bridgeton.

56. Rock Road also merged into Bridgeton.

57. Bridgeton is the successor-in-interest to Westlake and Rock Road.

58. Bridgeton and its sole member (Allied), either directly or through Westlake and Rock Road, have owned, operated, and managed West Lake Landfill and have accepted and disposed of hazardous waste at West Lake Landfill.

59. In 2008, Republic acquired Bridgeton as the successor-in-interest to Westlake and Rock Road.

60. Since that time, Republic has overseen and directed the environmental activities of Allied, Bridgeton, Rock Road, and Westlake (collectively, the "Landfill Defendants") with respect to West Lake Landfill.

61. In 2010, the Landfill Defendants reported to the Missouri Department of Natural Resources that a portion of West Lake Landfill was experiencing elevated temperatures in certain gas extraction wells, suggesting subsurface smoldering.

62. Shortly thereafter, the smoldering intensified into a subsurface combustion fire, which caused odors and hazardous substances to be released into the air.

63. These emissions persisted through at least 2012, when the State of Missouri tested the ambient air around West Lake Landfill and determined the air exceeded ambient concentration levels for benzene and acetaldehyde.

64. In 2013, and continuing thereafter, portions of West Lake Landfill have generated approximately 150,000 gallons each day of leachate, which the Landfill Defendants treated on site before transporting to disposal facilities in Missouri and Illinois.

65. The leachate contained hazardous substances and was released from West Lake Landfill into the surrounding environment and groundwater.

66. The Landfill Defendants, either directly or through their subsidiaries and predecessors, have accepted and disposed of radioactive waste and other hazardous substances at West Lake Landfill.

67. The Landfill Defendants, either directly or through their subsidiaries and predecessors, have caused or contributed to the improper handling, storage, or disposal of the radioactive waste and other hazardous substances at West Lake Landfill.

## COUNT 1
## CONTRIBUTION AGAINST MALLINCKRODT

68. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

69. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

70. Mallinckrodt owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

71. Mallinckrodt failed to use reasonable care that resulted in releases from the St. Louis Downtown Site, the St. Louis Airport Site, the Latty Avenue Site, the West Lake Landfill,

Mallinckrodt St. Louis Plant, and transit routes into the surrounding environment, including the alleged Class Area.

72.     In the unlikely event that Cotter is found liable to Plaintiffs' alleged damages, which Cotter denies, Mallinckrodt is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Mallinckrodt for any alleged damages that may be assessed against Cotter.

73.     In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Mallinckrodt, thereby barring any such recovery against Cotter.

74.     In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Mallinckrodt and any such liability must be limited to the percentage of fault apportioned to Cotter.

75.     Accordingly, the jury should award Cotter against Mallinckrodt any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

**COUNT 2**
**CONTRIBUTION AGAINST EVERZINC**

76.     Cotter adopts by reference the allegations in Paragraphs 1 through 67.

77.     Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

78.     EverZinc owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

79. EverZinc failed to use reasonable care that resulted in releases from the St. Louis Downtown Site, the St. Louis Airport Site, the Latty Avenue Site, the West Lake Landfill, and transit routes into the surrounding environment, including the alleged Class Area.

80. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, EverZinc is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from EverZinc for any alleged damages that may be assessed against Cotter.

81. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of EverZinc, thereby barring any such recovery against Cotter.

82. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of EverZinc and any such liability must be limited to the percentage of fault apportioned to Cotter.

83. Accordingly, the jury should award Cotter against EverZinc any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

## COUNT 3
## CONTRIBUTION AGAINST REPUBLIC

84. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

85. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

86. Republic owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

87. Republic failed to use reasonable care that resulted in releases from West Lake Landfill and transit routes into the surrounding environment, including the alleged Class Area.

88. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, Republic is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Republic for any alleged damages that may be assessed against Cotter.

89. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Republic, thereby barring any such recovery against Cotter.

90. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Republic and any such liability must be limited to the percentage of fault apportioned to Cotter.

91. Accordingly, the jury should award Cotter against Republic any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

## COUNT 4
## CONTRIBUTION AGAINST BRIDGETON

92. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

93. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

94. Bridgeton owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

95. Bridgeton failed to use reasonable care that resulted in releases from West Lake Landfill and transit routes into the surrounding environment, including the alleged Class Area.

96. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, Bridgeton is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Bridgeton for any alleged damages that may be assessed against Cotter.

97. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Bridgeton, thereby barring any such recovery against Cotter.

98. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Bridgeton and any such liability must be limited to the percentage of fault apportioned to Cotter.

