IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TAMIA BANKS, et al.,

        Plaintiffs,

    v.

COTTER CORPORATION (N.S.L.), et al.,

        Defendants.

Case No. 4:20-cv-01227

**ORAL ARGUMENT REQUESTED**

COTTER CORPORATION (N.S.L.),

        Third-Party Plaintiff,

    v.

MALLINCKRODT LLC, et al.,

        Third-Party Defendants.

**COTTER CORPORATION (N.S.L.)'S OPPOSITION TO PLAINTIFFS'
<u>MOTION TO SEVER AND REMAND ALL NON-THIRD-PARTY CLAIMS</u>**

It is undisputed that this putative class action and Plaintiffs' claims of exposure to radioactive materials stem from an essential source—Mallinckrodt.  As Plaintiffs allege, Mallinckrodt's work on the Manhattan Project brought massive quantities of radioactive materials to the St. Louis area that allegedly caused property damage and personal exposure since World War II.  Second Amended Class Action Petition ("SAP"), attached as Ex. A, ¶ 1.  Mallinckrodt, at the direction of the United States government under a contract and indemnity agreement, was the original company processing, handling, and storing these radioactive materials.  *See* SAP ¶¶ 1, 64, 69, 77.  That contract and indemnity agreement trigger this Court's federal jurisdiction under the Price-Anderson Act and federal officer removal statute.

Plaintiffs sued Cotter, the other defendants, and the third-party defendants for the legacy liabilities for that Mallinckrodt Manhattan Project material.  Splitting this putative class action into multiple jurisdictions with divergent legal standards, as Plaintiffs request, would contradict Eight Circuit precedent and multiply, prolong, and complicate this litigation to the point of administrative absurdity.  Plaintiffs' motion should be denied.

## BACKGROUND

### I.      Relevant Procedural Background

On February 21, 2018, Plaintiffs filed this action in Missouri state court.  ECF No. 1 at 3. On April 18, 2018, Defendants timely removed the action to this Court because Plaintiffs' action arises out of the Price-Anderson Act, 42 U.S.C. § 2011 *et seq.*  Notice of Removal, attached as Ex. B.  Based on the limited record before it at the time, including Plaintiffs' assertions that only "mill tailings" were at issue and that "mill tailings" were not part of Cotter's license, this Court remanded because "there cannot be a nuclear incident without an applicable license or indemnity agreement."  *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR, 2019 WL 1426259, at *7–8 (E.D. Mo. Mar. 29, 2019), attached as Ex. C.[1]

In Missouri state court, Plaintiffs filed the SAP.  Ex. A.  Cotter then moved to dismiss and later substituted counsel.  ECF No. 1-5 at PageID 903, 1353, 1497.[2]  At the end of April 2020, the court ultimately ruled on Cotter's motion to dismiss.  *Id.* at PageID 1506.  The court ordered Plaintiffs to file a third amended petition to correct the deficiencies in their SAP.  *Id.* at PageID 1507.  The court also denied as moot Cotter's motion to dismiss based on the Price-Anderson Act because Cotter withdrew the motion and preserved the issue for ruling on a more

---

[1] Defendants' June 19, 2018 Memorandum of Law in Opposition to Plaintiffs' Motion for Remand, with exhibits, is attached as Ex. D.
[2] For ease of reference, Cotter cites the PACER PageID designation because much of the state court record is contained in one docket entry.  *See* ECF No. 1.

developed record.  *Id.* at PageID 1507, 1474.  Before Plaintiffs filed a third amended petition

(which they still have not done) and before Defendants had to respond, Cotter filed its Third-

Party Petition against the Third-Party Defendants.  *Id.* at PageID 1576, attached as Ex. E.

After Plaintiffs represented to this Court during remand briefing that they alleged

exposure only to "mill tailings," Plaintiffs propounded discovery requests in state court showing

that they actually claimed exposure to materials far broader than "mill tailings":

> "Radioactive Material" refers to: 1) any material spontaneously emitting energetic
> particles by the disintegration of their atomic nuclei, whether naturally occurring or
> artificial; 2) residues containing uranium and/or thorium; 3) uranium and/or thorium *mill
> tailings*; 4) any materials that you produce, process, or dispose of in connection with your
> possession and/or storage of residues containing uranium and/or thorium, uranium and/or
> thorium *mill tailings* or other uranium ore at or around SLAPS, Latty Avenue Site, and/or
> Coldwater Creek; and/or 5) any other polluting or poisonous substance used or stored at
> SLAPS, Latty Avenue Site, and/or Coldwater Creek in any operation.[3]

On September 10, 2020, Mallinckrodt timely removed this action with the applicable

government contract and indemnity agreement, and with all defendants' consent, under 28

U.S.C. §§ 1331, 1441, 1442, 1446 and 42 U.S.C. § 2210 *et seq*.  ECF No. 1.  Tellingly, in their

motion, Plaintiffs do not argue any defect in Mallinckrodt's removal.  ECF Nos. 47–48.

