# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

January 22, 2021

Mr. Brian O'Connor Watson
RILEY & SAFER
Three First National Plaza, Suite 2900
70 W. Madison Street
Chicago, IL  60602

     RE:  21-1160  In Re: Cotter Corporation

Dear Counsel:

     A petition for a writ has been filed under the referenced number. The docketing fee was received electronically.

     This petition will be consolidated and taken with the appeal from the same proceeding.

     Should you require additional assistance, please do not hesitate to contact our office.

                    Michael E. Gans
                    Clerk of Court

AEV

Enclosure(s)

cc:    Ms. Sondra Hemeryck
       Ms. Lauren E. Jaffe
       Mr. Gregory J. Linhares
       Ms. Jennifer R. Steeve

     District Court/Agency Case Number(s):  4:20-cv-01227-JAR

**Caption For Case Number:   21-1160**

In re: Cotter Corporation, (N.S.L.)

      Petitioner

**Addresses For Case Participants:   21-1160**

Mr. Brian O'Connor Watson
RILEY & SAFER
Three First National Plaza, Suite 2900
70 W. Madison Street
Chicago, IL  60602

Ms. Sondra Hemeryck
RILEY & SAFER
Three First National Plaza, Suite 2900
70 W. Madison Street
Chicago, IL  60602

Ms. Lauren E. Jaffe
RILEY & SAFER
Three First National Plaza, Suite 2900
70 W. Madison Street
Chicago, IL  60602

Mr. Gregory J. Linhares
U.S. DISTRICT COURT
Eastern District of Missouri
111 S. Tenth Street
Saint Louis, MO  63102-0000

Ms. Jennifer R. Steeve
RILEY & SAFER
Suite 440
100 Spectrum Center Drive
Irvine, CA  92618

**No.**

# In the
# United States Court of Appeals
# for the Eighth Circuit

FILED

JAN 2 2 2021

MICHAEL GANS
CLERK OF COURT

In re COTTER CORPORATION (N.S.L.),

*Petitioner.*

On Petition for Writ of Mandamus to the United States District Court
for the Eastern District of Missouri (St. Louis), No. 4:20-cv-01227-JAR.
The Honorable **John A. Ross**, Judge Presiding.

## PETITION FOR WRIT OF MANDAMUS

SONDRA A. HEMERYCK
BRIAN O. WATSON
LAUREN E. JAFFE
RILEY SAFER HOLMES &
CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
(312) 471-8700

JENNIFER R. STEEVE
RILEY SAFER HOLMES & CANCILA
LLP
100 Spectrum Center Dr., Suite 440
Irvine, CA 92618
(949) 359-5500

RECEIVED

JAN 2 2 2021

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

*Counsel for Petitioner*
*Cotter Corporation (N.S.L.)*



COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Petitioner Cotter Corporation (N.S.L.) states its parent company is General Atomics Uranium Resources, LLC, and no publicly held companies own 10% or more of its stock.

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF CONTENTS................................................................................ ii

TABLE OF AUTHORITIES ........................................................................iv

RELIEF SOUGHT AND SUMMARY OF THE PETITION ...................................1

ISSUES PRESENTED.................................................................................6

STATEMENT CONCERNING ORAL ARGUMENT...........................................7

FACTUAL AND PROCEDURAL BACKGROUND ...........................................7

I.      The Price-Anderson Act ...................................................................7

II.     Plaintiffs' Radioactive Contamination Suit Against Cotter and Others................................................................................................8

III.    The *McClurg* Consolidation ..........................................................11

IV.     Defendants' Prior Removal and the District Court's Remand.....................12

V.      Plaintiffs' Second Amended Petition and Post-Remand Discovery .............13

VI.     Cotter's Third-Party Complaint and Mallinckrodt's Removal .....................14

VII.    Mallinckrodt's Filing for Bankruptcy Protection, and Plaintiffs' Motion to Sever and Remand .........................................................15

VIII.   The District Court Erroneously Refused to Exercise Its Original Jurisdiction Based on the Well-Pleaded Complaint Rule .............................16

IX.     Cotter's Appeal and Petition for Writ of Mandamus ...................................17

LEGAL STANDARD.................................................................................18

REASONS WHY THE WRIT SHOULD ISSUE ..................................................19

I.   The District Court Committed Clear Legal Error by Applying the Wrong Legal Standard and Refusing to Exercise Its Original Jurisdiction under the Price-Anderson Act.....................................................19

   A.   The Price-Anderson Act Is Not an Affirmative Defense Subject to the Well-Pleaded Complaint Rule....................................................20

   B.   The District Court Cannot Decline a Case Over Which It Has Original Jurisdiction Under the Price-Anderson Act..........................22

II.  The District Court's Order Contravenes Eighth Circuit Precedent and Repeats Legal Error Pervading the District Court..................................23

   A.   This Court Has Already Determined the Price-Anderson Act Governs the Claims Against Cotter...............................................24

   B.   The District Court's Order Perpetuates Clear Legal Error, Threatening to Unravel a Decade of Work in the *McClurg* Consolidation.............................................................................25

   C.   The District Court's Order Ignores Cotter's Applicable License and Mallinckrodt's Applicable Indemnity in the Record...................29

III. Cotter Has No Other Adequate Means to Attain Relief or Vindication of the Serious Policy Considerations Underlying the Price-Anderson Act, and Will Be Prejudiced Without Immediate Review ...........................31

   A.   Cotter Has No Other Adequate Means to Attain Relief......................31

   B.   Federal Jurisdiction Is Crucial to the Policy Underlying the Price-Anderson Act ...............................................................................32

   C.   Cotter Will Be Prejudiced Because It Is Administratively Impossible to Both Defend Against State-Law Claims and Defend and Prosecute Separate Claims Under the Price-Anderson Act.........................................................................................33

CONCLUSION .......................................................................................................34

# TABLE OF AUTHORITIES

*Beneficial Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003) ........................................................................*passim*

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
    556 U.S. 635 (2009) ........................................................................1, 18

*Cotroneo v. Shaw Env't & Infrastructure, Inc.*,
    639 F.3d 186 (5th Cir. 2011) .........................................................*passim*

*Dailey v. Bridgeton Landfill, LLC*,
    4:17 CV 24 CDP, 2020 WL 1332093 (E.D. Mo. Mar. 23, 2020) ......................28

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*,
    438 U.S. 59 (1978) ..............................................................................33

*El Paso Nat. Gas Co. v. Neztsosie*,
    526 U.S. 473 (1999) ........................................................................*passim*

*Fracasse v. People's United Bank*,
    747 F.3d 141 (2d Cir. 2014) ...................................................................21

*Fritzlen v. Boatmen's Bank*,
    212 U.S. 364 (1909) ......................................................................29, 30

*Gaming Corp. of Am. v. Dorsey & Whitney*,
    88 F.3d 536 (8th Cir. 1996) ...................................................................1

*Halbrook v. Mallinckrodt, LLC*,
    888 F.3d 971 (8th Cir. 2018) .........................................................*passim*

*Hurt v. Dow Chemical Co.*,
    963 F.2d 1142 (8th Cir. 1992) ...........................................................16, 19

*In re Bieter Co.*,
    16 F.3d 929 (8th Cir. 1994) ...........................................18, 19, 23, 32

*In re Bus. Men's Assur. Co. of Am.*,
    992 F.2d 181 (8th Cir. 1993) ...............................................................13

iv

*In re Hanford Nuclear Reservation Litig.*,
   534 F.3d 986 (9th Cir. 2008) ...................................................................21

*In re Life Ins. Co. of N. Am.*,
   857 F.2d 1190 (8th Cir. 1988) ...........................................................17, 31

*In re Lombardi*,
   741 F.3d 888 (8th Cir. 2014) ...................................................................18

*In re Medtronic, Inc.*,
   184 F.3d 807 (8th Cir. 1999) ...................................................................18

*In re TMI Litig. Cases Consol. II*,
   940 F.2d 832 (3d Cir. 1991)......................................................................21

*June v. Union Carbide Corp.*,
   577 F.3d 1234 (10th Cir. 2009) ................................................................34

*Kerr-McGee Corp. v. Farley*,
   115 F.3d 1498 (10th Cir. 1997) ................................................................21

*Kitchin v. Bridgeton Landfill, LLC*,
   389 F. Supp. 3d 600 (E.D. Mo. 2019) .....................................................28

*Melahn v. Pennock Ins., Inc.*,
   965 F.2d 1497 (8th Cir. 1992) ......................................................19, 23, 31

*McClurg v. Mallinckrodt, Inc.*,
   4:12-CV-00361-AGF, 2015 WL 867455 (E.D. Mo. Feb. 27, 2015), *on
   reconsideration*, 4:12-CV-00361-AGF, 2016 WL 6432776 (E.D. Mo. Oct. 31,
   2016)............................................................................................................4

*McClurg v. MI Holdings, Inc.*,
   933 F. Supp. 2d 1179 (E.D. Mo. 2013) ....................................................33

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989).............................................................................22, 23

v

*Nieman v. NLO, Inc.*,
   108 F.3d 1546 (6th Cir. 1997) ................................................................21

*O'Conner v. Commonwealth Edison Co.*,
   13 F.3d 1090 (7th Cir. 1994) ......................................................7, 8, 21

*Pinares v. United Tech. Corp.*,
   973 F.3d 1254 (11th Cir. 2020) ......................................................21, 22

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ...............................................................................1

*Sprint Commc'ns, Inc. v. Jacobs*,
   571 U.S. 69, 72 (2013) ...........................................................................23

*Strong v. Republic Servs., Inc.*,
   283 F. Supp. 3d 759 (E.D. Mo. 2017)..............................................26, 28

*Strong v. Republic Services, Inc.*,
   No. 4:18-CV-02043 JCH, 2019 WL 1436995 (E.D. Mo. Apr. 1, 2019)........16, 25

*Talk Am., Inc. v. Mich. Bell Tel. Co.*,
   564 U.S. 50 (2011)................................................................................27

*Williams v. Ragnone*,
   147 F.3d 700 (8th Cir. 1998) ................................................................22

## Statutes and Other Authorities

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1367 ......................................................................................1

28 U.S.C. § 1367(c) ...........................................................................*passim*

28 U.S.C. § 1442 ......................................................................................1

28 U.S.C. § 1447 ....................................................................................18

vi

28 U.S.C. § 1447(c) ...........................................................................13, 18

28 U.S.C. § 1447(d) ................................................................................18

28 U.S.C. § 1651 ....................................................................................18

42 U.S.C. § 2014(q) ......................................................................7, 8, 26

42 U.S.C. § 2014(t) ......................................................................2, 8, 26

42 U.S.C. § 2014(w) ........................................................................7, 26

42 U.S.C. § 2014(hh) ...................................................................2, 8, 26

42 U.S.C. § 2210(c) ...................................................................2, 26, 32

42 U.S.C. § 2210(e) ................................................................................3

42 U.S.C. § 2210(e)(2) ..........................................................................3

42 U.S.C. § 2210(i) ................................................................................3

42 U.S.C. § 2210(n)(2) ...............................................................2, 8, 26

42 U.S.C. § 2210(n)(3) ......................................................................2, 3

42 U.S.C. § 2210(n)(3)(C)(vi) ..............................................................2

42 U.S.C. § 2210(o) ..........................................................................2, 3

42 U.S.C. § 2210(s) ....................................................................3, 33, 34

S. Rep. No. 218, 100th Cong., 1st Sess. 2, at 4 (1987)..........................8

Brief for the United States, *El Paso Nat. Gas Co. v. Neztsosie*, No. 98-6, 1998 WL
858533 (Dec. 8, 1998)..........................................................................27

Report to Congress on the Price-Anderson Act, *available at*
energy.gov/sites/prod/files/gcprod/documents/paa-rep.pdf..............................27, 32

vii

## RELIEF SOUGHT AND SUMMARY OF THE PETITION

Cotter Corporation (N.S.L.) ("Cotter") seeks a writ of mandamus directing the district court to vacate the part of its December 22, 2020 order that remanded claims under 28 U.S.C. § 1367(c) and further directing the district court to exercise its original (or "arising under") jurisdiction over those claims under the Price-Anderson Act ("PAA" or "Act").  ADD-12–ADD-14.[1]  Alternatively, Cotter seeks consolidation of this petition with its direct appeal because it will have no other adequate means to attain relief should the Court find there is no appeal as of right under 28 U.S.C. §§ 1291, 1367, and 1442, *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637–38 (2009), *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 712–15 (1996), and *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996).

The district court's December 22, 2020 order directly contradicts both Supreme Court and Eighth Circuit precedent that "the Price-Anderson Act . . . not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state

---

[1] The addendum is cited as "ADD-" and includes the district court's December 22, 2020 Memorandum and Order, and the March 29, 2019 Memorandum and Order on which it relies.  All other records cited in this petition are available electronically in the district court record.  For documents in the record below, Cotter uses the following citation format: description, ECF No., at page or paragraph (e.g., Notice of Removal, ECF No. 1, at 3).

1

court even when they assert only state-law claims." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 (8th Cir. 2018) (applying Price-Anderson Act to claims against Cotter and holding that "Congress spoke clearly when stating such 'action shall be deemed to be an action arising under' federal law").

As this Court held in *Halbrook*, the Price-Anderson Act exclusively governs suits seeking to hold private companies liable for exposure to radioactive materials from our nation's nuclear programs for energy and defense.  888 F.3d at 974, 977. The Act creates a unique federal cause of action, which gives the federal courts "arising under" jurisdiction, even over state court lawsuits alleging only state-law claims.  42 U.S.C. § 2014(hh).  The Act establishes original and removal jurisdiction in the federal district courts, 42 U.S.C. § 2210(n)(2); provides mechanisms for consolidating claims and coordinating the distribution of funds to pay them, 42 U.S.C. §§ 2210(n)(2), (n)(3), (o); and otherwise enables the federal courts to "encourage the equitable, prompt, and efficient resolution of cases arising out of the nuclear incident," 42 U.S.C. § 2210(n)(3)(C)(vi).

The Price-Anderson Act also provides government indemnity to ensure compensation if liability exceeds private resources, 42 U.S.C. § 2210(c), and to channel liability to the appropriate federal licensee for government indemnification, 42 U.S.C. § 2014(t).  The Act sets an aggregate limit on liability

2

arising from a "nuclear incident," 42 U.S.C. § 2210(e); bans any award of punitive damages, 42 U.S.C. § 2210(s); and, if liability exceeds the limit for a nuclear incident, provides ways to obtain additional funding and distribute it equitably, 42 U.S.C. §§ 2210(e)(2), (i), (o).

