# United States Court of Appeals
## *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

January 07, 2022

Ms. Jennifer R. Steeve
RILEY & SAFER
Suite 241
26936 Carnelian
Mission Viejo, CA  92691

>       RE:  21-1160  In Re: Cotter Corporation
>            21-1165  Tamia Banks, et al v. Cotter Corporation

Dear Ms. Steeve:

   The court has issued an opinion in these cases. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

   Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc must be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

>                                  Michael E. Gans
>                                  Clerk of Court

BNW

Enclosure(s)

cc:    Mr. David Roy Barney Jr.
       Ms. Celeste Brustowicz
       Mr. Nathaniel R. Carroll
       Mr. Victor T. Cobb
       Mr. Steven W. Duke
       Mr. Anthony D. Gray
       Ms. Sondra Hemeryck
       Ms. Lauren E. Jaffe
       Mr. Ryan A. Keane

Mr. Gregory J. Linhares
Mr. John P. Phillips
Mr. Noah M. Schottenstein
Mr. Kevin W. Thompson
Ms. Marcie J. Vantine
Mr. Brian O'Connor Watson

    District Court/Agency Case Number(s):   4:20-cv-01227-JAR

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

January 07, 2022

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  21-1160  In Re: Cotter Corporation
            21-1165  Tamia Banks, et al v. Cotter Corporation

Dear Sirs:

    A published opinion was filed today in the above cases.

    Counsel who presented argument on behalf of the petitioner/appellant and appeared on the brief was Jennifer R. Steeve, of Mission Viejo, CA. The following attorney(s) appeared on the petitioner/appellant brief;  Sondra A. Hemeryck, of Chicago, IL.,  Brian O. Watson, of Chicago, IL.,  Lauren E. Jaffe, of Chicago, IL.

    Counsel who presented argument on behalf of the respondents/ appellees and appeared on the brief was Celeste Brustowicz, of New Orleans, LA. And Victor T. Cobb, of New Orleans, LA. The following attorney(s) appeared on the respondents/ appellees brief;  Ryan A. Keane, of Saint Louis, MO.,  Anthony D. Gray, of Clayton, MO.,  Steven W. Duke, of Clayton, MO.,  David Roy Barney, Jr., of Charleston, WV.,  Kevin Thompson, of Charleston, WV.

    The following attorneys appeared on the amicus brief of American Nuclear Insurers in 21-1165;  John P. Phillips, of San Francisco, CA.,  Noah M. Schottenstein, of Dallas, TX.

    The judge who heard the case in the district court was Honorable John A. Ross. The judgment of the district court was entered on December 22, 2020.

    If you have any questions concerning this case, please call this office.

                                                          Michael E. Gans
                                                          Clerk of Court

BNW

Enclosure(s)

cc:  MO Lawyers Weekly

        District Court/Agency Case Number(s):   4:20-cv-01227-JAR

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1160
_____

In re: Cotter Corporation, (N.S.L.)

*Petitioner*

_____

No. 21-1165
_____

Tamia Banks; Ronnie Hooks; Joel Hogan; Kenneth Niebling; Kendall Lacy; Tanja Lacy; Willie Clay; Bobbie Jean Clay; Angela Statum; Missouri Rentals Company, LLC, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellees*

v.

Cotter Corporation

*Defendant - Appellant*

Commonwealth Edison Company; DJR Holdings, Inc., formerly known as Futura Coatings, Inc.; St. Louis Airport Authority, a Department of the City of St. Louis

*Defendant*s

------------------------------

American Nuclear Insurers

*Amicus on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: October 12, 2021
Filed: January 7, 2022

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Plaintiffs sued Cotter Corporation (N.S.L.) ("Cotter") and other defendants in Missouri state court for allegedly polluting their property with radioactive nuclear material. Cotter eventually brought a third-party action for contribution against other parties, one of whom removed the dispute to federal district court. The district court held that the Price-Anderson Act did not apply to the claims against Cotter, declined supplemental jurisdiction over those claims, and remanded them. Cotter appeals the remand order. Having jurisdiction under 28 U.S.C. § 1291, this Court reverses and remands.

I.

During World War II, Mallinckrodt LLC contracted with the federal government to produce radioactive material for the Manhattan Project. Mallinckrodt stored waste materials in downtown St. Louis and at the St. Louis Airport. It eventually moved some waste to another site in Hazelwood, Missouri, known as "Latty Avenue." Between 1969 and 1973, Cotter possessed and used nuclear waste at Latty Avenue.

