UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**TAMIA BANKS**, *et al.*,

   *Plaintiffs*

v.                                                 CIVIL ACTION NO. 4:20-CV-01227-JAR

**COTTER CORP.**, *et al.*,

   *Defendants*

## PLAINTIFFS' EMERGENCY MOTION TO LIFT STAY TO ALLOW FOR LIMITED DISCOVERY

NOW COME THE PLAINTIFFS, through undersigned counsel, who bring this emergency motion to lift the stay on discovery for the limited purpose of the issuance of a subpoena to the Hazelwood School Board to inspect the premises of Jana Elementary so as to permit the Plaintiffs' experts to sample the property for the presence of radionuclides.

### I.    Introduction

Documents recently uncovered by a Missouri Coalition for the Environment FOIA reveal that on-going government testing since 2018 found alarming concentrations of Defendant Cotter's radioactive waste on the grounds of Jana Elementary School. Local school authorities have not revealed the contamination to parents. Although Plaintiffs stipulated to stay proceedings in this case, new facts have come to light justifying this emergency motion. With last week's flooding again spreading contamination throughout the area and school about to open in three weeks on August 22, 2022, it is imperative that Plaintiffs' experts be permitted to test the school's interior and grounds on August 19, 2022, as that obviously critical area was excluded from government testing. Plaintiffs seek the lift of the stay in discovery so that experts may enter the school to perform this testing.

1

Jana Elementary is within the Putative Class area. Some Putative Class Members seeking medical monitoring in this certainly would have attended Jana Elementary. Children who now attend the school are the children of Putative Class Members. Further, the subpoena requested herein will aid the undersigned counsel in developing evidence relevant to furtherance of the instant matter regarding the availability of contamination to migrate from Jana Elementary throughout the Class Area. Finally, this testing serves to protect the health, safety and welfare of the children, parents and staff of Jana Elementary.

U.S. Army Corps of Engineers ("Army Corps") documents recently obtained by the Missouri Coalition for the Environment ("MCE") through a FOIA request reveal the presence of dangerous amounts of radionuclides on the grounds of Jana Elementary School. *See* Exhibit 1- Army Corps Test Results; Exhibit 2- January 27, 2022, letter from Josephine Wade, FUSRAP Project Manager to the Hazelwood School District Superintendent; *see also* Exhibit 3, February 7, 2022 letter from Josephine Wade, FUSRAP Project Manager to the Hazelwood School District Superintendent.

Despite the Army Corps' reassurances to the school superintendent, the test results show "the nature of the radioactive material at the school is consistent with the radioactive legacy uranium processing wastes notoriously found in the heavily contaminated Coldwater Creek area." Most importantly, the radioactive wastes at the Jana School and other North St. Louis County sites are rich in thorium-230, a radioactive isotope that emits highly damaging alpha radiation. See Exhibit 4, Dr. Kaltofen Report at 2.

The Army Corps first informed the Superintendent of the Hazelwood School District of the test results on January 27, 2022. "The property located at 405 Jana Drive is identified as CWC-386. The results show the presence of low-level radioactive contamination on this property located

2

in the banks of Coldwater Creek within the property boundary." *See* Exhibit 2- January 27, 2022, letter from Josephine Wade, FUSRAP Project Manager to the Hazelwood School District Superintendent. That "low-level radioactive contamination" was <u>well in excess of levels determined by the EPA to be protective of human health</u>. *See* Exhibit 4- Dr. Kaltofen Report at 2. Less than two weeks later after sending its first letter to the school superintendent, the Army Corps sent a letter that downplayed the contamination even further in what could be construed as an attempt to provide the Superintendent with an excuse not to inform the parents, "The preliminary results show that no MED/AEC contamination is present on these properties in accordance with the North St. Louis County Record of Decision." *See* Exhibit 3, February 7, 2022, letter from Josephine Wade, FUSRAP Project Manager to the Hazelwood School District Superintendent.

