UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI (EASTERN DIVISION)

| | |
|---|---|
| TAMIA BANKS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> COTTER CORPORATION, et al., ) <br> ) <br> Defendants. ) <br> ) <br> COTTER CORPORATION, (N.S.L.), ) <br> ) <br> Third Party Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MALLINCKRODT LLC, et al., ) <br> ) <br> Third-Party Defendants. ) <br> ) | No. 4:20-cv-01227-JAR |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MALLINCKRODT'S
MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED AND
<u>SUPPLEMENTAL CLASS ACTION COMPLAINT</u>**

This matter, first filed in Missouri state court on February 18, 2018, has been on many state and federal court dockets,[1] most recently the U.S. Bankruptcy Court in Delaware where defendant Mallinckrodt filed for bankruptcy. Clarity on some issues has been achieved. Relevant here: (1) the Bankruptcy Court held the named plaintiffs can proceed against Mallinckrodt in this proceeding, and; (2) the Eighth Circuit concluded that this case shall remain in this Court to be tried under the Price Anderson Act ("PAA") at least with respect to defendant Cotter. Unresolved is the question of when the parties may proceed to class discovery and certification. At issue now

---

[1] Docket Nos. 21st Judicial Cir. Ct. Mo. St. Louis Cty. 18SL-CC00617; USDC ED Mo. 4:18-cv-00624; USDC ED Mo. 4:20-cv-01227; USCA 8th Cir. 21-1165; Bankr. Ct. Del. 20-12522.

1

is Mallinckrodt's Motion to Dismiss and to Strike Plaintiffs' Class Action Complaint, which urges these grounds:

a. Counsel admitted in oral argument before the Eighth Circuit that Mallinckrodt had no liability to plaintiffs, so Plaintiffs' claims must be dismissed.
b. The claims of the putative class members were discharged in its bankruptcy, so Plaintiffs' claims must be struck.
c. And for the additional reasons articulated by defendant Cotter in its motions, ECF 153-156.

Mallinckrodt's Motion to Dismiss must be denied. There was no such judicial admission, as clearly shown by even a cursory reading of the transcript and the context within which the subject statement was provided. Mallinckrodt plucked one line out of an appellate argument where it was not even a party at the time. It is especially frustrating since the factual argument made is one that Mallinckrodt admits;[2] it had nothing to do with Defendant Cotter's handling of radioactive materials at *Latty Ave*. The statement does not meet the requirements of a judicial admission.

Mallinckrodt's Motion to Strike the Class likewise lacks merit as it (1) ignores this Court's July 7, 2023, Order (ECF 144) granting the putative class leave to amend, (2) fails to acknowledge that class certification has never been ripe for adjudication let alone class discovery, and (3) fails to grasp that a class action is a procedural device that permits representation through others once certified.[3] In short, the putative class members' claims were *not* discharged in Mallinckrodt's bankruptcy proceedings. The only affirmative ruling the bankruptcy court could and did make was that the named Plaintiffs' claims were clearly preserved. For the reasons stated herein, Mallinckrodt has not demonstrated that the bankruptcy court's silence regarding the claims of the

---

[2] *See* ECF 160 at 3-4 (where Mallinckrodt acknowledges that Plaintiffs only accuse Mallinckrodt of contaminating Coldwater Creek specifically from the SLAPS site during its operations).

[3] "The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979); "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).

putative class members equals a complete bar to class certification in this matter—nor can it.

As for the motions adopted by Mallinckrodt, Plaintiffs incorporate by reference the arguments and authorities provided in their direct response to those motions.

## PROCEDURAL HISTORY

### I. Plaintiffs Supplement Mallinckrodt's Background Summary (ECF 160 at 3-5).

Mallinckrodt's presentation of the procedural history of this case is largely correct, but there are some omissions relating to the appellate matter, Mallinckrodt's entitlement to indemnity, and the claimed bankruptcy discharge of the putative class, as detailed below.

### A. The Eighth Circuit proceedings.

To appreciate the alleged "admission" made during oral argument, a few facts are necessary. Following this Court's decision that the PAA did not apply to Plaintiffs' claims against Cotter and to sever Cotter's third-party contribution claim,[4] Cotter appealed to the Eighth Circuit arguing, in part, that the PAA was applicable to Plaintiffs' claims against Cotter because Mallinckrodt's indemnity agreement covered Cotter's Latty Ave operations. Thus, at the time of the proceedings in the Eight Circuit, Mallinckrodt was only a third-party defendant that was severed from the main case.

