UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TAMIA BANKS, *et al*, <br><br> Plaintiffs, <br><br> vs. <br><br> COTTER CORPORATION, et al., <br><br> Defendants. <br> COTTER CORPORATION, (N.S.L.), <br><br> Third Party Plaintiff, <br><br> vs. <br><br> MALLINCKRODT LLC, et al., <br><br> Third-Party Defendants. | No. 4:20-cv-01227-JAR |

**DEFENDANT ST. LOUIS AIRPORT AUTHORITY'S RENEWED MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT**

Defendant St. Louis Airport Authority ("SLAA"), a Department of the City of St. Louis, moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an Order dismissing Plaintiffs' Third Amended Complaint (the "TAC") for failure to state a claim. Consistent with the Court's Order (ECF No. 229) entered on June 26, 2026, striking all previously filed motions and directing defendants to refile in alignment with current authority, SLAA submits this renewed combined motion and memorandum in support. Plaintiffs seem to acknowledge that a public liability action under the Price-Anderson Act ("PAA"), 42 U.S.C. section 2011 *et seq.,* is the only cause of action under which Plaintiffs can seek recovery. Nevertheless, Plaintiffs shoehorn eleven state law causes of action into the TAC—three of which are takings type claims asserted solely against SLAA—styled as "subparts" to their PAA claim.

As set forth below, SLAA's motion focuses on arguments consistent with current controlling authority, including the Eighth Circuit's decision in *Mazzocchio v. Cotter Corp.*, 120 F.4th 565, 566 (8th Cir. 2024), *cert. denied*, No. 24-1001, 2026 WL 1377129 (U.S. May 18, 2026). Plaintiffs' claims against SLAA should be dismissed on the following grounds: (1) Plaintiffs' allegations are insufficient to establish a causal connection between SLAA's post-1973 conduct and Plaintiffs' alleged injuries, (2) the SLAA-specific takings and constitutional subparts (J, K, and L) fail to state a claim on their own Missouri-law terms, (3) certain other subparts remain independently defective under applicable law, and (4) the structural channeling of the PAA confirms that the subparts are theories within the single public liability action, not freestanding causes of action.

## **INTRODUCTION AND BACKGROUND**

Plaintiffs Tamia Banks, Rev. Ronnie Hooks, Barbara Hooks, Joel Hogan, Kenneth Niebling, Kendall Lacy, Tanja Lacy, Willie Clay, Bobbie Jean Clay, Angela Statum, and Missouri Rentals Company, LLC, first filed their complaint in Missouri state court in February 2018, seeking damages related to the creation, storage, processing and transportation of radioactive wastes in the state of Missouri. Pet. ¶ 45, ECF No. 9.  Plaintiffs filed their TAC on July 18, 2023. *See* ECF No. 147.  Therein, Plaintiffs allege that from 1942 to 1957, under contracts with the United States government, Mallinckrodt processed uranium at a facility located in downtown St. Louis, Missouri, which is referred to as the St. Louis Downtown Site ("SLDS").  TAC, ¶ 47.

Plaintiffs' TAC contends that defendants are individually responsible for radioactive waste materials ("RWM") that were generated by Mallinckrodt under its contracts with the United States Government during World War II and thereafter.  TAC, ¶ 31.  Plaintiffs additionally contend that defendants are accountable for the property on which the RWM was stored and/or they were

2

responsible for managing the RWM. TAC, ¶ 32.  Plaintiffs' TAC is devoid of any allegations stating that SLAA released radioactive material into the environment, disposed of radioactive material, or is plausibly connected to Plaintiffs' alleged exposure to RWM.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is warranted where the complaint fails to set forth the elements of an actionable claim. *Id*. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  A complaint is plausible when the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts engage in a two-step inquiry. *See, e.g., Clark v. Wal-Mart,* 2010 WL 7701137 at *1 (E.D. Mo. July 30, 2010); *McKay v. GMAC Mortgage, LLC,* 2010 WL 2518590 (E.D. Mo. June 14, 2010); *Ginsburg v. InBev NV/SA,* 649 F.Supp.2d 943, 948 (E.D. Mo. 2009). The first prong requires the court to identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. After removing legal conclusions and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements," *id.* at 678, the second prong requires the court to determine whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In performing this exercise, courts also must consider whether there are "more likely explanations" for the incident

3

that detract from the plausibility of the pleaded theory. *Id.* at 680.