99. Accordingly, the jury should award Cotter against Bridgeton any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

**COUNT 5**
**CONTRIBUTION AGAINST ALLIED**

100. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

101. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

102. Allied owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

103. Allied failed to use reasonable care that resulted in releases from West Lake Landfill and transit routes into the surrounding environment, including the alleged Class Area.

104. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, Allied is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Allied for any alleged damages that may be assessed against Cotter.

105. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Allied, thereby barring any such recovery against Cotter.

106. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Allied and any such liability must be limited to the percentage of fault apportioned to Cotter.

107. Accordingly, the jury should award Cotter against Allied any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

## COUNT 6
## CONTRIBUTION AGAINST ROCK ROAD

108. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

109. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

110. Rock Road owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

15

111. Rock Road failed to use reasonable care that resulted in releases from West Lake Landfill and transit routes into the surrounding environment, including the alleged Class Area.

112. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, Rock Road is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Rock Road for any alleged damages that may be assessed against Cotter.

113. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Rock Road, thereby barring any such recovery against Cotter.

114. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Rock Road and any such liability must be limited to the percentage of fault apportioned to Cotter.

115. Accordingly, the jury should award Cotter against Rock Road any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

## COUNT 7
## CONTRIBUTION AGAINST WESTLAKE

116. Cotter adopts by reference the allegations in Paragraphs 1 through 67.

117. Cotter denies fault for Plaintiffs' alleged damages and preserves all affirmative and other defenses.

118. Westlake owed Plaintiffs a duty as alleged in the Second Amended Class-Action Petition.

119. Westlake failed to use reasonable care that resulted in releases from West Lake Landfill and transit routes into the surrounding environment, including the alleged Class Area.

120. In the unlikely event that Cotter is found liable for Plaintiffs' alleged damages, which Cotter denies, Westlake is a joint tortfeasor who is liable, in whole or in part, for Plaintiffs' alleged damages, and Cotter is entitled to contribution (or to the extent available, indemnification) from Westlake for any alleged damages that may be assessed against Cotter.

121. In the unlikely event that any damages are assessed against Cotter, which Cotter denies, any such damages were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Westlake, thereby barring any such recovery against Cotter.

122. In the unlikely event that any fault is assessed against Cotter, which Cotter denies, any such fault must be compared to the fault of Westlake, and any such liability must be limited to the percentage of fault apportioned to Cotter.

123. Accordingly, the jury should award Cotter against Westlake any amount assessed against Cotter that is more than Cotter's percentage of fault and award Cotter such proportion of the total sum paid as corresponds to Cotter's percentage of fault.

### REQUEST FOR RELIEF

124. **WHEREFORE**, Cotter Corporation (N.S.L.) requests judgment in its favor on its Third-Party Petition against Mallinckrodt LLC, EverZinc USA Inc., Bridgeton Landfill LLC, Republic Services, Inc., Allied Services, LLC, Westlake Landfill, Inc., and Rock Road Industries, Inc., an award of court costs, and any further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Cotter Corporation (N.S.L.) demands a trial by jury of all issues so triable by right.

Dated: June 30, 2020

Respectfully submitted,

*/s/ Brian O. Watson*
RILEY SAFER HOLMES & CANCILA LLP
Edward Casmere, #64326MO
Brian O. Watson, #68678MO
Jennifer Steeve, Pro Hac Vice
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (main)
(312) 471-8701 (fax)
ecasmere@rshc-law.com
bwatson@rshc-law.com
jsteeve@rshc-law.com
docketdept@rshc-law.com

SWANSON, MARTIN & BELL, LLP
Marcie J. Vantine, #56860MO
mvantine@smbtrials.com
One Bank of America Plaza
800 Market Street, Suite 2100
St. Louis, MO 63101
314.242.0903 (telephone)
314.242.0990 (facsimile)

**ATTORNEYS FOR DEFENDANT
COTTER CORPORATION (N.S.L.)**

Electronically Filed - St Louis County - June 30, 2020 - 03:43 PM

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2020, these papers were filed through the Missouri Court's eFiling system, which will automatically serve an electronic copy upon all counsel of record.

          Respectfully submitted,

          */s/ Brian O. Watson*
          RILEY SAFER HOLMES & CANCILA LLP
          Edward Casmere, #64326MO
          Brian O. Watson, #68678MO
          Jennifer Steeve, Pro Hac Vice
          70 W. Madison St., Ste. 2900
          Chicago, Illinois 60602
          (312) 471-8700 (main)
          (312) 471-8701 (fax)
          ecasmere@rshc-law.com
          bwatson@rshc-law.com
          jsteeve@rshc-law.com
          docketdept@rshc-law.com

4815-2793-5930, v. 6