## II.    Relevant Factual Background

Plaintiffs allege "widespread" property contamination and personal exposure to

radioactive materials from various sites into Coldwater Creek.  SAP ¶¶ 99–220.  Plaintiffs claim

that, since World War II, "big companies" processed, handled, and stored these radioactive

materials in the St. Louis area.  SAP ¶ 1.  According to Plaintiffs, radioactive wastes have, since

1946, migrated from the St. Louis Airport Site ("SLAPS"), Hazelwood Interim Storage Site

("HISS"), and the Latty Avenue Site into Coldwater Creek, and have been released and

---

[3] Pls.' Req. Prod. Cotter, attached as Ex. F; Pls.' Interrog. Cotter, attached as Ex. G; Pls.' Req.
Prod. ComEd, attached as Ex. H; Pls.' Interrog. ComEd, attached as Ex. I; Pls.' Second Req.
Prod. ComEd, attached as Ex. J; Pls.' Second Interrog. ComEd, attached as Ex. K.

deposited along the entire one-hundred-year floodplain.  SAP ¶ 88.  Thus, Plaintiffs assert two

putative classes, for property damage and medical monitoring, on behalf of all Missouri citizens

who owned or resided since 1973 in the floodplain of Coldwater Creek.  SAP ¶¶ 32–36.

The massive scale of the contamination and exposure that Plaintiffs allege is shown by

the "Banks Proposed Class Area" depicted in the blue, one-hundred-year floodplain below:[4]



But Plaintiffs only sued Cotter, Commonwealth Edison Co. ("ComEd"), DJR Holdings,

Inc. f/k/a Futura Coatings, Inc.'s ("Futura Coatings"), and the St. Louis Airport Authority

("Airport").  Plaintiffs allege Cotter's limited involvement in handling radioactive waste from

1969 until 1973 (SAP ¶ 72), ComEd's involvement only as the former parent company of Cotter

---

[4] The "Kitchin Proposed Class Area" depicted refers to the putative class action filed by
Plaintiffs' counsel in *Kitchin v. Bridgeton Landfill*, No. 4:18-cv-00672-CDP (E.D. Mo.), on
appeal, No. 19-02072 (8th Cir.).  *Kitchin* also involves claims against the Landfill Defendants for
the radioactive materials.  The area between the "Banks Proposed Class Area" and "Kitchin
Proposed Class Area" is the Airport and sites at issue, and Coldwater Creek flows through a
channel under the Airport.  SAP ¶ 84; *see also id.* at ¶ 61 n.4.

(SAP ¶ 29), Futura Coatings' involvement as a property owner of the Latty Avenue Site (SAP ¶¶ 81–82), and the Airport as a property owner of SLAPS (SAP ¶ 79).

Plaintiffs admit that Mallinckrodt produced the radioactive materials between 1946 and the 1960s. *See* SAP ¶ 1.  According to Plaintiffs, Mallinckrodt began processing, handling, and storing radioactive materials in the St. Louis area six decades ago when it received in downtown St. Louis City highly concentrated uranium with abnormal levels of radium from Africa. *Id*. The radioactive materials Mallinckrodt processed—hundreds of thousands of tons of it—resulted from uranium operations at the St. Louis Downtown Site (SLDS). *Id*. ¶¶ 64, 76.  The materials were then transported from downtown to the St. Louis Airport Site (SLAPS). *Id.* ¶ 76. Mallinckrodt operated and managed SLAPS beginning in 1953. *Id*. ¶¶ 76– 77.  During the 1960s, Plaintiffs allege that the materials "were removed from the SLAPS" in various stages. *Id.* ¶ 81.  Some of these materials were brought to HISS and the Latty Avenue Site. *Id.*  Cotter did not enter the picture until late 1969. *Id.* ¶¶ 69, 72.

Contrary to their argument on the prior remand, Plaintiffs allege property contamination and personal exposure to *all* radioactive material that allegedly migrated from SLAPS, Latty Avenue, and HISS. *See* SAP ¶¶ 1, 66, 76, 85.  These materials, as Plaintiffs' SAP makes clear, include Radium-Bearing Residues (K-65), Refined Cake, Barium Sulfate Cake (AJ-4), C-liner Slag, Pitchblende Raffinate Residues (AM-7), and Colorado Raffinate Residues (AM-10). *Id*. ¶¶ 66, 76; *see also id.* ¶ 62 at n.5 (citing Robert Alvarez, The West Lake Landfill: A Radioactive Legacy of the Nuclear Arms Race at 14 (2013), noting presence of Pitchblende Raffinate (AM-7), Colorado Raffinate (AM-10), Barium Sulfate Cake (AJ-4), Barium Sulfate Cake (AJ-4 8), Radium Bearing Residues (K-65), Vitro Residues (C-6), Captured Japanese Uranium containing sand (V-10), C-Liner Slag, and Scrap Metal, in addition to Interim Residue Plant Tailings),

*available at* ips-dc.org/wp-content/uploads/2013/11/West-Lake-Landfill-Radioactive-Legacy.pdf).

Mallinckrodt's experts have concluded that these radioactive materials were source material subject to the federal license requirements, and not "mill tailings." RAC Expert Report for Mallinckrodt, attached as Ex. 20 to Ex. L, at 3-13, 3-15, 3-20, 4-20. Additionally, John D. Kinneman, an expert health physicist with forty years of regulatory experience, agrees with that conclusion. Decl. John Kinneman, attached as Ex. L, ¶¶ 3, 32–35. As Mr. Kinneman explains, Cotter's possession and use of these materials were subject to federal licensing requirements and regulatory oversight, identified as source material, and regulated throughout the relevant period. *Id.* at ¶¶ 1–37.