The allegations against Cotter in the instant case have been, and are still being, adjudicated under the Price-Anderson Act as part of a nearly decade-long mass tort action with more than five hundreds plaintiffs. *See McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF (E.D. Mo.) ("*McClurg*"), Mem. and Order ("Order"), ECF No. 690, at 1. In the *McClurg* consolidation, the plaintiffs brought hundreds of individual state-law and Price-Anderson Act claims against Cotter and others, *McClurg* Order, ECF No. 141, at 1–2, alleging injuries arising from the defendants' handling of radioactive materials from the Manhattan Project in the St. Louis area. *McClurg* Complaint, ECF No. 1, at ¶¶ 39–47. The district court confirmed its original jurisdiction and dismissed the *McClurg* plaintiffs' state-law claims, properly finding them to arise out of a "nuclear incident" under the Price-Anderson Act. *McClurg* Order, ECF No. 141, at 12–13. This Court, in reviewing one of the *McClurg* orders under the case caption *Halbrook v.*

3

*Mallinckrodt, LLC*, upheld the application of the Price-Anderson Act to the allegations.  *Halbrook*, 888 F.3d at 977.[2]

The same "nuclear incident" is at issue here.  Just as in *McClurg*, Plaintiffs, this time as a putative class, make allegations encompassing the same sites, time frame, radioactive materials, claimed exposure, and many of the same defendants. (*Compare McClurg* Complaint, ECF No. 1, *with Banks* Second Amended Class Action Petition ("SAP"), ECF No. 12.)  And just as the *McClurg* plaintiffs did, Plaintiffs allege state law claims against Cotter and others seeking redress for their alleged exposure.  Although the cases in *McClurg* were initially brought in federal court, and Plaintiffs' in state court, this makes no legal difference under the Price-Anderson Act.  Cotter and others properly removed Plaintiffs' action to the district court under its original jurisdiction under the Price-Anderson Act, among other grounds.

Contrary to the decade of precedent in *McClurg*, this Court's clear holding in *Halbrook*, and the Price-Anderson Act's entire purpose, the district court refused to exercise its original jurisdiction and remanded Plaintiffs' claims and most of

---

[2] The facts in *Halbrook* are detailed in *McClurg v. Mallinckrodt, Inc.*, 4:12-CV-00361-AGF, 2015 WL 867455, at *2 (E.D. Mo. Feb. 27, 2015), *on reconsideration*, 4:12-CV-00361-AGF, 2016 WL 6432776 (E.D. Mo. Oct. 31, 2016), a*ff'd Halbrook*, 888 F.3d at 971.

4

Cotter's third-party claims back to state court under 28 U.S.C. § 1367(c).  ADD-13.

In reaching that decision, the district court committed clear legal error, specifically prohibited by the Supreme Court, by relying on the well-pleaded complaint rule.  *Id*.  The Supreme Court has held that the Price-Anderson Act is an exception to the well-pleaded complaint rule.  *Beneficial Nat'l Bank*, 539 U.S. at 6.  That rule provides that a federal defense does not support removal to federal court, and the complaint must expressly allege a federal claim.  *Id.* at 5.  As the Supreme Court made clear, the Price-Anderson Act is an "exception[] to that rule" and "expressly provides for removal of such actions brought in state court even when they assert only state-law claims."  *Id.* at 6.

The district court's error not only contradicts Supreme Court and Eighth Circuit precedent but also threatens to unravel the decade of ongoing litigation in the Circuit under the Price-Anderson Act in *McClurg*.  The judge presiding over the *McClurg* consolidation dismissed hundreds of state-law claims, entered final judgments on the merits, and continues to manage the mass litigation under the Act's original jurisdiction.  *McClurg* Order, ECF No. 141, at 13, 16; *McClurg* Order, ECF No. 742.  The district court's order here puts subject matter jurisdiction in question—after nearly a decade of litigation and appeal—inviting plaintiffs in the *McClurg* consolidation to amend their complaints for purposes of

5

remand, encouraging future plaintiffs to forum shop, and creating a patchwork of litigation in the state and federal courts with different legal standards involving the same defendants and the same claims.  *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 477 (1999) (Congress responded to a similar patchwork of state and federal litigation by amending the Price-Anderson Act to grant federal courts original jurisdiction over all nuclear incident claims).

If this Court does not grant immediate review, Cotter will be deprived of any effective remedy, will suffer substantial prejudice, and will be irreparably harmed by having to litigate the claims in both state court and federal court under wildly different standards, without government indemnity under the Price-Anderson Act.

Cotter therefore respectfully urges this Court to grant this petition for a writ of mandamus or, alternatively, consolidate this petition with Cotter's appeal as of right.

## ISSUE PRESENTED

Did the district court err in remanding—under 28 U.S.C. § 1367(c)— Plaintiffs' claims alleging widespread exposure and contamination from radioactive materials associated with the Manhattan project, and most of Cotter's third-party claims relating to those same allegations, when the Price-Anderson Act confers original jurisdiction over those claims?

## STATEMENT CONCERNING ORAL ARGUMENT

This petition involves the straightforward application of the Price-Anderson Act. *Beneficial Nat'l Bank*, 539 U.S. at 6; *Neztsosie*, 526 U.S. at 484–45; *Halbrook*, 888 F.3d at 978; *Cotroneo v. Shaw Env't & Infrastructure, Inc*., 639 F.3d 186, 191 (5th Cir. 2011).  Cotter requests 20 minutes of oral argument per side to help with understanding the procedural history of this case.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      The Price-Anderson Act.

The Price-Anderson Act is essential to understanding the history of this case. As this Court explained in related litigation, Congress enacted the Price-Anderson Act "in part to provide a measure of financial protection for entities involved in the high-risk enterprise of developing the nation's nuclear programs for energy and defense." *Halbrook*, 888 F.3d at 974 (citing *O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090, 1095 (7th Cir. 1994)).  At its core, the Act "provided certain federal licensees with a system of private insurance, Government indemnification, and limited liability for claims of 'public liability[.]'" *Neztsosie*, 526 U.S. at 476. "Public liability" under the Act means "any legal liability arising out of or resulting from a nuclear incident[.]"  42 U.S.C. § 2014(w).  A "nuclear incident" is "any occurrence . . . within the United States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property,

7

arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material[.]"  42 U.S.C. § 2014(q).  Government indemnity for nuclear incidents in the United States extends to "the person with whom an indemnity agreement is executed or who is required to maintain financial protection, *and any other person who may be liable for public liability*[.]"  42 U.S.C. § 2014(t) (emphasis added).

Under the Act, Congress also granted "United States district courts original and removal jurisdiction over all 'public liability actions,'" which it defined as suits "asserting public liability."  *Neztsosie*, 526 U.S. at 477 (citing 42 U.S.C. §§ 2014(hh) & 2210(n)(2)).  In extending federal jurisdiction over all public liability actions, Congress recognized that "[t]he Price-Anderson System, including the waiver of defense provisions, the omnibus coverage, and the predetermined sources of funding, provides persons seeking compensation for injuries as a result of a nuclear incident with significant advantages over the procedures and standards of recovery that might otherwise be applicable under State tort law."  *O'Conner*, 13 F.3d at 1095 (quoting S. Rep. No. 218, 100th Cong., 1st Sess. 2, at 4 (1987)).

## II.    Plaintiffs' Radioactive Contamination Suit Against Cotter and Others.

In this putative class action, Plaintiffs sued Cotter and others in state court alleging widespread contamination and exposure from radioactive materials associated with the Manhattan Project.  Plaintiffs are current or former property

8

owners near Coldwater Creek, a waterway in St. Louis County that runs past
several sites where radioactive materials from the Manhattan Project were
processed, handled, and stored.  SAP, ECF No. 12, at ¶¶ 2, 18–26, 62–69, 72, 74.

Plaintiffs complain that, since World War II, radioactive Manhattan Project-
related materials have migrated from the sites—the St. Louis Airport Site
("SLAPS"), Hazelwood Interim Storage Site ("HISS"), and the Latty Avenue
Site—into Coldwater Creek and its entire one-hundred-year floodplain.  *Id.* at ¶¶ 1,
88.  Plaintiffs, whose properties are in the one-hundred-year floodplain, seek class
relief to address decades of alleged contamination and exposure from these
materials.  *Id.* at ¶¶ 6, 18–26, 32–36, 99–220.

9

The widespread scale of the alleged contamination and exposure is shown by the "Banks Proposed Class Area" depicted in the blue, one-hundred-year floodplain below:[3]



As the record shows, the radioactive materials that allegedly caused Plaintiffs' injuries were produced between 1946 and the 1960s by Mallinckrodt "under direct contract with, and direct supervision by, the United States government."  Notice of Removal, ECF No. 1, at ¶ 2; SAP, ECF No. 12, at ¶¶ 1, 77.  The materials were then moved to the various sites between either the late 1940s or early 1950s and the mid-1970s, and were processed, handled, and stored

---

[3] The "Kitchin Proposed Class Area" refers to the putative class action filed by Plaintiffs' counsel in *Kitchin v. Bridgeton Landfill*, No. 4:18-cv-00672-CDP (E.D. Mo.), on appeal, No. 19-02072 (8th Cir.).  *Kitchin* involves claims against Bridgeton Landfill LLC, Republic Services, Inc., Allied Services, LLC, and Rock Road Industries, Inc., which are also third-party defendants in this case.

10

by the government and various companies.  SAP, ECF No. 12, at ¶¶ 65, 76–77, 81.

Cotter handled some of these materials from 1969–1973 under a Source Material

License issued by the federal government.  *Id.* at ¶¶ 69–72; Decl. of John

Kinneman, ECF No. 59-12, at ¶¶ 3, 32–35.

### III.    The *McClurg* Consolidation.

Years before Plaintiffs' putative class action, more than five hundred

individual plaintiffs sued Cotter and others under the Price-Anderson Act and state

law alleging exposure and contamination from these same Manhattan Project-era

radioactive materials.  *See, e.g.*, *McClurg* Complaint, ECF No. 1, at ¶¶ 1, 16–20.

The *McClurg* plaintiffs' allegations encompass the same sites, time frame,

radioactive materials, claimed exposure, and many of the same defendants as

Plaintiffs'.  *Compare McClurg* Complaint, ECF No. 1, *with* SAP, ECF No. 12.

Under the lead *McClurg* action, Chief District Judge Rodney W. Sippel

consolidated all current and future cases that "alleged exposure to ionizing

radiation and/or radionuclides arising from production of uranium for the United

States by Mallinckrodt and allegedly released by Mallinckrodt, Cotter and/or other

Persons or Entities in the St. Louis area after 1941, including any derivative or

future claims."  *McClurg* Case Management Order, ECF No. 741, at 3.  As the

judge presiding over the *McClurg* consolidation, Judge Audrey G. Fleissig

confirmed original jurisdiction under the Price-Anderson Act and dismissed all the

11

plaintiffs' state-law claims, holding that "a plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the PAA . . . can sue under the PAA or not at all." *McClurg* Order, ECF No. 141, at 13, 16 (quoting *Cotroneo*, 639 F.3d at 193).  As a result, by 2015, the consolidated *McClurg* complaints "all name[d] Mallinckrodt and Cotter as the sole Defendants; contain[ed] a single claim, a public liability action under the PAA; and [were] virtually identical with respect to the alleged conduct of Defendants and the theories of liability." *McClurg* Order, ECF No. 262, at 2.

On appeal, this Court affirmed the application of the Price-Anderson Act to the allegations asserted in *McClurg*, *Halbrook*, 888 F.3d at 971, which are the same allegations at issue here.

## IV.    Defendants' Prior Removal and the District Court's Remand.

On April 18, 2018, Cotter and other defendants timely removed this action from state court on the basis that it constituted a "public liability action" "arising out of or resulting from a nuclear incident" under the Price-Anderson Act.  *Banks v. Cotter Corp.*, No. 4:18-CV-00624 JAR ("*Banks I*"), Notice of Removal, ECF No. 1, at 9–12.

On March 29, 2019, the district court granted Plaintiffs' motion to remand, holding as a matter of law that "there cannot be a nuclear incident without an applicable license or indemnity agreement."  ADD-29–ADD-32.  Applying its

12

legal holding to a limited record, including Plaintiffs' assertions that only "mill tailings" were at issue and that "mill tailings" were not part of Cotter's license, the district court found that it could not "conclude, based on the record before it, that the material [at issue] was in fact mill tailings." *Id.*

Although Cotter's position is that the district court erred both in (1) ruling that there cannot be a "nuclear incident" under the Price-Anderson Act "without an applicable license or indemnity agreement," and in (2) finding that Cotter did not have an "applicable license," Cotter could not obtain review of the district court's first remand order because the district court remanded under 28 U.S.C. § 1447(c). *See In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 182 (8th Cir. 1993) ("In general, remand orders issued under 28 U.S.C. § 1447(c) are not reviewable by appeal or writ of mandamus.").

## V.     Plaintiffs' Second Amended Petition and Post-Remand Discovery.

Several months after remand, Plaintiffs filed the SAP.  Contrary to their argument in federal court that only "mill tailings" were at issue and thus Cotter had no applicable license, the SAP unequivocally alleges contamination and exposure to *all* radioactive material that allegedly migrated from SLAPS, Latty Avenue, and HISS.  *See* SAP, ECF No. 12, at ¶¶ 1, 66, 76, 85.  These radioactive materials include "source material" under Cotter's federal license and the Price-Anderson Act.  Decl. of John Kinneman, ECF No. 59-12, at ¶¶ 3, 32–35; *see also* RAC

13

Expert Report for Mallinckrodt, ECF No. 59-14, at PageID Nos. 2921–23, 2928, 2963–65.

Plaintiffs also demanded discovery from Cotter that further confirmed they were alleging exposure and contamination from radioactive material covered under Cotter's license and the Price-Anderson Act:

> "Radioactive Material" refers to: 1) any material spontaneously emitting energetic particles by the disintegration of their atomic nuclei, whether naturally occurring or artificial; 2) residues containing uranium and/or thorium; 3) uranium and/or thorium mill tailings; 4) any materials that you produce, process, or dispose of in connection with your possession and/or storage of residues containing uranium and/or thorium, uranium and/or thorium mill tailings or other uranium ore at or around SLAPS, Latty Avenue Site, and/or Coldwater Creek; and/or 5) any other polluting or poisonous substance used or stored at SLAPS, Latty Avenue Site, and/or Coldwater Creek in any operation.

Plaintiffs' discovery requests, ECF Nos. 59-6 to 59-11; *see also* RAC Expert Report for Mallinckrodt, ECF No. 59-14, at PageID Nos. 2921–23, 2928, 2963–65; Decl. of John Kinneman, ECF No. 59-12, at ¶¶ 3, 32–35.

## VI.   Cotter's Third-Party Complaint and Mallinckrodt's Removal.

On June 30, 2020, after substituting its counsel, Cotter timely filed a third-party petition seeking contribution from Mallinckrodt and other third-party defendants for the contamination and exposure alleged in Plaintiffs' SAP.  Third-Party Petition, ECF No. 14, at ¶¶ 68–123.  Mallinckrodt then timely removed the action under the Price-Anderson Act (among other grounds), and Cotter joined the

removal.  Notice of Removal, ECF No. 1, at 1–3; Consents to Removal, ECF No.

1-3, at 2.  Mallinckrodt described the basis for its removal as follows:

> Mallinckrodt was a United States government contractor who
> performed all of its operations at the sites at issue under direct contract
> with, and direct supervision by, the United States government. Through
> its position as federal contractor, Mallinckrodt is entitled to certain
> rights and remedies the other defending parties may not be, including:
> (1) the right to remove this case pursuant to the federal contractor
> defense under 1442, and (2) the application of the Price Anderson Act.

Notice of Removal, ECF No. 1, at ¶ 1.

With its notice of removal, Mallinckrodt also included its government

contract with an applicable indemnity agreement under the Price-Anderson Act.