In February 2018, Plaintiffs sued Cotter, the St. Louis Airport Authority, and other entities—but not Mallinckrodt. Plaintiffs allege that nuclear waste materials

-2-

from the various St. Louis sites leaked into Coldwater Creek and its 100-year floodplain in St. Louis County, damaging their health and property.

In April 2018, Cotter removed the suit to federal court on the basis of the Price-Anderson Act, Pub. L. No. 85-256, 71 Stat. 576 (1957) (amended 1966, 1988) (codified in scattered sections of 42 U.S.C.) ("PAA").  The district court ruled that the PAA did not apply and remanded the case to state court in a March 29, 2019, order.  The court reasoned that the PAA applies only to nuclear incidents if the defendant has an applicable indemnity agreement, and Cotter lacked such an agreement, so the PAA did not apply.

After Plaintiffs amended their complaint in state court, Cotter filed a third-party action for contribution against seven defendants, including Mallinckrodt, which then removed the entire lawsuit under the PAA and other bases.  Back in federal court, Plaintiffs moved to sever and remand all claims, except the third-party claim against Mallinckrodt, on the grounds that these were all state-law claims.  The district court granted that motion in a December 22, 2020, order.  Cotter timely appealed, also filing for a writ of mandamus on the same grounds.

This Court reviews the district court's decision to decline supplemental jurisdiction and remand under 28 U.S.C § 1367 for abuse of discretion.  ***Mo. Roundtable for Life v. Carnahan,*** 676 F.3d 665, 678 (8th Cir. 2012); ***Glorvigen v. Cirrus Design Corp.***, 581 F.3d 737, 743 (8th Cir. 2009).

II.

As a preliminary matter, Plaintiffs argue this Court lacks jurisdiction for this appeal.  Plaintiffs are incorrect.

First, the remand order is a reviewable final judgment under 28 U.S.C. § 1291 because it effectively put Cotter out of federal court for Plaintiffs' claims.  ***See, e.g.,***

-3-

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712-15 (1996) (holding remand order reviewable under § 1291); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 & n.11 (1983) (holding stay order appealable under § 1291 where it put the litigant "effectively out of court," and "surrender[ed] jurisdiction of a federal suit to a state court"); *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996) (holding challenge to § 1367(c) remand order was properly heard on direct appeal, rather than petition for a writ of mandamus, where remand order was final because defendant "would have no other opportunity to appeal that decision in federal court"); *Baker v. Kingsley*, 387 F.3d 649, 653-56 (7th Cir. 2004) (concluding § 1291 provided jurisdiction over remand order and § 1447(d) did not bar review).

Second, 28 U.S.C. § 1447(d) does not bar review here.  Under 28 U.S.C. § 1441, a defendant may remove a case filed in state court to federal court.  The plaintiff then may file "a motion to remand the case on the basis of any defect." **28 U.S.C. § 1447(c)**.  Section 1447(d) prohibits appellate review of "[a]n order remanding a case to the State court from which it was removed" unless removal was premised on "section 1442 or 1443." **Id. § 1447(d)**.  Section 1447(d) "preclude[s] review only of remands for lack of subject-matter jurisdiction and for defects in removal procedure." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 229 (2007).

Meanwhile, 28 U.S.C. § 1367 provides that a federal court may exercise supplemental jurisdiction over state-law claims. **28 U.S.C. § 1367**.  Section 1367(c)(2), in turn, allows a federal court to "decline to exercise supplemental jurisdiction over a claim" for which it lacks original jurisdiction if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." *Id.*

Here, Plaintiffs filed a "Motion to Sever and Remand All Non-Third-Party Claims" "pursuant to 28 U.S.C. § 1367(c)." **Remand Mot. at 1, Case No. 20-1227,**

-4-

**DCD 47**. The district court assessed that Motion in its December 22, 2020, "Memorandum and Order" under a section titled "Exercise of Supplemental Discretion," where it applied the standard for declining supplemental jurisdiction "pursuant to 28 U.S.C. § 1367(c)(2)." **Mem. Order at 1, 5-6, Case No. 20-1227, DCD 71 (Dec. 22, 2020)** ("12/22/20 Mem. Order"). The district court (1) concluded that the PAA provided jurisdiction only for Cotter's third-party claim against Mallinckrodt, (2) retained that single claim, (3) declined to exercise supplemental jurisdiction over all other claims in the case, and (4) severed and remanded those claims. *Id.* **at 14**.