In an email sent to the membership of the Jana PTA on July 25, 2021, PTA President Ashley Bernaugh wrote the following:

> The concerns about radioactive material have been brought to the attention of the on HSD [Hazelwood School District] and the HSD Board of Directors. On July 19, 2022 the HSD Board of Directors voted not to act nor provide direct communication of the radioactive contamination impacting HSD school properties. Nonetheless, Jana PTA believes that direct communication is key to providing a safe learning environment regarding this matter, starting with Jana's community. Information provided by the PTA has been obtained from the Army Corps of Engineers for public distribution.
>
> Testing and remediation of Coldwater Creek by the Army Corps of Engineers is on-going. The contamination of the creek has occurred over many decades and cleanup of affected areas along the creek may not be completed until 2038 (St. Louis Post-Dispatch, 2021). Thus, as Jana Elementary's PTA, we are committed to helping find solutions to protect our school community and provide valuable resources to address concerns.
>
> Next steps include, but not limited to:

- Determine if there is evidence of Coldwater Creek contamination with Jana Elementary school building and surrounding area of the school property not already (see attached map).
- Ensure all Jana Elementary school property areas evidenced to have contamination are included within remediation efforts.

*See* Exhibit 5 Jana PTA President Communication to PTA Membership, July 25, 2022.

In fact, the Army Corps' sampling was inadequate to fully analyze the risk to students and employees of Jana Elementary School, because it was limited to exterior soil samples collected hundreds of feet from the school and it failed to collect samples from the interior of the school. To fully characterize the risk presented by the Defendants' radioactive thorium to residents of the Coldwater Creek area, the U.S. Agency for Toxic Substance Disease Registry ("ATSDR") advises interior sampling of structures with contaminated exterior soil like Jana Elementary. *See* Exhibit 5- Dr. Kaltofen Report at 4,5.

As it stands today, there is a giant red flag in the results of sampling from the area around the school, and a corresponding giant question mark about whether the elementary school is safe for students at Jana Elementary who are the children of Putative Class Members. This giant question mark can only be answered by the sort of sampling and testing sought by this motion and the subpoena requested herein.

Due to the Plaintiffs' appeal of a recent order to the U.S. Supreme Court, this case is stayed, and the Plaintiffs are blocked from issuing the subpoena needed to take samples at the school and ascertain whether the school is a public health threat. This Court issued an Order staying this case pending the outcome of the U.S. Supreme Court's decision on Plaintiffs' Petition for Writ of Certiorari. *See* Order (Doc. 108).[1] The Court's Order granting the Joint Motion to Stay found that

---

[1] On November 22, 2021, this Court stayed this matter pending the Eighth Circuit's decision in *Banks et al. v. Cotter Corp.*, Nos. 21-1160, 21-1165 (8th Cir.) ("*Banks*"). *See* Order (Doc. 108) (citing Order (Doc. 91)). On January 7, 2022, the Eighth Circuit reversed this Court's December 22, 2020 severance and remand Order. (Docs. 92-93). The

granting the stay "will serve the public interest and promote judicial economy without prejudicing any party." Order (Doc. 108 at 2). The Order granting the Stay does not include any carve-out allowing for limited discovery or any other action in furtherance of the case. For this reason, the Stay prohibits the Plaintiffs from taking steps to perform testing at Jana Elementary School. The Plaintiffs now move this Court to issue an order lifting the Stay to allow the Plaintiffs to collect samples at Jana Elementary School.

## II. Law

A stay of proceedings is "an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotes, citations omitted). "Logically, the same court that imposes a stay of litigation has the inherent power and discretion to lift the stay. *Wells Dairy, Inc. v. Travelers Indem. Co. of Illinois*, 241 F. Supp. 2d 945, 977 (N.D. Iowa), *enforcement granted in part, denied in part*, 266 F. Supp. 2d 964 (N.D. Iowa 2003)" *Canady v. Erbe Elektromedizin GmbH*, 271 F.Supp.2d 64, 74 (D.D.C. 2002).