During WWII, the federal government contracted with Mallinckrodt to refine uranium for its war efforts.[5] Mallinckrodt refined the uranium in downtown St. Louis, Missouri ("St. Louis Downtown Site" or "SLDS") and in the 1950s the residual materials (mill tailings), were transported to the St. Louis Airport Site ("SLAPS").[6] The residual materials are radioactive.[7] In

---

[4] *See* ECF 71 (where this Court granted Plaintiffs' motion to sever Cotter's third-party claim against Mallinckrodt from all other claims in this case).
[5] ECF 147, at ¶ 31.
[6] *Id*. at ¶¶ 47-49.
[7] *Id*. at ¶ 36.

3

1966, the federal government ended its relationship with the mill tailings by selling them to a private company, Continental.[8] The sale was "as-is" with no warranty that the material would not injure or damage humans or property when used for any purpose.[9] Continental moved the material to Hazelwood, Missouri to the location known as Latty Ave.[10] Continental went bankrupt and another company bought and in turn sold the material to Cotter in 1969.[11] Neither the federal government nor Mallinckrodt were involved in the transaction to Cotter. There was no privity between Mallinckrodt and Cotter; by 1966, Mallinckrodt no longer had responsibility for the materials.[12] It is clear from the facts, which are undisputed by Mallinckrodt, that Mallinckrodt and Cotter had nothing to do with each other and that Cotter's operations at Latty Ave were separate in time and location from Mallinckrodt's operations at the SLAPS site.

The oral argument focused on many issues, including the applicability of the PAA in the context of Cotter's operations and Mallinckrodt's indemnity agreement with the federal government.[13] As shown from the full transcript, while explaining Cotter's operations relative to Mallinckrodt, the Panel wanted to know if the mill-tailings came from the original Mallinckrodt material.[14] Although they did, Plaintiffs' Counsel was clear to state, "Mallinckrodt never had any ownership or interest or anything to do **with the *Latty Avenue site*.**"[15] The point being made, a fact that Mallinckrodt agrees with,[16] was simple: Mallinckrodt had nothing to do with Cotter's

---

[8] *Cotter Corp. (N.S.L.) v. U.S.*, 165 Fed.Cl. 138, 143 (2023).
[9] *Id*.
[10] *Id.* at 144.
[11] *Id.*
[12] Since the Eighth Circuit ruling in this case, the U.S. Court of Federal Claims ruled against Cotter in its direct claim against the federal government for coverage under the PAA. *Cotter Corp. (N.S.L.),* 165 Fed.Cl. at 152. That case is on appeal, and we note that the parties agreed that there was no privity between Mallinckrodt and Cotter. *Id.* at 149 ("It is undisputed that Cotter was not in privity of contract with Mallinckrodt.").
[13] *See* generally ECF 160-1.
[14] *Id*., at 17:11-19:10.
[15] *Id.*, at 17:18-19 (emphasis added).
[16] *See* ECF 160, at 3-4.

4

operations, and it did not cause or contribute to the contamination emanating from the Latty Ave site. To provide the context Mallinckrodt avoids in its Motion, here is the alleged "admission" with the surrounding transcript text:

> MS. BRUSTOWICZ: We know that two or three years after Cotter did this work at **Latty Avenue**, and this is in our petition, it's that they told the NRC that **Latty Avenue** was completely cleaned up; there was nothing to worry about there. But the NRC came in and said, No, Cotter, you lied to us. It still has thorium and uranium **there**. Now…
>
> THE COURT: Counsel, so these are definitely byproduct material that are **there**?
>
> MS. BRUSTOWICZ: Yeah, that's what the Federal Government sold: they sold the byproduct material from The Manhattan Project and two companies, successor companies bought it before Cotter did for commercial purposes. But nothing that Mallinckrodt did caused or even contributed to the polluting and the contaminating of my client's property or Coldwater Creek. That was all done by Cotter. All of it. And **that's what we're precisely suing for**. Now, on the issue of jurisdiction…

ECF 160-1, p. 20-21 (emphasis added).