## ARGUMENT

**I.      Plaintiffs Fail to State a Plausible Claim that SLAA Caused Their Alleged Injuries (Causation).**

The threshold deficiency in the TAC as to SLAA is causation. This argument is independent of any dispute regarding the applicable standard of care[1] and applies with full force under Missouri law, which is the substantive law that governs this public liability action. *Mazzocchio*, 120 F.4th at 566. Under Missouri law, a plaintiff must plead and prove "[a] causal connection between the defendant and the injury-producing agent" for claims sounding in negligence or strict liability. *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 991 (8th Cir. 1998); *see also Gerling Am. Ins. Co. v. Cont'l Cement Co., LLC/Missouri Fuel Recycler*, 2007 WL 2757641, *6–9 (E.D. Mo. Sept. 20, 2007).

Plaintiffs have failed to allege adequate facts establishing causation on the part of SLAA. Although Plaintiffs make certain limited allegations regarding SLAA's ownership of the St. Louis Airport Site ("SLAPS") starting in 1973, most of Plaintiffs' claims concerning a causal connection between their claimed injuries and the actions of any defendants are global in nature. As a result, Plaintiffs' TAC fails to make a plausible claim for relief against SLAA.

---

[1] SLAA acknowledges that under *Mazzocchio*, Missouri law—not federal dosage regulations— supplies the applicable standard of care in this public liability action. The Eighth Circuit held that defendants "identify nothing in § 2210 that even mentions federal dosage regulations, much less an indication that they take precedence over state standards of care." *Mazzocchio* 120 F.4th at 571. SLAA, which was itself a defendant-appellant in *Mazzocchio*, does not re-urge its prior argument that the standard of care is exclusively defined by federal dose limits. In candor to the Court and consistent with this Court's directive in ECF No. 229 to align with current authority, SLAA withdraws that contention. This concession does not, however, cure the causation deficiencies identified in Argument I, which apply with equal or greater force under Missouri's state-law standards.

**A.      The Only Conduct Specifically Attributed to SLAA Is Its 1973 Acquisition and Alleged Inaction.**

The extent of the specific allegations with respect to SLAA can be found in TAC ¶ 55 through 58. Essentially, Plaintiffs assert that in 1973 SLAA purchased SLAPS, that SLAA knew significant activities involving radioactive material were conducted on SLAPS, and that SLAA "did nothing to prevent continued dispersal and runoff of hazardous, toxic carcinogenic radioactive wastes into Coldwater Creek." TAC, ¶ 56.  Standing on their own, these allegations do not establish how SLAA's failure to act after taking control of the property in 1973 is causally connected to Plaintiffs' claimed injuries from exposure to RWM or deposition on their properties or how a failure to act after  SLAA took control of the property in 1973 is connected to Plaintiffs' claimed injuries from exposure to RWM or deposition on their properties. With respect to other defendants, Plaintiffs make allegations that they knew or should have known about the presence of radioactive materials on various sites, but Plaintiffs make no such allegation with specificity as to SLAA. Critically, SLAA never handled, transported, generated, or released the RWM. It acquired an already-contaminated site. Plaintiffs have not alleged, with the proper specificity, anything beyond that bare fact.

**B.      The TAC Relies on Impermissible "Group Pleading" Against "Defendants" Collectively.**

Most of Plaintiffs' claims concerning a causal connection between their claimed injuries and the actions of any defendants are global in nature. The blanket allegations made regarding "Defendants" as a group concerning causation throughout the TAC are insufficient to plausibly state a claim against SLAA.  Plaintiffs assert that "[a]s a result of Defendants' acts and omissions described in this Complaint," Plaintiffs are damaged, and their properties contain ultra-hazardous radioactive wastes.  TAC, ¶¶ 10, 24, 35, 70, 80, 86. However, Plaintiffs never go on to describe

SLAA's alleged acts and omissions.  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). Ultimately, "failure to differentiate among the defendants is fatal to [a] claim." *Id* at 835. The global allegations directed at "Defendants" collectively do not identify the causal connection between SLAA's acts and Plaintiffs' alleged injuries.