Although Plaintiffs' motion focuses entirely on Mallinckrodt's removal, African Metals Corp., a predecessor-in-interest to EverZinc USA Inc. ("EverZinc"), yet another government contractor, and the Landfill Defendants are sued as third parties because they also caused or contributed to the contamination and exposure that Plaintiffs allege. ECF No. 14 ¶¶ 40–43.

## LEGAL STANDARD

The order on Plaintiffs' motion to sever and remand is directly appealable and reviewed de novo. *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996) (reviewing de novo and reversing remand order under § 1367); *Johnson v. Humphreys*, 949 F.3d 413, 415 (8th Cir. 2020).

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental

6

jurisdiction shall include claims that involve the joinder or intervention of additional parties."

The district court may decline to exercise supplemental jurisdiction over a claim if, among other

reasons not relevant here, it "substantially predominates over the claim or claims over which the

district court has original jurisdiction," or "in exceptional circumstances, there are other

compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(2) & (4).

When deciding whether to exercise supplemental jurisdiction, "a federal court should

consider and weigh in each case, and at every stage of the litigation, the values of judicial

economy, convenience, fairness, and comity."  *City of Chicago v. Int'l Coll. of Surgeons*, 522

U.S. 156, 173 (1997).  The court may also consider whether the plaintiff has "attempted to

manipulate the forum."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

Along with supplemental jurisdiction, Federal Rule of Civil Procedure 19 requires joinder

of a party if "that person claims an interest relating to the subject of the action and is so situated

that disposing of the action in the person's absence may: (i) as a practical matter impair or

impede the person's ability to protect the interest; or (ii) leave an existing party subject to a

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the

interest."  Fed. R. Civ. P. 19(a)(1)(B).

## ARGUMENT

### I.   Mallinckrodt Is a Required Party to this Litigation Under Rule 19.

Because Mallinckrodt is a required party under Rule 19, Plaintiffs cannot sever it from

the case.  *See Two Shields v. Wilkinson*, 790 F.3d 791, 795, 797 (8th Cir. 2015) (holding that

Rule 19 requires joinder of party whose rights are implicated in the case, even in joint tortfeasor

context); *State Farm Mut. Auto. Ins. Co. v. McQuinn*, 16-6116-CV-SJ-REL, 2017 WL 6403027,

at *3 (W.D. Mo. Jan. 30, 2017) (absent party is required under Rule 19, in part because

proceeding without the party "may subject him to a substantial risk of incurring inconsistent

7

obligations."); *Copperleaf of Kansas City Home Owners Ass'n v. Travelers Cas. & Sur. Co.*, 17-0749-CV-W-BP, 2017 WL 9802862, at *4 (W.D. Mo. Nov. 27, 2017) (absent party is required under Rule 19, even if he could adjudicate his rights in another case); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, 2007 WL 1223510, at *2 (E.D. Mo. 2007) ("[S]everance and transfer are not appropriate where the court retains jurisdiction over a party central to the dispute.").

Here, Plaintiffs seek to impose liability for their alleged personal exposure and property contamination from radioactive materials that allegedly migrated from SLAPS, Latty Avenue, and HISS, to Coldwater Creek and its floodplain.  SAP ¶¶ 1, 62–98.  Plaintiffs admit that *Mallinckrodt* handled, stored, and refined the radioactive materials that they claim migrated to their properties, for two decades, at SLAPS.  *See, e.g.*, SAP ¶¶ 1, 64, 76, 77, 85.  Mallinckrodt did so at the request of, and under a contract and indemnity agreement with, the U.S. government.  *See* SAP ¶ 62; Third-Party Petition ¶¶ 15–39; Notice of Removal, ECF No. 1, ¶¶ 20–32.  Mallinckrodt properly removed this action and invoked the Price-Anderson Act and federal officer removal statute.  Notice of Removal, ECF No. 1, ¶¶ 38–69.

With its unchallenged removal arguments, Mallinckrodt has "claimed an interest relating to the subject of this action."  Fed. R. Civ. P. 19(a)(1)(B)(i).  Mallinckrodt's indemnitor, the U.S. government, has also claimed an interest.  *See* ECF No. 1-16 (indemnity agreement); Brief for the United States, *El Paso Natural Gas Co. v. Neztsosie*, No. 98-6, 1998 WL 858533, at *1 (Dec. 8, 1998) ("the United States has an interest in the efficient and equitable adjudication of nuclear liability claims."), *available at* www.justice.gov/osg/brief/ el-paso-natural-gas-co-v-neztsosie-amicus-merits.[5]  Litigating this action under state law without Mallinckrodt (and, by extension,

_____

[5] Federal courts defer to the U.S. government's stated position on its own regulations.  *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 66 (2011) (government's brief, through the Solicitor General, "as amicus curiae has advanced a reasonable interpretation of its regulations, and we defer to its views"); *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 335 (2011)

without the U.S. government indemnity) would "impair or impede [its] ability to protect the interest" and subject all parties and the U.S. government "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a)(1)(B)(ii).