*Id.* at ¶¶ 2–3; Supplemental Agreement, ECF No. 1–16, at 3; ADD-29–ADD-32;

*see also* Pls.' Mem. in Supp. of Mot. to Sever and Remand, ECF No. 48, at 2 n.1;

Pls.' Reply in Supp. of Mot. to Sever, ECF No. 66, at 2–4 (indemnitee status

undisputed).

## VII.    Mallinckrodt's Filing for Bankruptcy Protection, and Plaintiffs' Motion to Sever and Remand.

Following removal, third-party-defendant Mallinckrodt filed for bankruptcy

protection.  Notice of Bankruptcy, ECF No. 46, at 1–2.  The next day, Plaintiffs

moved to sever and remand all non-third-party claims.  Mot. to Sever and Remand

and Mem. in Supp., ECF Nos. 47–48.  Because of the automatic bankruptcy stay,

Plaintiffs' motion did not ask the district court to remand the third-party claims

against Mallinckrodt, but instead asked the district court to sever them and decline

15

to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Plaintiffs'

first-party claims against Cotter and the other defendants, thereby remanding

Plaintiffs' first-party claims to state court. *Id.*

## VIII. The District Court Erroneously Refused to Exercise Its Original Jurisdiction Based on the Well-Pleaded Complaint Rule.

In opposing Plaintiffs' Motion to Sever, Cotter argued that, even accepting

the district court's prior holding that "there cannot be a nuclear incident without an

applicable license or indemnity agreement," Mallinckrodt's indemnity agreement

satisfied that requirement, and the district court therefore had *original* jurisdiction

over the entire action under the Price-Anderson Act.  Cotter Opp'n to Mot. to

Sever, ECF No. 58, at 15–20.  The district court rejected this argument, relying on

the well-pleaded complaint rule as applied in *Strong v. Republic Services, Inc.*, No.

4:18-CV-02043 JCH, 2019 WL 1436995, *3 (E.D. Mo. Apr. 1, 2019) ("*Strong*

*II*").  The district court explained its reasoning as follows:

> A court in this district facing nearly identical circumstances to this case
> has found . . . that a third-party defendant cannot remove a case to
> federal court based on the PAA as an affirmative defense.  *Strong v.*
> *Republic Servs.*, No. 4:18-CV-02043 JCH, 2019 WL 1436995, at *3
> (E.D. Mo. Apr. 1, 2019) (citing *Hurt v. Dow Chemical Co.*, 963 F.2d
> 1142 (8th Cir. 1992)) ("An affirmative defense is not a claim or cause
> of action.  It is well established that a defense of pre-emption, even if
> anticipated by the parties does not cause the claim to arise under federal
> law.").  The necessary implication of this holding is that Mallinckrodt's
> PAA defense does not establish federal jurisdiction over Plaintiffs'
> state law claims.

ADD-13.

*Strong II*'s ruling, and the district court's reliance on it, was clear legal error under *Beneficial National Bank*, 539 U.S. at 6, *Neztsosie*, 526 U.S. at 484–45, and *Halbrook*, 888 F.3d at 978.  Having thus erroneously concluded that "Mallinckrodt's PAA defense does not provide this Court with original jurisdiction over the entire case," ADD-13 n.7, the district court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and remanded all claims (first and third-party), except for Cotter's claim against Mallinckrodt.  ADD-1–ADD-2.

## IX.   Cotter's Appeal and Petition for Writ of Mandamus.

To allow any party to exercise its right to appeal, the district court postponed transmission of its remand order to state court for thirty days.  ADD-14.  Cotter has timely exercised its right to appeal the district court's order declining to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c).  *See* Notice of Appeal, filed contemporaneously.

In the event this Court finds that no direct appeal lies, however, Cotter seeks this writ of mandamus to correct the district court's clear legal error in refusing to exercise its original jurisdiction under the Price-Anderson Act.  *See In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1193 (8th Cir. 1988) (considering mandamus petition related to erroneous remand of nominally state-law claim that was completely preempted by federal law).  A writ of mandamus is not barred here, unlike in *Strong* and the first remand order in this case, because this remand order

17

was based on 28 U.S.C. § 1367(c) rather than § 1447.  *Carlsbad*, 556 U.S. at 641

("When a district court remands claims to a state court after declining to exercise

supplemental jurisdiction, the remand order is not based on a lack of subject-matter

jurisdiction for purposes of §§ 1447(c) and (d).").

## LEGAL STANDARD

This Court "may issue all writs necessary or appropriate in aid of [its]

jurisdiction[.]"  28 U.S.C. § 1651.  "Extraordinary writs like mandamus are useful

safety valves for promptly correcting serious errors[.]"  *In re Lombardi*, 741 F.3d

888, 893 (8th Cir. 2014) (quotations omitted).  Several factors inform the decision

to review an order on mandamus:

> (1) The party seeking the writ has no other adequate means, such as
> direct appeal, to attain the relief desired. (2) The petitioner will be
> damaged or prejudiced in a way not correctable on appeal. (This
> guideline is closely related to the first.) (3) The district court's order is
> clearly erroneous as a matter of law. (4) The district court's order is an
> oft-repeated error, or manifests a persistent disregard of the federal
> rules. (5) The district court's order raises new and important problems,
> or issues of law of first impression.

*In re Bieter Co.*, 16 F.3d 929, 932 (8th Cir. 1994) (citation omitted).  The petitioner

need not establish each factor.  *See id.*; *see also In re Medtronic, Inc.*, 184 F.3d

807, 810 (8th Cir. 1999).  "The common threads running through those cases that

[the Eighth Circuit has] held fit for review by mandamus are the presence of

'serious policy considerations . . . sufficiently compelling to require immediate

appellate attention,' and the inadequacy of later review as a remedy."  *Bieter*, 16

18

F.3d at 931.  A "writ may only issue . . . when there is clear abuse of discretion."

*Id.* at 932 (quotation marks omitted).

A district court abuses its discretion if it "relies on erroneous legal

conclusions . . . [or] fail[s] to consider relevant factors or to apply the proper legal

standard[.]"  *Id.* at 933 (quotation marks omitted).  Compelling a district court "to

exercise its authority when it is its duty to do so" is a "traditional use of the writ[.]"

*Melahn v. Pennock Ins., Inc.*, 965 F.2d 1497, 1500, 1507 (8th Cir. 1992)

(considering district court's decision to remand).

### REASONS WHY THE WRIT SHOULD ISSUE

**I.     The District Court Committed Clear Legal Error by Applying the
Wrong Legal Standard and Refusing to Exercise Its Original
Jurisdiction Under the Price-Anderson Act.**

According to the well-pleaded complaint rule, a federal defense does not

authorize removal to federal court, and the complaint must expressly allege a

federal claim.  *Hurt*, 963 F.2d at 1145.  In its remand order, the district court

interpreted the Price-Anderson Act to be an affirmative defense that does not

establish federal jurisdiction over Plaintiffs' state law claims.  ADD-13 (citing

*Hurt*, 963 F.2d at 1145).  Thus, the district refused to exercise its jurisdiction and

ordered remand based on the legal standard of the well-pleaded complaint rule.  *Id.*

That was clear legal error because the Price-Anderson Act is not an affirmative

defense subject to the well-pleaded complaint rule.  Rather, the Price-Anderson

19

Act converts Plaintiffs' state-law claims into an action "arising under" federal law, conferring *original* jurisdiction that the district court improperly refused to exercise.

### A.     The Price-Anderson Act Is Not an Affirmative Defense Subject to the Well-Pleaded Complaint Rule.

The Supreme Court has expressly held that the Price-Anderson Act is an exception and not an affirmative defense under the well-pleaded complaint rule. *Beneficial Nat'l Bank*, 539 U.S. at 6; *Neztsosie*, 526 U.S. at 484–45.  "[T]he Price-Anderson Act . . . not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims." *Beneficial Nat'l Bank*, 539 U.S. at 6.  As the Supreme Court describes, the preemption structure of the Price-Anderson Act resembles that of complete preemption, "under which the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Neztsosie*, 526 U.S. at 485 n.6 (internal quotation marks and citations omitted).

Unsurprisingly, every circuit court to address federal jurisdiction under the Price-Anderson Act, including this Court, has followed the holding that the Act is not an affirmative defense and instead converts state-law claims into an action "arising under" federal law:

20

- **Second Circuit:**  "Three situations exist in which a complaint that does not allege a federal cause of action may nonetheless 'aris[e] under' federal law for purposes of subject matter jurisdiction: first, if Congress expressly provides, by statute, for removal of state law claims *as it did in the Price–Anderson Act . . .*"  *Fracasse v. People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (emphasis added).

- **Third Circuit:**  "After the [Price-Anderson] Amendments Act, no state cause of action based upon public liability exists. A claim growing out of any nuclear incident is compensable under the terms of the Amendments Act or *it is not compensable at all*."  *In re TMI Litig. Cases Consol. II*, 940 F.2d 832, 854 (3d Cir. 1991).

- **Fifth Circuit:**  Since state-law claims "actually arise under federal law by operation of the PAA, however, the district court had original, rather than supplemental, jurisdiction over them."  *Cotroneo v. Shaw Env't & Infrastructure, Inc*., 639 F.3d 186, 195 (5th Cir. 2011).

- **Sixth Circuit:**  "[A] new federal cause of action supplants the prior state cause of action."  *Nieman v. NLO, Inc*., 108 F.3d 1546, 1549 (6th Cir. 1997) (quotation omitted).

- **Seventh Circuit:**  The Price-Anderson Act "create[d] a new and entirely federal cause of action."  *O'Conner v. Commonwealth Edison Co*., 13 F.3d 1090, 1100 (7th Cir. 1994).

- **Eighth Circuit:**  The Price-Anderson Act created a "federal cause of action for public-liability claims concerning nuclear incidents … [and] spoke clearly when stating such 'action shall be deemed to be an action arising under' federal law."  *Halbrook v. Mallinckrodt, LLC*, 888 F.3d 971, 977 (8th Cir. 2018).

- **Ninth Circuit:**  "The PAA is the exclusive means of compensating victims for any and all claims arising out of nuclear incidents."  *In re Hanford Nuclear Reservation Litig*., 534 F.3d 986, 1009 (9th Cir. 2008).

- **Tenth Circuit:**  The Price-Anderson Act "create[s] a federal forum for any tort claim even remotely involving atomic energy production. The PAA on its face provides the sole remedy for the torts alleged in this case[.]"  *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1504 (10th Cir. 1997).

- **Eleventh Circuit:**  The Price-Anderson Act "*transforms into a federal action* 'any public liability action arising out of or resulting from a

21

nuclear incident.'" *Pinares v. United Tech. Corp.*, 973 F.3d 1254, 1261 (11th Cir. 2020) (citation omitted).

Despite the clear and binding precedent of the Supreme Court, this Court, and every other court of appeals, the district court erroneously treated the Price-Anderson Act as an affirmative defense rather than conferring original jurisdiction; it therefore committed clear legal error in applying the wrong legal standard with the well-pleaded complaint rule.

**B.    The District Court Cannot Decline a Case Over Which It Has Original Jurisdiction Under the Price-Anderson Act.**

The district court was required to exercise the original jurisdiction Congress conferred through the Price-Anderson Act. *Cotroneo*, 639 F.3d at 195 ("Given that the claims actually arise under federal law by operation of the PAA, however, the district court had original, rather than supplemental, jurisdiction over them. As such, the district court could not decline to exercise that jurisdiction."); *see also Neztsosie*, 526 U.S. at 484 ("The Act not only gives a district court original jurisdiction over such a claim, . . . but provides for removal to a federal court as of right"); *Halbrook*, 888 F.3d at 977; *Williams v. Ragnone*, 147 F.3d 700, 703 (8th Cir. 1998) (district court abused its discretion in remanding case properly removed due to "presence of even one federal claim").

When, as here, "a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." *New Orleans*

22

*Pub. Serv., Inc. v. Council of City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 358–59 (1989).  In other words, federal courts "cannot abdicate their authority or duty in any case in favor of another jurisdiction."  *Id.* at 358 (quotation omitted).  "Underlying these assertions is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds."  *Id.* at 359 (citation omitted); *see also Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72 (2013) ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction.").

Because the district court's order manifests a disregard of the original jurisdiction that Congress conferred through the Price-Anderson Act, as applied by this Court, and is clearly erroneous as a matter of law, mandamus is appropriate. *See Bieter*, 16 F.3d at 931; *Melahn*, 965 F.2d at 1500.

## II. The District Court's Order Contravenes Eighth Circuit Precedent and Repeats Legal Error Pervading the District Court.

Mandamus is also appropriate because the district court's order violates not only clear Supreme Court and Eighth Circuit precedent, but also contradicts nearly a decade of progress in the ongoing *McClurg* litigation—the consolidated mass tort claims against Cotter and Mallinckrodt in the district court regarding the same nuclear incident and radioactive materials Plaintiffs allege are at issue here.  *See Halbrook*, 888 F.3d at 974.

23

### A.   This Court Has Already Determined That the Price-Anderson Act Governs the Claims Against Cotter.

In *Halbrook*—this Court's only pronouncement on federal jurisdiction under the Price-Anderson Act—the Court affirmed the Price-Anderson Act's application to claims against Cotter and Mallinckrodt related to materials originating from the Manhattan Project. *Id.* As noted above, *Halbrook* began nearly a decade ago as *McClurg*, and involves parallel claims and facts. *See supra* at 8–12. In 2013, the district court confirmed its original jurisdiction under the Price-Anderson Act and dismissed the plaintiffs' state-law claims, holding that "a plaintiff who asserts any claim arising out of a 'nuclear incident' as defined in the PAA . . . can sue under the PAA or not at all." *McClurg* Order, ECF No. 141, at 13, 16 (quoting *Cotroneo*, 639 F.3d at 193).

In the last decade, the district court has consolidated more than five hundred plaintiffs into *McClurg*. *McClurg* Order, ECF No. 690, at 1. Like the claims here, each consolidated case in *McClurg* involves claims related to "alleged exposure to ionizing radiation and/or radionuclides arising from production of uranium for the United States by Mallinckrodt and allegedly released by Mallinckrodt, Cotter and/or other Persons or Entities in the St. Louis area after 1941, including any derivative or future claims." *McClurg* Case Management Order, ECF No. 741, at 3; *McClurg* Administrative Order Regarding Radionuclide Exposure Claims

Against Mallinckrodt LLC And/Or Cotter Corporation (N.S.L.), ECF No. 742, at

1–2.

>    **B.    The District Court's Order Perpetuates Clear Legal Error,
>    Threatening to Unravel a Decade of Work in the *McClurg*
>    Consolidation.**

The district court's order is the latest in a line of remand orders perpetuating

two clear legal errors, which have evaded appellate review since this Court in

*Halbrook* affirmed the district court's *McClurg* judgment applying the Price-

Anderson Act to Cotter.

First, as discussed above, the district court applied the wrong legal standard

of the well-pleaded complaint rule based on the district court's earlier unpublished

order in *Strong II*.  ADD-13 (citing *Strong II*, 2019 WL 1436995, at *3).  But

*Strong* made the same mistake of law: it remanded claims that should have been

converted to federal law under the Price-Anderson Act, ruling that third-party

defendant Cotter's Price-Anderson Act "affirmative defense is not a claim or cause

of action.  It is well established that a defense of pre-emption, even if anticipated

by the parties does not cause the claim to arise under federal law."  *Strong II*, 2019

WL 1436995, at *3.