Because the district court remanded under § 1367(c), Section 1447(d)'s prohibition on appellate review does not apply. "When a district court remands claims to a state court after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction for purposes of §§ 1447(c) and (d)." ***Carlsbad Tech., Inc. v. HIF Bio, Inc.***, 556 U.S. 635, 641 (2009). Thus, § 1447(d) does not bar an appellate court from reviewing a district court's decision to decline supplemental jurisdiction under § 1367. *Id.* **at 636**. *See also* ***Glorvigen***, 581 F.3d at 742 (concluding "this court has jurisdiction to review the district court's decision to remand the state-law claims back to state court"); ***Gaming Corp. of Am.***, 88 F.3d at 542 ("Because the district court never lacked [federal question] subject matter jurisdiction and remanded under § 1367, neither § 1447(d) nor any other statutory bar exists to our jurisdiction.").

The district court here did not conclude that it lacked subject-matter jurisdiction over the case—indeed, it kept the claim against Mallinckrodt—and did not remand due to a defect in removal. Rather, it declined to exercise supplemental jurisdiction under § 1367. Thus, this Court may review its decision. ***See Carlsbad Tech., Inc.***, 556 U.S. at 636; ***Glorvigen***, 581 F.3d at 742.[1]

---

[1] Accordingly, this Court denies Plaintiffs' Motion to Dismiss for Lack of Subject Matter Jurisdiction. Separately, because § 1447(d) does not bar review of the § 1367 remand order, this Court need not address the parties' dispute about the

III.

This Court reviews the district court's decision to decline supplemental jurisdiction and remand under 28 U.S.C. § 1367 for abuse of discretion. ***Mo. Roundtable for Life***, 676 F.3d at 678. A district court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law." ***Cooter & Gell v. Hartmarx Corp.***, 496 U.S. 384, 405 (1990). ***See Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills***, 141 F.3d 1284, 1286 (8th Cir. 1998) (stating that abuse of discretion will be found "if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions" (quotation omitted)).

The district court here made an erroneous legal determination that constitutes abuse of discretion: it determined that the PAA does not apply to Plaintiffs' claims against Cotter because Cotter lacked an applicable license or indemnity agreement. **12/20/22 Mem. Order at 6** (stating, "Plaintiffs' claims alone do not establish federal jurisdiction," and concluding, "only Cotter's claim for contribution against Mallinkrodt . . . potentially provides federal jurisdiction"); **Mem. Order at 17-18, Case No. 18-0624, DCD 75 (Mar. 29, 2019)** ("3/29/19 Mem. Order"). Based on this determination, the court remanded the claims as state-law claims for which it declined supplemental jurisdiction. **12/20/22 Mem. Order at 14** (concluding claim against Mallinkrodt is "the only potential avenue for federal jurisdiction in this case").

Contrary to the district court's ruling, the PAA provides federal question jurisdiction over all "nuclear incidents," regardless of whether the defendant had an

---

applicability of *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021), which held that an appellate court may review all theories of removal presented when a court remands an entire case under § 1447(c) and at least one theory of removal was premised on §§ 1442 or 1443. ***See BP P.L.C.***, 141 S. Ct. at 1537-38.

applicable license or indemnity agreement. *See* **42 U.S.C. §§ 2010(n)(2), 2014(q)**. The text and history of the PAA propel this conclusion.

The PAA's jurisdictional grant provides federal question "original jurisdiction" for "any public liability action arising out of or resulting from a nuclear incident" to the district court located in the district where the incident occurred. **42 U.S.C. § 2210(n)(2);** *Halbrook v. Mallinckrodt***, LLC**, 888 F.3d 971, 974 (8th Cir. 2018) ("Congress created a federal cause of action for public-liability claims concerning nuclear incidents [and] expressly invoked federal-question jurisdiction in the Article III courts . . . .").

The PAA defines "public liability action" as "any suit asserting public liability." **42 U.S.C. § 2014(hh)**. Excluding exceptions not relevant here, the PAA then defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ." *Id.* **§ 2014(w)**.

A "nuclear incident," in turn, "means any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ." *Id.* **§ 2014(q)**.