"When circumstances have changed such that the court's reasons for imposing [a] stay no longer exist or are inappropriate, the court may lift the stay." *Hawai'i v. Trump*, 233 F.Supp.3d 850, 854 (D. Haw. 2017) (quoting *Crawford v. Japan Airlines*, No. 03-00451 LEKKSC, 2013 WL 2420715, at *6 (D. Haw. May 31, 2013)). A stay is inappropriate where the competing interests are public health on one side and administrative inconvenience (or monetary loss) on the other side. Specifically, when "the physical and emotional suffering shown by plaintiffs in the record

---

Eighth Circuit issued its mandate on February 18, 2022. *See* Order (Doc. 108) (citing Doc. 99). The Plaintiffs expressed their intention to challenge the Eighth Circuit's decision in *Banks* by filing a Petition for Writ of Certiorari with the Supreme Court of the United States. *See* Order (Doc. 108) (citing Joint Motion to Stay (Doc. 106 at ¶ 1)). The parties filed a Joint Motion to Stay give that the Petition to the Supreme Court "could affect the landscape of this case." Joint Motion to Stay (Doc. 106 at ¶ 2).

5

before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government," a stay that prevents a meaningful remedy should not issue. *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (denying stay of preliminary injunction where government would suffer financial harm and inconvenience, but plaintiff class would suffer emotional and potentially physical harm, and retroactive relief would not later undo the harm). "Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Id*.; *see also Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008).

## III.    Analysis

The Plaintiffs move this Court for an Order lifting its Stay for the purpose of limited discovery in the form of sampling at Jana Elementary School. Recently uncovered Army Corps of Engineers documents reveal that the area around the school is heavily contaminated with radionuclides far in excess of the EPA's public health standards. However, the Army Corps chose not to take samples inside the school itself, nor the soil immediately surrounding the school (within 300 feet) despite a recommendation stating otherwise by the ATSDR relating specifically to the Army Corps' remediation of Defendant Cotter's waste in the Coldwater Creek area. A court order lifting the Stay is supported by a weighing of the competing interests (balance of hardships), including the interests of the parties and the public interest, all of which strongly support the Plaintiffs' right to merely collect small soil and dust samples from the area. Further, lifting the Stay is warranted in that it will allow the Plaintiffs to mitigate damages.

**1.    The U.S. EPA establishes a public health standard of no more than 5 pCi/g in excess of "background" where radium and thorium isotopes are commingled in surface soils, and a 15 pCi/g thorium standard for subsurface soils.**

The federal EPA establishes the public health standard for the presence of radionuclides. This is a standard that EPA determines to be protective of human health. More specifically, EPA establishes a standard for certain dangerous alpha-radiation emitting radionuclide isotopes: radium and thorium. Where radium and thorium are commingled, EPA establishes that, in order to protect human health, radioactivity must not exceed 5 picoCuries per gram ("pCi/g") above background radioactive readings of surface soils. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 1 and 2 (citing "Use of Soil Cleanup Criteria in 40 C.F.R. Part 192 As Remediation Goals for CERCLA Sites" (1988, p. 5)).

"Background" readings in this context means the level of radiation that would be expected to exist in nature in the absence of contamination from a source. The EPA standard establishes that whatever the level of natural "background" for commingled radium and thorium is, the public health standard is that radiation levels should not exceed 5 pCi/g more than that level. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 2. The 6.51 pCi/g public health standard is applicable to surface soils. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 2. There is also a separate subsurface soil standard for thorium which is 15 pCi/g. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 2.

**2.     The U.S. Army Corps of Engineers conducted sampling in the general area of Jana Elementary School between 2018 and 2021.**

The U.S. Army Corps of Engineers periodically conducts radiation sampling in the Coldwater Creek area of St. Louis. Most recently, the Army Corps conducted sampling in the general area of Jana Elementary School between 2012 and 2021. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 7, 10.

**3.     The Army Corps' 2018 to 2021 sampling establishes that the expected "background" level of commingled radium and thorium in the Jana Elementary School area is no more than 1.51 pCi/g, meaning that the public health standard for the area is 6.51 pCi/g for surface soils.**

The Army Corps' sampling of the general area around Jana Elementary School establishes that the "background" level of radiation for commingled radium and thorium is 1.51 pCi/g. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 2, 4, 9. Because the EPA's standard is set relative to the background level, and because the background level is 1.51 pCi/g, the EPA public health standard for the area is 6.51 pCi/g. *See* Exhibit 4, Dr. Kaltofen Expert Report, at 1 and 2 (citing "Use of Soil Cleanup Criteria in 40 CFR Part 192 As Remediation Goals for CERCLA Sites" (1988, p. 5)).