Cotter's liability emanates from its acts and omissions occurring at **Latty Ave**—that's what Plaintiffs were "suing for" at the time of this statement. Mallinckrodt's liability is based on its strict liability for contamination that occurred at SLAPS. There was no relationship between Mallinckrodt's work and Cotter's work; each did their work at different times and at different locations. Neither were in privity, and Cotter's involvement had nothing to do with the war efforts. These were the discussions at oral argument.[17]

As explained in the Bankruptcy Court, Mallinckrodt, though bankrupt, is entitled to full indemnity, including attorney fees and costs, from the federal government for its SLAPS operations and these Plaintiffs' damages caused by those operations.[18]

### B. Bankruptcy and Order granting leave to file third amended complaint.

In January 2023, Plaintiffs moved to amend the complaint to add Mallinckrodt as a

---

[17] *See* ECF 160-1.
[18] Memorandum and Order, U.S. Bankr. Ct. Del., Case No. 20-12522, Doc. 8795.

defendant and, for the first time, assert claims against it directly.[19] Mallinckrodt (the Debtors in Bankruptcy Court) filed its bankruptcy action to enjoin Plaintiffs from naming Mallinckrodt as a defendant in this action.[20] Following briefing and oral argument, which in part focused on the so-called admission,[21] Judge Dorsey ruled the language used in the Plan was ambiguous, and that "the Debtors have not met their burden of establishing that Plaintiffs' attempt to join Mallinckrodt to the Banks Litigation violates the terms of the Plan or the Confirmation Order."[22] Further, he found his order was only applicable to the named plaintiffs because the class had not yet been certified:

> However, this ruling applies only to those plaintiffs expressly named in the Banks Litigation and does not extend to those similarly situated on whose behalf the Plaintiffs have attempted to assert claims. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593, 133 S. Ct. 1345, 1349 (2013) ("a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified"); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (" '[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*'") (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16, n. 1 (2002) (Scalia, J., dissenting) (emphasis in original). ECF 140-1, at 12-13.

Having returned to this proceeding, Mallinckrodt opposed Plaintiffs' Motion for Leave to file the Amended Complaint, claiming, as they do now, that if the complaint included the putative class, it would violate the order confirming its bankruptcy reorganization plan.[23] This Court considered this very issue, Mallinckrodt's prior pleadings on the subject (ECF 129), and the Bankruptcy Order (ECF 140-1), and rightfully concluded the Bankruptcy Order did not preclude Plaintiffs proposed amended pleadings.[24] The Court should now extend its analysis to the present

---

[19] ECF 147.
[20] Reorganized Debtors Motion for Order Enforcing the Discharge Injunction Issued in Connection with the Reorganized Debtors' Plan of Reorganization Against Banks Litigation Plaintiffs, U.S. Bankr. Ct. Del., Case No. 20-12522.
[21] Transcript of Apr. 11, 2023 Hearing, U.S. Bankr. Ct. Del., at 15:19-16:1.
[22] Memorandum and Order, U.S. Bankr. Ct. Del., Case No. 20-12522, Doc. 8795, at 12.
[23] ECF 142.
[24] ECF 144, at 2-3.

6

motion and deny Mallinckrodt's attempt to re-litigate the issue.

## LEGAL AUTHORITY

I.     **Legal Standard Fed. R. Civ. P. 12(b)(6).**

Mallinckrodt cites the well-known rules governing Fed. R. Civ. P. 12 (b)(6) motion. In addition, a complaint will survive a motion to dismiss for failure to state a claim if it "allege[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Omega Genesis Corp. v. Mayo Found. For Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "There is a strong presumption against dismissing an action for failure to state a claim." *See Whitehorn v. F.C.C.*, 235 F.Supp.2d 1092, 1096 (D. Nev. 2002), *aff'd* 63 Fed. Appx. 346 (9th Cir. 2003), *cert. denied* 541 U.S. 1031, *reh'g denied* 542 U.S. 956 (2004). Generally, claims filed within the federal courts are governed by Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Again, for a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must sufficiently "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

II.    **Legal Standard Fed. R. Civ. P. 12(f).**

Under a Fed. R. Civ. P. 12(f) motion to strike, content is immaterial if it has "no essential or important relationship to the claim for relief." *Arbogast v. Healthcare Revenue Recovery Grp.*, 327 F.R.D. 267, 269 (E.D. Mo. 2018). The Court maintains sound discretion in such a motion. To strike a pleading is a "drastic remedy" and the Court will not resort to it absent demonstrable prejudice. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). It is hard

7

to see how Mallinckrodt could be prejudiced since no matter the judgment against it, the federal government will pay it and reimburse its fees and costs pursuant to its indemnity obligations. The standard of review applied to Plaintiffs' Complaint under Rule 12(f) is the same as a Rule 12(b)(6) motion—the Court accepts the well-pled allegations of the complaint as true. *Id*. at n. 1. In addition, because it is class allegations Mallinckrodt seeks to strike, Fed. R. Civ. P. 23(c)(1)(A) is at play.