### C.    The TAC's Own Chronology Severs the Causal Chain as to SLAA.

Plaintiffs make their limited specific allegations as to SLAA in the scope of a broader timeline description of the actions of various defendants vis-à-vis RWM and various sites in the area.  It is noteworthy that most of these factual allegations as to other defendants are made in sequential order, running oldest to most recent.  However, the allegations against SLAA are made out of order. Plaintiffs assert that Mallinckrodt transported RWM to SLAPS between 1947 and 1957.  *See* TAC, ¶ 36.  Plaintiffs next make the specific allegations targeting SLAA, with the key reference to SLAA's purchase of the site in 1973.  *See* TAC, ¶ 37.  Plaintiffs *then* go on to allege that in the 1960's, "private companies assumed responsibility for the RWM stored at SLAPS" and transported the RWM from SLAPS to a separate location.  *See* TAC, ¶¶ 59–60.  In other words, on the face of Plaintiffs' TAC and taking those allegations as true, RWM on SLAPS was controlled and moved by separate entities prior to SLAA's acquisition of the property in 1973.  The pleaded sequence of events as they relate to SLAA does more than leave a gap in causation.   Plaintiffs' chronology affirmatively severs the causal chain as to SLAA and explicitly forecloses any plausible inference that SLAA's 1973 acquisition caused contamination alleged to have been generated, handled, and moved by others in the preceding decades.

**D.      Plaintiffs' Causation Allegations Fail Under *Iqbal*/*Twombly* Even Under a State-Law Standard.**

Plaintiffs' allegations imply, but do not make clear, the duty of care owed and breached by SLAA to "prevent" continued dispersal and runoff of radioactive wastes and how that breach caused Plaintiffs' injuries.  Plaintiffs appear to want the Court to assume that RWM continued to contaminate SLAPS even after other entities "assumed responsibility" for the RWM and after SLAA acquired the property, as well as make other unsupported leaps to find sufficient facts establishing causation with respect to SLAA.  But such assumptions are prohibited when there are insufficient facts alleged that would allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

This Court's analysis of causation is not altered by the standard-of-care holding in *Mazzocchio*; Missouri law still requires each plaintiff to plead a plausible causal nexus between each defendant's specific conduct and the claimed injury. *Chism*, 158 F.3d at 991. The meager allegations against SLAA do not plausibly state a claim under any theory of liability available under Missouri law. The TAC as to SLAA should be dismissed for failure to adequately plead causation.

**II.      The SLAA-Specific Takings and Constitutional Subparts (J, K, and L) Fail to State a Claim on Their Own Missouri-Law Terms.**

Three subparts of Count I are asserted solely against SLAA: Subpart J (Missouri inverse condemnation), Subpart K (violation of Article I, § 10 of the Missouri Constitution—due process), and Subpart L (violation of Article I, § 26 of the Missouri Constitution—takings/just compensation). SLAA challenges each on the merits under Missouri state law, independent of any preemption theory.

**A.**  **Inverse Condemnation/Art. I, § 26 (Subparts J and L): Passive Ownership and Inaction Do Not Constitute a "Taking" for Public Use.**

Article I, § 26 of the Missouri Constitution requires that "private property shall not be taken or damaged for public use without just compensation." This includes inverse takings, which can occur when "the government takes or damages land, sometimes unintentionally, without going through an official process." *Harvard Props., LLC v. City of Springfield*, 262 S.W.3d 278, 281 (Mo. Ct. App. 2008) (quoting *Collier v. City of Oak Grove*, 246 S.W.3d 923, 925 (Mo. 2008)). A compensable taking for public use requires the party seeking damages for inverse condemnation to "prove that the damage resulted from some *affirmative conduct* by the condemning authority." *Harvard Props., LLC*, 262 S.W.3d at 281 (citing *State ex rel. City of Blue Springs v. Nixon*, 250 S.W.3d 365, 367 (Mo. 2008)) (emphasis added).

The TAC alleges that SLAA, after purchasing SLAPS in 1973 knowing it was contaminated, "failed to remediate, warn, or otherwise prevent the leaching of wastes" into Coldwater Creek and surrounding properties. TAC, ¶¶ 228–235, 241–245. These allegations of passive ownership, failure to remediate, and failure to warn as to a pre-existing contamination condition on land the entity acquired unequivocally <u>do not</u> constitute a taking for public use under Missouri law. *State ex rel. City of Blue Springs*, 250 S.W.3d at 372 (finding that there can be no recovery for inverse condemnation based only on a municipality's failure to alleviate an injury). They sound, if at all, in tort—not in inverse condemnation.