As just described, Mallinckrodt has an outsized role in the events in Plaintiffs' SAP.  This case is one of many in which Mallinckrodt has been sued for "radioactive exposure in St. Louis County at the same sites at issue here, and the transport of material between them."  Notice of Removal, ECF No. 1, ¶ 79.  Indeed, the Eighth Circuit has held that Price-Anderson Act governs as to Mallinckrodt and Cotter and that "Congress spoke clearly when stating such 'action shall be deemed to be an action arising under' federal law."  *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 972 (8th Cir. 2018) (applying Price-Anderson Act to Mallinckrodt and Cotter's actions related to radioactive material at SLDS, SLAPS, Latty Avenue, HISS, and Coldwater Creek).[6]

If Mallinckrodt's conduct, such as the radioactive contamination attributable to it, is litigated and decided without it, Mallinckrodt could not defend against Plaintiffs' claims or protect from inconsistent judgments in the other radioactive contamination cases to which Mallinckrodt is a party and the U.S. government owes indemnity.  The risk of double, multiple, or otherwise inconsistent obligations also looms for the defendants in this case—both first- and third-party.  If the Court grants severance and remand of Plaintiffs' claims, the first-party defendants would be subject to state remedies in a putative class action untethered to the limits prescribed by the Price-Anderson Act.  *See Halbrook*, 888 F.3d at 972 (applying Price-Anderson

---

(government's brief, through the Solicitor General, "own views should make a difference"); *Chase Bank v. McCoy*, 562 U.S. 195, 208 (2011) ("brief is consistent with the regulatory text, we need look no further in deciding this case").

[6] The facts in *Halbrook* are detailed in *McClurg v. Mallinckrodt, Inc*., 4:12-CV-00361-AGF, 2015 WL 867455, at *2 (E.D. Mo. Feb. 27, 2015), *on reconsideration*, 4:12-CV-00361-AGF, 2016 WL 6432776 (E.D. Mo. Oct. 31, 2016), *aff'd Halbrook*, 888 F.3d at 971.

Act to Mallinckrodt and Cotter); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 64 (1978) (Price-Anderson Act limits the aggregate liability of those subject to its jurisdiction); *Banks*, 2019 WL 1426259, at *3 (same).  Meanwhile, in the federal case for contribution, the third-party defendants would be subject to the Price-Anderson Act, including its limited liability and government indemnification.  For example, Price-Anderson Act bars Plaintiffs' medical monitoring claims, *June v. Union Carbide Corp.*, 577 F.3d 1234, 1249–51 (10th Cir. 2009), while Missouri law recognizes them for exposure from a single source, *Meyer v. Fluor Corp.*, 220 S.W.3d 712, 717 (Mo. 2007).  The results would be flatly inconsistent.

Therefore, Mallinckrodt, as a required party under Rule 19, cannot be severed.

## II. Principles of Judicial Economy, Convenience, Fairness, and Comity Warrant Denial of Severance and Remand.

### A. Severance and remand would multiply this putative class action litigation, defeating judicial economy, convenience, and fairness.

Plaintiffs' motion requesting this putative class action to proceed in *both* state and federal court on the same issues contradicts federal jurisdiction and the Federal Rules of Civil Procedure, departs from Eighth Circuit and this Court's own precedent, and endorses an approach that would eviscerate the substantive and procedural rights of Cotter, the other defendants, the third-party defendants, and the U.S. government.

Judicial economy weighs against severance and remand.  In fact, if severance and remand were granted, this Court would still face re-litigating every step of this putative class action— including the governing law, rulings, discovery, evidence, class certification, and trial—on the retained third-party claims.  At the same time this Court is wrestling with every aspect of the third-party claims, a state court judge would be deciding the same issues using different laws, courts, parties, discovery, evidence, class certification, and trial.  Plaintiffs concede that

severance would waste both this Court's and state court resources.  Mot. at 14 (Mallinckrodt, the Landfill Defendants, and EverZinc "would *not* be bound by the discovery or the determination of liability and damages in the original suit" and instead would "have all the rights and defenses available to them in the contribution claim, independently, that they might otherwise have by participating in the claims that Plaintiffs[] have alleged against Cotter and others.") (citation omitted).

Dueling litigations would also unfairly prejudice defendants, which would have to litigate the same issues in multiple jurisdictions, under different laws, with different parties.[7]  Even *Joyner*, which Plaintiffs cite, stops short of making a party litigate the same claims in federal and state court.  *Joyner v. A.C. & R. Insulation Co*., CIV. CCB-12-2294, 2013 WL 877125, at *10 (D. Md. Mar. 7, 2013) (Because Plaintiff's proposed severance would require a defendant "to conduct simultaneous, parallel litigations in state and federal court," supplemental jurisdiction over all claims involving that defendant was proper.); *cf. Oliver v. Campbell McCormick, Inc.*, CV CCB-16-1057, 2016 WL 3878492, at *1 (D. Md. July 18, 2016) ("unlike in *Joyner*, there is no potential of bifurcating claims against one party between state and federal court[.]").

Plaintiffs' motion to sever and remand is not only inconvenient but also unfair to the rights of everyone involved.  *See Thompson v. Nationwide Affinity Ins. Co. of Am.*, 18-3143-CV-S-SRB, 2018 WL 9945329, at *6 (W.D. Mo. Dec. 12, 2018) (denying severance of third-party claims because the issues to be resolved in the case are "significantly related.  At issue is whether Nationwide is liable … for the damage to Plaintiffs' residence, and if [so], whether the City is at fault and liable for such damage."); *see also Parker v. John Moriarty & Assocs.*, 224 F. Supp. 3d

---

[7] Just as Plaintiffs are the master of their complaint, Cotter is the master of its third-party claims. *See Kelly v. Fullwood Foods, Inc.*, 111 F. Supp. 2d 712, 716 n.3 (D. Md. 2000) ("defendant (third-party plaintiff) must be the master of his own claim.").