Second, the district court reiterated its previous incorrect holding that a party

*to the case* must have an applicable license or indemnity agreement for the Price-

Anderson Act to apply.  ADD-3 (citing ADD-27–ADD-28).  In the 2019 *Banks I*

25

remand order, the district court had perpetuated this error from an earlier *Strong*

order.  ADD-27–ADD-33 (following *Strong v. Republic Servs., Inc.*, 283 F. Supp.

3d 759 (E.D. Mo. 2017) ("*Strong I*")).  Although the district court recognized that

many "courts have concluded that such an interpretation runs counter to the plain

language of the PAA as well as the Congressional intent behind the 1988

amendments," ADD-28, the district court opted instead to follow *Strong I*.[4]  ADD-

32–ADD-33.

The plain language of the Price-Anderson Act grants federal courts original

jurisdiction over "any public liability action arising out of or resulting from a

nuclear incident."  42 U.S.C. § 2210(n)(2).  The definitions of "public liability

action" and "nuclear incident" have no "applicable license or indemnity"

limitation.  42 U.S.C. § 2014(q), (w), (hh).  The government indemnity provisions

require the government to indemnify "the licensee *and other persons indemnified,*

*as their interest may appear,* from public liability arising from nuclear incidents[.]"

42 U.S.C. § 2210(c) (emphasis added).  Other "persons indemnified" include "the

person with whom an indemnity agreement is executed or who is required to

maintain financial protection, *and any other person who may be liable for public*

*liability*[.]"  42 U.S.C. § 2014(t) (emphasis added).

---

[4] As noted above, Cotter could not appeal the district court's 2019 remand order in
*Banks I*.  *See supra* at 17–18.

26

The federal government itself has argued that "the preemption, removal, and consolidation provisions resulting from the 1988 [Price-Anderson Act] amendments extend to *all cases* involving 'nuclear incidents,' as broadly defined by the Act, *whether or not the defendant has an indemnification agreement with the government*."  Brief for the United States, *El Paso Nat. Gas Co. v. Neztsosie*, No. 98-6, 1998 WL 858533, at *30 (Dec. 8, 1998) (emphasis added).[5]  Put differently, the "Price-Anderson Act channels to one source of funds (that is, the DOE indemnification) the payment of all claims arising from the legal liability of any person for a nuclear incident. . . .  Economic channeling results from the broad definition of 'persons indemnified' to include any person that may be legally liable for a nuclear incident, *regardless of whether they have any contractual or other relationship with DOE*."  Report to Congress on the Price-Anderson Act at 12 (emphasis added), *available at* energy.gov/sites/prod/files/gcprod/documents/paa-rep.pdf.

*Strong I* and *II* have misguided the district court and should be corrected. The district court's order here followed *Strong II*, ADD-13, and the district court has repeatedly followed *Strong I*'s misinterpretation of federal subject-matter

---

[5] Federal courts defer to the federal government's stated position on its own regulations.  *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 67 (2011) (government's brief, through the Solicitor General, "as amicus curiae has advanced a reasonable interpretation of its regulations, and we defer to its views").

27

jurisdiction under the Price-Anderson Act.  *See* ADD-28–ADD-32 (relying on *Strong I*, 283 F. Supp. 3d at 772–74 and remanding for lack of subject matter jurisdiction); *Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600, 608 (E.D. Mo. 2019), appeal filed (No. 19-2072) (same); *Dailey v. Bridgeton Landfill, LLC*, 4:17 CV 24 CDP, 2020 WL 1332093, at *6 (E.D. Mo. Mar. 23, 2020) (same).

The erroneous decision of this case—perpetuating the well-pleaded complaint error of law first made in *Strong II*—threatens to unravel the consolidated litigation in *McClurg*, especially if it is not reviewable on appeal. The district court's order places subject matter jurisdiction in question after nearly a decade of litigation in *McClurg* and even after the appeal in *Halbrook*.  In particular, allowing Plaintiffs to avoid mandatory federal jurisdiction for their radioactive injury claims will encourage those in the *McClurg* consolidation to amend their complaints for purposes of remand.  *See, e.g., Dailey*, 2020 WL 1332093, *2, 6 (remanding radioactive injury claims after plaintiffs amended their complaint to remove Price-Anderson count).  Denying review also provides a roadmap to future radioactive injury plaintiffs to improperly avoid the federal jurisdiction and federal exposure standards required by the Price-Anderson Act. *See Neztsosie*, 526 U.S. 473, 477 (1999) (Price-Anderson amendments enacted to counteract patchwork of radioactive exposure litigation in state and federal courts).

28

This Court should intervene to correct this manifest error of law infecting district court jurisprudence.

**C.      The District Court's Order Ignores Cotter's Applicable License and Mallinckrodt's Applicable Indemnity in the Record.**

The district court also clearly erred because even if it were correct in requiring that a party have an "applicable license or indemnity agreement," ADD-32, the record is clear that Cotter had an applicable license and Mallinckrodt had an applicable indemnity agreement.

In the *Banks I* remand order, the district court grappled with whether Plaintiffs' allegations included materials within Cotter's license.  The district court reasoned that Cotter would not have an "applicable license" if Plaintiffs' allegations reached only "mill tailings."  *Id*.  At the time, the district court found Cotter's license inapplicable because the court could not "conclude, based on the record before it, that the material [at issue] was in fact mill tailings."  *Id*.

But the record changed between the *Banks I* remand order and the December 2020 remand order now on review.  *See Fritzlen v. Boatmen's Bank*, 212 U.S. 364, 372 (1909) ("change in the record [may] justify the granting of the second order to remove").  By the time the district court issued its December 2020 remand order, the record had become clear that Plaintiffs allege exposure to a whole host of radioactive materials beyond "mill tailings," including materials covered by Cotter's license.  *See* SAP, ECF No. 12, at ¶¶ 66, 76, 85 & nn. 3, 4, 5; Pls.'

29

discovery requests, ECF Nos. 59-6 to 59-11; Decl. of John Kinneman, ECF No.

59-12, at ¶¶ 3, 32–35; RAC Expert Report for Mallinckrodt, ECF No. 59-14, at

PageID Nos. 2921–23, 2928, 2963–65.

On top of Cotter's applicable license, the addition of Mallinckrodt—a

government indemnitee—as a party should have changed the district court's

reasoning in the December 2020 remand order.  *See* Third-Party Petition, ECF No.

14; ADD-32–ADD-33.  Mallinckrodt's indemnity agreement makes clear that the

government indemnified "the Contractor [Mallinckrodt] *and others* with respect to

public liability."  Supplemental Agreement, ECF No. 1–16, at 2 (emphasis added);

*id.* at 3, § 3(a) ("the Commission will and does hereby indemnify the Contractor,

and other persons indemnified, against (i) claims for public liability"); *id.* at 4,

§ 3(b)(4) ("a nuclear incident which involves . . . material . . . produced or

delivered under this contract"); *id.* at 4, § 3(b)(2) ("a nuclear incident which takes

place at any other location . . . by other persons for the consequences of whose acts

or omissions the Contractor is liable").

For this independent reason—even under the district court's prior remand

order erroneously requiring an "applicable license[] or indemnity agreement"—the

district court should have concluded that the Price-Anderson Act governs this

entire action because Cotter had an applicable license and Mallinckrodt had an

applicable indemnity agreement.  *See* ADD-32–ADD-33; *Fritzlen*, 212 U.S. at 372.

30

### III.   Cotter Has No Other Adequate Means to Attain Relief or Vindication of the Serious Policy Considerations Underlying the Price-Anderson Act and Will Be Prejudiced Without Immediate Review.

### A.   Cotter Has No Other Adequate Means to Attain Relief.

Under similar circumstances, this Court has held that mandamus is appropriate to compel a district court "to exercise its authority when it is its duty to do so[.]" *Melahn*, 965 F.2d at 1500–01, 1507 (granting mandamus because the district court erroneously abstained from asserting jurisdiction and remanded); *In re Life Ins. Co.*, 857 F.2d at 1193, 1195 (granting mandamus to rectify a remand decision based on an erroneous conclusion that a plaintiff's claim was not preempted by federal statute).

Under the reasoning of *In re Life Insurance* and *Melahn*, mandamus should issue here.  The district court abstained from exercising supplemental jurisdiction over Plaintiffs' state-law claims, but those claims are in fact within the district court's original jurisdiction under the Price-Anderson Act.  *Halbrook*, 888 F.3d at 977; *Cotroneo*, 639 F.3d at 195.  Because the district court's decision on the Price-Anderson Act may bind the Missouri state court on remand, Cotter has no other adequate means to attain relief.  Accordingly, the Court should issue an order of mandamus directing the district court to exercise its original jurisdiction.

31

**B.      Federal Jurisdiction Is Crucial to the Policy Underlying the Price-Anderson Act.**

Mandamus is also appropriate because the district court's order multiplies Plaintiffs' single Price-Anderson Act claim over multiple jurisdictions—state on remand and federal with the severed claim and the *McClurg* consolidation—and defeats the purpose of the Price-Anderson Act, complicating indemnification, wasting party and judicial resources, and risking inconsistent judgments.  The district court's order thus presents "serious policy considerations . . . sufficiently compelling to require immediate appellate attention."  *Bieter*, 16 F.3d at 931 (citations omitted).

As discussed above, the Price-Anderson Act requires the district court to exercise its original jurisdiction.  Enforcing federal jurisdiction ensures the consolidation, channeling, and indemnification functions of the Price-Anderson Act.  *See Neztsosie*, 526 U.S. at 486 (Price-Anderson Act policy of consolidation is to "avoid the inefficiencies resulting from duplicative determinations of similar issues in multiple jurisdictions") (quotation omitted); 42 U.S.C. § 2210(c) (requiring the government to "indemnify and hold harmless the licensee and other persons indemnified . . . from public liability arising from nuclear incidents"); Report to Congress on the Price-Anderson Act at 12 ("Price-Anderson Act channels to one source of funds (that is, the DOE indemnification) the payment of all claims arising from the legal liability of any person for a nuclear incident.").

32

**C.      Cotter Will Be Prejudiced Because It Is Administratively Impossible to Both Defend Against State-Law Claims and Defend and Prosecute Separate Claims Under the Price-Anderson Act.**

The district court's order will also irreparably prejudice Cotter.  Absent relief, Cotter will have to litigate the same issues in multiple jurisdictions, under different laws, with different parties, and in some cases (including Plaintiffs') without government indemnity.

After remand, Cotter will have to defend against Plaintiffs' state-law claims in this putative class action untethered to the limits prescribed by Congress in the Price-Anderson Act—such as federal exposure standards and limitations on types or availability of damages—including medical monitoring claims and punitive damages.  At the same time, Cotter will have to defend against the same allegations in the *McClurg* consolidation under the Price-Anderson Act.  Then, Cotter will have to prosecute its severed contribution claim against Mallinckrodt under inconsistent standards of state law and the Price-Anderson Act.  *Compare* SAP, ECF No. 12, at ¶ 36 (proposing medical monitoring class); *Id.* at ¶¶ 194–197 (seeking punitive damages) *with McClurg v. MI Holdings, Inc.*, 933 F. Supp. 2d 1179, 1187 (E.D. Mo. 2013) (applying Price-Anderson Act and federal exposure standards), *aff'd*, *Halbrook*, 888 F.3d at 971; *Duke Power Co. v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 64–65 (1978) (Price-Anderson Act limits the aggregate liability of those subject to its jurisdiction); 42 U.S.C. § 2210(s) (Price-

33

Anderson Act bans any award of punitive damages); *June v. Union Carbide Corp.*, 577 F.3d 1234, 1249–51 (10th Cir. 2009) (Price-Anderson Act bars medical monitoring claims).

Because litigating disputed issues, determining liability, and allocating responsibility for the same allegations in different jurisdictions and under inconsistent legal standards would be administratively impossible, without this Court's immediate intervention Cotter will be prejudiced in a way that is not correctable on appeal.

## <u>CONCLUSION</u>

This Court should issue the requested writ of mandamus for three reasons if this Court finds there is no appeal of right: (1) the district court's order applying the wrong legal standard with the well-pleaded complaint rule and declining to exercise its original jurisdiction under the Price-Anderson Act was clear legal error; (2) the district court's error contravenes the Price-Anderson Act and has been repeated; and (3) Cotter has no other adequate means to attain review and will be prejudiced by having to litigate the same issues in multiple jurisdictions, under different laws, with different parties, and without government indemnity.

34

Dated: January 21, 2021          Respectfully submitted,

                                 */s/ Brian O. Watson*
                                 RILEY SAFER HOLMES & CANCILA LLP
                                 Sondra A. Hemeryck
                                 Brian O. Watson
                                 Lauren E. Jaffe
                                 Jennifer Steeve
                                 70 W. Madison St., Suite 2900
                                 Chicago, Illinois 60602
                                 (312) 471-8700 (Telephone)
                                 (312) 471-8701 (Facsimile)
                                 shemeryck@rshc-law.com
                                 bwatson@rshc-law.com
                                 ljaffe@rshc-law.com
                                 jsteeve@rshc-law.com
                                 docketdept@rshc-law.com

                                 **ATTORNEYS FOR PETITIONER
                                 COTTER CORPORATION (N.S.L.)**

35

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 21(d)(1). This petition contains 7,772 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This petition has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Times New Roman font.

Dated:  January 21, 2021

*/s/ Brian O. Watson*
Brian O. Watson
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (Telephone)
(312) 471-8701 (Facsimile)
bwatson@rshc-law.com

36

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to

Circuit Rule 28A(h), a version of the petition in non-scanned PDF format.  I hereby

certify that the file has been scanned for viruses and that it is virus-free.