In addition, the PAA defines "extraordinary nuclear occurrence" ("ENO") as "any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission [("NRC")] . . . determines to be substantial . . . ." *Id.* **§ 2014(j)**. "As used in this subsection [defining 'ENO'], 'offsite' means away from 'the location' or 'the contract location' as defined in the applicable [NRC] indemnity agreement . . . ." *Id.*

However, the PAA does not define "occurrence" as used in the definition of "nuclear incident." *See id.* § 2014(q). A term not defined in a statute is interpreted consistent with its "ordinary meaning" and the court departs from this interpretation only if context requires a different result. *Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020). "[O]ccurrence" means "something that takes place." **Webster's Third New International Dictionary 1561 (1986).**

Applying this plain meaning, "nuclear incident" means something that takes place within the United States, causing bodily injury or property damage, and arising out of the "properties of source, special nuclear, or byproduct material," **42 U.S.C. § 2014(q)**. This definition is "facially quite broad" and renders the PAA's jurisdictional grant equally broad as a result. *Est. of Ware v. Hosp. of the Univ. of Penn.*, 871 F.3d 273, 280 (3d Cir. 2017). *See Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (adopting same interpretation); *Matthews v. Centrus Energy Corp.*, 15 F.4th 714, 722-23 (6th Cir. 2021) (applying plain meaning of "occurrence" to interpret "nuclear incident"). Notably, this definition encompasses even those nuclear disasters where a defendant lacks an applicable indemnity agreement.

This interpretation aligns with the history of revisions to the PAA. Congress enacted the PAA in 1957 to encourage private commercial nuclear research and energy production after it became clear that, without government intervention, the liability risks from nuclear material would stunt private development. *See El Paso Nat. Gas Co. v. Neztsosie*, 526 U.S. 473, 476 (1999) ("*Neztsosie*"). The PAA provided a "system of private insurance, Government indemnification, and limited liability for claims" for federal nuclear licensees. *Id.*

Initially, the PAA provided federal jurisdiction and a means of consolidating claims in federal court only for an "extraordinary nuclear occurrence." *See id.* As a result, when the 1979 Three Mile Island nuclear accident did not release sufficient nuclear material to constitute an ENO, litigation could not be consolidated in one

action under the PAA, and the accident instead spawned more than 150 cases and 3000 claimants in state and federal courts. *See* **S. Rep. 100-218, at 13 (1987)**. In response, Congress passed the 1988 Price-Anderson Act Amendments "to grant district courts original and removal jurisdiction over all 'public liability actions.'" *Neztsosie*, 526 U.S. at 477. *See* **S. Rep. 100-218, at 13** (recognizing the benefits of "consolidation of claims in the event of any nuclear incident, not just an ENO," and stating the amendments "expand[] existing law to allow for the consolidation of claims arising out of any nuclear incident in federal district court").

The 1988 PAA Amendments revised the jurisdictional grant in 42 U.S.C. § 2210(n)(2) to replace "extraordinary nuclear occurrence" with "nuclear incident." **1988 PAA Amendments § 11(a), Pub. L. No. 100-408, 102 Stat. 1066, 1076**. Under the 1988 Amendments, suits arising from an ENO are subject to a statute of limitations and defendants may be required to waive defenses; for a non-ENO "nuclear incident," however, state substantive law and limitations periods apply. *See Halbrook*, 888 F.3d at 974; *Est. of Ware*, 871 F.3d at 278-79.

The fact that Congress amended the PAA to expand the scope of original jurisdiction from only ENOs to all "nuclear incidents" reinforces the conclusion that the PAA applies broadly to any event causing bodily or property damage from nuclear material, rather than a narrow category of nuclear catastrophes. *See Est. of Ware*, 871 F.3d at 283; *Acuna*, 200 F.3d at 339.

Plaintiffs urge, and the district court concluded, however, that the PAA provides jurisdiction for suits arising from a nuclear incident only when the defendant has an "applicable license or indemnity agreement." **3/29/19 Mem. Order at 13-14; 12/22/20 Mem. Order at 6, 14** (relying on previous remand order's PAA analysis to conclude claims against Cotter were not subject to PAA). *See* **Banks Br. at 39-40**.

-9-

This interpretation incorrectly imports limiting concepts from "extraordinary nuclear occurrence" to interpret the word "occurrence" in nuclear incident. *See* **3/29/19 Mem. Order at 13-14**. The basic, if tortured, logic is that (1) "nuclear incident" is defined as "any occurrence, including extraordinary nuclear occurrence," **42 U.S.C. § 2014(q)**; (2) "occurrence" is not defined by the PAA but an "extraordinary nuclear occurrence" is limited to only those discharges that happen "offsite"; and (3) "offsite" means "away from 'the location' or 'the contract location' as defined in the applicable . . . indemnity agreement," **42 U.S.C. § 2014(j)**; so (4) "occurrence" in nuclear incident must mean only those nuclear events that happen when a defendant has an applicable indemnity agreement. *See* **3/29/19 Mem. Order at 13-14**.