4. **Army Corps sampling found that there is toxic radionuclide contamination near Jana Elementary School far in excess of the EPA's two public health standards.**

The Army Corps sampling in the area near Jana Elementary School first detected radioactive thorium near the school in 2018, and confirmed the results with further testing in 2019, 2020, and 2021. Although the public health standard is 6.51 pCi/g for surface soils, the Army Corps' sampling near the school found commingled radium and thorium as high as 26.99 pCi/g$^2$ in surface soils . "Army Corps data found 84 locations and depths on the school property where thorium-230 was significantly above the expected background of 1.5 pCi/g. The average activity of these 84 samples was 6.18 ± 1.46 pCi/g of thorium-230." *See* Exhibit 4, Dr. Kaltofen Expert Report at 4.

In addition to the significant exceedances of toxic radiation found in surface soils, the Army Corps' sampling of subsurface soils found thorium as high as 34.30 ± 6.61 pCi/g. This is far higher than the 15 pCi/g public health standard established by the EPA. *See* Exhibit 4, Dr. Kaltofen Expert Report at 2. The contamination at the school extends to depths at least six feet below ground

---

$^2$ 22.60±4.39 pCi/g in the report refers to the uncertainty factor of radionuclide testing expressed as "X±Y" in which X is the reported analytical value plus or minus the uncertainty factor used by the analytical lab.

surface, but we do not know the true depth because the Army Corps did not sample below six feet. Marco at 4.

Although the sampling was conducted from 2018 to 2021, the Army Corps did not inform the Hazelwood School District until January 2022. *See* Exhibit 4, Dr. Kaltofen Expert Report at 7; *see also* Exhibits 1, 2 and 3. As noted above the Hazelwood School District has voted to not inform the parents of the Army Corps findings.

**5.     The Army Corps chose not to collect samples from Jana Elementary School buildings or any soil within 300 feet of the school, despite red-flag elevations of toxic radiation just beyond 300 feet from the school.**

Curiously, the Army Corps chose not to collect any samples from within any Jana Elementary School building, nor from the soil within 300 feet of the school. *See* Exhibit 4, Dr. Kaltofen Expert Report at 4. The Army Corps' soil samples collected nearby were "on portions of the property furthest from the actual school building itself." *See* Exhibit 4, Dr. Kaltofen Expert Report at 4. That is, Army Corps investigators sampled the Jana Elementary School area, but stopped short of approaching the school itself. The choice not to sample means that there is a concerning lack of information about radiation at the school itself, and the corresponding health risk to students, teachers, parents, and visitors to the school. Unfortunately, it is not possible to assess the risk due to the Army Corps' failure to sample the immediate school area. *See* Exhibit 4, Dr. Kaltofen Expert Report at 3, 4.

The Army Corps' failure to sample the interior of the school is particularly concerning given that "the U.S. Agency for Toxic Substance Disease Registry (ATSDR) advises interior sampling of structures with contaminated exterior soil like Jana Elementary (ATSDR 2019)." *See* Exhibit 4, Dr. Kaltofen Expert Report at 4. Nearby homes have been found to contain radioactive

9

contamination, which further lends towards sampling of the school's interior. *See* Exhibit 4, Dr. Kaltofen Expert Report at 6.

6. **The high radiation sampling results from just beyond 300 feet from Jana Elementary School suggests a high likelihood of corresponding high radiation at the school itself.**

The Army Corps' high radiation sampling results in the near vicinity of Jana Elementary School come in the overall context of radioactive wastes throughout the larger geographic area. Legacy uranium processing wastes from Defendant Cotter's operations are found throughout the heavily-contaminated Coldwater Creek in North St. Louis County, and in areas subject to flooding from the creek. The radioactive waste near Jana Elementary School matches that found in other radioactively contaminated areas of St. Louis. *See* Exhibit 4, Dr. Kaltofen Expert Report at 2. Inhaling, ingesting, or even dermal (skin) contact with these radioactive materials can cause significant biological damages. *See* Exhibit 4, Dr. Kaltofen Expert Report at 6–7. An analysis of cancer incidence in the vicinity of Coldwater Creek shows that cancer is elevated in areas subject to the type of radioactive contamination. *See* Exhibit 6, Yun, Shumei, *Analysis of Cancer Incidence Data in Eight ZIP Code Areas Around Coldwater Creek, 1996-2011*.