## ARGUMENT & ANALYSIS

**I.    Plaintiffs made no judicial admission as to the contamination committed by Mallinckrodt at the St. Louis Airport Site.**

Mallinckrodt's assertion that Plaintiffs made a judicial admission is incorrect for three reasons: (1) the words of Plaintiffs' Counsel are being taken out of context, (2) the statement does not qualify as a judicial admission, and (3) Mallinckrodt was not a party to that proceeding.

First, Plaintiffs' counsel discussed Mallinckrodt and Cotter's connection to each other and to Latty Ave.[25] In this discussion, Plaintiffs' counsel simply made it clear that Mallinckrodt has no connection to Latty Ave, stating "Mallinckrodt's responsibility for these materials ended in 1966. Mallinckrodt never had any ownership or interest or anything to do ***with the Latty Avenue site***."[26] In describing the timeline of events, Plaintiffs clearly describe Mallinckrodt as being "removed from the situation" by the time Cotter moved the materials to Colorado, contaminating the banks of Coldwater Creek at Latty Ave.[27] This discussion of the contamination at Latty Ave continues through page 19, where the Court questions Plaintiffs about byproducts at Latty Ave, to which Plaintiffs' Counsel responds with the statement in question. It is clear from the context of the oral argument (which Mallinckrodt must ignore in order to make its argument) that both Plaintiffs' Counsel and the Panel are referencing the contamination at ***Latty Ave*** in the context of

---

[25] *See* ECF 160-1, at 17:11-19:17.
[26] *Id.*, at 17:18-19 (emphasis added).
[27] *Id.* at 18:4-14.

8

this statement, rather than the SLAPS site, as Mallinckrodt alleges.

Second, even if this statement had not been taken out of context, it still would not qualify as a judicial admission. "A judicial admission is a formal admission before a court that 'acts as a substitute for evidence in that it does away with the need for evidence in regard to the subject matter of the judicial admission.'" *Warner Bros. Ent. v. X One X Prods.*, 840 F.3d 971, 978 (8th Cir. 2016) (quoting *State Farm Mut. Auto. Ins. Co. v. Worthington*, 405 F.2d 683, 686 (8th Cir. 1968)). The statement was about Mallinckrodt's lack of operations at Latty Ave, whereas the "subject matter of the judicial admission" as alleged by Mallinckrodt is about Mallinckrodt's operations at the SLAPS site. A statement about operations at Latty Ave does not "do away with the need for evidence" of operations at the SLAPS site.

Further, such a statement must be "deliberate, clear, and unambiguous" to be a judicial admission. *Russell v. Anderson*, 966 F.3d 711, 728 (8th Cir. 2020); *Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 625 (8th Cir. 2014). Seeing as the statement made by Plaintiffs' Counsel was about Mallinckrodt's connection to Latty Ave, this is not a "deliberate, clear, and unambiguous" statement of Mallinckrodt's operations at the SLAPS site or Mallinckrodt's overall liability. Plaintiffs' Counsel did not make a deliberate statement about Mallinckrodt's operations at the SLAPS site – as demonstrated by the fact that the preceding two pages of argument were about Latty Ave.[28] Regardless, even if there is some level of ambiguity as to which site was being discussed (which Plaintiffs do not believe), this ambiguity prevents the statement from being deemed a judicial admission. *Russell*, 966 F.3d at 728.

To summarize, the statement that Mallinckrodt attempts to paint as a "judicial admission" is for an entirely different location and thus an entirely different issue than the one to which

---

[28] *See* ECF 160-1, at 17:11-19:17.