Furthermore, Plaintiffs fail to allege the requisite public-use nexus between the operation of Lambert International Airport and the migration of legacy contamination into Coldwater Creek. The TAC does not plausibly allege that SLAA's operation of the airport caused or necessitated the dispersal of pre-existing radioactive contamination to Plaintiffs' properties. The mere fact that

8

SLAA operates a public airport on a portion of the SLAPS property does not transform tort-based contamination allegations into a constitutional takings claim.

### B. The "Affirmative Concealment" Allegations are Conclusory and Fail Under *Iqbal*/*Twombly*.

The TAC alleges that SLAA "took affirmative steps after taking possession of SLAPS, to conceal the nature of the contamination" and "took affirmative steps … that ensured that radioactive wastes would be leached from the site into Coldwater Creek." TAC, ¶¶ 231–232. These allegations are conclusory and devoid of the factual specificity required by *Iqbal* and *Twombly*. They identify no specific who, what, when, or how and are "threadbare recitals" not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. They cannot supply the affirmative-act element required for inverse condemnation. *Harvard Props., LLC*, 262 S.W.3d at 281.

### C. Art. I, § 10 Due Process (Subpart K) Is Duplicative and Independently Deficient.

Subpart K alleges violations of Article I, § 10 of the Missouri Constitution (due process / deprivation of property without due process of law). TAC, ¶¶ 236–240. Plaintiffs plead no protection-interest deprivation distinct from the takings theory articulated in Subparts J and L, and no process that was due and denied. The § 10 claim is duplicative of the takings claims and independently deficient because it fails to identify any procedural due process violation distinct from the substantive property-damage claim.

### III. The PAA's Structure Confirms the Subparts Are Theories Within a Single PLA, Not Freestanding Causes of Action; Certain Subparts Remain Independently Defective.

SLAA acknowledges that, under *Mazzocchio*, Missouri state law supplies the substantive rules for decision and the applicable standard of care in this public liability action. *See* 42 U.S.C. § 2014(ii). However, the PAA's channeling structure remains intact. The PAA creates a single, exclusive federal cause of action—the public liability action—and "channels all legal liability to

the federal courts through that cause of action." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099–1101 (7th Cir. 1994); *see also Nieman v. NLO, Inc.*, 108 F.3d 1546, 1553 (6th Cir. 1997) ("[Plaintiff] can sue under the Price–Anderson Act, as amended, or not at all. His federal claim will be derived from state law, as mandated by § 2014(hh), to the extent it is not inconsistent with federal law.").

Plaintiffs themselves acknowledge that the "subparts" are pleaded as theories of liability within the PLA (and as independent state-law claims only in the alternative if there was no "nuclear incident"). TAC, ¶ 142 & n.6. SLAA accepts that framing. In fact, to the extent Plaintiffs plead the subparts as independent state-law causes of action, that pleading is expressly conditioned on the absence of a "nuclear incident."  This is not a condition that can be satisfied here. The Eighth Circuit has already held that this action arises from a nuclear incident and that "the PAA provides federal question jurisdiction" over Plaintiffs' claims, *In re Cotter Corp. (N.S.L.)*, 22 F.4th 788, 796 (8th Cir. 2022), and Plaintiffs concede as much, TAC, ¶¶ 139–140. Accordingly, the subparts do not constitute independent causes of action, but rather theories within the single PLA subject to the PAA's own limitations. Several subparts, however, remain independently defective even as theories of liability, as addressed below.

A.    **Plaintiffs' Strict Liability Claim Fails Independently Under Missouri Law.**

In addition to the causation issues in the TAC, *supra* Section I, Plaintiffs' strict liability claim in "subpart (F)" to Count I fails to state a claim against SLAA under Missouri law because Plaintiffs have not alleged sufficient facts regarding SLAA's engagement in an ultrahazardous activity. For determining whether an activity is ultrahazardous for purpose of a strict liability claim, courts consider multiple factors, including whether (1) the activity created "a high degree of risk of harm," (2) the harm "has been and will be significant," (3) the risk can be eliminated, (4)

the harm outweighs the value of the operation, and (5) the inappropriateness of the place/location of the activity. *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 869 (Mo. Ct. App. 1985); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 725 (E.D. Mo. 2019). Plaintiffs have not alleged with any particularity what hazardous activity SLAA undertook. Although Plaintiffs allege that defendants are strictly liable for "handling, storing and/or disposing of radioactive materials," TAC, ¶ 207, SLAA's acquisition of SLAPS is not itself an ultrahazardous activity, and Plaintiffs admit that RWM was removed from SLAPS in the 1960s, before SLAA's purchase. TAC, ¶¶ 59–61.