1, 16–17 (D.D.C. 2016) (denying severance of third-party claim "in favor of convenience and judicial economy" where it "arise[s] out of the same occurrence, namely Plaintiff Parker's purported exposure to toxic chemicals from leaking underground storage tanks . . . and involve[s] common questions of law and fact, namely whether Plaintiff . . . has prevailed on his claims and, if so, which parties are liable for his damages.").

    **B.  Severance and remand are administratively impossible, and would decide defendants' and third-party defendants' alleged liability under divergent standards.**

As described above, liability under state standards does not translate to liability under the Price-Anderson Act. *See Halbrook*, 888 F.3d at 977; *Duke Power*, 438 U.S. at 64; *June*, 577 F.3d at 1249–51; *Meyer*, 220 S.W.3d at 717. But Plaintiffs' property and tort claims inextricably link all defendants for the alleged contamination and exposure. If Plaintiffs' state-law claims against the direct defendants were decided in state court under state law standards, and Cotter's contribution claims against the third-party defendants were decided in federal court under the Price-Anderson Act, there would be no way to allocate responsibility for Plaintiffs' alleged damages—let alone the "widespread" medical monitoring and property damages for two classes of all Missouri citizens who have owned or resided since 1973 in the floodplain of Coldwater Creek. SAP ¶¶ 6, 32–36.

Plaintiffs' far-reaching claims only highlight why the Price-Anderson Act preempts, rather than supplements, state law. *See Halbrook*, 888 F.3d at 977 (Congress "incorporated state law only to the extent consistent with the Act. Congress spoke clearly when stating such 'action shall be deemed to be an action arising under' federal law.").[8] Because determining liability and

---

[8] As the U.S. government has both indemnified (ECF No. 1-16) and explained, "Price-Anderson Act channels to one source of funds (that is, the DOE indemnification) the payment of all claims arising from the legal liability of any person for a nuclear incident. This 'economic channeling' eliminates the need to sue all potential defendants or to allocate legal liability among multiple

allocating responsibility from the same facts but different laws would be administratively impossible, severance and remand should be denied.

### C.  Severance and remand risk inconsistent rulings.

Not only would severance and remand create inconsistent judgments *within* this case, but they would also invite inconsistent judgments among the related cases in this jurisdiction.  This case is one of many where Cotter and Mallinckrodt are defending against alleged injuries related to the radioactive materials.  As Mallinckrodt correctly notes (ECF No. 1, ¶ 80), Cotter and Mallinckrodt are also defendants in *McClurg et al. v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) ("*McClurg*"), and this case should be consolidated with *McClurg*.  *McClurg*, ECF No. 942 (ordering consolidation of current and future cases).

In the *McClurg* consolidation, Judge Fleissig held that the Price-Anderson Act preempted the plaintiffs' state-law claims against Mallinckrodt and Cotter, and dismissed the state-law claims.  *McClurg*, ECF No. 141.  The Eighth Circuit has affirmed the application of Price-Anderson Act to Mallinckrodt and Cotter.  *See Halbrook*, 888 F.3d at 977.  The consolidated *McClurg* cases are currently stayed while the parties brief the issue of Mallinckrodt's bankruptcy filing.  *McClurg*, ECF No. 977.  Granting severance and remand and allowing Plaintiffs' state-law claims to proceed invites inconsistent rulings.

### III.   Mallinckrodt's Bankruptcy Filing Is Not an "Exceptional" Circumstance Justifying Severance and Remand.

Plaintiffs argue that the "undue delay" caused by Mallinckrodt's bankruptcy filing justifies severance.  Mot. at 10–11.  But Plaintiffs cite no case holding that a bankruptcy petition

---

potential defendants.  Economic channeling results from the broad definition of 'persons indemnified' to include any person that may be legally liable for a nuclear incident, regardless of whether they have any contractual or other relationship with DOE."  DOE, Report to Congress on the Price-Anderson Act at 12 (1999), *available at* www.energy.gov/sites/prod/files/gcprod/documents/paa-rep.pdf.

justifies declining to exercise supplemental jurisdiction, *id.*, and, unlike the parties in the cases

they cite, Plaintiffs have not alleged that they would be prejudiced by delay.

Plaintiffs rely on *Crocker v. Borden, Inc*., 852 F. Supp. 1322, 1324 (E.D. La. 1994), and

*Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 702 (S.D. Tex. 2002), for the notion that delay

is prejudicial.  But for the courts in *Crocker* and *Madden*, retention of supplemental jurisdiction

over the plaintiffs' asbestos/mesothelioma-related claims would cause the case to be transferred

to *yet another* federal court, in which "literally many thousands of asbestos cases filed in federal

court are presently pending in MDL-875."  *Crocker*, 852 F. Supp. at 1330; *Madden*, 205 F. Supp.

2d at 702 (same).  Mallinckrodt's bankruptcy filing is a far cry from transfer to the asbestos

MDL where thousands of cases languished for decades.  Nor do Plaintiffs have mesothelioma, a

cancer for which delay could mean the plaintiff does not live to see his day in court; rather,

Plaintiffs claim medical monitoring because they have no present injury.  SAP ¶¶ 36, 186–93.