Dated:  January 21, 2021                    */s/ Brian O. Watson*
                                            Brian O. Watson
                                            RILEY SAFER HOLMES & CANCILA LLP
                                            70 W. Madison St., Ste. 2900
                                            Chicago, Illinois 60602
                                            (312) 471-8700 (Telephone)
                                            (312) 471-8701 (Facsimile)
                                            bwatson@rshc-law.com

37

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 21, 2021, an electronic copy of the Petition for Writ of Mandamus was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all below participants in this case will be served by electronic mail:

Anthony D. Gray
JOHNSON GRAY LLC
319 N. 4th St., Suite 212
St. Louis, MO 63102
(314) 385-9500
agray@johnsongraylaw.com

Nathaniel R. Carroll
ARCHCITY DEFENDERS
440 N. 4th St., Suite 390
St. Louis, MO 63102
(314) 361-8834
ncarroll@archcitydefenders.org

Ryan A. Keane
Steven W. Duke
KEANE LAW LLC
7777 Bonhomme Ave., Suite 1600
St. Louis, MO 63102
(314) 391-4700
ryan@keanelawllc.com
steve@keanelawllc.com

Celeste Brustowicz
Victor T. Cobb
THE COOPER LAW FIRM LLC
1525 Religious St.
New Orleans, LA 70130
(949) 315-9075
cbrustowicz@clfnola.com
vcobb@sch-llc.com

David R. Barney, Jr.
THOMPSON BARNEY
2030 Kanawha Blvd. E.
300 E. Pedro Simmons Dr.
Charleston, WV 25311
(304) 343-4401
drbarneywv@gmail.com

S. Martin Jansky
MARTIN JANSKY LAW FIRM PC
2001 Big Bend Rd.
St. Louis, MO 63117
(314) 881-6144
martin@janskylaw.com

38

John F. Cowling
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105
(314) 621-5070
jcowling@armstrongteasdale.com

David R. Erickson
Steven D. Soden
SHOOK HARDY LLP
2555 Grand Blvd., 19th Floor
Kansas City, MO 64108
(816) 474-6550
derickson@shb.com
ssoden@shb.com

Gregory C. Mollett
Richard E. Greenberg
GREENSFELDER HEMKER PC
10 S. Broadway, Suite 2000
St. Louis, MO 63102
(314) 516-2628
gcm@greensfelder.com
reg@greensfelder.com

Allyson E. Cunningham
William G. Beck
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108
(816) 460-5116
allyson.cunningham@lathropgpm.com
william.beck@lathropgpm.com

Patricia L. Silva
LATHROP GPM LLP
7701 Forsyth Blvd., Suite 500
Clayton, MO 63105
(314) 613-2500
patricia.silva@lathropgpm.com

The Honorable John A. Ross
U.S. District Court for the Eastern
District of Missouri
Thomas F. Eagleton U.S. Courthouse
111 S. 10th St.
St. Louis, MO 63102
(314) 244-7560
*[email address omitted]*

Dated:  January 21, 2021

*/s/ Brian O. Watson*
Brian O. Watson
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, Illinois 60602
(312) 471-8700 (Telephone)
(312) 471-8701 (Facsimile)
bwatson@rshc-law.com

39

# ADDENDUM

## TABLE OF CONTENTS TO ADDENDUM

Memorandum and Order, Docket No. 71, Case No. 4:20-cv-01227-JAR, filed 12/22/20.................................................................................................ADD-1

Memorandum and Order, Docket No. 75, Case No. 4:18-cv-00624-JAR, filed 3/29/19...................................................................................................ADD-16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMIA BANKS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-CV-01227-JAR |
| | ) | |
| COTTER CORPORATION (N.S.L.), et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| COTTER CORPORATION (N.S.L.), | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MALLINCKRODT LLC, et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion to Sever and Remand All Non-Third-Party Claims. (Doc. 47). Defendant and Third-Party Plaintiff Cotter Corporation (N.S.L.) ("Cotter") responded in opposition (Doc. 58),[1] and Plaintiffs have replied. (Doc. 66). Other Defendants and Third-Party Defendants have joined Cotter's opposition either in whole or in part. (Docs. 56, 60, 61, 64-65). For the reasons discussed below, this Court will grant the instant motion

---

[1] Cotter's response states "ORAL ARGUMENT REQUESTED" in the caption. (Doc. 58 at 1). Pursuant to E.D. Mo. L.R. 4.02(B), a party requesting oral argument "shall file such request with its motion or memorandum briefly setting forth the reasons which warrant the hearing of oral argument." Cotter has not provided any explanation why oral argument is necessary. Given the issues here have been extensively litigated, including before this Court, oral argument is not warranted.

ADD-1

and sever and remand all claims except for Cotter's claim for contribution against Defendant Mallinckroft LLC ("Mallinckrodt").

## I.   FACTUAL AND PROCEDURAL HISTORY

It's like déjà vu all over again. On April 2, 2018, Plaintiff Tamia Banks filed an amended class action petition in the Circuit Court of St. Louis County, Missouri. *See Banks v. Cotter Corp.*, No. 4:18-CV-624 JAR, 2019 WL 1426259, at *1 (E.D. Mo. Mar. 29, 2019). The relevant underlying facts, as previously described by this Court, are as follows:

> From 1942 to 1957, uranium ore was processed in association with the Manhattan Project to develop nuclear weapons in a facility in downtown St. Louis City known as the St. Louis Downtown Site ("SLDS"). (First Amended Class Action Petition ("FAP")). In the late 1940's, the Manhattan Project acquired a tract of land near Lambert Airport known as the St. Louis Airport Site ("SLAPS") to store radioactive waste from the uranium processing operations at SLDS. In 1957, "approximately sixty truckloads of contaminated scrap metal, several contaminated vehicles, in addition to miscellaneous radioactive wastes were buried on the western portion of SLAPS adjacent to Coldwater Creek," a tributary of the Missouri River which runs throughout North St. Louis County. In the 1960's, some of the radioactive waste that had been stored at SLAPS was moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"), a part of which later became the Hazelwood Interim Storage Site ("HISS"). In the late 1960's, Cotter purchased the radioactive waste stored at both SLAPS and the Latty Avenue Site. Between 1969 and 1973, Cotter stored, processed and transported radioactive waste at the SLAPS and Latty Avenue sites. In 1973, SLAPS was sold to the Airport Authority. The Latty Avenue Site was sold to Futura Coatings, n/k/a DJR. *Id.* (internal citations omitted).

Banks asserted numerous state law claims, generally alleging that "as a result of Defendants' collective conduct over several decades, radioactive wastes were released into the environment in and around Coldwater Creek, resulting in contamination of her home and property, as well as the property of other classes members." *Id.*

Defendants promptly removed the case to this Court claiming that the action arose out of the Price-Anderson Act ("PAA"), thereby establishing federal jurisdiction. *Id.* at *2. The PAA was

2

**ADD-2**

enacted as an amendment to the Atomic Energy Act of 1954 and sought to "encourage private sector development of atomic energy" by, among other things, "channel[ing] public liability resulting from nuclear incidents to the federal government." *Id.* (citing *El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473 (1999)). On March 29, 2019, this Court remanded on the grounds that "a license or indemnity agreement is a prerequisite for federal subject matter jurisdiction pursuant to the PAA." *Id.* at *6; *see also Kitchin v. Bridgeton Landfill, LLC*, 389 F. Supp. 3d 600 (E.D. Mo. 2019), *appeal filed* (No. 19-2072); *Strong v. Republic Servs., Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017).

Following remand, the case proceeded in state court and Plaintiffs filed a Second Amended Class Action Petition ("SAP"). (Doc. 1-6). On June 30, 2020, Cotter filed a Third-Party Petition seeking contribution from the Third-Party Defendants, including Mallinckrodt. (Doc. 1-7). Cotter argues that any potential damages assessed against it "were caused, in whole or in part, by the conduct, fault, acts, carelessness, omissions, and negligence of Mallinckrodt, thereby barring any such recovery against Cotter." (*Id.* at ¶ 73). Mallinckrodt then filed a Notice of Removal claiming this Court has jurisdiction pursuant to the PAA and because Mallinckrodt acted "under color of" or at the direction of a federal officer per 28 U.S.C. § 1442. (Doc. 1). On October 12, 2020, Mallinckrodt filed for bankruptcy, triggering an automatic stay in this case per 11 U.S.C. § 362. (Doc. 46). Plaintiffs filed the instant motion the next day. (Doc. 47).

The automatic stay further complicates this already convoluted posture. According to 11 U.S.C. § 362(a)(1), Mallinckrodt's voluntary bankruptcy petition stays "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy petition]." The automatic stay is "fundamental to the reorganization process, and its scope is intended to be broad." *Small Bus.*

3

ADD-3

*Admin. v. Rinehart*, 887 F.2d 165, 167 (8th Cir. 1989). In accordance with the automatic stay, Plaintiffs' motion "does not seek any relief as to Mallinckrodt" but instead requests that this Court sever and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants. (Doc. 46 at ¶¶ 10-13).[2] For purposes of this motion, Plaintiffs effectively presume that Mallinckrodt has properly invoked this Court's jurisdiction via its Notice of Removal without waiving their right to argue otherwise. (Doc. 48 at 2 n.1). Accordingly, a detailed inquiry into the presence of federal jurisdiction over Mallinckrodt is unnecessary at this moment.[3] The key question on this motion is whether, assuming such jurisdiction exists, this Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## II.   DISCUSSION

### A.   Existence of Supplemental Jurisdiction

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

---

[2] The Court notes that there is substantial precedent supporting the position that remand is permissible even when an automatic stay under 11 U.S.C. § 362 is in place. *See Price v. Chrysler LLC*, No. 4:09-CV-232 ERW, 2009 WL 2208298, at *1 (E.D. Mo. July 23, 2009) ("The Court's decision to remand this action to state court is essentially a lateral move to address a procedural issue, and it does not continue the case in any significant manner. Such a motion in no way affects the rights and duties of either the Defendant as a debtor, or the Plaintiff as a potential creditor."); *see also Dieterly v. Boy Scouts of Am.*, No. 20-902, 2020 WL 3447766, at *2 (E.D. Pa. June 24, 2020) (collecting cases). *But see Liljeberg Enters. Int'l v. Vista Hosp. of Baton Rouge, Inc.*, No. 04-2780, at *1-2 (E.D. La. Nov. 24, 2004) ("[R]emand of a case is not a mere 'ministerial' act that would not violate the automatic stay.").

Plaintiffs, however, seek no relief as to Mallinckrodt in the instant motion and instead request severance and remand. Mallinckrodt has acknowledged that Plaintiffs' motion does not seek any relief as to Mallinckrodt and "notes that it is subject to the Automatic Stay." (Doc. 57 at 2). Accordingly, it is not appropriate at this time to assess whether remand of the Third-Party Petition against Mallinckrodt is merited, regardless whether such a remand would be permissible under 11 U.S.C. § 362.

[3] It is proper in these unique circumstances for this Court to proceed without a detailed inquiry into the presence of jurisdiction under 28 U.S.C. § 1442. This Memorandum and Order presumes such jurisdiction and assesses whether the exercise of supplemental jurisdiction over the state law claims is appropriate. If this Court finds it lacks jurisdiction after the automatic stay is lifted, the entire case would be remanded regardless.

4

**ADD-4**

Article III of the United States Constitution." 28 U.S.C. § 1367(a). In other words, the claims must "derive from a common nucleus of operative fact." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

This Court can exercise supplemental jurisdiction over Plaintiffs' state law claims because the contribution claim against Mallinckrodt clearly stems from the same underlying facts. Plaintiffs' entire claim, as well as Cotter's claim of contribution, stems from the processing and transporting of hazardous materials in association with the Manhattan Project. *See, e.g.*, *Harbison v. Rich Gullet and Sons, Inc.*, No. 4:13-CV-1138 SPM, 2014 WL 5483569, at *6 (E.D. Mo. Oct. 29, 2014) (claim for contribution / indemnity part of same case or controversy). The parties do not dispute whether this Court *can* exercise supplemental jurisdiction over the state law claims, only whether it *should* exercise such jurisdiction.

### B. Exercise of Supplemental Jurisdiction

This Court may decline to exercise its supplemental jurisdiction over a claim if, among other reasons not relevant here, "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, or . . . in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2)-(4). If one of these statutory factors is present, the Court must weigh the interests of judicial economy, convenience, fairness, and comity to determine whether to exercise supplemental jurisdiction. *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). These are frequently referred to as the *Gibbs* factors. *See Gibbs*, 383 U.S. 715 (1966). The Court must also consider whether either party has attempted to "manipulate the forum." *Cohill*, 484 U.S. at 357. Ultimately, supplemental jurisdiction "is a doctrine of discretion." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *Gibbs*, 383 U.S. at 726). District

courts have "broad discretion" when determining whether to exercise supplemental jurisdiction. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 599 (8th Cir. 2002).

It is evident that Plaintiffs' state law claims substantially predominate over Mallinckrodt's PAA and federal contractor defenses, and Cotter does not argue otherwise. As Plaintiffs note, the SAP asserts 11 claims against Defendants, all of which are premised on Missouri law. (Doc. 48 at 3; Doc. 1-6). This Court has already held that Plaintiffs' claims alone do not establish federal jurisdiction. *Banks v. Cotter Corp.*, No. 4:18-CV-624 JAR, 2019 WL 1426259 (E.D. Mo. Mar. 29, 2019). It is only Cotter's claim for contribution against Mallinckrodt, a Third-Party Defendant, that potentially provides federal jurisdiction via Mallinckrodt's alleged federal defense. Therefore, pursuant to 28 U.S.C. § 1367(c)(2), a careful analysis of the *Gibbs* factors is warranted.

**Judicial Economy and Convenience of the Parties**

This Court does not believe that there are substantial issues of judicial economy at stake, though such considerations somewhat favor remand. "It is the law in this circuit that 'the substantial investment of judicial time and resources in the case . . justifies the exercise of jurisdiction over the state claim." *Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226, 1242 (8th Cir. 1994) (quoting *North Dakota v. Merchant Nat'l Bank & Trust Co.*, 634 F.2d 368, 371 (8th Cir. 1980) (en banc)). This Court has not devoted substantial resources to the case; the Notice of Removal was only filed recently, and this Court has yet to rule on any substantive motion. Meanwhile, substantial discovery has occurred in state court, and Judge Walsh has ruled on Cotter's motion to dismiss arguing PAA preemption. (Doc. 48 at 6).

Cotter presents the understandable concern that granting severance and remand will result in this litigation proceeding in both state and federal court. (Doc. 58 at 10). The Court does not agree, however, that this will require "re-litigating every step of this putative class action" on the

6

third-party claim against Mallinckrodt. (*Id.*). As the Missouri Supreme Court has explained, a claim for contribution "is really an anticipatory claim; that is, the claim by a defendant who is held liable to a plaintiff really is not ripe until the defendant has suffered a judgment." *Hemme v. Bharti*, 183 S.W.3d 593, 598 (Mo. banc 2006). If Cotter is held liable to Plaintiffs, it can proceed on its claim for contribution against Mallinckrodt; if Plaintiffs lose, Cotter's claim against Mallinckrodt will become moot.

Cotter cites *Joyner v. A.C. & R. Insulation Co.* for the proposition that a party should not be required to conduct parallel litigation in state and federal court. No. CCB-12-2294, 2013 WL 877125, at *10 (D. Md. Mar. 7, 2013). But Cotter misinterprets *Joyner*. As later explained by the same judge, the concern in *Joyner* was the "potential of bifurcating claims *against one party* between state and federal courts." *Oliver v. Campbell McCormick, Inc.*, No. CCB-16-1057, 2016 WL 3878492, at *3 (D. Md. July 18, 2016) (emphasis added). Requiring a defendant to face similar claims for the same conduct in both federal and state courts is a legitimate concern; but that is not the situation here, where Cotter is a Third-Party Plaintiff in this Court seeking contribution against Mallinckrodt. *Oliver* is particularly comparable here, as the court granted severance and remand after finding that "the state law claims predominate over the federal contractor defense, the only claim over which the court has original jurisdiction." *Id.*

**Fairness and Comity**

Plaintiffs argue that fairness and comity favor severance and remand because Cotter delayed the naming of Mallinckrodt as a Third-Party Defendant, Mallinckrodt's bankruptcy will substantially delay this litigation,[4] and Mallinckrodt's federal defenses are essentially irrelevant to

---

[4] The parties dispute whether Mallinckrodt's bankruptcy constitutes an "exceptional circumstance" under 28 U.S.C. § 1367(c)(4). Because the Court has determined that an analysis of the *Gibbs* factors is necessary per 28 U.S.C. §

7

ADD-7

Plaintiffs' claims. The Court agrees that Mallinckrodt's bankruptcy is a significant factor in favor of severance and remand given Mallinckrodt's role in this case. As discussed above, Mallinckrodt's relevance to this dispute is entirely contingent on a finding that Cotter is liable to Plaintiffs. Severance and remand appropriately permits Plaintiffs' state law claims to proceed rather than be delayed by the bankruptcy of a potentially irrelevant Third-Party Defendant.