This interpretation suffers from three major flaws. First, it contradicts the first rule of statutory interpretation, that the court interpret a word not defined in a statute according to its plain meaning unless context requires otherwise. *See Sanzone*, 954 F.3d at 1040. Here, context does not require otherwise. "Occurrence" is adequately defined by its plain meaning, and that meaning does not create absurdity or otherwise run contrary to the statutory framework of the broader PAA.

Second, the interpretation relies entirely on the limits imposed by "offsite," but that term appears nowhere in the definition of "nuclear incident." *See* **42 U.S.C. § 2014(q);** ***Carey v. Kerr-McGee Chem. Corp.***, 60 F. Supp. 2d 800, 806 (N.D. Ill. 1999). In fact, Congress expressly confined the definition of "offsite" to the definition of "extraordinary nuclear occurrence" supplied in subsection 2014(j), when Congress provided, "As used in this *subsection*, 'offsite' means . . . ." **42 U.S.C. § 2014(j)** (emphasis added). Thus, the technical definition of "offsite"—including its indemnity agreement element—does not apply beyond the meaning of an ENO. Moreover, the fact that Congress defined "offsite" and limited "extraordinary nuclear occurrence" to a specific set of requirements shows that Congress knew how to impose those requirements, including an applicable

-10-

indemnity agreement. The absence of those requirements from the express definition of "nuclear incident" reflects an intent to not impose them there.

Third, the interpretation directly conflicts with the clear purpose of the 1988 Amendments, as reflected in the revision of § 2210(n)(2): to broaden federal jurisdiction to encompass lawsuits arising from nuclear accidents that are not ENOs. It makes little sense to reimport limitations for "extraordinary nuclear incident" when Congress amended the PAA to eliminate the jurisdictional limits imposed by that term. *See Est. of Ware*, 871 F.3d at 283; *Acuna*, 200 F.3d at 339 (rejecting the requirement of an indemnity agreement for a "nuclear incident" as "faulty statutory interpretation . . . contrary to Congressional intent").

Relatedly, Plaintiffs lean heavily on *Silkwood v. Kerr-McGee Corporation*, 464 U.S. 238 (1984), which they claim supports their interpretation. Plaintiffs are wrong: *Silkwood* was decided in 1984, four years before the 1988 PAA Amendments revised the jurisdictional grant to apply to "nuclear incident" instead of "extraordinary nuclear occurrence." *See, e.g., Matthews*, 15 F.4th at 724; ***Kerr-McGee Corp. v. Farley***, 115 F.3d 1498, 1503-04 (10th Cir. 1997).

In light of the plain meaning of "occurrence" and the many problems that arise from Plaintiffs' and the district court's alternative interpretation, "nuclear incident" means something that happens within the United States, causing bodily injury or property damage and arising out of nuclear material. Thus, the PAA provides original federal question jurisdiction for all nuclear incidents regardless of whether the defendant had an applicable indemnity agreement. ***See* 42 U.S.C. 2010(n)(2)**.[2] The only two circuit courts to confront this question have reached the same conclusion. ***Est. of Ware***, 871 F.3d at 283; ***Acuna***, 200 F.3d at 339.

---

[2]This Court rejects *Strong v. Republic Services, Inc.*, 283 F. Supp. 3d 759 (E.D. Mo. 2017), upon which Plaintiffs and the district court relied, to the extent that *Strong* and similar cases depart from the reasoning herein.

-11-

IV.

The district court relied on the fact that Cotter did not have an indemnity agreement applicable to the present nuclear incident when it determined the PAA did not apply to Plaintiffs' claims against Cotter, **3/29/19 Mem. Order at 17-18**, declined supplemental jurisdiction over those claims, and severed and remanded them, **12/22/20 Mem. Order at 6, 14**.  However, an indemnity agreement is not a prerequisite for jurisdiction under the PAA's jurisdictional grant for a "nuclear incident."  Because the PAA provides federal question jurisdiction over the claims against Cotter and a "district court has no discretion to remand a claim that states a federal question," *Gaming Corp. of Am.*, 88 F.3d at 542, the district court abused its discretion.  *See id.* **at 541-42, 551** (reversing § 1367(c) remand order where district court incorrectly concluded "no federal claims remained").  Thus, this Court reverses and remands.[3]

\* \* \* \* \* \* \*

This Court denies Plaintiffs' motion to dismiss the appeal, reverses the remand order of the district court, and remands the case for further proceedings consistent with this opinion.  The petition for a writ of mandamus is dismissed.

_____

---

[3]Cotter also filed a petition for a writ of mandamus seeking the same relief sought in its direct appeal.  Because this Court has adjudicated the merits of the direct appeal, the petition is dismissed as moot.