7. **Because there is a high likelihood of toxic radiation in excess of public health standards at Jana Elementary School, there is a pressing need to collect samples from the school to determine whether it is safe for students.**

The federal government's Agency for Toxic Substance Disease Registry ("ATSDR") directly calls for interior testing in the Coldwater Creek area. Jana Elementary School is in the Coldwater Creek area, and it should be sampled. *See* Exhibit 4, Dr. Kaltofen Expert Report at 4,5.

8. **The Plaintiffs here move this Court to lift the Stay on discovery in order to allow for a formal Site Inspection and sampling.**

The Plaintiffs request an order from this Court lifting a stay on discovery in order to allow radiation experts to collect and analyze samples of outdoor soils and indoor dusts from locations

10

that were not sampled in the 2018 to 2021 Army Corps sampling and testing program. *See* Exhibit 4, Dr. Kaltofen Expert Report at 10 (Appendix 2, Proposed Site Inspection Activities). Specifically, the Plaintiffs propose a formal site inspection protocol. *See* Exhibit 7, Dr. Kaltofen Site Inspection Protocol. The Proposed Site Inspection Protocol calls for sampling "bulk dusts or wipe samples from interior spaces of the Jana School, as well as outdoor soil and dust samples collected within 300 feet of the occupied school buildings," as well as "a number of soil and sediment samples in the Army Corps-sampled areas." *Id*.

**9.    Lifting the Stay is warranted because the competing interests favors lifting the stay to allow for sampling.**

There are competing interests as to whether to allow the Plaintiffs to sample the elementary school, but on balance the interests weigh strongly in favor of ascertaining whether there is a public health threat in that school. On one hand, the Plaintiffs are members of the community and include students, teachers, and workers at the school. It is strongly in their interests and their families' interests to know whether the school is safe to use.

On the other hand, there is a comparatively very small competing interest weighing against sampling at the school, being that it may be administratively inconvenient or cost money to arrange the right of the Plaintiffs' experts to enter onto the school property and obtain soil and dust samples. But this is a very small inconvenience.

A third "competing interest" exists in the form of the public interest. Courts elevate the importance of the public interest over the balance of hardships when considering stays.[3] When

---

[3] *See Golden Gate Rest. Ass'n v. City of S.F.*, 512 F.3d 1112, 1126 (9th Cir. 2008) ("Our analysis of the public interest in a stay is in part subsumed in our analysis of the balance of hardship to the parties. That analysis, however, is necessarily narrower than a public interest analysis, for there are many employees covered by the Ordinance who are not parties to this suit. In considering the public interest, we may consider the hardship to all individuals covered by the Ordinance, not limited to parties, as well as the indirect hardship to their friends and family members, if a stay is denied. Similarly, we may consider the hardship to all covered employers, not limited to employers represented by the Association, as well as indirect hardship to those affected by hardship to the employers.").

"the physical and emotional suffering shown by plaintiffs in the record before us is far more compelling than the possibility of some administrative inconvenience or monetary loss to the government," a stay that prevents a meaningful remedy should not issue. *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (denying stay of preliminary injunction where government would suffer financial harm and inconvenience, but plaintiff class would suffer emotional and potentially physical harm, and retroactive relief would not later undo the harm). "Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Id.*; *see Golden Gate Rest. Ass'n v. City of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008). When it comes to the health of children, courts strongly find that there is a strong public interest. *See Heather K. by Anita K. v. City of Mallard, Iowa*, 887 F. Supp. 1249 (N.D. Iowa 1995) (regarding air pollution from open burning harming the health of a child "[The court] finds no difficulty in identifying the public interest at stake."). Because the very purpose of the sampling is to ensure that the health of schoolchildren, school teachers, and school workers are protected, the public interest factor alone strongly supports that this Court lift its stay for the limited purpose of taking samples at the school.