Mallinckrodt intends this alleged "judicial admission" apply. Mallinckrodt's liability was not an issue before the appellate court. Why would it be? It was not a party to the proceeding. It would be unfair to contort this statement into something that is not even true. No one, not even Mallinckrodt, denies it did work with the radioactive material at SLAPS. Plaintiffs have alleged and are entitled to their day in court to show that Mallinckrodt is strictly liable for contamination of Coldwater Creek at the SLAPS site. Mallinckrodt's assertion and use of this statement is at best inaccurate, at worst it is misleading, and for the reasons stated herein the Court should properly find this statement is not a judicial admission.

## II. Plaintiffs' Class allegations were not discharged in Bankruptcy Court.

Although Mallinckrodt tells this Court the "claims of the putative class were discharged in Mallinckrodt's bankruptcy," Mallinckrodt has also filed the following language in its most recent bankruptcy Confirmation Plan:[29]

> Notwithstanding any other provision in the Plan or this Combined Order, no Debtor, Reorganized Debtor, nor any Released Party will be released or discharged from any Claims or Causes of Action, if any, held by Tamia Banks **and the Proposed Class defined in the Third Amended Class Action Petition** Pending under the caption *Banks v. Cotter Corp.*, Case No. 4:20-CV-01227 (JAR) (E.D. Mo. Dec. 22, 2020) (the "*Banks Litigation*") in the United States District Court for the Eastern District of Missouri if such class is approved (Tamia Banks and the Proposed Class if approved, collectively, the "*Banks Plaintiffs*") solely to the extent such Claims or Causes of Action relate to the Banks Litigation (collectively, the "*Banks Claims*").

Mallinckrodt therefore contradicts itself. The proposed Confirmation Order explicitly includes the proposed class in this litigation, *as defined* in Plaintiffs' operative Complaint. Mallinckrodt should be estopped from arguing otherwise now.

To the extent Mallinckrodt does continue to argue otherwise, a review of *Standard Fire*

---

[29] *See* Mallinckrodt's Proposed Confirmation Order, U.S. Bankruptcy Court for the District of Delaware (Case No. 23-11258), filed 9/19/23 (Doc. 290-1) (emphasis added).

10

*Ins. Co.,* is in order. 568 U.S. 588 at 593. In *Standard Fire Ins. Co.,* plaintiff Knowles sought to certify a class of similarly situated policyholders. To avoid federal court jurisdiction under CAFA, Knowles executed a stipulation agreeing the damages would be below the statutory limit. The Court held that Knowles could not bind the class to the stipulation because the plaintiff who proposed the class *could not bind the class until it is certified*. (SCALIA, J., dissenting). 568 U.S. at 592-93 (2013). Stated another way: without a certified class, the named plaintiffs had no standing to obtain relief for the putative class in the Bankruptcy Court at that time. But this does not mean the putative class members have no claims asserted pre-bankruptcy petition, as Mallinckrodt contends. More importantly, it does not mean it is "apparent from the pleadings that the class cannot be certified" which is the standard Mallinckrodt must demonstrate. *Donelson*, 999 F.3d at 1092. At most, then, Mallinckrodt's Motion highlights that the bankruptcy court limited its decision to the questions before it, was silent on class certification in this matter, and that the claims of the not-yet-certified class members in this action may be examined at a later date. The bankruptcy court did not dispose of Plaintiffs' class allegations, and neither should this Court.

      Mallinckrodt's caselaw citations are not persuasive or dispositive, either. Mallinckrodt cites *Coleman v. Watt*, 40 F.3d 255 (8th Cir. 1994), stating that "Plaintiffs bear the burden of showing that their suit may be maintained as a class action." (ECF 160). However, in considering a motion to dismiss, "[t]he complaint must be liberally construed in the light most favorable to the plaintiff." *Coleman,* 40 F.3d at 258. Mallinckrodt further cites to *Donelson*, 999 F.3d at 1080, a securities case sounding in fraud and involving an arbitration agreement for the proposition that a 12(f) motion to strike a class allegation can be granted before a motion to certify the class is filed if it is "apparent from the pleadings that the class cannot be certified." *Id.* at 1092. *Donelson*, however, simply demonstrates that an enforceable *arbitration agreement* requires class allegations

11

to be assessed prior to a motion for class certification when failing to do so would force the defendant to waive his right to arbitrate. *Id.* In reaching this conclusion, the Eighth Circuit applied the requirements of Rule 23 to determine whether the putative class could be certified. *Id.* at 1092-93. Unlike the *Donelson* case, not only does this case lack the issue of an arbitration agreement, but Mallinckrodt has also failed to perform a Rule 23 analysis. Instead, Mallinckrodt merely claims Plaintiffs' suit cannot be maintained as a class action, without providing ***any rationale*** for why a class could not be certified. *See generally,* ECF 160.