**B.      Plaintiffs' Claim for Punitive Damages is Improper Under the PAA.**

The Court should dismiss "subpart (G)" to Count I wherein Plaintiffs assert a claim for punitive damages because punitive damages are not recoverable under the PAA. Furthermore, "[t]here is no independent cause of action for punitive damages under either federal or Missouri law." *Jackson v. Wiersema Charter Serv., Inc.*, No. 4:08CV00027 JCH, 2009 WL 1310064, at *3 (E.D. Mo. May 11, 2009); *see also Amesquita v. Gilster-Mary Lee Corp.*, 408 S.W.3d 293, 305 (Mo. Ct. App. 2013).

Punitive damages are explicitly unavailable under the PAA. 42 U.S.C. § 2210(s) ("No court may award punitive damages in any action with respect to a nuclear incident."); *see also Cotter Corp., N.S.L. v. United States*, 127 F.4th 1353, 1373 (Fed. Cir. 2025), *cert. denied*, 2026 WL 1463204 (U.S. May 26, 2026) (recognizing that this same alleged contamination is subject to the PAA's indemnification framework). As a result, Plaintiffs' punitive damages count in its PAA claim is precluded and should be dismissed. This statutory bar survives *Mazzocchio* and is unaffected by the standard-of-care holding because it derives from an express limitation in § 2210 itself.

11

C.      **Plaintiffs' Civil Conspiracy Claim Fails Independently Under Missouri Law.**

Even if Plaintiffs' civil conspiracy claim, "subpart (H)" to Count I, was not preempted by the PAA's creation of an exclusive federal cause of action, this subpart also fails to state a claim under Missouri law.   Under Missouri law, in order to recover damages on a theory of civil conspiracy, a claimant must show that there are (1) two or more persons, (2) an unlawful objective, (3) a meeting of the minds, (4) at least one act in furtherance of the conspiracy, and (5) injury to Plaintiff.  *See Phelps v. Bross*, 73 S.W.3d 651, 657 (Mo. Ct. App. 2002).  Every element must be proven by clear and convincing evidence. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 289–90 (Mo. Ct. App. 1983).  Importantly, civil conspiracy is not an independent cause of action but rather can be used to hold conspirators jointly and severally liable for an underlying tortious act. *Williams v. Bayer Corp.*, 541 S.W.3d 594, 612 (Mo. Ct. App. 2017). As such, a conspiracy claim must fail whenever the underlying tort claim fails to state a claim upon which relief may be granted. *Id*.

In Plaintiffs' TAC, a state law claim for civil conspiracy is generally asserted without identifying the requisite details and any information about who, when, and where any defendant(s) or person(s) entered into any actionable civil conspiracy.  *See* TAC, ¶¶ 144–147.  Moreover, a public entity or its officials acting in a single capacity may face challenges satisfying the two-persons requirement, as intracorporate-type principles may undermine the "meeting of the minds" element as pleaded against SLAA. For this additional reason, Count I, subpart (H) asserting a claim for civil conspiracy should be dismissed.

## CONCLUSION

For the reasons set forth above, SLAA respectfully requests that this Court enter an Order dismissing the TAC in its entirety as to SLAA for failure to adequately plead causation; and, in

12

the alternative, (2) dismissing Subparts J, K, and L (the SLAA-specific takings and constitutional claims) for failure to state a claim under Missouri Law; and (3) dismissing Subparts F, H, and I as to SLAA for the independent legal deficiencies identified herein. SLAA respectfully requests that any dismissal of Subparts J, K, and L be with prejudice, given that Plaintiffs have already had multiple opportunities to amend and have failed to cure the fundamental deficiencies in these claims.

ARMSTRONG TEASDALE LLP

By: */s/ Laura A. Bentele*
    Laura A. Bentele, ##64727MO
    Corey A.-T. Stegeman, #66828MO
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    lbentele@atllp.com
    cstegeman@atllp.com

ATTORNEYS FOR DEFENDANT
ST. LOUIS AIRPORT AUTHORITY, A
DEPARTMENT OF THE CITY OF ST. LOUIS.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 31, 2026, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Laura A. Bentele*