In the context of this case, any delay associated with Mallinckrodt's bankruptcy filing is

premature.  There are ways for these claims to proceed despite Mallinckrodt's bankruptcy filing.

One way is for any party to seek relief from the bankruptcy stay.  *See In re Fay*, 155 B.R. 1009,

1011 (Bankr. E.D. Mo. 1993) (allowing relief from stay for nonbankruptcy proceeding to go

forward).  Another way is for the U.S. government to assume defense of this case on behalf of

Mallinckrodt, since it has to indemnify the claims.  ECF No. 1 ¶¶ 29–32.  A third way is for any

party to obtain bankruptcy court approval to limit any recovery in this case against Mallinckrodt

to the amount of the U.S. government's indemnity.

Since Mallinckrodt's indemnity triggers the Price-Anderson Act, and the Price-Anderson

Act opens Plaintiffs to a sure source of funding, there may not *be* any delay.  Far from requiring

sever and remand, Mallinckrodt's bankruptcy filing illustrates the need for Price-Anderson Act

14

protection.  *See, e.g., Duke Power*, 438 U.S. at 64, 89 ("the [Price-Anderson] Act would provide

a more efficient and certain vehicle for assuring compensation"); *Cook v. Rockwell Int'l Corp.*,

790 F.3d 1088, 1089 (10th Cir. 2015) (the Price-Anderson Act seeks in part "to guarantee

compensation for victims who otherwise might be left trying to squeeze damages out of firms

bankrupted by enormous awards."); *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 623 (6th Cir.

2005) ("Under the Price-Anderson system, there is a ready source of funds available to

compensate the public after an accident"); Brief for the United States, *El Paso*, 1998 WL

858533, at *28 (Price-Anderson Act indemnity "is written broadly to 'protect[] the public'").

Plaintiffs have shown zero prejudice associated with Mallinckrodt's bankruptcy filing.

Plaintiffs' concern about a hypothetical future judgment, in a case that is not even past the

pleading stage, is premature.  The filing itself is not an "exceptional circumstance" that warrants

severance of claims over which the Court has supplemental jurisdiction.

## IV.    The Price-Anderson Act Ensures Federal Jurisdiction for this Entire Action.

### A.    Mallinckrodt's removal and the changed record confirm that Price-Anderson Act applies.

In its prior remand order, this Court held that removal, and Price-Anderson Act

preemption, was unavailable based on the limited record before it because "there cannot be a

nuclear incident without an applicable license or indemnity agreement."  *Banks*, 2019 WL

1426259, at **7-8.  But Mallinckrodt's removal makes clear that there is an applicable contract

and indemnity agreement.  ECF No. 1 ¶¶ 21–36, 54–69; ECF No. 1-16.  Tellingly, Plaintiffs do

not dispute this critical change in the record.  ECF No. 48.

Under the Price-Anderson Act, the U.S. government explicitly indemnified "the

Contractor [Mallinckrodt] *and others* with respect to public liability."  ECF No. 1-16 at 1

(emphasis added); *id.* at 2, § 3(a) ("the Commission will and does hereby indemnify the

Contractor, and other persons indemnified, against (i) claims for public liability"); *id.* at 3, §
3(b)(4) ("a nuclear incident which involves … material … produced or delivered under this
contract"); *id.* at 3, § 3(b)(2) ("a nuclear incident which takes place at any other location … by
other persons for the consequences of whose acts or omissions the Contractor is liable").

Thus, even under this Court's prior remand order, the Price-Anderson Act governs this
entire action. *See Banks*, 2019 WL 1426259, at *8; *see also Fritzlen v. Boatmen's Bank*, 212
U.S. 364, 372 (1909) ("change in the record [may] justify the granting of the second order to
remove"); *Groh v. JPMorgan Chase Bank*, No. 14-CV-578-W-DGK, 2014 WL 4930649, at *2
(W.D. Mo. Oct. 1, 2014) (same); *Hoffmann v. Empire Mach. & Tools Ltd.*, No. 4:10-CV-00832-
NKL, 2010 WL 11619084, at *3 (W.D. Mo. Dec. 7, 2010) (same).[9]

## B.  Eighth Circuit precedent confirms that Price-Anderson Act applies.

As noted above, the Eighth Circuit has held that Price-Anderson Act applies to
Mallinckrodt and Cotter in related litigation. *Halbrook*, 888 F.3d at 972. In affirming Judge
Fleissig's decision to apply the Price-Anderson Act, the Eighth Circuit ruled that "Congress
spoke clearly when stating such 'action shall be deemed to be an action arising under' federal
law." *Id.* The Eighth Circuit upheld its own federal jurisdiction under the Price-Anderson Act.
*Id.*; *see also Robins v. Ritchie*, 631 F.3d 919, 924 (8th Cir. 2011) ("The appellate court must
satisfy itself not only of its own jurisdiction but also of that of the district court.").[10]

---

[9] Cotter timely consented to Mallinckrodt's removal and may join and argue removal jurisdiction
by opposing Plaintiffs' motion. *See Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927,
933 (8th Cir. 2012) (opposing remand constitutes a timely consent and joinder in removal);
*Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182 (8th Cir. 2015) (same); *Couzens
v. Donohue*, 854 F.3d 508 (8th Cir. 2017) (same).