In *Crocker v. Borden, Inc.*, the third-party defendant properly removed a state court action pursuant to the federal contractor defense located at 28 U.S.C. § 1442. 852 F. Supp. 1322 (E.D. La. 1994). The court severed the claim against the third-party defendant and remanded the remaining claims, specifically noting that "[n]one of the approximately 3,000 plaintiffs in the captioned matter has sued [the third-party defendant] as a primary defendant." *Id.* at 1331. The court further recognized that the third-party petitioner "**will not be prejudiced** by the severance . . . as it would retain the right to pursue its third-party claim, if any such claim still existed" after disposition of the plaintiffs' primary case. *Id.* (emphasis in original).[5] In *Crocker* and this case, "federal jurisdiction is [potentially] present for reasons wholly unrelated to the merits of any claim, and vast majority of the claims are based on state law and between non-federal actors." *Brown v. Kentucky Utils. Co.*, No. 3:15-CV-352 GNS, 2015 WL 6476096, at *2 (W.D. Ky. Oct. 26, 2015) (citation omitted). Considerations of comity strongly favor severance and remand.

Cotter's primary argument is that severance and remand are "administratively impossible" because Cotter's potential liability under state law does not translate into liability for Mallinckrodt under the PAA. (Doc. 58 at 12). But this Court has already determined that the PAA does not apply

---

1367(c)(2), it need not decide whether § 1367(c)(4) is also triggered. The effect of the bankruptcy stay can certainly be considered among the *Gibbs* factors, however.

[5] These quotes were technically provided by the third-party defendant, but the court specifically endorsed the arguments as "ably described." *Crocker*, 852 F. Supp. at 1331.

to Plaintiffs' claims against Cotter. *Banks v. Cotter Corp.*, No. 4:18-CV-624 JAR, 2019 WL 1426259, at *5 (E.D. Mo. Mar. 29, 2019). This differentiates the case at hand from the ongoing case of *McGurk v. Mallinckrodt, Inc.*, No. 4:12-CV-00361 AGF (E.D. Mo.).[6] Throughout its briefing, Cotter attempts to re-argue this Court's prior decision and claim that circumstances have changed due to Mallinckrodt's presence in the case. (Doc. 58 at 16-18). Cotter cannot avoid severance and remand on the grounds that this is truly a PAA action given this Court's clear holding that the PAA does not preempt Plaintiffs' state law claims.

### Manipulation of the Forum

Each party alleges that the other has manipulated the forum. Plaintiffs claim that Defendants have manipulated the forum by naming Mallinckrodt as a Third-Party Defendant late in the game in order to establish federal jurisdiction. (Doc. 48 at 12). Cotter alleges that Plaintiffs have manipulated the forum by changing their position in a manner that should trigger jurisdiction under the PAA. (Doc. 58 at 18). This court is not persuaded that either party has attempted to manipulate the forum in any dispositive sense. Cotter is within its rights to seek contribution from Mallinckrodt, and it is Mallinckrodt who removed this case to federal court. As discussed further below, Cotter has failed to allege any changes in the record since the initial remand which suggest manipulation by Plaintiffs.

This Court does consider the timing of Cotters' Third-Party Petition relevant, however. Cotter repeatedly alleges that Mallinckrodt is an indispensable party whose centrality to this dispute is obvious, yet Mallinckrodt was not brought into the case for over two years. The Court

---

[6] Cotter briefly states, without further explanation, that "this case should be consolidated with *McClurg*." (Doc. 58 at 13). Cotter does not appear to have filed any motion pursuant to Fed. R. Civ. P. 42(a). The Court reminds Cotter that, pursuant to E.D. Mo. L.R. 4.03, motions to consolidate should generally be filed in the first-filed case.

is influenced by the decision in *City of St. Louis v. Cernicek*, No. 4:00-CV-1895 (CEJ), 2001 WL

34134733 (E.D. Mo. Sept. 25, 2001). In *Cernicek*, the City of St. Louis sued various gun

manufacturers seeking damages for firearm-related violence. The district court remanded after an

initial removal premised on federal question jurisdiction. Certain defendants subsequently filed a

third-party complaint seeking contribution from foreign-owned entities. As here, the third-party

defendants removed to federal court. The district court struck the third-party complaint pursuant

to Fed. R. Civ. P. 14(a), noting that defendants had joined the foreign entities "nearly one year

after the case was initiated, and did so only after this Court remanded the case," and plaintiff had

"been prejudiced by the timing of the third-party complaint." *Id.* at *4. Similarly, Plaintiffs are

prejudiced by Cotter's delay in seeking contribution from Mallinckrodt.

  Having carefully considered the *Gibbs* factors, this Court finds in its discretion that

severance and remand is warranted. Plaintiffs bring state-law claims against Defendants; the only

potential jurisdictional hook for this Court is a Third-Party Defendant's federal defense, a defense

which is irrelevant if Plaintiffs cannot obtain judgment against Defendants. Given the proceedings

which have already occurred in state court, Mallinckrodt's bankruptcy, and the nature of Cotter's

claim against Mallinckrodt, considerations of judicial economy, fairness, convenience of the

parties, and comity favor severance and remand. This case presents a quintessential example of

when it is appropriate for a federal court to decline supplemental jurisdiction and permit a state

court to interpret its own laws as applied to its own citizens.

  C. <u>Severance and Joinder</u>

  The parties have not separately briefed the issue of severance, but it is worth some distinct

consideration. Fed. R. Civ. P. 21 generally authorizes severance of parties or claims "on such terms

as are just." *See also* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim,

ADD-10

to sever it, or to try it separately."). "Questions of severance are addressed to the broad discretion

of the court." *Chapman v. Hiland Partners GP Holdings*, No. 1:13-CV-052, 2014 WL 12836626,

at *1 (D. N.D. Jan. 17, 2014) (citing 7 Wright, Miller & Kane, Federal Practice and Procedure §

1689 (3d ed. 2001)).

There is meaningful precedent for severing third-party claims seeking contribution. *See*

*Oliver v. Campbell McCormick, Inc.*, No. CCB-16-1057, 2016 WL 3878492, at *3 (D. Md. July

18, 2016); *Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*, No. 07-666 (WHW),

2009 WL 3233533 (D. N.J. Oct. 5, 2009) (citing *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451

F.3d 424, 444 (7th Cir. 2006)) ("Claims for contribution and indemnification are severable from

the underlying primary liability claims."). The Court is cognizant that it "may split claims arising

from the same nucleus of operative facts," but "the Court should not split apart claims that are too

closely interconnected when remanding part of a case to state court." *Lawler v. Miratek Corp.*, No.

EP-09-CV-252-KC, 2010 WL 743925, at *7 (W.D. Tex. Mar. 2, 2010). As discussed above,

Mallinckrodt only becomes a relevant party if Plaintiffs are able to succeed in their claims against

Defendants. *See Hemme v. Bharti*, 183 S.W.3d 593, 598 (Mo. banc 2006) ("[Contribution] is really

an anticipatory claim; that is, the claim by a defendant who is held liable to a plaintiff really is not

ripe until the defendant has suffered a judgment."). This Court finds that the third-party claim for

contribution against Mallinckrodt falls within a narrow band of claims that should be severed

despite arising from a common nucleus of operative facts as Plaintiffs' state law claims.

Cotter argues, however, that this Court cannot sever the claims because Mallinckrodt is a

necessary party to the litigation under Fed. R. Civ. P. 19. (Doc. 58 at 7-10). Cotter claims that

Mallinckrodt has "an outsized role in the events" relevant to Plaintiffs' claims. (*Id.* at 9). Plaintiffs

respond that Cotter has confused joinder with impleader, and Mallinckrodt was impleaded via Mo.

11

**ADD-11**

Sup. Ct. R. 52.11, not joined via Mo. Sup. Ct. R. 52.04. (Doc. 66 at 10). Plaintiffs argue in the alternative that "[i]n no event is Mallinckrodt an essential party as contemplated by Fed. R. Civ. P. 19." (*Id.* at 11). At least one court in this circuit has held that the discretion to sever parties pursuant to Rule 21 is "circumscribed . . . by Rule 19(b) because the court cannot proceed without indispensable parties." *Moubry v. Kreb*, 58 F. Supp. 2d 1041, 1048 (D. Minn. 1999). Whether a party is indispensable, however, is a "matter left to the district court's discretion." *Id.* (quoting *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455, 1471 (10th Cir. 1987)).

Cotter cites multiple cases purporting to hold that joint tortfeasors are necessary parties. *See, e.g.*, *Two Shields v. Wilkinson*, 790 F.3d 791 (8th Cir. 2015). But the court in *Two Shields* recognized the general principle that "it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Id.* at 797 (quoting *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990)). The Advisory Committee Notes to the 1966 Amendments to Rule 19 specifically acknowledge "settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."

For the same reasons severance is appropriate, this Court finds in its discretion that Mallinckrodt is not an indispensable party. The Court notes that over two years passed before Mallinckrodt was impleaded in state court and no Defendant appears to have filed a motion to dismiss in state court alleging failure to include a necessary party. Such inaction is inconsistent with Cotter's argument here that the case simply cannot proceed without Mallinckrodt's presence.

D. PAA

Cotter finally argues that, despite this Court's previous remand, the PAA now provides for federal jurisdiction over the entire action. (Doc. 58 at 15-20). First, Cotter claims that Mallinckrodt's presence as a Third-Party Defendant means there is an applicable license and

ADD-12

indemnity agreement. Cotter also cites *Halbrook v. Mallinckrodt, LLC* for the proposition that Eighth Circuit precedent now confirms the application of the PAA to Plaintiffs' claims. 888 F.3d 971 (8th Cir. 2018). This Court has already explained, however, that the posture of the *McClurg* cases is fundamentally different because plaintiffs in *McClurg* brought their claims under the PAA and there was no challenge to jurisdiction. *Banks v. Cotter Corp.*, No. 4:18-CV-624 JAR, 2019 WL 1426259, at *5 n.1 (E.D. Mo. Mar. 29, 2019). A court in this district facing nearly identical circumstances to this case has found, moreover, that a third-party defendant cannot remove a case to federal court based on the PAA as an affirmative defense. *Strong v. Republic Servs., Inc.*, No. 4:18-CV-2043 JCH, 2019 WL 1436995, at *3 (E.D. Mo. Apr. 1, 2019) (citing *Hurt v. Dow Chemical Co.*, 963 F.2d 1142 (8th Cir. 1992)) ("An affirmative defense is not a claim or cause of action. It is well established that a defense of pre-emption, even if anticipated by the parties does not cause the claim to arise under federal law."). The necessary implication of this holding is that Mallinckrodt's PAA defense does not establish federal jurisdiction over Plaintiffs' state law claims.[7]

Second, Cotter argues that Plaintiffs have "changed their relevant position on radioactive materials" by referencing materials beyond mill tailings in their SAP and making broad discovery requests. (Doc. 58 at 18). It is clear, however, that Plaintiffs' current petition is not materially different from the petition this Court previously remanded. (Doc. 66 at 8-9). Cotter cites no precedent, moreover, for the proposition that discovery requests alone constitute a sufficient change in the record justifying another attempt at removal. Neither the Third-Party Petition against

---

[7] Cotter argues that *Strong* "makes no difference" because Mallinckrodt has removed under 28 U.S.C. § 1442 as well. Cotter is correct to note the distinction, but Plaintiffs do not rely on *Strong* in order to challenge Mallinckrodt's removal. Instead, the relevance of *Strong* is that it demonstrates that Mallinckrodt's PAA defense does not provide this Court with original jurisdiction over the entire case.

Mallinckrodt nor the alleged changes to Plaintiffs' position merit reconsideration of this Court's prior remand.

### III.    CONCLUSION

The Plaintiffs in this case are Missouri citizens and property owners who seek damages and injunctive relief under Missouri law based on events which took place entirely in Missouri. (Doc. 1-6). After an earlier remand, Cotter's Third-Party Petition seeking contribution against Mallinckrodt, who has a potential federal defense under the PAA and 28 U.S.C. § 1442, provides the only potential avenue for federal jurisdiction in this case. Mallinckrodt's federal defense is only relevant, however, in the event that Plaintiffs succeed in their claims against Cotter. While the claim against Mallinckrodt stems from a common nucleus of operative fact as Plaintiffs' state law claims, the state law claims substantially predominate, and the *Gibbs* factors favor severance and remand. Mallinckrodt is not an indispensable party to the litigation, and its presence as Third-Party Defendant does not change this Court's prior determination that there is no federal jurisdiction under the PAA.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Sever and Remand All Non-Third-Party Claims (Doc. 47) is **GRANTED**. Cotter's claim for contribution against Mallinckrodt in its Third-Party Petition (Doc. 1-7 at ¶¶ 68-75) is hereby **SEVERED**, and all other claims in this case are **REMANDED** back to the Circuit Court of St. Louis County for further proceedings. [As requested by Cotter, the Court will wait 30 days before ordering the Clerk of Court to transmit the order to state court so that any party may exercise its right to appeal].

14

ADD-14

**IT IS FURTHER ORDERED** that the Landfill Defendants' Motion to Dismiss Cotter's

Third-Party Petition (Doc. 21) is **DENIED as moot.**

Dated this 22nd day of December, 2020.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

15

ADD-15

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TAMIA BANKS, on behalf of herself and   )
all others similarly situated,   )
  )
        Plaintiff,   )
  )
v.   )       No. 4:18-CV-00624 JAR
  )
COTTER CORPORATION, et al.,   )
  )
        Defendants.   )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion To Remand. (Doc. No. 38). Defendants Cotter Corporation (N.S.L.) ("Cotter"), Commonwealth Edison Company ("ComEd"), and Exelon Corporation and Exelon Generation Company, LLC (collectively "Exelon") responded. (Doc. No. 52). Defendants DJR Holdings, Inc. ("DJR"), f/k/a Futura Coatings, Inc., and St. Louis Airport Authority ("Airport Authority") joined in the brief in opposition to Plaintiff's motion filed by Cotter, ComEd and Exelon. (Doc. No. 53). Plaintiff replied (Doc. No. 59) and Defendants, with leave of Court, filed a surreply in further opposition to remand (Doc. No. 65). The Court held a hearing and heard oral argument on the motion to remand. The motion is now ready for disposition.