**10.     Lifting the Stay is warranted because the potential damages to the students is "obviously" irreparable.**

It is critical for the Plaintiffs to ascertain whether Jana Elementary School is safe for students because any radiation injury to the students would be irreparable in character. The prospect of harm to students from radioactive contamination is a sort of irreparable harm that cannot subsequently be compensated for. *See Cmtys. for a Better Env't v. Cenco Ref. Co.*, 179 F. Supp. 2d 1128, 1148 (C.D. Cal. 2001) (irreparable harm where there is "environmental injury" in the form of emissions of air pollutants). "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,*

12

irreparable." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 545, 94 L. Ed. 2d 542, 107 S. Ct. 1396 (1987). *See also S. Camden Citizens in Action v. N.J. Dep't of Envt'l. Prot.*, 145 F. Supp. 2d 446, 499 (D.N.J. 2001) ("injury to the environment . . . has been found by courts to be especially difficult to remedy and usually irreparable"). Similarly, personal injury in the form of cancer is "obviously" an irreparable type of damage. *See Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 26 (D. Mass. 2010) (Plaintiffs' subcellular injury and increased risk of cancer are obviously irreparable"). In short, because of the character of damage to the Plaintiffs and public, a short and tailored lift of the stay is warranted to prevent the possibility of irreparable damage.

**11.    Lifting the Stay is warranted because sampling is needed to ensure that the Plaintiffs can mitigate damages.**

The Plaintiffs are obligated to mitigate damages, and they cannot do so unless they know whether the school property is safe for students. "[U]nder Missouri law, a plaintiff's 'failure to mitigate damages is an affirmative defense,' that can be raised by a defendant to limit the measure of damages recoverable by the plaintiff." *Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 13 F.4th 659, 672 (8th Cir. 2021) (citations omitted). "Those experiencing damage cannot allow injury to continue and increase without expending reasonable effort to avoid further loss." *Wasland v. Porter Auto & Marine, Inc.*, 1999 SD 134, 600 N.W.2d 904, 907 (S.D. 1999) (citations omitted). Here, the Plaintiffs cannot mitigate damages unless and until they know whether Jana Elementary School is safe for students. As such, lifting the stay for the limited purpose of sampling at the school site is warranted and time-sensitive.

### IV.    Conclusion

For the above reasons, this Court should issue an Order lifting the Stay to allow for the issuance of a subpoena to the Hazelwood School Board to inspect the premises of Jana Elementary

so as to permit the Plaintiffs' experts to sample the school for the presence of radionuclides. *See* Exhibit 8, Proposed Subpoena to Permit Inspection of Premises in a Civil Action.

Dated: August 1, 2022                                                          Respectfully submitted,

KEANE LAW LLC

*/s/ Ryan Keane*
Ryan A. Keane, #62112
7711 Bonhomme Ave., Suite 600
St. Louis, MO 63105
314-391-4700
314-244-3778 (fax)
ryan@keanelawllc.com

COOPER LAW FIRM, L.L.C
Celeste Brustowicz, LA Bar # 16835
Victor Cobb LA Bar # 36830
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
cbrustowicz@sch-llc.com
vcobb@sch-llc.com

CLAYBORNE AND WAGNER LLP
James F. Clayborne, Jr.
525 W. Main Street, Suite 105
Belleville, Illinois 62220
Tel: 618.239.0187
jclayborne@cswlawllp.com

JOHNSON GRAY, LLC
Anthony D. Gray, #51534
2705 Dougherty Ferry Rd. Suite 100
St Louis, MO 63122 (314) 385-9500
agray@johnsongraylaw.com

RON AUSTIN & ASSOCIATES, LLC
Ron A. Austin (*Admitted pro hac vice*)
Catherine Hilton (*Admitted pro hac vice*)
920 Fourth Street
Gretna, LA 70053
Tel. (504) 227-8100
Fax (504) 227-8122

Email: raustin@ronaustinlaw.com

and

THOMPSON BARNEY
Kevin Thompson (WV Bar # 5062)
David R. Barney, Jr. (WV Bar #7958)
2030 Kanawha Boulevard,
East Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405
Email: kwthompsonwv@gmail.com

*Attorneys for Plaintiffs*