Nor is it Plaintiffs' burden to prove class certification at this stage. The burden of persuasion rests with Mallinckrodt, as Mallinckrodt's motion "shifts the burden of persuasion to the defendant, and the more strenuous standard applied to motions to strike portions of a plaintiff's pleadings is then applied when considering the class allegations." *Tucker v. Ford Motor Co.*, No. 4:22-CV-00430-AGF, 2023 WL 2662887, at *2 (E.D. Mo. Mar. 28, 2023). Mallinckrodt cannot meet this heavy burden. "Particularly in the context of a class action suit, striking class allegations prior to discovery and the class certification stage is a rare remedy because it is seldom, if ever, possible to resolve class representation question from the pleadings alone." *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 880 (W.D. Mo. 2020) (internal quotations omitted). When it is the "early stage of litigation in [a] case" and "the chance exists that Rule 23 elements may be satisfied with discovery," courts will decline to strike class allegations. *Id.* at 880. Accepting plaintiffs' allegations as true, the court must determine if plaintiffs would be entitled to relief. *Twombly*, 550 U.S. at 556-57. And since the Complaint on its face satisfies the requirements of Rule 23 for certification of a class action suit, Defendant should fail in its motion to dismiss and strike class allegations.

An examination of Plaintiffs' Complaint shows Plaintiffs have met their pleading burden,

and that Mallinckrodt has not met its present burden. Plaintiffs are Missouri citizens who live and own property adjacent to Coldwater Creek and whose properties have been contaminated with radioactive materials from Coldwater Creek from defendant companies. *See* Plaintiffs' Third Am. & Supp. Compl. (ECF 147-48), ¶¶ 9-13. This putative class meets the requirements of Rule 23 for the following reasons: (1) the putative class is numerous because it potentially includes all Missouri citizens living adjacent to Coldwater Creek whose properties have experienced contamination by the named defendants; (2) there exist issues of law and fact common to all putative class members, as this case involves contamination from shared sources; (3) the claims of the representative parties (that their properties were contaminated by radioactive waste from Coldwater Creek by Defendants' operations) are typical of the claims of the putative class; and (4) the representative parties fairly and adequately represent the interests of the putative class, as the representatives themselves are Missouri citizens who live in and own property contaminated by radioactive waste from Coldwater Creek. *Id*. at ¶¶ 31-100, 108-132; Fed. R. Civ. P. 23(a).

The Eighth Circuit recently declined to strike class allegations "on the basis of the putative class members' lack of standing, prior to discovery on the issue and a hearing on class certification." *Tucker*, 2023 WL 2662887 at *6. Additional courts have held that a determination on the survival of class allegations "should be made after allowing Plaintiffs to conduct discovery or on motion to the Court wherein they can provide additional briefing to explain whether the prerequisites of Fed. R. Civ. P. 23 can be satisfied." *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339, 1351 (E.D. Mo. 2020).

Here, there has been no class discovery at all. Dismissal of the class allegations at this point in the litigation, when class discovery has not yet commenced nor has a hearing been held on the issue, would be premature. Moreover, considering the complex procedural history of this matter,

13

it would be unfair to conclude on this record that no class can be certified. The putative class was not discharged in bankruptcy; it could not be. The correct order of things now is to deny this motion and let the matter proceed to class discovery and certification. If (when) certified, the parties can then take up the issue of Mallinckrodt's bankruptcy discharge and determine if it applies to the certified class. To strike now under the totality of the circumstances would be contrary to the holding in *Standard Fire Ins. Co.*, relevant caselaw, the plain language of the applicable Federal Rules of Civil Procedure, the Bankruptcy Court's ruling, and this Court's ruling granting leave to amend. Mallinckrodt's motion must be denied.

### III. Federal Regulations Do Not Preempt State Tort Standards of Care in a "Public Liability Action"

#### A. Plaintiffs' Incorporate by Reference the Arguments and Authorities Provided in Their Direct Response to Cotter's Motion to Dismiss

As detailed in Plaintiffs' Opposition to Cotter's Motion to Dismiss, which Plaintiffs' incorporate by reference, the plain language of the PAA incorporates state law standards of care unless inconsistent with a provision of 42 U.S.C. § 2210 only. As the advocate of preemption, Mallinckrodt bears the burden of showing that a provision of Section 2210 is inconsistent with state law standards of care. *Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)). Here, Mallinckrodt has failed to point to any provision of Section 2210 which is inconsistent with state law standards of care. This failure is fatal to Mallinckrodt's argument that a PAA standard of care preempts state law standards of care.