[10] Along with the Eighth Circuit's decision in *Halbrook*, other courts have squarely rejected
Plaintiffs' Price-Anderson Act arguments since this Court's prior remand decision. *See, e.g.*,
*Steward v. Honeywell Int'l, Inc.*, --- F. Supp. 3d ----, 2020 WL 3507689, at 3 (S.D. Ill. 2020)
(same Plaintiffs' counsel; "Plaintiffs' reading of 'nuclear incident' would thwart that purpose.
This Court declines the invitation").

### C.  The U.S. government's stated position as the indemnitor confirms that Price-Anderson Act applies.

Just like the Eighth Circuit, the U.S. government (the indemnitor for Plaintiffs' claims

(ECF No. 1 ¶ 68, ECF No. 1-16) has also made clear that the Price-Anderson Act applies when a

relevant indemnity agreement exists, like Mallinckrodt's, whether or not the named defendant

has the indemnity agreement:

> we disagree with the position, advanced by respondents below, that the Act's preemption provisions are inapplicable in the absence of an indemnification agreement.
>
> …
>
> Nowhere does the Act make the existence or nonexistence of an indemnification agreement relevant to whether a nonfederal claim falls within the scope of a "public liability action" for purposes of the removal and preemption provisions.
>
> …
>
> Th[e person indemnified] definition is written broadly to "protect the public" in case a third party, rather than "the person with whom the indemnity agreement is executed," causes a nuclear incident at a regulated facility: e.g., where "some unusual incident, such as negligence in maintaining an airplane motor, should cause an airplane to crash into a reactor."
>
> …
>
> By their terms, however, the preemption, removal, and consolidation provisions resulting from the 1988 amendments extend to all cases involving "nuclear incidents," as broadly defined by the Act, *whether or not the defendant has an indemnification agreement with the government.  The plain language of those provisions is dispositive*, even though it embraces a larger class of nuclear liability cases than the particular subclass with which Congress was most acutely concerned.

Brief for the United States, *El Paso*, 1998 WL 858533, at *29 (emphasis added and citations

omitted);[11] *see also* Report to Congress on the Price-Anderson Act at 12 ("Price-Anderson Act

channels to one source of funds (that is, the DOE indemnification) the payment of all claims

arising from the legal liability of any person for a nuclear incident.… Economic channeling

results from the broad definition of 'persons indemnified' to include any person that may be

---

[11] Again, federal courts defer to the U.S. government's stated position on its own regulations. *See* above n.5.

legally liable for a nuclear incident, regardless of whether they have any contractual or other relationship with DOE."), *available at* energy.gov/sites/prod/files/gcprod/documents/paa-rep.pdf.

### D.  Plaintiffs' new position on "radioactive materials" confirms that Price-Anderson Act applies.

Since the prior remand decision, Plaintiffs also have changed their position on the relevant radioactive materials.  In their remand briefing, Plaintiffs represented to this Court that the radioactive material was only "mill tailings."  *See Banks*, 2019 WL 1426259, at *8.  But, as their SAP and their discovery requests in state court show, Plaintiffs claim exposure to a whole host of "radioactive materials" beyond "mill tailings."  *See* SAP at ¶¶ 66, 76, 85 & nn. 3, 4, 5; Exs. F–K.  Plaintiffs' mischaracterization to avoid federal jurisdiction is not effective.  *See Brown v. Armstrong*, 949 F.2d 1007, 1010 (8th Cir. 1991) (removal proper even when a plaintiff "expressly pleaded" to try to avoid federal jurisdiction); *M. Nahas & Co. v. First Nat. Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991) ("a plaintiff cannot thwart the removal of a case by inadvertently, mistakenly or fraudulently concealing the federal question that would necessarily have appeared if the complaint had been well pleaded"); *Carnegie-Mellon*, 484 U.S. at 357 (1988) (Court may consider in determining whether to exercise its supplemental jurisdiction whether the plaintiff has "attempted to manipulate the forum.").

If the Court still has any lingering doubt, former regulator John Kinneman confirms that Cotter's license covered its possession and use of the radioactive materials at issue.  Ex. L, Decl. John Kinneman, ¶¶ 3, 31–33; *see also* RAC Expert Report for Mallinckrodt, Ex. 20 to Ex. L, at 3-13, 4-20.  Although the Court could not support jurisdiction previously "based on the record before it," *Banks*, 2019 WL 1426259, at *9, it can do so now.  Thus, Cotter's license covering the materials at issue in the SAP is yet another reason to deny severance and remand.  *See Fritzlen*, 212 U.S. at 372 (change in the record may justify the second removal).

**V.** ***Strong*** **Makes No Difference to Mallinckrodt's Removal Under 28 U.S.C. § 1442.**

Plaintiffs' reliance on *Strong v. Republic Servs.*, No. 4:18-CV-02043 JCH, 2019 WL 1436995 (E.D. Mo. Apr. 1, 2019), for the idea that Mallinckrodt, a third-party defendant, cannot remove, is misplaced.  Mot. at 2 n.1.  Critically, unlike in *Strong*, Mallinckrodt removed this action also based on the federal officer statute, 28 U.S.C. § 1442.  *Compare Strong v. Republic Servs.*, 283 F. Supp. 3d 759, 772–74 (E.D. Mo. 2017) (remanding under 28 U.S.C. § 1331).