### I.     Background

From 1942 to 1957, uranium ore was processed in association with the Manhattan Project to develop nuclear weapons in a facility in downtown St. Louis City known as the St. Louis Downtown Site ("SLDS"). (First Amended Class Action Petition ("FAP"), Doc. No. 6, at ¶¶ 56, 57). In the late 1940's, the Manhattan Project acquired a tract of land near Lambert Airport

ADD-16

known as the St. Louis Airport Site ("SLAPS") to store radioactive waste from the uranium processing operations at SLDS. (Id. at ¶¶ 58, 79). In 1957, "approximately sixty truckloads of contaminated scrap metal, several contaminated vehicles, in addition to miscellaneous radioactive wastes were buried on the western portion of SLAPS adjacent to Coldwater Creek," a tributary of the Missouri River which runs throughout North St. Louis County  (Id. at ¶¶ 2, 60). In the 1960's, some of the radioactive waste that had been stored at SLAPS was moved to a storage site on Latty Avenue in Hazelwood, Missouri (the "Latty Avenue Site"), a part of which later became the Hazelwood Interim Storage Site ("HISS"). (Id. at ¶¶ 61, 75). In the late 1960's, Cotter purchased the radioactive waste stored at both SLAPS and the Latty Avenue Site. (Id. at ¶¶ 63, 81). Between 1969 and 1973, Cotter stored, processed and transported radioactive waste at the SLAPS and Latty Avenue sites. (Id. at ¶ 66). In 1973, SLAPS was sold to the Airport Authority. (Id. at ¶ 73). The Latty Avenue Site was sold to Futura Coatings, n/k/a DJR. (Id. at ¶ 76).

Plaintiff Tamia Banks owns property located within the one hundred year flood plain of Coldwater Creek. (Id. at ¶ 8). On April 2, 2018, Plaintiff filed her amended class action petition in the Circuit Court of St. Louis County, Missouri. She alleges that, as a result of the Defendants' collective conduct over several decades, radioactive wastes were released into the environment in and around Coldwater Creek, resulting in the contamination of her home and property, as well as the property of other class members, and leading to various forms of property damage.

Plaintiff asserts state-law claims against Cotter, ComEd, Exelon, DJR, and the Airport Authority for: (1) trespass; (2) permanent nuisance; (3) temporary nuisance; (4) negligence; (5) negligence per se; (6) strict liability/absolute liability; (7) injunctive relief seeking medical monitoring; (8) punitive damages; and (9) civil conspiracy; and against the Airport Authority

only for (10) inverse condemnation; (11) violation of the Missouri State Constitution's due process guarantee; and (12) violation of the Missouri State Constitution's takings and just compensation clause. Plaintiff seeks damages resulting from the loss of use and enjoyment of her property; annoyance and discomfort; damage to her personal property; diminution in the market value of her property; costs and expenses incurred as a result of her exposure to radioactive emissions, including the cost of remediation and relocation; statutory damages under Missouri state law; punitive and exemplary damages; costs and attorneys' fees; and interest on the above amounts. Plaintiff also seeks injunctive relief in the form of medical and scientific monitoring of her home and property, as well as environmental testing, clean-up, and continued medical testing.

On April 18, 2018, Defendants removed the action to this Court on the grounds that Plaintiff's action arises out of the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 *et seq.*, and that, therefore, the Court has subject matter jurisdiction. (Doc. No. 1). On May 25, 2018, Defendants moved to dismiss Plaintiff's claims. (Doc. Nos. 27, 29, 36, 37).

Plaintiff filed her motion to remand on May 29, 2018, asserting that she has pled only state law causes of action and that her original and amended petitions raise no claims under federal law. (Doc. No. 38). Plaintiff specifically alleges that her claims do not fall within the scope of the PAA because (i) Coldwater Creek is not and never has been a licensed nuclear facility; (ii) Defendants have never received a license to possess, transport, or dispose of any radioactive waste on or in Coldwater Creek; (iii) Defendants did not have a license to dispose of radioactive wastes in Coldwater Creek; (iv) Defendants did not have a license to handle the particular materials they handled as alleged herein, including enriched thorium; and (v) Defendants have never entered into an indemnification agreement with the United States

ADD-18

government under 42 U.S.C. § 2210 with respect to the complained activities. (FAP at ¶¶ 14 A-E).

On June 14, 2018, the Court granted Plaintiff's motion to stay Defendants' motions to dismiss pending resolution of her motion to remand and stayed proceedings for sixty days. (Doc. Nos. 51). Following a hearing on Plaintiff's motion to remand on August 8, 2018, the Court extended the stay until further order of the Court. (Doc. No. 71).

## II.     Legal standard

Federal courts are courts of limited jurisdiction. Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). A federal district court may exercise removal jurisdiction only where the court would have had original subject-matter jurisdiction had the action initially been filed there. Krispin v. May Dep't Stores Co., 218 F.3d 919, 922 (8th Cir. 2000) (citing 28 U.S.C. § 1441(b)). A party seeking removal and opposing remand carries the burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence. In re Prempro Prods. Liab. Litig., 591 F.3d 613, 620 (8th Cir. 2010). Generally, a court must resolve all doubts about federal jurisdiction in favor of remanding the case to state court. In re Prempro, 591 F.3d at 620.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Bowler v. Alliedbarton Security Services, LLC, 123 F. Supp.3d 1152, 1155 (E.D. Mo. 2015) (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). See also Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 542 (8th Cir. 1996) ("The 'well-pleaded complaint rule' requires that a federal cause of action must be stated on the face of the complaint before the

4

ADD-19

defendant may remove the action based on federal question jurisdiction.") (quoting Caterpillar, 482 U.S. at 392). Because federal law provides that plaintiffs are the "masters" of their claims, plaintiffs "may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, 482 U.S. at 392.

Even in situations where a cause of action based on a federal statute does not appear on the face of the complaint, preemption based on a federal statutory scheme may apply in circumstances where "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." Bowler, 123 F. Supp.3d at 1155 (quoting Caterpillar, 482 U.S. at 393). See, e.g., Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987) (where a former employee alleged breach of contract, retaliatory discharge, and wrongful termination of disability benefits in state court complaint, the court held that the former employee's claims were preempted by ERISA; plaintiff's claims were necessarily federal in character; and, therefore, removal under 28 U.S.C. § 1441(a) was proper). "Where a complaint raises issues to which federal law applies with complete preemptive force, the [c]ourt must look beyond the face of the complaint in determining whether remand is proper." Bowler, 123 F. Supp.3d at 1155 (quoting Green v. Arizona Cardinals Football Club, LLC, 21 F. Supp.3d 1020, 1025 (E.D. Mo. 2014)).

As further explained by the Eighth Circuit, the exception to the well-pleaded complaint rule applies where a federal statute provides "an exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Id. (quoting Johnson v. MFA Petroleum Co., 701 F.3d 243, 248 (8th Cir. 2012). Thus, although a plaintiff has only filed state law claims, a court may conclude that the plaintiff has "simply brought a

ADD-20

mislabeled federal claim, which may be asserted under some federal statute." Id. (quoting Johnson, 701 F.3d at 247 (internal quotation marks and citation omitted).

### III.   Price-Anderson Act

### A. History

In 1954, Congress enacted the Atomic Energy Act of 1954 ("AEA"), 42 U.S.C. §§ 2011–2281, to encourage private sector development of atomic energy for peaceful purposes under a program of federal regulation and licensing. The Act alone failed to spur private sector entry into the field of nuclear energy due in part to a fear of potentially bankrupting liability absent some limiting legislation. Carey v. Kerr-McGee Chemical Corp., 60 F. Supp.2d 800, 803 (N.D. Ill. 1999) (citing Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 64 (1978)). Thus, in 1957, Congress amended the AEA with the Price-Anderson Act ("PAA"), 42 U.S.C. § 2011 et seq., for the express purpose of "protecting the public and … encouraging the development of the atomic energy industry." Id. (quoting El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473 (1999)). The PAA had three main features: (i) it established a limit on the aggregate liability of those who undertake activity involving the handling or use of radioactive materials; (ii) it channeled public liability resulting from nuclear incidents to the federal government; and (iii) it established that all public liability claims above the amount of required private insurance protection would be indemnified by the federal government up to the aggregate limit on liability. Id.

Congress continues to build on the PAA's foundation, expanding its scope and functions. Estate of Ware v. Hosp. of the Univ. of Pa.,  871 F.3d 273, 278 (3d Cir. 2017) (citing In re TMI Litig. Cases Consol. II, 940 F.2d 832, 852 (3d Cir. 1991)). The Act initially relied on state courts and state law to rule on and govern liability for nuclear incidents. Id. However, amendments to

ADD-21

the PAA in 1966 "provided for the transfer, to a federal district court, of all claims arising out of an extraordinary nuclear occurrence" and brought about greater uniformity of liability determinations while retaining state-law causes of action. Id. The amendments required indemnified entities "to waive the defenses of negligence, contributory negligence, charitable or governmental immunity, and assumption of the risk in the event of an action arising as the result of an extraordinary nuclear occurrence." Id. These provisions were premised on "congressional concern that state tort law dealing with liability for nuclear incidents was generally unsettled and that some way of insuring a common standard of responsibility of all jurisdictions – strict liability – was needed. A waiver of defenses was thought to be the preferable approach since it entailed less interference with state tort law than would the enactment of a federal statute prescribing strict liability." Carey, 60 F. Supp. 2d at 803 (quoting O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1095 (7th Cir. 1994)).

The PAA was amended again in 1988 to provide for the removal to federal court of any "public liability action arising out of or resulting from a nuclear incident." 42 U.S.C. § 2210(n). Courts that have considered generally the scope of jurisdiction following these amendments have found that Congress intended to create an exclusive federal cause of action for torts arising out of a "nuclear incident," as defined in the Act. See, e.g., In re Berg Litig., 293 F.3d 1127, 1132 (9th Cir. 2002) (public liability action as "exclusive means" of pursuing a nuclear incident claim); Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1306 (11th Cir. 1998) (PAA creates "exclusive" federal cause of action); Nieman v. NLO, Inc., 108 F.3d 1546, 1553 (6th Cir. 1997) (PAA preempts state law claims and they "cannot stand as separate causes of action"); Kerr-McGee Corp. v. Farley, 115 F.3d 1498, 1504 (10th Cir. 1997) (PAA as the "sole remedy" for claims involving atomic energy production); O'Conner v. Commonwealth Edison Co., 13 F.3d

7

ADD-22

1090, 1099–1100 (7th Cir. 1994) (noting that "a state cause of action is not merely transferred to federal court; instead, a new federal cause of action supplants the prior state cause of action."); TMI II, 940 F.2d at 854 (noting that "Congress clearly intended to supplant all possible state causes of action when the factual prerequisite of the statute are met."). Although the 1988 amendments to the Act clearly created a "federal cause of action," Day v. NLO, Inc., 3 F.3d 153, 154 n. 3 (6th Cir. 1993), it is a federal cause of action of a "peculiar nature," Heinrich ex rel. Heinrich v. Sweet, 62 F. Supp. 2d 282, 296–97 (D. Mass. 1999). The Act incorporates state law as the substantive rule of decision to govern the federal cause of action, so long as the state law is not inconsistent with the purposes of the Act. Id. (citing 42 U.S.C. § 2014(hh)).

**B. Key provisions**

Notably, the structure of the PAA, as set forth in the following provisions, has been described as "complicated," "interlocking," and "us[ing] words in unintuitive ways." Estate of Ware, 871 F.3d at 280. The PAA's jurisdictional provision, 42 U.S.C. § 2210(n)(2), provides in relevant part:

> With respect to any public liability action arising out of or resulting from a nuclear incident, the United States district court in the district where the nuclear incident takes place, … shall have original jurisdiction without regard to citizenship of any party or the amount in controversy …

A "public liability action" is "any suit asserting public liability." Id. § 2014(hh).  "Public liability" means (apart from certain exceptions not relevant here) "any legal liability arising out of or resulting from a nuclear incident." Id. § 2014(w).

A "nuclear incident" is defined as:

> any occurrence, including an extraordinary nuclear occurrence, … bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive or other hazardous properties of source, special nuclear, or byproduct material[.]

8

ADD-23

Id. § 2014(q). The PAA does not define the term "occurrence." An "extraordinary nuclear occurrence" is defined as:

> any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite … The Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, shall establish criteria in writing setting forth the basis upon which such determination shall be made. As used in this subsection, "offsite" means away from "the location" or "the contract location" as defined in the applicable Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, indemnity agreement, entered into pursuant to section 2210 of this title.

Id. § 2014(j).

The term "byproduct material" is defined in relevant part as "the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content." Id. § 2014(e)(2). The term "source material" means "(1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of this title to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time." Id. § 2014 (z)(1), (2).

## IV.    Parties' arguments

Relying on a recent opinion from this District, Strong v. Republic Services, Inc., 283 F. Supp.3d 759 (E.D. Mo. 2017), Plaintiff argues that the PAA does not apply to her claims in the absence of an appropriate license or indemnity agreement covering the activities complained of. Without a license or indemnity agreement, there can be no "occurrence," that is, no event at the

9

ADD-24

site of "licensed activity," that would constitute a "nuclear incident." Without a "nuclear incident," Plaintiff's action is not a "public liability action" and is thus not preempted by § 2210(n)(2). (Doc. No. 39 at 1, 7-12). Plaintiff acknowledges that Cotter was issued a license by the Atomic Energy Commission (AEC) to possess "source material," i.e., uranium, in 1969; however, she contends that this license could not have covered uranium mill tailings because at that time, the definition of "byproduct material" did not include uranium or thorium mill tailings. Plaintiff argues that none of the Defendants herein had an indemnity agreement or license to handle, store or transport hazardous byproducts, such as uranium mill tailings, which Plaintiff alleges were the source of the contamination at issue. (Id. at 12). Plaintiff also argues that applying PAA preemption to her state law claims would violate her constitutional right to Due Process by depriving her of her common law property rights without providing a reasonable alternative remedy. (Doc. No. 39 at 15).

Defendants respond that neither the plain language of the PAA nor its legislative history supports Plaintiff's contention that a license or indemnity agreement is required for federal jurisdiction[1] and that numerous courts have criticized and rejected the same arguments she advances here. (Doc. No. 52 at 1-12). In any event, Defendants contend that Cotter had such a license.[2] (Id. at 9-11). Defendants further respond that PAA preemption of Plaintiff's state law

---

[1] During oral argument, Defendants noted this matter is related to similar lawsuits in this Court, including McClurg v. Mallinckrodt, Inc., No. 4:12-CV-00361-AGF (E.D. Mo. 2012). In McClurg, however, no motion to remand was filed and the parties have not challenged the Court's jurisdiction under the PAA. Thus, McClurg provides no guidance on the issues raised herein.

[2] A copy of the license was submitted as an exhibit to Defendants' opposition to Plaintiff's motion to remand. (See Doc. No. 52-7). Plaintiff agrees the exhibit is a public record that the Court can consider on remand. The License issued in 1969 authorized Cotter "to receive, possess and import the [designated] source material [ ], to use such material for the purpose(s) and at the place(s) designated [ ], and to deliver or transfer such material to persons authorized to receive it in accordance with the regulations" of Title 10 of the Code of Federal Regulations, Chapter 1, Part 40. The License states that the "[a]uthorized place of use" was Cotter's facility located at 9200 Latty Avenue; that the "[m]aximum quantity of source material

claims would not violate her due process rights. Citing Duke Power Co. v. Carolina Envtl. Study Grp., 438 U.S. 59, 88 (1978), Defendants assert that rather than abolishing any rights, the PAA "transforms" actions based on state law claims that seek to impose public liability into federal actions and provides a reasonable substitute remedy for the common law or state tort law remedies it replaced. (Doc. No. 52 at 13-14).