#### B. Mallinckrodt's SLAPS Operations Predate the Enactment of Federal Regulations

Assuming *arguendo* that federal regulations preempt state law standards of care in a "public liability action", this Court determined that the applicable regulations are found in 10

14

C.F.R. § 20.105 and 20.106. *McClurg v. Mallinckrodt, Inc*., No. 4:12-CV-00361-AGF, 2017 WL 2929444, at *5 (E.D. Mo. July 7, 2017). However, Mallinckrodt's SLAPS operations predate the promulgation of 10 CFR Part 20. "Because no federal standard of care existed at the time of Mallinckrodt's releases, under the plain language of the PAA, the standard of care must be derived from Missouri tort law." *McClurg v. Mallinckrodt, Inc*., No. 4:12-CV-00361-AGF, 2015 WL 867455, at *9 (E.D. Mo. Feb. 27, 2015). "[U]nder Missouri tort law, injuries arising from Mallinckrodt's handling of radioactive materials would be subject to strict liability." *Id*.

### IV. Mallinckrodt's Motion to Strike Plaintiffs' Medical Monitoring Class Allegations Must be Denied for the Same Reasons as Defendant Cotter's Motion

Defendant Mallinckrodt makes no original or additional arguments in its joinder to Cotter's Motion to Strike Plaintiffs' Medical Monitoring Class Allegations, and instead adopts Defendant Cotter's motion to strike in its entirety via a Notice of Joinder. ECF 160, p. 12-13. Therefore, Plaintiffs will do the same with their Opposition. Plaintiffs hereby incorporate by reference and in their entirety the legal authorities and arguments set forth in their Opposition to Defendant Cotter Corporation (N.S.L.)'s Motion to Strike Plaintiffs' Medical Monitoring Class Allegations, filed concurrently. As set forth in their Opposition to Cotter's motion (and reiterated herein), Plaintiffs are not prohibited from seeking medical monitoring by the PAA, Plaintiffs and the putative class members do not lack standing to bring medical monitoring claims, and Defendants' premature challenges based on the Rule 23 requirements must fail. Plaintiffs respectfully request this Court deny Mallinckrodt's motion for the same reasons as it should deny Cotter's motion.

### CONCLUSION

WHEREFORE, for the reasons expressed above, Plaintiffs respectfully request that this Court deny Mallinckrodt's Motion to Dismiss Plaintiffs' Third Amended and Supplemental Class Action Complaint.

15

Dated:  October 5, 2023

Respectfully submitted,

KEANE LAW LLC

/s/ *Tanner A. Kirksey*
Ryan A. Keane, #62112MO
Tanner A. Kirksey, #72882MO
7711 Bonhomme Ave., Ste. 600
St. Louis, MO 63105
Phone: (314) 391-4700
Fax: (314) 244-3778
ryan@keanelawllc.com
tanner@keanelawllc.com

JOHNSON GRAY, LLC
Anthony D. Gray, #51534
2705 Dougherty Ferry Road, Suite 199
St. Louis, MO 63122
Phone: (314) 385-9500
agray@johnsongraylaw.com

COOPER LAW FIRM, L.L.C.

Celeste Brustowicz, LA #16835 *pro hac vice*
Barry J. Cooper, Jr., TX #24057527 *pro hac vice*
Victor Cobb LA Bar #36830 *pro hac vice*
1525 Religious Street
New Orleans, LA 70130
Phone: (504) 566-1558
cbrustowicz@sch-llc.com
bcooper@sch-llc.com
vcobb@sch-llc.com

and

Kevin W. Thompson (WV Bar #5062) *pro hac vice*
David R. Barney, Jr. (WV Bar #7958) *pro hac vice*
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304-343-4401
Facsimile: 304-343-4405

16

Email: kwthompson@gmail.com

*Attorneys for Plaintiffs and proposed Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via this court's ECF/PACER electronic filing notification system on October 5, 2023.

<u>/s/ *Tanner A. Kirksey*</u>