Under § 1442(a)(1), the federal officer statute ensures an "absolute" right to removal "whenever a suit in state court is for any act 'under color' of federal office, regardless of whether the suit could originally have been brought in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) ("the right of removal is absolute for conduct performed under color of federal office").  The Supreme Court has explained that "federal officers, and indeed the Federal Government itself, require the protection of the federal forum." *Willingham*, 395 U.S. at 406–07.

As the Eighth Circuit has held, the mere fact that Mallinckrodt is a third-party defendant "does not defeat removal under Section 1442(a)(1)." *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984).  "Nor does the district court's lack of subject matter jurisdiction over the claim" against Mallinckrodt.  *Id.*  Because Mallinckrodt invoked § 1442, "the entire case is removed to the federal court." *Iowa Pub. Serv. Co. v. Iowa State Commerce Comm'n*, 407 F.2d 916, 918 n.3 (8th Cir. 1969); *Hovsepian v. Crane Co.*, 4:16-CV-414-CEJ, 2016 WL 4158891, at *6 (E.D. Mo. Aug. 5, 2016) ("entire case is removable if even one claim falls within the scope of the statute.").

**VI.** **Plaintiffs Waived Any Argument that Mallinckrodt's Removal Was Improper or that the Court Lacks Supplemental Jurisdiction Over Plaintiffs' Claims.**

Because Plaintiffs do not challenge Mallinckrodt's removal or the Court's supplemental jurisdiction, Plaintiffs have waived the ability to do so before this Court and on appeal before the

Eighth Circuit.  *See, e.g.*, *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1231 (8th Cir. 2012)

(analyzing factors of federal contractor defense and noting that production of materials to "help

the government conduct a war" is contemplated by 28 U.S.C. § 1442); 28 U.S.C. § 1447 (remand

arguments must be made within 30 days of removal); *F.T.C. v. Neiswonger*, 580 F.3d 769, 775

(8th Cir. 2009) ("Claims not raised in an opening brief are deemed waived"); *see also Crocker*,

852 F. Supp. at 1327, 1329 (cited approvingly by Plaintiffs (Mot. at 9), that a third party, federal

officer's removal of the entire action was proper and the court had supplemental jurisdiction).

## CONCLUSION

Plaintiffs' motion asking this putative class action to proceed in both state and federal

court—especially on the widespread scale and unlimited scope claimed here—is neither efficient

nor fair to anyone.  It contravenes the Price-Anderson Act and Eighth Circuit precedent, distorts

the basic principles of federal jurisdiction, and would eviscerate the fundamental rights of Cotter,

the other parties, and the U.S. government.  For these reasons, Cotter joins Mallinckrodt's notice

of removal and requests that the Court deny Plaintiffs' Motion to Sever and Remand All Non-

Third-Party Claims.

In the unlikely event remand is granted, Cotter further requests that the Court stay the

Clerk of the Court from transmitting the order to state court for 30 days from the date of the

order (Fed. R. Civ. P. 62(a); 28 U.S.C. § 1447(c)), so any party may exercise its statutorily

guaranteed right to appeal.  *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 742 (8th Cir. 2009)

("federal court of appeals has jurisdiction to review district court's decision not to exercise

supplemental jurisdiction over state-law claims" (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*,

556 U.S. 635 (2009)).

Dated: October 27, 2020                    Respectfully submitted,

                                           /s/ Brian O. Watson
                                           RILEY SAFER HOLMES & CANCILA LLP
                                           Edward Casmere, #64326MO
                                           Brian O. Watson, #68678MO
                                           Lauren E. Jaffe, #6316795IL
                                           Jennifer Steeve, #308082CA
                                           70 W. Madison St., Ste. 2900
                                           Chicago, Illinois 60602
                                           (312) 471-8700 (main)
                                           (312) 471-8701 (fax)
                                           ecasmere@rshc-law.com
                                           bwatson@rshc-law.com
                                           ljaffe@rshc-law.com
                                           jsteeve@rshc-law.com
                                           docketdept@rshc-law.com

                                           SWANSON, MARTIN & BELL, LLP
                                           Marcie J. Vantine, #56860MO
                                           mvantine@smbtrials.com
                                           One Bank of America Plaza
                                           800 Market Street, Suite 2100
                                           St. Louis, MO 63101
                                           314.242.0903 (telephone)
                                           314.242.0990 (facsimile)

                                           **ATTORNEYS FOR
                                           COTTER CORPORATION (N.S.L.)**

## CERTIFICATE OF SERVICE

I certify that on October 27, 2020, these papers were filed through the Eastern District of Missouri Court's CM/ECF system, which will automatically serve an electronic copy upon all counsel of record.

Respectfully submitted,

RILEY SAFER HOLMES & CANCILA LLP

By:_____/s/ Brian O. Watson_____
Edward Casmere, #64326MO
Brian O. Watson, #68678MO
Jennifer Steeve, #308082CA
Lauren E. Jaffe, #6316795IL
70 W. Madison St., Suite 2900
Chicago, Illinois 60602
(312) 471-8700
(312) 471-8701 - Fax
ecasmere@rshc-law.com
bwatson@rshc-law.com
jsteeve@rshc-law.com
ljaffe@rshc-law.com
docketdept@rshc-law.com

*Counsel for Cotter Corporation (N.S.L.)*