In reply, Plaintiff does not dispute that the 1988 amendments to the PAA expanded federal jurisdiction to nuclear incidents not considered "substantial;" rather, she contends that the amendments did not eliminate the Act's licensing/indemnity scheme. Plaintiff asserts that the PAA does not afford protections to private entities and persons engaged in activities without authorization, license or permission contemplated under the Act. (Doc. No. 59 at 4-5). Moreover, the legislative history of the PAA suggests that Congress did not intend to preempt all state law actions involving nuclear energy – just those rising to the level of a "nuclear incident."

Plaintiff submits declarations from Richard Stewart, an "environmental and administrative law expert" (Doc. No. 59-1), and Dr. Marvin Resnikoff, an "expert in nuclear waste transportation, storage and disposal" (Doc. No. 59-2). Stewart opines that the PAA does not apply in this case; Resnikoff opines that the radioactive wastes at issue were mill tailings which by definition were not byproduct material until the passage of the Uranium Mill Tailings Act ("UMTRCA") in 1978. In addition, Plaintiff cites to Envirocare of Utah & Snake River Alliance, 56 N.R.C. 53 (Dec. 13, 2000), to support her contention that the NRC has already determined that the radioactive wastes at issue are not subject to federal regulation. (Doc. No. 59 at 9-10).

---

which [Cotter] [could] possess at any one time under [the] license [was] unlimited"; and that the License would expire on December 31, 1974.

11

In their surreply, Defendants urge the Court to disregard the declarations of Plaintiff's "experts" because they improperly opine on matters of law and are based on unsupported factual assumptions.[3] (Doc. No. 65 at 2-7). Defendants also argue that Plaintiff's reliance on an NRC staff director decision is misplaced. (Id. at 8-9) Envirocare explicitly pertains to mill tailings, which Plaintiff assumes are at issue, but which Defendants dispute. Further, Plaintiff has not alleged that any part of the process that generated the material at issue in this case involved a uranium mill or that any of the sites at issue contained a uranium mill. (Id. at 9).

**V.      Discussion**

There are numerous conflicting opinions as to whether a license or an indemnity agreement is required for federal subject matter jurisdiction pursuant to the PAA. Several courts, including one in this District, have reasoned that in the absence of a license or indemnification agreement covering the activities which giving rise to the liability alleged, there can be no "occurrence," that is, no event at the site of licensed activity, that would constitute a "nuclear incident." See Gilberg v. Stepan Co., 24 F. Supp.2d 325, 343 (D. N.J. 1998); Heinrich ex rel. Heinrich v. Sweet, 62 F. Supp. 2d 282, 297 (D. Mass. 1999); Joseph v. Sweet, 125 F. Supp.2d 573, 576 (D. Mass. 2000); Samples v. Conoco, Inc., 165 F. Supp.2d 1303, 1321-22 (N.D. Fl. 2001); Irwin v. CSX Transp., Inc., No. 3:10-CV-300, 2011 WL 976376, at *2 (E.D. Tenn. Mar. 16, 2011); Strong, 283 F. Supp.3d 759. Rejecting the contention that the PAA is now so broad as to cover *any* claim of property damage allegedly caused by certain nuclear material, these courts

---

[3] While it is generally improper to raise a new argument in a reply brief, courts may consider such an argument where, as here, the nonmoving party has been given leave to file a surreply to address the new argument, and did so. Etrailer Corp. v. Onyx Enterprises, Int'l Corp., No. 4:17-CV-01284-AGF, 2017 WL 3021496, at *3 (E.D. Mo. July 17, 2017) (citations omitted). As for the declarations, significant portions of Stewart's declaration are legal conclusions that the Court has not considered for purposes of this motion. As for Resnikoff's opinion, assuming the radioactive waste at issue in this case was mill tailings, consistent with the analysis in Strong, it would not be covered under Cotter's license because at the time the license was issued, the definition of "byproduct material" did not include uranium mill tailings.

12

focus on the original purpose of the PAA, i.e., to protect the public and encourage development of the atomic energy industry by providing certain licensees with a system of private insurance, government indemnification, and limited liability for certain nuclear tort claims. The courts further support their holdings by emphasizing that the word "occurrence" as used in the definition of "nuclear incident" means "that event at the site of the *licensed activity, or activity for which the Commission has entered into a contract,* which may cause damage."

Other courts have concluded that such an interpretation runs counter to the plain language of the PAA as well as the Congressional intent behind the 1988 amendments. See Estate of Ware, 871 F.3d at 283; Acuna v. Brown & Root Inc., 200 F. 3d 335, 339 (5th Cir. 2000); O'Conner v. Commonwealth Edison Co., 807 F. Supp. 1376, 1378 (C.D. Ill. 1992); Carey v. Kerr-McGee Chem. Co., 60 F. Supp.2d 800, 806 (N.D. Ill. 1999); Cotromano v. United Technologies Corp., 7 F. Supp. 3d 1253 (S.D. Fla. 2014). This Court recently addressed the issue in Strong, 283 F. Supp.3d 759, a case involving the same facts, one of the same defendants (Cotter), and addressing virtually identical arguments from both sides. The Court finds the Strong court's reasoning persuasive and agrees that "whether as a matter of statutory construction or the structure and history of the PAA," a license or indemnity agreement is a prerequisite for federal subject matter jurisdiction pursuant to the PAA. Id. at 772.

In Strong, it was alleged that defendants accepted radioactive waste consisting of uranium mill tailings without a license to do so and that the waste had spread to the plaintiffs' family farm. The court held there was no federal subject matter jurisdiction under the PAA without a license or an indemnity agreement. Although the waste originated from the facility of a nonparty (Cotter) that had a license to receive, possess, and import the "source material," Strong held that such a source material license could not be the basis for federal subject matter

ADD-28

jurisdiction, because it did not cover uranium mill tailings. Accordingly, the case was remanded to state court. Id. at 772-74.

In reaching its conclusion that there cannot be a nuclear incident without an applicable license or indemnity agreement, the Strong court was persuaded by the analysis of the PAA and its history in Gilberg, 24 F. Supp.2d 325. Noting that case law did not clarify whether the PAA's jurisdictional provisions operate independently form its indemnification provisions, the court in Gilberg looked to the language of the Act itself. The court found it significant that the PAA's definition of nuclear incident uses "occurrence" together with the clause "including an extraordinary nuclear occurrence," so as to read, "[t]he term 'nuclear incident' means any occurrence, including an extraordinary nuclear occurrence." Id. at 332. The court then reviewed the express definition of an "extraordinary nuclear occurrence," i.e., "any event causing a discharge … from its intended place of confinement in amounts off-site, or causing radiation levels off-site …", and noted that as used in this subsection the term "off-site" means "away from the location or the contract location as defined in the applicable ... indemnity agreement entered into pursuant to § 2210 of this Title." Id. Because of what it termed "the proximity to and interrelationship between the word 'occurrence' and the phrase 'extraordinary nuclear occurrence,' Gilberg concluded, as a matter of statutory construction, that "the occurrence which underlies a 'nuclear incident,' can only be an event at 'the location' or 'the contract location' as that term is defined in an indemnity agreement entered into under § 2210." Id.

The court also examined the legislative history of the PAA, S. Rep. No. 85–296, 1957 WL 5103, at *1817–18 (May 9, 1957), and found implicit in its language[4] that the terms "nuclear

---

[4] IT WAS NOT THOUGHT THAT AN INCIDENT WOULD NECESSARILY HAVE TO OCCUR WITHIN ANY RELATIVELY SHORT PERIOD OF TIME .... THE *OCCURRENCE* WHICH IS THE SUBJECT OF THIS DEFINITION *IS THAT EVENT AT THE SITE OF THE LICENSED ACTIVITY, OR ACTIVITY FOR WHICH THE COMMISSION HAS ENTERED INTO A CONTRACT*, WHICH

ADD-29

incident" and "occurrence" are "inextricably intertwined" with "licenses" and "indemnification agreements," suggesting that licenses and indemnification agreements are an integral part of the PAA's statutory scheme. Strong, 283 F. Supp. 3d at 770–71.

The Strong court went on to reject the defendants' argument that Cotter's 1969 Source Material License – the same license at issue in the instant case – applied to the plaintiff's claims. Id. at 772. The court reasoned that in 1969 when Cotter received the license, and in 1973 when the defendants allegedly accepted the material at issue, the definition of "byproduct material" did not include uranium or thorium mill tailings. It was not until 1978 that Congress amended the definition of "byproduct material" to include uranium and thorium mill tailings. Id. at 772-73 (citing 42 U.S.C. § 2014(e)(2)). Moreover, the Uranium Mill Tailing Radiation Control Act of 1978 ("UMTRCA"), which first included uranium mill tailings in the definition of byproduct material, states that the amendments "shall take effect on the date of the enactment of the Act." PL 95–604 (HR 13650), Nov. 8, 1978, 92 Stat. 3021, Title II - Uranium Mill Tailings Licensing and Regulation Definition, Sec. 208. Based on this analysis, the Strong court concluded that "Cotter's 1969 Source Material License could not have covered uranium mill tailings." Id. at 773.

Here, Defendants argue that Plaintiff's restrictive reading of the definition of "nuclear incident" as an event at "the location or the contract location" as that term is defined in the

---

MAY CAUSE DAMAGE, RATHER THAN THE SITE WHERE THE DAMAGE MAY PERHAPS BE CAUSED. THE SITE MUST BE WITHIN THE UNITED STATES.... *IT DOES NOT MATTER WHAT LICENSE MAY BE APPLICABLE* IF THE OCCURENCE IS WITHIN THE UNITED STATES.... THE INDEMNIFICATION AGREEMENTS ARE INTENDED TO COVER DAMAGES CAUSED BY NUCLEAR INCIDENTS FOR WHICH THERE MAY BE LIABILITY NO MATTER WHEN THE DAMAGE IS DISCOVERED, I.E., EVEN AFTER THE END OF THE LICENSE. THAT IS WHY THE DEFINITION OF 'NUCLEAR INCIDENT' HAS THE PHRASE 'ANY OCCURENCE * * * CAUSING BODILY INJURY, SICKNESS, DISEASE, OR DEATH' AND WHY THE DEFINITION OF 'PUBLIC LIABILITY' IS TIED TO ANY LEGAL LIABILITY ARISING OUT OF, OR RESULTING FROM, A NUCLEAR INCIDENT.

Strong, 283 F. Supp. 3d at 770–71.

applicable indemnity agreement entered into pursuant to 42 U.S.C. § 2210 narrows what Congress obviously intended to be a broader term - and effectively nullifies the 1988 amendments. In ascertaining the plain meaning of a statute, the Court relies on established rules of statutory interpretation, looking not only to the particular statutory language at issue, but also the design of the statute as a whole. DeBough v. Shulman, 799 F.3d 1210, 1212 (8th Cir. 2015); United States v. I.L., 614 F.3d 817, 820-21 (8th Cir. 2010) (citations omitted).

According to a Senate report, "[t]he Price–Anderson system is a comprehensive, compensation-oriented system of liability insurance for Department of Energy ("DOE") contractors and Nuclear Regulatory Commission ("NRC") licensees operating nuclear facilities.[5] Under the Price–Anderson system, there is a ready source of funds available to compensate the public after an accident, and the channeling of liability to a single entity and waiver of defenses insures that protracted litigation will be avoided. That is, the [PAA] provides a type of "no fault" insurance, by which all liability after an accident is assumed to rest with the facility operator, even though other parties (such as subcontractors or suppliers) might be liable under conventional tort principles. This "omnibus" feature permits a more unified and efficient approach to processing and settlement of claims, thus allowing quick compensation to the public from the pool of funds set up by the Price–Anderson system." S. Rep. No. 100-70 (1988), U.S. Code Cong. & Admin. News 1988, 1424, 1426-27.

---

[5] The coverage for NRC licensees encompasses activities of commercial nuclear power plants, certain fuel fabrication facilities, and non-DOE reactors used for educational and research purposes. Activities of DOE contractors are covered if they involve "the risk of public liability for a substantial nuclear incident." These contractor activities include nuclear weapons research, development and testing, nuclear energy research and development, and nuclear waste activities. The Act specifies the procedures for determining the amount and sources of compensation available to compensate persons injured as a result of a nuclear incident arising from these activities. Dan M. Berkovitz, Price–Anderson Act: Model Compensation Legislation? - The Sixty–Three Million Dollar Question, 13 Harv. Envt'l. L. Rev. 1, 1–2 (1989) (footnotes omitted).

It is clear that the 1988 amendments were enacted to expand the scope of federal jurisdiction to a broader class of nuclear liability cases than those arising just from extraordinary nuclear occurrences as well as to provide for consolidation of those claims in federal court. However, in light of the PAA's concerns related to liability limitation and indemnification, the Court is not convinced that the 1988 amendments were meant to extend the reach of the PAA to activities not covered by applicable licenses or indemnity agreements. Defendants' construction overlooks the original purposes and framework of the AEA and the PAA - to require those involved in the nuclear industry to obtain licenses and maintain financial protections. When faced with "competing preemption narratives," the Court has the "duty to accept the reading that disfavors preemption." Cook v. Rockwell Int'l Corp., 790 F.3d 1088, 1094 (10th Cir. 2015).

Defendants further argue that Strong did not conclude that Cotter's 1969 source material license could not support jurisdiction under the PAA. Rather, the court merely found that Cotter's license did not cover uranium mill tailings. Here, Plaintiff asserts that Cotter's license authorizing it "to receive, possess and import" uranium did not apply to the uranium mill tailings at issue.[6] Defendants dispute that the material at issue was mill tailings. Like in Strong, the Court cannot conclude, based on the record before it, that the material was in fact mill tailings. If, as Plaintiff contends, the material is uranium mill tailings, then consistent with the analysis in Strong, Cotter's 1969 Source Material License could not have covered it because at the time the license was issued, the term "byproduct material" did not include uranium mill tailings. 283 F. Supp. 3d at 772-73. Moreover, Defendants have not established that Cotter's 1969 Source Material License authorizing it "to receive, possess and import" uranium covered their activities

---

[6] The Court notes that Plaintiff's amended complaint does not specifically allege the material at issue was uranium mill tailings. (See FAP at ¶ 89) ("[t]he radioactive contamination that has polluted [Plaintiff's property] and continues to threaten to further pollute [Plaintiff's property] match the waste fingerprint (or profile) of the radioactive wastes generated in the processing of uranium ores in the St. Louis area.").

17

ADD-32

at the sites involved in this case. Thus, Cotter's license does not provide a basis for federal subject matter jurisdiction.

**VI.       Conclusion**

For all of these reasons, the Court finds that Defendants have failed to meet their burden of establishing federal subject matter jurisdiction for purposes of the PAA and that this matter should be remanded to state court. Given this finding, the Court need not address the merits of Plaintiff's due process argument. <u>Strong</u>, 283 F. Supp. 3d at 774. Finally, because the Court lacks subject matter jurisdiction over this action, Defendants' pending motions to dismiss will be denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Remand [38] is **GRANTED** and this matter is **REMANDED** to the Circuit Court of St. Louis County under 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that Defendants' motions to dismiss [27, 29, 36, 37] are **DENIED** without prejudice to refiling in state court.


Dated this 29th day of March, 2019.

 

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

ADD-33